Stephen Shaiken, Esq. (CA Bar No. 90915)
LAW OFFICES OF STEPHEN SHAIKEN
170 Columbus Avenue, Suite 100
San Francisco, CA 94133
Telephone: (415) 248-1012
Fax: (415) 248-0019
e mail: stephenshaikenesq@shaikenlaw.com

Attorney for Defendant
Jerry Wang

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| | |
|---|---|
| UNITED STATES OF AMERICA            ) | **NO: CR 12-581 EJD** |
| ) | |
| Plaintiff,            ) | **MOTION TO SUPPRESS EVIDENCE** |
| vs.            ) | **[Warrant for E Mail]]** |
| ) | |
| Jerry Wang            ) | Date: January 7, 2013 |
| ) | Time: |
| Defendant            ) | |
| _____            ) | |

**TO THE ABOVE ENTITLED COURT AND TO THE GOVERNMENT:**

**PLEASE TAKE NOTICE THAT** defendant Jerry Wang moves this Court for an order suppressing all evidence obtained directly or indirectly as a result of a search of the records of Google, Inc.e E mail accounts relating to communications by defendant or to defendant, and papers and records of defendant. The basis of this motion is that the search warrant was issued without a sufficient showing of probable cause, that the warrant was overly broad and did not state with specificity the basis for seizure. Accordingly, the warrant should not have issued, and because the affidavit was so lacking in probable cause, no law enforcement officer could reasonably rely upon it and therefore the good faith exception does not apply here. It is further argued that the affidavit omitted material facts which undercut the claim of probable case and that with such information the magistrate would have viewed the request for a warrant in a rather different light and would not have found probable case.

This motion shall be supported by the attached memorandum of points and authorities, the attached exhibits, the Court file, and upon such evidence as may be adduced at a hearing on the matter.

Dated December 7, 2012 at San Francisco, CA.

Respectfully submitted,                    THE LAW OFFICES OF STEPHEN SHAIKEN

                                    By:        _____s/sshaikenesq_____

                                            Stephen Shaiken, Esq.

# TABLE OF CONTENTS

**BACKGROUND**                                                                          **4**

**A.       INTRODUCTION**

**PROBABLE CAUSE BASIS FOR SEARCH WARRANT**                               5

**SCOPE OF WARRANT**                                                            9

**RELEVANT LEGAL PRINCIPLES GOVERNING SEARCH WARRANTS**

**1.       Standing**                                                               **10**

**2.       Probable Cause**                                                          **11**

**3.       Prohibition Against Overbroad Warrants**                                  **12**

**4.        Information Must Be Current and Not Stale**                              **13**

**5.        Good Faith Exception**                                                  **14**

**6.        Controverting Material Misrepresentations or Omissions in Affidavits**   **15**

**ARGUMENT**

**I THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE TO BELIEVE THERE WOULD BE EVIDENCE OF THE STATED CRIMES AT THE TIME THE WARRANT WAS SOUGHT**

**A.       The Affidavit Does Not Establish Probable Cause Under Controlling Law**   **16**

**B. The Evidence Was Stale**                                                        **20**

**II THE WARRANT WAS OVERBROAD**                                                     **21**

**III  THERE WERE MATERIAL OMISSION IN THE AFFIDAVIT**                               **22**

**IV THE GOOD FAITH EXCEPTION DOES NOT APPLY**                                       **23**

**CONCLUSION**                                                                       **24**

1

**TABLE OF AUTHORITIES**

2  50 State Distrib. Co., 708 F.2d 1371, 1374-75 (9th Cir. 1983)  12

3  Center Art Galleries-Hawaii v. U.S., 875 F.2d (9th Cir. 1988)  20

4  Durham v. United States, 403 F.2d 190. 193 (9th Cir. 1968)  11,18

5  Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed.2d 667 (1978)  14,20

6  In Re Grand Jury Investigation Concerning SSDI, 130 F.3d 853 (9th Cir. 1997)  11,20

7  Illinois v. Gates, 402 U.S. 213, 238, 103 S.Ct. 2317, 79 L.Ed.2d 527 (1983)  11

8  Mancusi v DeForte, 392 U.S. 364, 88 S.CT. 2120, 20 L.Ed. 2d 1159 (1968)  10

9  Messerschmidt v. Millender, -U.S.-, 132 S.Ct. 1235, 1245, 182 L.Ed. 2d 47 (2012)  15, 23

10  Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L. Ed. 2d (1978)  10

11  U.S. v. Bertrand, 926 F.2d 838 (9th Cir. 1991)  16

12  United States v. Dozier, 844 F.2d 701, 706-07 (9th Cir. 1998 )  12,14

13  United States v. Gourde, 382 F.3d 1003, 1011 (9th Cir. 2004)  12,15.19,20

14  U.S. v. Grant, 682 F.3d 827, 835 (9th Cir. 2012)  14

15  United States v. Harris, 403 U.S. 573, 583-84, 91 S.Ct. 2075,  14

16  2081-82, 29 L.Ed. 2d 331 (1988)

17  United States v. Jones, 286 F.3d 1146, 1150 (9th Cir. 2002)  11

18   United States v. Leon, 466 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)  14, 15, 23

19  United States v. Kow, 58 F.3d 423 (9th Cir.   1995)  12, 15, 21

20  United States v, Lacy, 119 F.3d 742, 745 (9th Cir. 1997)  13, 20

21  United States v. Ramos, 923 F.2d 1346, 1351 fn 9 (9th Cir. 1991)  13

22  U.S. v. SDI Future Health, Inc., 568 F.3d 684, 698 (9th Cir. 2009)  10

23  United States v. Spilotro, 800 F.2d 959 (9th Cir. 1986)  15, 21

24  United States v. Stubbs, 973 F.2d 210 (9th Cir. 1989)  15

25  United States v. Washington, 797 F.2d 1461 (9th Cir. 1986)  15

26  United States v. Weber, 923 F.2d 1338, 1342 (9th Cir. 1990)  11, 12, 15, 19

27  VonderAhe v Howland, 508 F.2d 364 (9th Cir. 1974)  11

28

**BACKGROUND**

**A.      INTRODUCTION**

Defendant was the Chief Executive Officer and President of Herguan University (HGU) and University of East West Medicine (UEMW), which shared a campus in Sunnyvale, CA.

Defendant was also the Designated School Official (DSO), authorized by SEVIS, a unit of the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE). SEVIS administers the program by which U.S. schools are authorized to admit foreign students and to issue them visas for their studies. The DSO is given an access code by SEVIS to enable them to enter the name and other information about the student and then print out an I-20 which is essentially their proof of a lawful student visa. SEVP oversees compliance by participating schools. Schools obtain the authority to admit students and issue I-20s by filing and having approved a petition known as a form I-17.

On July 24, 2012, the Grand Jury returned  an indictment against Defendant. He was charged with the following offenses:

Count One:      Conspiracy to commit visa Fraud (18 U.S.S. § 371);

Count Two through Five:      Aiding and Abetting Visa Fraud (18 U.S.C. §§ 1546(a) and 2;

Count Six: Aiding and abetting Unauthorized Access to Government Computer (18 U.S.C. §§ 1030(a)(3) and 2;

Count Seven through Thirteen: Use of False Document (18 U.S.C. § 1001(a)(3)

After the indictment was returned, but before it was unsealed and before defendant was arrested, Agent Jason Mackey of ICE obtained a search warrant for the e mail accounts of defendant and the Vice President for Organiizational of both  HGU and UEWM, seeking documents which would contain evidence of the alleged crimes. The warrant was supported by the affidavit of Agent Mackey, dated January 27, 2012, which is detailed below. The warrant was issued and the e mails provided to the government.

**PROBABLE CAUSE BASIS FOR SEARCH WARRANT**

The basis for the search warrant was set forth in the affidavit of Jason Mackey, a Special Agent of the U.S. Department of Homeland Security. Agent Mackey explains that he has been a Special Agent

with DHS since 2002 and that since 2009 he has been assigned to the Document and Benefit Fraud Task force. He has participated in at least 50 visa fraud cases since 2004, three of which involved educational systems. (¶¶s 4-8 at pp 1-3)  He has discussed "computers, the internet, and email" with an FBI Special Agent who is a Computer Forensic Agent; the affidavit also contains general information on e mail and the internet.  See ¶¶ 14-26 of Mackey affidavit.

He also sets forth the procedures by which a school files a form I-17 in order to be granted authority to admit foreign students, and to issue them I-20 visa cards by use of an access code provided by SEVIS. It is SEVP which actually oversees the schools whereas SEVIS administers the student admission and school academics. (¶¶ 9-20)

In the section of his declaration establishing the basis for probable cause[1], Agent Mackey identifies defendant as a co-owner of he two schools. (¶ 28). He states that it was defendant's father who submitted a petition to have HGU qualified to accept foreign students, and that this was done on July 6, 2007 and again on July 10, 2007. The father signed and defendant signed as the DSO (¶ 30)

The affidavit states that Agent Mackey confirmed that on May 30, 2006, defendant's father had submitted a license application for HGU to the California entity that license private schools, that the license application said that no students were yet enrolled, and that once the school opened, it was anticipated there would be 20-25 students in each program.  The license was approved on June 5, 2007, the day before HGU submitted the I-17 petition to qualify the school for acceptance of foreign students. (¶ 31).

Mackey states that he date of the school's establishment is material, because a school cannot obtain an I-17 approval without showing that it is a bona fide school, and established institution of learning, and actually engaged in a course of instruction, (¶ 30)[2]

Mackey also states that HGU was requested by SEVP to present three letters from employers

---

[1] ¶¶s 28-59, pp 11-19 of the Affidavit of Agent Mackey

[2] Mackey does not elaborate on this or tie it to any criminal charges or any of the requested evidence, or does he explain why any evidence related to this statement would be found in an open-ended and unlimited search.

showing that graduates of the school are qualified to work in their field, and/or letters from accredited schools stating that they will accept transfer students from HGU. Mackey states that defendant responded with three fraudulent letters from employers and two fraudulent letters from accredited schools. (¶ 33).

Mackey identifies on alleged fraudulent letter as relating to a Candace Zhang, and the letter, which was from Alex shi, a Clinic Manager at UEWM, stating that Ms. Zhang had graduated from HGU on April 15, 2007 and was hired as an herbal consultant /manager assistant in May 1, 2007. Transcripts of Ms. Zhang's studies at HGU were attached. (¶ 34) Mackey states that in September of 2011, he interviewed Ms. Zhang and she stared that she had not attended or graduated from HGU but had attended UEWM and had worked for its clinic as a receptionist. (¶ 36) Shi was also interviewed in September of 2011 and he said that Zhang had worked in the clinic but could not recall whether he supervised her or what her position was. (¶ 37).

Mackey stated that there had been a letter submitted which was purportedly from "Lin Lee" identifying themself as President of IHHH, which had hired student David Wang as a Herbal Researcher based on his training at HGU (¶ 38) It further stated that David Wang had graduated from HGU in April, 2007. The letter had a telephone number for Lin Lee and IHHH and was accompanied by transcripts of Wang's studies at HGU. (Id)

Mackey states that he interviewed Lin Lee in September of 2011, and that she is also known as Ling Li. She told Mackey that she had worked as dean of admission for UEWM in 2007 and was supervised by defendant. She stated she had never worked or heard of IHHH and did not know David Wang. She also claimed that she had never used the name of Lin Li, but confirmed that the signature on the letter resembled hers and the contact number was her personal cell phone, which Mackey con firmed to be true. (¶ 40) Wang was never interviewed. (¶ 41)

The affidavit then address an employment letter written on behalf of Shane Guan by Jing Gang Tang, the manager of Vital Core Biosystems, stating in its body that Mr. Guan had graduated HGU on April 15, 2007 and apparently had been employed at the company, although this is not entirely clear from the statement by Mackey, as it does not actually say when he began working, if he was still working, and what exactly his job entailed. His transcripts were attached to this letter. (¶ 42)

Mackey states that Guan was interviewed in September of 2011 and said he had never heard of Vital Core and never worked for them.. He said he was pursing a degree at UEWM and did not recall attending or graduating from HGU. (¶ 45). Mackey states that he also interviewed Tang in September of 2011 and was told that defendant had been his supervisor and had written the letter, telling Tang that it was a reference letter to enable Guan to obtain employment. Tang said he did not know Tang and he had never worked for him. (¶ 44)

On February 17, 2008, SEVP received a letter from The Academy of Chinese Culture and Health Service (ACCHS), signed by Andres Bella, the Director of Institutional Relations, stating that in the summer of 2007, the school had accepted as a transfer student from HGU one Li Ling and that she was given full credit for here HGU courses and that the school unconditionally accepts and credits courses from HGU. (¶ 46). Bella was interviewed by Mackey in September of 2011 dn said that he would not have written the letter and did not know Li Ling or her transfer. (¶47). Mackey believes that Li Ling refers to Ling Li. (¶48)

Agent Mackey refers to an allegedly fraudulent accreditation letter from UEWM, signed by the same Shi who signed the UEWM employment letter. The instant letter states that defendant's mother had been a transfer student fro HGU and her HGU credits were transferred to UEWM. The letter also stated that UEWM unconditionally accepts transfers from HGU.( ¶ 49). Mackey states that when Shi was interviewed in September, 2011, he did not recall signing the document or defendant's mother having been enrolled. (¶50) The letter had been submitted to SEVIS on February 14, 2007 (¶49)

SEVP and DHS agents known as HSI conducted a site visit on November 10, 2010. Their data base showed 900 students enrolled at HGU. When the site visit team arrived at the premises they saw that most of HGU's facilities were under construction and in their view not fit for conducting classes. The SEVIS visitors did not see any HGU students on campus, although defendant stated that all students did attend classes at HGU. (¶52). SEVP personal asked defendant about students who were not making academic progress and he replied that they are placed on academic probation and issued warning letters, and that the school takes attendance and allows three absences from a course, ans that students who fail to meet attendance requirements are terminated and that three absences results in an F in any course. (¶

53). SEVP then asked for copies of attendance records and academic warning letters and this was provided by defendant on December 16, 2010, where defendant stated that due to renovations, students were attending simultaneous online classes. Attendance records and warning letters were submitted. (¶ 54)

On December 15, 2010, Mackey interviewed HGU's Dean of Academic Affairs, Dr. Anthony Martinez, who had contacted SEVP by mail on December 8, 2010 expressing concerns about the school violating regulations and its admission of students the school seldom sees. He stated that he had information about HGU employees, including defendant. He provided several e mails. (¶55). In one e mail, dated December 1, 2010, defendant asked the Vice President if he could create an academic warning letter to provide SEVP and the Vice President replied that this could be a trap and defendant should not fall into it. (¶56). Defendant e mailed the Vice President and said that SEVP wanted to see the letter sent to students who were not meeting academic standards, and the Vice President replied by stating not to send a letter prepared just for the response to SEVP. (¶57). The Vice President then advised defendant to drop students who were not attending classes as required. (¶58). Martinez himself had e mailed the vice President, claiming to have been contacted by a student who said that he had enrolled at HGU in January of 2010 "based on representations that the school was "fully on line" and he was "never going to have to come to campus." (¶ 59). No further information was provided, such as who the student was, and who had made the alleged representation. Mackey does not refer to any other specific information provided by Martinez, and there is no elaboration on the claim that of violating regulations or not seeing student very often. (Mackey does not explain why either of these would be fraudulent or criminal as opposed to being merely administrative violations to be addressed by SEVP and SEVIS through administrative action, including revocation of the I-17.)

Based upon the above, Mackey sought a warrant for the Google e mail accounts of defendant and the Vice President, alleging that they would contain evidence of a conspiracy to commit visa fraud and to make false statements to SEVP and HSI agents in connection with the I-17 petition to admit foreign students. (¶ 60).

**SCOPE OF WARRANT**

Attachment A to the warrant contains a Section II, titled "FILES AND ACCOUNTS TO BE COPIED BY GOOGLE EMPLOYEES". The section lists the e mail accounts and related documents. Section III of the Attachment seeks additional e mails materials relating to applications, immigration documents including those related to visas, financial records and travel records and defendant is specifically named.  There is no explanation offered as to what relevance the financial records of defendant, the schools or his parents have to the allegations of visa fraud.

There is no limitation on the period to be covered. There is no explanation for relying on stale information and no indication as to any time frame where it is believed records would be found at the time of the search.

**RELEVANT LEGAL PRINCIPLES GOVERNING SEARCH WARRANTS**

**1.      Standing**

In order to invoke the Fourth Amendment issue and seek suppression of evidence obtained in violation thereof, the moving party must have standing, which the Supreme Court has held to be based upon a "legitimate expectation of privacy." Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L. Ed. 2d (1978). In this case, the warrant and the affidavit both refer to defendant and cite him as an owner, a CEO, and a DSO for both HU and UEWM. The warrant specifically seeks his e mails and related business records of the school where he was CEO and his own account. Defendant meets the "legitimate expectation of privacy" standard. It has long been recognized that the owner of a business has a reasonable expectation of privacy in their offices and their homes. Mancusi v DeForte, 392 U.S. 364, 88 S.CT. 2120, 20 L.Ed. 2d 1159 (1968). Here, the affidavit states that defendant was interviewed as the "owner" of HGU on July 30, 2007 (§ 20). A non-owner employee, particularly a manager, will have standing based on a reasonable expectation of privacy in their on office and also in other parts of the business if they can show a connection between themselves and the place to be searched or the items sought. U.S. v. SDI Future Health, Inc., 568 F.3d 684, 698 (9th cir. 2009). Here, that standard is easily met. There is no dispute as to standing for his own and the school e mail accounts. As for the account

of the Vice President, it would appear that defendant had a reasonable expectation of privacy in e mails the Vice President sent to him from that account, just as he would in a letter.  There is nothing presented which could indicate that as the CEO and DSO, defendant expected that others would receive e mails sent only to him or to he and his attorneys or other officers of the schools.

**2.      Probable Cause**

A magistrate presented with a search warrant application must make a "...practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him...there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 402 U.S. 213, 238, 103 S.Ct. 2317, 79 L.Ed.2d 527 (1983). The Ninth Circuit has described this as requiring a substantial basis for concluding probable cause existed.  While great deference is afforded to the magistrate's finding, there must always be such substantial basis. <u>United States v. Jones,</u> 286 F.3d 1146, 1150 (9th Cir. 2002).

Under the Fourth Amendment, there are two related but distinct rules governing issuance of a search warrant. "First, it must describe the place to be searched or things to be seized with sufficient particularity, taking account of the circumstances of the case and the type of items involved. Second, it must be no broader than the probable cause upon which it was based." <u>United States v. Weber,</u> 923 F.2d 1338, 1342 (9th Cir. 1990)*as amended on denial of rehearing*.

Even where there is probable cause to believe evidence of some incriminating evidence, it does not follow that there will be more of such evidence. In <u>Weber, supra</u>, the Court held that {Probable cause to believe that *some* incriminating evidence will be present at a particular place does not necessarily mean that there is probable cause to believe that there will be more of the same." 923 F.2d at 1344.

In <u>VonderAhe v Howland</u>, 508 F.2d 364 (9th Cir. 1974), the IRS received information that a dentist was keeping two sets of books, one accurate and one for tax purposes. The genuine records were on white cards and the ones for the IRS on green or yellow cards. The Court held that even if there was probable cause to seize the green and yellow cards, this did not mean that there would be anything incriminating in the white cards, and there was no probable cause for a search beyond the colored cards. In <u>Weber</u>, the Court applied <u>VonderAhe</u>, and held that where there was probable cause to believe the

1  defendant in that case had received for sets of pornographic photos, the evidence supporting that did not

2  provide probable cause to search for more photos.

3      In Weber, the Court cautioned against creating a lengthy chain of inferences to buttress probable

4  cause.  923 F.3d 1344-45; see also United States v. Gourde, 382 F.3d 1003, 1011 (9th Cir. 2004).

5  **3.      Prohibition Against Overbroad Warrants**

6      The requirement that a warrant not be over broad generally requires limitations not only on the

7  items to be seized, but if the items are records, they must also be limited as to dates, because as is noted

8  above, there is no presumption that criminal activity is always ongoing. In In Re Grand Jury

9  Investigation concerning SSDI, 130 F.3d 853 (9th Cir. 1997), the Court addressed a case where a federal

10  investigator had learned from interviews with two SSDI employees that SSDI had acquired commercial

11  grade semiconductors that did not meet the standards required under SSDI's contacts to provide

12  semiconductor to the government. The agent had learned from the employees that SSDI then mislabeled

13  these semiconductors and falsified laboratory reports to make it appear that the semiconductors had

14  undergone necessary testing sand met the required standards. The government sought a warrant seeking

15  to seize all documents relating to purchases, sales, compliance and testing for the year 1990 to the

16  present, which was 1995.Thousands of file drawers of records were seized.

17      The Ninth Circuit held that the warrant was exceptionally broad as the  only limitations were that

18  the evidence relate to semiconductor to government programs and that they be from 1990 onward to

19  1995. The government did not specify why it selected the dates it chose, and agreed that the warrants

20  were very broad, but argued that SSDI was so pervaded by fraud that there was probable cause to seize

21  the majority of its documents, Citing United States v. Kow, 58 F,3d 423 (9th Cir. 1995), the Court noted

22  that "[a] generalized seizure of business documents may be justified if the government establishes

23  probable cause to believe that the entire business is merely a scheme to defraud or that all of the

24  business's records are likely to evidence criminal activity."  The SSDI Court found that the government

25  had not provided probable cause to believe that "engaged only negligibly in legitimate business activities

26  (citing 50 State Distrib. Co., 708 F.2d 1371, 1374-75 (9th Cir. 1983) or that a majority of its activities

27  were fraudulent (at the time the warrant was sought, of course). SSDI, supra, 130 F.3d at 857. The Court

28

1    held that "Where a business appears, as SSDI does here, to be engaged in some legitimate activity, this

2    court has required a more substantial showing of pervasive fraud that was  provided by the Government

3    in the instant case." 130 F.3d at 857.

4    **4.        Information Must Be Current and Not Stale**

5           The information contained in the affidavit establishing probable cause must be current and not

6    "stale" as the issue is the likelihood of finding the identified evidence in the specific location. "[A]n

7    affidavit must be based on facts so closely related to the time of the issue of the warrant as to justify a

8    finding of probable cause at that time." United States v, Lacy, 119 F.3d 742, 745 (9th Cir. 1997). The court

9    must evaluate the staleness of the information in the affidavit "in light of the particular facts of the case

10   and the nature of the criminal activity and property sought." Information is not stale if "there is sufficient

11   basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still

12   on the premises." Id at 745-746.  In Lacy, the Court found that ten month old information about

13   possession of child pornography was not stale because the affidavit was supported by the statement of

14   an experienced agent that collectors of child pornography value the materials highly and rarely if ever

15   dispose of them and in fact store them in secure places.. Those unique factors allowed such old

16   information to be sufficient to support probable cause to believe the subject of the search would have

17   child pornography in his home as he was shown to have had it there ten months before.  Here, there is no

18   expert testimony as to the pattern and practice of schools regarding maintaining and storing incriminating

19   documents or evidence sought by the warrant.

20          As the Ninth Circuit held in Durham v. United States, 403 F.2d 190. 193 (9th Cir. 1968), "The

21   most convincing proof that the property was in the possession of the person or upon the premises at some

22   remote time in the past will not justify a present invasion of privacy."  In Durham, the court found that

23   an affidavit was stale where it described the passing of a counterfeit note and purchase of paper useable

24   in counterfeiting ten months before the warrant was issued, notwithstanding the affidavit's description

25   of the defendant's involvement in counterfeiting activity that may have occurred up to the seventeen

26   weeks preceding the insurance of the warrant. 403 F.2d at 194.

27          As noted above, a reviewing court will uphold the magistrate's finding of probable cause if there

28                                                         13

is a substantial basis for concluding that the affidavit in support of the warrant established probable cause. United States v. Ramos, 923 F.2d 1346, 1351 fn 9 (9ᵗʰ Cir. 1991). In order to satisfy this standard, the facts must be sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. United States v. Dozier, 844 F.2d 701, 706-07 (9ᵗʰ Cir. 1998 )[citing United States v. Harris, 403 U.S. 573, 583-84, 91 S.Ct. 2075, 2081-82, 29 L.Ed. 2d 331 (1988).

As the Court held in U.S. v. Grant, 682 F.3d 827, 835 (9ᵗʰ Cir. 2012), "In other words, because evidence can be moved or disposed of, the affidavit must support the inference that it is presently in the residence to be searched, regardless of its past position."

"[A]n affidavit must be based on facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."

**5.    Good Faith Exception**

There is a so-called "good faith" exception to the probable cause requirement, but this is available only where the officers who executed the warrant could reasonably rely upon the magistrate's finding of probable cause. This exception does not apply here, for several reasons, detailed below. For one thing, Agent Mackey knew when he submitted the affidavit to the Magistrate that he had not been forthcoming in recounting his interview with Shane Guan, as he omitted relevant and exculpatory materials whereby Guan stated that he may well have attended and graduated from HGU. [3] Also, the agent could have provided specific information as to why the documents would be found on the premises.

The Supreme Court has held that if an officer acts in objectively reasonable good faith reliance on a search warrant issued by a magistrate, then even a later finding of lack of probable cause will not compel suppression. United States v. Leon, 466 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). The Court held as well that "It is necessary to consider the objective reasonableness not only of the officers

---

[3] Since HGU and UEWM shared a facility and had common ownership, Guan's uncertainly may have been reasonable and it cannot be assumed that any student at one of the schools who took courses at the other and received credit was engaging in criminal or illegal activity. There is no such claim that any student who takes courses in both schools is in violation of any law or regulation. Guan's acknowledgment thus undermines the government's implication that this was always done illegally or unknowingly.

14

1  who eventually executed a warrant, but also of the officers who originally obtained it." <u>Id</u>. At 923 n. 24,

2  104 S.Ct. 3405

3        The courts have held that if there was no time pressure in obtaining or executing the warrant, then

4  the good faith exception is less likely to be found. <u>See Weber</u>,<u>supra</u>, at 923 F.2d 1346; <u>United States v.</u>

5  <u>Lacy</u>, 119 F.3d 742, 745 (9th Cir. 1997); <u>United States v. Gourde</u>, 382 F.3d 1003 (9th Cir. 2004).

6        Thus, the good faith exception of <u>Leon</u> does not apply, and suppression "remains an appropriate

7  remedy" when a warrant is based on "an affidavit 'so lacking in indicia of probable cause as to render

8  official belief in its existence entirely unreasonable." <u>Leon</u> , 468 U.S. at 823, 104 S.Ct. 3405. <u>See also</u>

9  <u>Messerschmidt v. Millender</u>, -U.S.-, 132 S.Ct. 1235, 1245, 182 L.Ed. 2d 47 (2012)

10       Here, the affidavit is unreasonable as it sets forth no basis for believing that in January of 2012

11  the officers would find evidence based on events occurring almost exclusively in 2007, with some

12  occurring nearly two years before in 2010. There is no showing that the e mails or other documents would

13  contain evidence of the crimes alleged.

14       Overboard search warrants cannot be saved by the good faith doctrine of <u>Leon. See</u> <u>United States</u>

15  <u>v. Kow</u>, 58 F.3d 423 (9th Cir. 1995) [A search warrant for almost all business records of a Hong Kong

16  video business was so over broad that agents could not have reasonably relied upon it.]; <u>United States v.</u>

17  <u>Washington</u>, 797 F.2d 1461 (9th Cir. 1986) [A search warrant for evidence of a prostitution ring was over

18  broad because among other things, it sought "evidence trending to establish" the suspect's wealth and

19  association with named persons, "but not limited to them". The search warrant was thus so facially

20  deficient that it could not be relied upon]; <u>United States v. Spilotro</u>, 800 F.2d 959 (9th Cir. 1986) [The FBI

21  was investigating bookmaking and loansharking in Las Vegas.  The warrant was found to be overboard

22  as it sought items not generally evidence of crimes. The good faith exception did not apply.]; <u>United</u>

23  <u>States v. Stubbs</u>, 973 F.2d 210 (9th Cir. 1989) [Search warrant for records in office were not particular;

24  the facial invalidity precluded the good faith exception.]

25  **6.    Controverting Material Misrepresentations or Omissions in Affidavits**

26       If a defendant seeks suppression of evidence based upon material falsehood or omission in an

27  affidavit, and  if the defendant proves their claim, the court must excise the falsehood or add in the

28
                                                    15

1  omission and determine if there is probable cause. If there is a finding of probable cause after the

2  excision, then there is no hearing. If there is no probable cause, then the defendant is entitled to a hearing

3  to determine if the falsity or omission was intentional. If it is found to be intentional, the evidence is

4  suppressed. <u>Franks v. Delaware</u>, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed.2d 667 (1978). Reckless

5  misstatements are also within the ambit of <u>Franks</u>.. <u>U.S. v. Bertrand</u>, 926 F.2d 838 (9th Cir. 1991)

6

7

8                                      **ARGUMENT**

9                                            **I**

10  **THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE TO BELIEVE**

11  **THERE WOULD BE EVIDENCE OF THE STATED CRIMES AT THE TIME THE WARRANT**

12  **WAS SOUGHT**

13  **A.       The Affidavit Does Not Establish Probable Cause Under Controlling Law**

14          The warrant should not have been issued, because the affidavit was facially deficient and it should

15  have been clear to any magistrate or law enforcement officer that the facts alleged in the affidavit do not

16  provide probable cause to believe the requested items of evidence would be found on the premiss to be

17  searched at the time the warrant was requested.

18          The affidavit was facially deficient as it failed to present facts which would allow a reasonable

19  magistrate or law enforcement officer to believe that the Google records would contain the requested

20  items because the affidavit was based on very old and very stale information and there was no showing

21  that the school(s) were providing no legitimate education or that all students were issued visas

22  fraudulently.

23          The affidavit contains no information as to why any records other than e mails, such as the tax and

24  other personal or business financial records, are remotely relevant to the investigation of the issuance of

25

26

27

28                                          16

1  visas or the maintenance of academic standards.[4]

2      The affidavit states that there is an ongoing investigation of visa fraud and false statements to

3  federal officers. (¶ 2 of Mackey affidavit).

4      The Mackey affidavit refers to the filing of the I-17 petition for authority to admit foreign

5  students, and states that the petition was filed on August 8, 2007. (¶ 33). The affidavit then discusses

6  documents which were filed in response to requests from SEVP; these documents consisted of

7  employment letters, accreditation or transfer letters, and student transcripts of three individuals, and this

8  all occurred in August of 2007. (¶¶ s 33-34, 38).  Agent Mackey also interviewed a Jing Gang Tang in

9  September of 2011 concerning an employment letter he had written in the summer of 2007 and Mackey

10 also interviews Shan guan, the student at issue. (¶¶ s 42, 44, 45). Mackey states that Tang had not read

11 the letter and thought that it was a reference letter, and that Guan knew nothing about the employment

12 or attending or graduating HGU as he had attended only UEWM.  (Id) Candace change had sated that she

13 had worked as a receptionist for UEWM as opposed to the job described in the employment letter, and

14 she had not attended HGU, only UEWM (¶ 36)

15     More than four years later, in September of 2011, Mackey interviewed the authors of the

16 employment letters and two of the students, and determined that the letters and transcript submitted back

17 in 2007 were fraudulent. One of the authors, Mr. Shi, recalled little about the employment of Candace

18 Zhang, one of the students who supposedly was employed after graduating HGU; the other person, Ling

19 Li, also recalled little but did state that the signature looked like hers and that the cell number (¶¶s 37,

20 39).

21     Mackey discusses two accreditation letters which he states are fraudulent, based upon his

22 interviews with the authors . One letter, by Andres Bella of ACCHS, was dated February 14, 2008 and

23 Bella was interviewed in September of 2011, when he stated he had not written the letter fro HGU. (¶¶s

24 46-47). The second accreditation letter was written by Mr. Shi of UEWM, who had also written the Zhang

25

---

26      [4] Again, it is never explained why the allegations of on line course or alleged failure to

27 maintain academic standards are criminal as opposed to mere administrative matters.

28

1   employment letter; his accreditation letter was submitted on February 14, 2008 and he was interviewed

2   in September of 2011, when he could not recall anything about the letter or the transfer student issue. (¶¶s

3   49-50).

4       Mackey then jumps to December of 2010, when, in response to a SEVP request for academic

5   warning letters following a site visit the month before, a former employee of HGU, Anthony Martinez,

6   met with HSI officers and gave them e mails between defendant and a Vice President in which defendant

7   appears to be inquiring as to creating academic warning letters to provide and the vice President states

8   that this is not proper, (¶¶s 55-58) Mackey also states that Martinez gave him an e mail which he,

9   Martinez, had sent to defendant, in which Martinez claims that he had received an e mail from a student

10   who stated that he had enrolled in HGU in January of 2010 because it was fully on line and he had no

11   intention of coming to campus. (¶ 59).  Martinez sent the e mail to defendant on December 2, 2010.

12   Mackey does not claim to have received a copy of said e mail nor is there any explanation as to why

13   Martinez waited almost a full year to inform defendant of this one instance. There is no evidence that

14   defendant responded, or even saw, the Martinez e mail. What was presented by Martinez in his e mail

15   were his own personal opinions, which Mackey relied upon to formulate speculation and inference, but

16   these were not supported by evidence of ongoing criminality justifying a search of any scope, let alone

17   such a broad search unlimited in form or fashion as to time frame or anything else. This si a classic

18   fishing expedition.

19       In other words, the probable cause to believe that the requested evidence of crimes would be found

20   in the e mail and other google records consisted simply of an application submitted in August of 2007,

21   documents related to the application,  provided in response to requests in 2008, an e mail exchange

22   between defendant and his Vice President in December of 2010, and an unauthenticated and an

23   anonymous e mail from student which was received in January of 2010. This is offered as proof that

24   evidence of criminality relating to visa fraud and false documents would be found in these records in late

25   January of 2012.  The anonymous e mail, which was not even provided, like the rest of Martinez'

26   statements to Mackey, are sheer speculation, not proof of anything relevant or supporting probable cause

27   for  a search warrant application.

28

The iinchpin of the request for e mails is the exchange between defendant and the Vice President in 2010. It is never claimed that failure to have an academic warning letter is a requirement of any sort. More significantly, the exchange is by no means clear evidence of criminality. If anything, it is a warning to defendant that SEVIS is attempting to create a case against defendant. . What defendant said in the e mail to the Vice President was that while the school catalogue referred to academic standards, he did not have a specific letter. While Mackey states that defendant told him that student were sent such letters, defendant's e mails to the Vice President do not refer to this.

None of this explains in the least  why the government was seeking not only all student records, but also financial and tax records. (Attachment A, section III). There is nothing to indicate how they would shed any light on the crimes being investigated.

What the government is attempting here is to create a series of inferences upon inferences so that the court would presume that in August of 2012, the premises of HGU and UEWM would contain evidence of fraudulent visa applications and related immigration violations. However, there are no reliable building blocks detailed. There is an allegation of fraudulent documents presented in connection with the I-17 petition whereby HGU sought permission to admit foreign students and provide them with I-20s.Those occurred in the second half of 2007.  Then the allegations jump to the end of 2010, where it is alleged that fraudulent documents were proved to show that HGU had been in compliance with SEVIs regulations governing academic standards and student attendance and grades. However, none of the latter have to do with fraudulent visa applications. No connection is claimed or shown.

In Weber, the Court cautioned against creating a lengthy chain of inferences to buttress probable cause. 923 F.3d 1344-45; see also United States v. Gourde, 382 F.3d 1003, 1011 (9th Cir. 2004).

As is noted above in the legal argument, the courts have insisted that there be a showing of probable cause that at the time the warrant is sought, the desired evidence would be present.  See United States v. Weber, 923 F.2d 1338, 1342 (9th Cir. 1990)*as amended on denial of rehearing*.

In Weber, the Court cautioned against creating a lengthy chain of inferences to buttress probable cause. 923 F.3d 1344-45; see also United States v. Gourde, 382 F.3d 1003, 1011 (9th Cir. 2004).

Here, the affidavit does not support probable cause to believe that the sweeping search would

1  uncover evidence of the alleged criminal activity claimed to have occurred. The lack of any specificity

2  or limitations as to what was to be seized in terms of time period and relevance makes it clear that this

3  was just a fishing expedition.

4  **B. The Evidence Was Stale**

5      "[A]n affidavit must be based on facts so closely related to the time of the issue of the warrant

6  as to justify a finding of probable cause at that time." United States v, Lacy, 119 F.3d 742, 745 (9th Cir.

7  1997).  "[A]n affidavit must be based on facts so closely related to the time of the issue of the warrant

8  as to justify a finding of probable cause at that time."  Here, there is nothing in the affidavit to suggest

9  that in August of 2012 a search would uncover evidence of ongoing visa fraud. There was an application

10  (I-17) filed in 2007, responses submitted in 2007 and 2008, aan e mail exchange regarding academic

11  warning in 2010, and a year later, the government sought a sweeping warrant for a wide range of items,

12  including financial records, tax records, and student records with no temporal limitations, let alone

13  limitations on the categories of evidence.

14      See  Durham v. United States, 403 F.2d 190. 193 (9th Cir. 1968), "The most convincing proof that

15  the property was in the possession of the person or upon the premises at some remote time in the past will

16  not justify a present invasion of privacy."

17      Thus, the fact, even if established, that the defendant was in possession and used fraudulent

18  documents or applications in 2007 in no way provides probable cause to believe that the same is true in

19  2012 or that a search of e mail and other  Google would reveal such information. In Weber, the Court

20  cautioned against creating a lengthy chain of inferences to buttress probable cause.  923 F.3d 1344-45;

21  see also United States v. Gourde, 382 F.3d 1003, 1011 (9th Cir. 2004.

22      It should be noted that at the time the affidavit was executed and presented, there had been over

23  four and a half years of investigation of these matters. It would be expected after all of these events, that

24  if there were genuine probable cause, it would have easily been established.

25      There is nothing at all in the affidavit which would justify a sweeping warrant with no time

26  limitations at all.  There is now showing as to why it is believed that e mails that predate the December

27  2010 exchange are relevant. or what probable cause exists for such a request.

28

20

1     Here, there is nothing contained in the affidavit which would suggest that the items sought would

2 in fact be present at the time of the search. The petition was filed in 2007 and the response to the request

3 for evidence supporting the petition were submitted in 2007 and 2008. In 2010 there was simply a request

4 for documents showing maintenance of academic standards, which is not in itself a criminal matter.

5 **II**

6 **THE WARRANT WAS OVERBROAD**

7     As was described in greater detail above, the requirement that a warrant not be overbroad

8 generally requires limitations not only on the items to be seized, but if the items are records, they must

9 also be limited as to dates, because as is noted above, there is no presumption that criminal activity is

10 always ongoing. In <u>In Re Grand Jury Investigation concerning SSDI</u>, 130 F.3d 853 99th Cir. 1997**).**

11     As is argued above in the probable cause discussion, the affidavit in support of the warrant makes

12 no references to a anything which might support probable cause to seize the financial records, property

13 records, telephone and address directories , or travel records.

14     In addition to being overbroad because it seeks evidence without any showing of probable cause

15 related to the specific items sought, the warrant is also poverbroad because it places no limitations on the

16 scope or time period on the items to be seized.  In <u>United States v. Kow</u>, 58 F.3d 423, 427 (9th Cir. 1995),

17 the Court noted that "[a] generalized seizure of business documents may be jusfitied if the government

18 establishes probable cause to believe that the entire business is merely a scheme to defraud or that all of

19 the business's records are likely to evidence criminal activity."  As is argued in the probable cause

20 sections, there is no evidence of ongoing or continuous criminal activity.  There is no evidence that both

21 HGU and UEWM or any of the businesses affiliated with them were purely criminal enterprises. To the

22 contrary, the Mackey affidavit informs that UEWM offered legitimate courses in traditional Chinese

23 medicine. (¶ 29). There is no evidence that Vital Core of IIHH violated any laws.

24     Probable cause must be established for each alleged crime. <u>See U.S. v. Spilotro,</u>  800 F.2d 959,

25 967 (9th Cir. 1986); <u>Center Art Galleries-Hawaii v. U.S.</u>, 875 F.2d (9th Cir. 1988). <u>See also United States</u>

26 <u>v. Kow</u>,  58 F.3d 423, 427 (9th Cir. 1995).

27     The warrant sought records of e mails, visa and school applications, tax and financial records and

28 21

1  related documents without any limitation of time or otherwise and without any showing of probable cause
2  as to why they are relevant or why they would be expected to be available at this date. The lack of a
3  specific time limitation means that the arrant lacks the requisite specificity under the Fourth Amendment.
4  Even if there were a showing of probable cause, which is lacking here, the
5  overbroad request would compel suppression.

6  ### III

7  ### THERE WERE MATERIAL OMISSION IN THE AFFIDAVIT

8  As is explained in the legal background section, if an affidavit is shown to contain material
9  misrepresentations or material omissions, then the court must determine if the omissions were intentional
10 and this could require an evidentiary hearing. If such a finding is made, the court reweighs the affidavit
11 to determine if probable cause exists. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed.2d 667
12 (1978).

13 Here, in ¶45, Mackey recites his interview of September , 2011 with Shane Guan. Mackey states
14 that Guan told Mackey that he had not worked for Vitalcore, the employment letter from Tang
15 notwithstanding, and that he had never attended HGU, only UEWM.

16 However, what Guan actually told Mackey was that he might have attended HGU and graduate.
17 This is established in the affidavit presented by Mackey to the Magistrate in the search warrant for the
18 premises of the schools. That motion has been filed contemporaneously with this motion and the full
19 statement by Guan can be found in ¶ 26 of the Mackey affidavit dated July 31, 2012. This statement is
20 exculpatory and also it undermines the implication that all students who took courses at both HGU and
21 UEWM were unaware of that fact.

22 There is no need to hold an evidentiary hearing on the state of mind of Agent Mackey. It was
23 either intentional or grossly negligent. He was clearly aware of his interview of Guan and he informed
24 to Magistrate Judge in San Jose of the full content of Guan's statement   seven months after  he
25 submitted the affidavit in this warrant.

26 There is also no doubt that the omission was material. The Magistrate Judge in this matter was
27 presented with minimal and stale evidence of limited value which was offered The failure to disclose that

28

1  Shane Guan, a critical witness, had been unsure as to whether he did or did not attend HGU was a

2  necessary component of the information needed by the Magistrate in assessing probable cause. When the

3  equivocation is added to his statement, it lacks the basis for probable cause and instead of bolstering the

4  government's case, it undermines it. Thus it was highly material and highly significant.

5      Clearly, Agent Mackey's credibility is seriously undermined by this intentional and inexcusable

6  omission of facts which undercut the government's case and are exculpatory for defendant.

7      Defendant argues that the warrant affidavit as it currently stands lacks a sufficient showing or

8  probable cause. Thus, if the affidavit is retested for probable cause with the full Guan statement added

9  where omitted, there is no probable cause.

10                                                    **IV**

11                          **THE GOOD FAITH EXCEPTION DOES NOT APPLY**

12      The good faith expectation of United States v. Leon, 466 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d

13  677 (1984) does not apply here and cannot save the warrant.  Suppression "remains an appropriate

14  remedy" when a warrant is based on "an affidavit 'so lacking in indicia of probable cause as to render

15  official belief in its existence entirely unreasonable." Leon , 468 U.S. at 823, 104 S.Ct. 3405. See also

16  Messerschmidt v. Millender, -U.S.-, 132 S.Ct. 1235, 1245, 182 L.Ed. 2d 47 (2012). Even if there were

17  a good faith exception based solely on the lack of probable cause neutralized by good faith reliance, the

18  Franks issues result in a separate ground where the good faith exception does not apply as inherent in the

19  findings of the Court would be intentional or grossly negligent misrepresentations which would preclude

20  good faith reliance.

21      The good faith exception does not apply where the evidence shows that the agent acted

22  intentionally and redaction results in a retest of the affidavit and a finding of no probable cause. This is

23  the essence of Franks.

24                                              **CONCLUSION**

25      The warrant was overbroad as it sought evidence which was unrelated to the crimes investigated

26  and reasonable time limitation were not imposed; asked for years worth of records where there was no

27  showing of current or ongoing violations constitutes overbreadtth.

28
                                                    23

The affidavit lacked probable cause and contains material omission.

The omission was intentional as the agent was the party who interviewed Guan and knew that he had provided information that undermined the government's case and was exculpatory.

The issues here can be decided without an evidentiary hearing as the facts  are clear beyond dispute.

Accordingly, the evidence seized as a result of the search of Google records should be suppressed and all evidence obtained as a result of the seized items also suppressed.

Dated December 7, 2012

Respectfully submitted,

THE LAW OFFICES OF STEPHEN SHAIKEN

By:  _____s/sshaikenesq_____

Stephen Shaiken, Esq.

# DECLARATION OF COUNSEL

I, Stephen Shaiken, declare:

1.)     I am an attorney at law, duly admitted to practice before this Court. I am counsel fro defendant.

2.)     I make this declaration based upon personal knowledge, except where stated upon information and belief, and as to those matters, I believe them to be true. If called to testify as a witness, I would testify as is set forth herein.

3.)     The search warrant related documents attached hereto as Exhibits A and B are the warrant form request with its own Attachment A containing the items to be copied and provided (A) and the Affidavit of Jason Mackey (B).

4.)     The above documents were provided by the government to counsel through the discovery process.

5.)     Special Agent Mackey prepared a report of his September, 2011 interview with Shane Guan. The report contains the statements by guan as reported in the Mackey affidavit dated July 31, 2012, but omitted in his declaration of January 24, 2012. These statements were that Guan may have attended and graduated HGU without realizing it.

In order to avoid issues about release o this report, which was provided to counsel through discovery, counsel makes this representation. No dispute about this is anticipated, as Agent Mackey himself makes this statement in the July 31, 2012 declaration and the report which he prepared was provided.

6.)     I declare under penalty of perjury that the forgoing is true and correct.

Dated December 7, 2012 at San Francisco, CA


            s/sshaikenesq
_____

            Stephen Shaiken, Esq.

1    **CERTIFICATION OF ELECTRONIC SERVICE**

2        I certify that on December 10, 2012, I caused to be filed the defendant's Motion to

3    Suppress, and that counsel for both parties are registered users of the electronic filing

4    system of the Court:

5    Hartley West, AUSA

6    N.D. CA

7    450 Golden Gate Ave., 11th Floor

8    San Francisco, CA 94102

9

10   Dated December 10, 2010

11                                          s/sshaikenesq
     _____

12                                          Stephen Shaiken, Esq.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                          26