Stephen Shaiken, Esq. (CA Bar No. 90915)
LAW OFFICES OF STEPHEN SHAIKEN
170 Columbus Avenue, Suite 100
San Francisco, CA 94133
Telephone: (415) 248-1012
Fax: (415) 248-0019
e mail: stephenshaikenesq@shaikenlaw.com

Attorney for Defendant
Jerry Wang

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **NO: CR 12-581 EJD** |
| | ) | |
| Plaintiff, | ) | **MOTION TO SUPPRESS EVIDENCE** |
| vs. | ) | **[Premise Search of 08/02/12]** |
| | ) | |
| Jerry Wang | ) | Date: January 7, 2013 |
| | ) | Time:   1:00 p.m. |
| Defendant | ) | |
| _____ | ) | |

**TO THE ABOVE ENTITLED COURT AND TO THE GOVERNMENT:**

**PLEASE TAKE NOTICE THAT** defendant Jerry Wang moves this Court for an order suppressing all evidence obtained directly or indirectly as a result of a search of the premises of Herguan University and University of East West Medicine, conducted on August 2, 2012. The basis of this motion is that the search  warrant was issued without a sufficient showing of probable cause, that the warrant was overly broad and did not state with specificity the items to be seized and the basis for said seizure. Accordingly, the warrant should not have issued, and because the affidavit was so lacking in probable cause, no law enforcement office could reasonably rely upon it and therefore the good faith exception does not apply here.  It is further argued that the affidavit omitted material facts which undercut the claim of probable case and that with such information the magistrate would have viewed the request for a warrant in a rather different light and would not have found probable case

This motion shall be supported by the attached memorandum of points and authorities, the attached exhibits, the Court file, and upon such evidence as may be adduced at a hearing on the matter.

Dated December 7, 2012 at San Francisco, CA.

Respectfully submitted,            THE LAW OFFICES OF STEPHEN SHAIKEN

By: _____s/sshaikenesq_____

Stephen Shaiken, Esq.

## TABLE OF CONTENTS

BACKGROUND

A.      INTRODUCTION                                                                4

PROBABLE CAUSE BASIS SUPPORTING  SEARCH WARRANT OF PREMISES        5

SCOPE OF WARRANT                                                              9

RELEVANT LEGAL PRINCIPLES GOVERNING SEARCH WARRANTS

1.      Standing                                                               11

2.       Probable Cause                                                        11

3.      Prohibition Against Overbroad Warrants                                 12

4.      Information Must Be Current and Not Stale                              13

5.      Good Faith Exception                                                   15

6.      Controverting Material Misrepresentations or Omissions in Affidavits   16

ARGUMENT

I THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE TO BELIEVE THERE WOULD BE EVIDENCE OF THE STATED CRIMES AT THE TIME THE WARRANT WAS SOUGHT

A.      The Affidavit Does Not Establish Probable Cause Under Controlling Law  16

B.      The Evidence Was Stale                                                 19

II  THE WARRANT WAS OVERBROAD                                                  21

III   THERE WERE MATERIAL OMISSIONS  IN THE AFFIDAVIT                          22

IV   THE GOOD FAITH EXCEPTION DOES NOT APPLY                                   24

CONCLUSION                                                                     25

2

1

**TABLE OF AUTHORITIES**

2   50 State Distrib. Co., 708 F.2d 1371, 1374-75 (9th Cir. 1983)                                      13

3   Durham v. United States, 403 F.2d 190. 193 (9th Cir. 1968)                                       14, 20

4   Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed.2d 667 (1978)                          16, 22

5   Illinois v. Gates, 402 U.S. 213, 238, 103 S.Ct. 2317, 79 L.Ed.2d 527 (1983)                          11

6   In In Re Grand Jury Investigation concerning SSDI, 130 F.3d 853 99th Cir. 1997)              12, 19, 21

7   Mancusi v DeForte, 392 U.S. 364, 88 S.CT. 2120, 20 L.Ed. 2d 1159 (1968)                             11

8   Messerschmidt v. Millender, -U.S.-, 132 S.Ct. 1235, 1245, 182 L.Ed. 2d 47 (2012              15, 22

9   Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L. Ed. 2d (1978)                                  11

10  United States v. Dozier, 844 F.2d 701, 706-07 (9th Cir. 1998 )                                      14

11  United States v. Gourde, 382 F.3d 1003, 1011 (9th Cir. 2004)                                12, 15, 19, 20

12  U.S. v. Grant, 682 F.3d 827, 835 (9th Cir. 2012)                                                    14

13  United States v. Harris, 403 U.S. 573, 583-84, 91 S.Ct. 2075, 2081-82, 29 L.Ed. 2d 331 (1988)   14

14  United States v. Kow, 58 F.3d 423, 427 (9th Cir. 1995)                                     13, 25, 19, 21

15  United States v, Lacy, 119 F.3d 742, 745 (9th Cir. 1997)                                   13, 15, 19, 20

16  United States v. Leon, 466 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984)                  15, 22

17  United States v. Ramos, 923 F.2d 1346, 1351 fn 9 (9th Cir. 1991                                    14

18  U.S. v. SDI Future Health, Inc., 568 F.3d 684, 698 (9th Cir. 2009)                                 11

19  United States v. Spilotro, 800 F.2d 859 (9th Cir. 1986)                                            16

20  United States v. Stubbs, 973 F.2d 210 (9th Cir. 1989)                                              16

21  United States v. Washington, 797 F.2d 1461 (9th Cir. 1986)                                         16

22  United States v. Weber, 923 F.2d 1338, 1342 (9th Cir. 1990)*as amended on denial of rehearing*.

23                                                                                           12, 25, 19

24  VonderAhe v Howland, 508 F.2d 364 (9th Cir. 1974)                                                  12

25

26

27

28

# BACKGROUND

**A.     INTRODUCTION**

Defendant was the Chief Executive Officer and President of Herguan University (HGU) and University of East West Medicine (UEMW), which shared a campus in Sunnyvale, CA.

Defendant was also the Designated School Official (DSO), authorized by SEVIS, a unit of the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE). SEVIS administers the program by which U.S. schools are authorized to admit foreign students and to issue them visas for their studies. The DSO is given an access code by SEVIS to enable them to enter the name and other information about the student and then print out an I-20 which is essentially their proof for a lawful student visa. Schools receive this authority upon approval of an I-17 petition seeking the same.

On July 24, 2012, the Grand Jury returned an indictment against Defendant. He was charged with the following offenses:

Count One:     Conspiracy to Commit Visa Fraud (18 U.S.S. § 371);

Count Two through Five:     Aiding and Abetting Visa Fraud (18 U.S.C. §§ 1546(a) and 2;

Count Six: Aiding and Abetting Unauthorized Access to Government Computer (18 U.S.C. §§ 1030(a)(3) and 2;

Count Seven through Thirteen: Use of False Document (18 U.S.C. § 1001(a)(3)[1]

After the indictment was returned, but before it was unsealed and before defendant was arrested, Agent Jason Mackey of ICE obtained a search warrant for the premises of HGU and UEWM, seeking documents and computers which would contain evidence of the alleged crimes. Defendant's papers and records were specifically sought along with the papers and records of the schools and defendant's parents. The warrant was supported by the affidavit of Agent Mackey, which is detailed below. The warrant was issued and the search was conduced on August 2, 2012, after the arrest of defendant.

---

[1] The specific false documents are discussed in the Probable Cause Section below, and relate to a transfer letter from the Academy of Chinese Culture and Health Services, an employment letter for Candace Zhang from UEWM, an employment letter fro Shane Guan from Vital core Biosystems, an employment letter for David Wang from International Institute for Health and Healing (IIHH), transcripts for Zhang and Guan, and an academic warning letter.

4

1           **PROBABLE CAUSE BASIS SUPPORTING  SEARCH WARRANT OF PREMISES**

2        The basis for the search warrant was set forth in the affidavit of Jason Mackey, a Special Agent

3 of the U.S. Department of Homeland Security. Agent Mackey explains that he has been a Special Agent

4 with DHS since 2002 and that since 2009 he has been assigned to the Document and Benefit Fraud Task

5 force. He has participated in at least 50 visa fraud cases since 2004, three of which involved educational

6 systems. He has discussed this specific investigation with an ICE adjudicator assigned to Student

7 Exchange and Visitor  Program (SEVP), which approves and oversees approved schools [2] He has been

8 involved ion over 25 search warrants, at least one of which involved visa fraud, and has participated in

9 50 arrests for visa fraud.

10        In the affidavit containing the basis for probable cause[3], Agent Mackey provides the details he

11 deemed significant.   The -17 was electronically filed on July 6, 2007. (¶18) He refers at first to a SEVP

12 site visit on July 30, 2007, at the schools' former premises. (¶19). According to Agent Mackey, defendant

13 Jerry Wang was identified as the owner of HGU and that defendant gave to the SEVP inspector the

14 original petition by HGU to enroll foreign students, as well as three letters which had been provided to

15 show that other schools would accept transfer students from HGU.

16        Mackey states that he interviewed the author of one of the three letters, Mr. Andres Bella, and that

17 Bella denied writing the letter for HGU and said he had written one for UEWM. Mackey does not state

18 when he interviewed Bella.  (¶ 21)

19        Mackey also discusses a second letter from UEWM, where it was stated that Su Tong, defendant's

20 mother, had transferred to that school from HGU; Mackey states that the author, Mr. Shi, had no

21 recollection of the events described in the letter. Again, there is no reference to when the interview

22 occurred.

23        There was a third letter, from Lawrence Lau at Yo San University of Traditional Chinese

24 _____

25       [2]Agent Mackey explains the DHS agencies, SEVIS and SEVP, which oversee schools
       which seek or have permission to enroll foreign  students. While the two units work

26        together, SEVP is the actual investigative arm, according to Agent Mackey's affidavit.

27       [3] ¶¶s 15-45, pp 3-10 of the Affidavit of agent Mackey

28                      5

1  Medicine,  which Mackey grudgingly concedes was not improper. (¶ 22).  Mackey notes that neither of

2  the latter two letters are charged in the criminal indictment. (Id).

3          Mackey then proceeds to list what he terms a fraudulent supplemental submission to SEVP.

4          He explains that on August 7, 2007, SEVP requested letters from three schools attesting that they

5  have accepted credits from HGU or three letters showing that graduates of HGU are hired to work in their

6  field because of the training they received. (¶23) However, Mackey states that it is not clear why SEVP

7  requested three more articulation agreements; SEVP personnel are not able to say definitively based on

8  their records." (Id). Thus it is not known if both types of letters were required.

9          The affidavit then states that defendant sent a cover letter with employment letters and transcripts

10  for three HGU graduates, Candace Zhang, Shane Guan, and David Wang. The cover letter itself was

11  undated, but SEVP records show that it was received on August 16, 2007 (¶ 24).

12          Mackey states that the first employment letter was signed by Mr. Shi, and that it said that Candace

13  Zhang had worked as an herbal consultant/manager assistant and had graduated HGU in April, 2007.

14  Although Mackey provides no details as to how he obtained information on this letter from Shi, he says

15  that Shi could not recall Zhang's position but remembered she had worked at the school.  The declaration

16  also states, without any details as to the circumstances or time, that Zhang had said she had never attended

17  HGU but did graduate UEWM in December of 2008. She pointed out that there were inaccuracies as to

18  the dates of attendance as well. She had worked as a receptionist for UEWM (¶ 25)

19          The third letter was from a Jing Gang Tang of Vital Core Bisosystems, who wrote that Shane

20  Guan had graduated HGU on April 15, 2007 and was employed by Vital Core as a marketing officer.

21  Again, while no date  or other details are provided, Mackey writes that Guan was interviewed and said

22  he had never heard of Vital  Core and never worked for them. He purportedly said that he was a student

23  at UEWM and had not graduated.  He also told the agent that he might have taken courses at HGU and

24  graduated without realizing it.  Mackey then states ,once more with no details or even a date, that he

25  interviewed Tang, the author of the Vital  Core letter, and that Tang recalled it being a reference letter

26  to help Guan find a job and that he did not know Guan and" felt "pressured to sign it. (¶ 26)

27          The third letter was from a Lin Lee of International Institute for Health and Healing (IIHH)

28                                                        6

starting that David Wang was an Herbal Researcher who graduated from HGU on April 15, 2007 . Without further explanation, Mackey refers to an undated interview with "Li", who denied having seen the letter or having worked for IIHH or knowing David Wang. [4] She admitted the signature looked like hers and the phone number on the letter was her cell phone. David Wang was never located. (¶ 27)

Mackey then refers to unauthorized SEVIS access and forged I-20s, which are the documents issued to students once they have been accepted to an authorized school, and which allows them to remain in the U.S. for their studies. (See ¶ 12). These sections of the affidavit, ¶¶s 28-32, state that defendant allowed two former employees to access the SEVIS database to create I-20s for new students and also sign the I-20s. As the Designated School Official, or DSO, defendant and a password to access the SEVIS data base and perform these functions. (See¶¶s 11and 18)  The section also states that actually, defendant hardly ever appeared at the office. (¶ 30).  Wang supposedly asked one of the employees to become a DSO on her own, and she declined.

Mackey's affidavit them describes the SEVP/ICE Compliance Visit, of which he was a part. (¶¶s 31-41). He was present at the current school site on November 10, 2010. The SEVP agents toured the campus and Mackey interviewed defendant.

Wang told agents in response to question that attendance is monitored by students signing sheets, that students receive a failing grade for failure to attend classes, and that foreign students failing to meet academic standards are issued warning letters and then terminated in SEVIS. Defendant also stated that student records were then stored in a locked fireproof cabinet in the registrar's office. (¶ 33). After defendant stated that due to renovation, students were temporarily allowed to attend classes on line but that this was temporary and would end soon. At the end of the site visit, SEVP asked defendant to provide attendance records, academic warning records, and transfer agreements with other schools. (¶ 34) Defendant did submit a response on December 16, 2010. Defendant included a letter confirming his statements about on line courses, but Mackey believed that "many student had been taking all online

---

[4]  Mackey never explains why he places the name "Lin Lee" in quotes, or why he claims to have interviewed someone named "Li", or why there is a difference in the names.

1  courses since Fall 2009. (¶ 35)[5] The responses also contained the other items requested by SEVP (¶ 36)

2      The affidavit refers to e mails between defendant and HGU's Vice President of Organizational

3  Development[6], written between the SEVP site visit and the submission by defendant on December 16,

4  2010. In the emails, defendant asks the Vice President for an academic warning letter, saying that the

5  school did not have one. (¶ 37).  Mackey then claims that the Vice President sent a response with two

6  sample letters, virtually identical to the letters defendant submitted on December 16.

7      Finally, Mackey asserts that in his affidavit that in June, 2012, he interviewed Michael Brodsky,

8  President of Lincoln University in Oakland, who stated that in late 2010 or early 2011, an Asian family

9  consisting of a husband, wife, and son, approached  him at his office and told him they were the owners

10  of HGU and attempted to bribe him for an articulation agreement, which he declined. There are no other

11  details, such as how the bribe was presented, what it consisted of, who proposed it, and what role if any

12  defendant played. No names were provided and there as no other identification of the three Asian  people

13  provided.  (¶ 41)

14      In ¶¶s 42-45, Agent Mackey discusses what he calls "Commingling of UEWM and HGU Foreign

15  Students".  He contends that during the course of his investigation, he became aware that HGU was

16  enrolling UEWM students without their knowledge. The basis of the claim is that between April, 2007

17  and September, 2008,  UEWM enrolled students in programs they were not authorized to offer and that

18  when UEWM was advised in that latter month of SEVP intent to withdraw foreign students for this

19  practice[7], UEWM began to transfer those programs' students to HGU. Mackey opines that students from

---

21  5. Nothing in Mackey's affidavit explains why taking on line courses is criminal or
22     fraudulent. If SEVP determined that this was inappropriate, they could seek to
   withdraw the I-17. This is really an administrative issue, not a crime.

23  [6] The search warrant which produced these e mails is the subject of  a separate motion to
24     suppress. If that motion is granted, then the fruit of the poisonous tree doctrine would
   apply and such evidence could not even be considered in this affidavit. The e mail
   warrant was presented to a different ,magistrate than was this warrant

26  [7] Authorization was not withdrawn, and as the affidavit itself shows, UEWM continues to
   operate as a SEVP approved school. HGU is challenging a notice of intent to revoke the I-17,
27     is  approved at present to admit foreign students and issue I-20s, as it has been  since February,
   2008 when the I-17 was approved

28

1   India seek these science and technology courses and that such students are eligible for employment before

2   and after graduation. (¶ 45). Mackey based his claim of switching schools on students without their

3   consent based on an interview with a former employee, Ling Zhang, but the date of the interview is not

4   given nor is the time period when this witness allegedly saw such transfers. (¶ 45) The only other

5   evidence he offers is a letter postmarked November 8, 2007, from an unnamed person who was claiming

6   to have been graduated from UEWM when he had enrolled in HGU; this is the exact opposite of what

7   Mackey claims was the plan, which was to transfer students from UEWM to HGU, not vice versa.(¶ 45).

8   This flatly contradicts what he stated in ¶ 44, where he states that the scheme was to secretly transfer

9   students from UEWM to HGU.

10   There is a final section of the probable cause summary which addresses financial records, but all

11   it says is that money was collected and it was all from foreign students and that there was a checking

12   account with ten million dollars in deposits and an almost equal amount of withdrawals  between

13   February 2008 and September of 2011. No reasons are given as to why these are relevant or what they

14   might prove.(¶¶ s 46, 47)

15                                       **SCOPE OF WARRANT**

16        Attachment B of the Warrant application is titled "Items to Be Seized".

17        This attachment states in its first paragraph that it seeks evidence, fruits or instrumentalities of

18   specific crimes, specifically, Conspiracy to Commit Visa Fraud, Visa Fraud, Unauthorized Access to a

19   Government  Computer, Use of False Documents, Aggravated Identity Theft, and Aiding and Abetting.

20   .Not surprisingly, these offense are the very offenses charged in the indictment returned on July 24, 2012,

21   following an investigation of over four and a half years, the last action undertaken by the government

22   occurring in November, and the last action taken by defendant in December of 2010. Agent Mackey

23   executed the affidavit on July 31, 2012, and it was presented to the magistrate and issued the same day.

24        The warrant seeks "Records related the [sic] acquisition and maintenance of foreign students (F-1)

25   status for current and former foreign Herguan University (HGU) and University of East West Medicine

26   (UEWM) students and applicants for the period between July 6, 2007 and the present" and specifies

27   numerous documents related to applications and obtaining and maintaining student status as a foreigner.

28

(§1 of Attachment B)

§ 2 of Attachment A seeks records related to HGU and UEWM's authorization top admit foreign students . As is noted above and below, the I-17 petition which granted the authorization was filed in 2007 and the last request for information on this procedure occurred in November of 2010 and was responded to in December of 2010.

¶ 3 seeks records relating to David Wang, Shane Guan and Candace Zhang, who are referenced in the affidavit and Zhang and Guan are referenced in the indictment as well in Counts 7-15, identified as "C.Z." and "S.G."

¶ 4 seeks travel records for defendant from the period February 14, 2008 through the present, including passports and all travel related documents,.

There are then a series of items which include address books, telephone lists and directories and telephone records of defendant and his parents from July 6 to the present, financial records reflating to the two schools, IIHH, defendant at and his parents.  Also sought are evidence of properties owned or leased by the defendant and his parents or the two schools, (¶¶ s 5-7)

¶ 8 seeks "...receipts relating to or constituting proceeds from the production or filing of fraudulent visa applications or visa related forms, or relating to or constituting payments from foreign nationals for the maintenance of immigration status, for the ;period between February 14, 2008 , and the present."

Following the search, the government returned the computers and several boxes of records and retained numerous other records, including student records, visa materials and financial records. Defendant has been provided a disc with these items but it is unclear how and for what purpose the government would use the evidence .

**RELEVANT LEGAL PRINCIPLES GOVERNING SEARCH WARRANTS**

**1.        Standing**

In order to invoke the Fourth Amendment issue and seek suppression of evidence obtained in violation thereof, the moving party must have standing, which the Supreme Court has held to be based upon a "legitimate expectation of privacy." Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L. Ed. 2d (1978). In this case, the warrant and the affidavit both refer to defendant and cite him as an owner, a CEO,

1   and a DSO for both HU and UEWM. The warrant specifically seeks his financial documents and work

2   product. Defendant meets the "legitimate expectation of privacy" standard and every other test for

3   standing as he was a named and indicted defendant at the time of the application for the warrant and  the

4   warrant is almost exclusively directed at defendant's papers, personal and professional. It has long been

5   recognized that the owner of a business has a reasonable expectation of privacy in their offices and their

6   homes. Mancusi v DeForte, 392 U.S. 364, 88 S.CT. 2120, 20 L.Ed. 2d 1159 (1968). Here, the affidavit

7   states that defendant was interviewed as the "owner" of HU on July 30, 2007 (§ 20). A non-owner

8   employee, particularly a manager, will have standing based on a reasonable expectation of privacy in their

9   on office and also in other parts of the business if they can show a connection between themselves and

10  the place to be searched or the items sought. U.S. v. SDI Future Health, Inc., 568 F.3d 684, 698 (9th Cir.

11  2009). Here, that standard is easily met. The warrant was directed at defendant's work product,

12  documents and other correspondence, personal and professional,  and his financial records.

13  **2.    Probable Cause**

14          A magistrate presented with a search warrant application must make a "...practical, common-sense

15  decision whether, given all the circumstances set forth in the affidavit before him...there is a fair

16  probability that contraband or evidence of a crime will be found in a particular  place." Illinois v. Gates,

17  402 U.S. 213, 238, 103 S.Ct. 2317, 79 L.Ed.2d 527 (1983). The Ninth Circuit has described this as

18  requiring a substantial basis for concluding probable cause existed.  While great deference is afforded to

19  the magistrate's finding, there must always be such substantial basis Illinois v. Gates, 402 U.S. 213, 238,

20  103 S.Ct. 2317, 79 L.Ed.2d 527 (1983)        Under the Fourth Amendment, there are two related but

21  distinct rules governing issuance of a search warrant. "First, it must describe the place to be searched or

22  things to be seized with sufficient particularity, taking account of the circumstances of the case and the

23  type of items involved. Second, it must be no broader than the probable cause upon which it was based."

24  United States v. Weber, 923 F.2d 1338, 1342 (9th Cir. 1990)*as amended on denial of rehearing*.

25          Even where there is probable cause to believe evidence of some incriminating evidence, it does

26  not follow that there will be more of such evidence. In Weber, supra, the Court held that {Probable cause

27  to believe that *some* incriminating evidence will be present at a particular place does not necessarily mean

28                                                    11

1  that there is probable cause to believe that there will be more of the same." 923 F.2d at 1344.

2      In VonderAhe v Howland, 508 F.2d 364 (9th Cir. 1974), the IRS received information that a

3  dentist was keeping two sets of books, one accurate and one for tax purposes. The genuine records were

4  on white cards and the ones for the IRS on green or yellow cards. The Court held that even if there was

5  probable cause to seize the green and yellow cards, this did not mean that there would be anything

6  incriminating in the white cards, and there was no probable cause for a search beyond the colored cards.

7  In Weber, the Court applied VonderAhe, and held that where there was probable cause to believe the

8  defendant in that case had received for sets of pornographic photos, the evidence supporting that did not

9  provide probable cause to search for more photos.

10      In Weber, the Court cautioned against creating a lengthy chain of inferences to buttress probable

11  cause. 923 F.3d 1344-45; see also United States v. Gourde, 382 F.3d 1003, 1011 (9th Cir. 2004).

12  **3.      Prohibition Against Overbroad Warrants**

13      The requirement that a warrant not be over broad generally requires limitations not only on the

14  items to be seized, but if the items are records, they must also be limited as to dates, because as is noted

15  above, there is no presumption that criminal activity is always ongoing. In In Re Grand Jury Investigation

16  concerning SSDI, 130 F.3d 853 99th Cir. 1997), the Court addressed a case where a federal investigator

17  had learned from interviews with two SSDI employees that SSDI had acquired commercial grade

18  semiconductors that did not meet the standards required under SSDI's contacts to provide semiconductor

19  to the government. The agent had learned from the employees that SSDI then mislabeled these

20  semiconductors and falsified laboratory reports to make it appear that the semiconductors had undergone

21  necessary testing sand met the required standards. The government sought a warrant seeking to seize all

22  documents relating to purchases, sales, compliance and testing for the year 1990 to the present, which was

23  1995.Thousands of file drawers of records were seized.

24      The Ninth Circuit held that the warrant was exceptionally broad as the  only limitations were that

25  the evidence relate to semiconductor to government programs and that they be from 1990 onward to 1995.

26  The government did not specify why ti selected the dates it chose, and agreed that the warrants were very

27  broad, but argued that SSDI was so pervaded by fraud that there was probable cause to seize the majority

28

1   of its documents, Citing <u>United States v. Kow</u>, 58 F.3d 423, 427 (9th Cir. 1995), the Court noted that "[a]

2   generalized seizure of business documents may be justified if the government establishes probable cause

3   to believe that the entire business is merely a scheme to defraud or that all of the business's records are

4   likely to evidence criminal activity."   The SSDI Court found that the government had not provided

5   probable cause to believe that "engaged only negligibly in legitimate business activities (citing <u>50 State</u>

6   <u>Distrib. Co.</u>, 708 F.2d 1371, 1374-75 (9th Cir. 1983) or that a majority of its activities were fraudulent (at

7   the time the warrant was sought, of course). <u>SSDI, supra</u>, 130 F.3d at 857. The Court held that "Where

8   a business appears, as SSDI does here, to be engaged in some legitimate activity, this court has required

9   a more substantial showing of pervasive fraud that was  provided by the Government in the instant case."

10  130 F.3d at 857.

11  **4.      Information Must Be Current and Not Stale**

12          The information contained in the affidavit establishing probable cause must be current and not

13  "stale" as the issue is the likelihood of finding the identified evidence in the specific location. "[A]n

14  affidavit must be based on facts so closely related to the time of the issue of the warrant as to justify a

15  finding of probable cause at that time." <u>United States v, Lacy</u>, 119 F.3d 742, 745 (9th Cir. 1997). The court

16  must evaluate the staleness of the information in the affidavit "in light of the particular facts of the case

17  and the nature of the criminal activity and property sought." Information is not stale if "there is sufficient

18  basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still

19  on the premises." <u>Id</u> at 745-746.   In <u>Lacy</u>, the Court found that ten month old information about

20  possession of child pornography was not stale because the affidavit was supported by the statement of

21  an experienced agent that collectors of child pornography value the materials highly and rarely if ever

22  dispose of them and in fact store them in secure places.. Those unique factors allowed such old

23  information to be sufficient to support probable cause to believe the subject of the search would have

24  child pornography in his home as he was shown to have had it there ten months before.  Here, there is no

25  expert testimony as to the pattern and practice of schools regarding maintaining and storing incriminating

26  documents or evidence sought by the warrant. It is sheer speculation that because there were allegedly

27  fraudulent application support documents submitted in 2007 and 2008, there would be more of the same

28

13

1   in the new premises in 2012, five years after the I-17 was submitted.

2          As the Ninth Circuit held in <u>Durham v. United States,</u> 403 F.2d 190. 193 (9th Cir. 1968), "The

3   most convincing proof that the property was in the possession of the person or upon the premises at some

4   remote time in the past will not justify a present invasion of privacy."  In <u>Durham</u>, the court found that

5   an affidavit was stale where it described the passing of a counterfeit note and purchase of paper useable

6   in counterfeiting ten months before the warrant was issued, notwithstanding the affidavit's description

7   of the defendant's involvement in counterfeiting activity that may have occurred up to the seventeen

8   weeks preceding the insurance of the warrant. 403 F.2d at 194.

9          As noted above, a reviewing court will uphold the magistrate's finding of probable cause if there

10  is a substantial basis for concluding that the affidavit in support of the warrant established probable cause.

11  <u>United States v. Ramos</u>, 923 F.2d 1346, 1351 fn 9 (9th Cir. 1991). In order to satisfy this standard, the

12  facts must be sufficient to justify a conclusion that the object of the search is probably on the premises

13  to be searched at the time the warrant is issued. <u>United States v. Dozier</u>, 844 F.2d 701, 706-07 (9th Cir.

14  1998 )[citing <u>United States v. Harris</u>, 403 U.S. 573, 583-84, 91 S.Ct. 2075, 2081-82, 29 L.Ed. 2d 331

15  (1988).

16         As the Court held in <u>U.S. v. Grant</u>, 682 F.3d 827, 835 (9th Cir. 2012), "In other words, because

17  evidence can be moved or disposed of, the affidavit must support the inference that it is presently in the

18  residence to be searched, regardless of its past position."

19          "[A]n affidavit must be based on facts so closely related to the time of the issue of the warrant

20  as to justify a finding of probable cause at that time."

21  **5.      Good Faith Exception**

22         There is a so-called "good faith" exception to the probable cause requirement, but this is available

23  only where the officers who executed the warrant could reasonably rely upon the magistrate's finding of

24  probable cause. This exception does not apply here, for several reasons, detailed below. For one thing,

25  Agent Mackey knew when he submitted the affidavit to the Magistrate that he had not listed the dates of

26  his interviews with the witnesses, and that if he had shown the magistrate that he was asking witnesses

27  in September, 2011 about events that occurred in 2007, the Magistrate would have seen the inability to

28                                                                  14

1  recall details as fatal to a finding of probably cause. Also, the agent could have provided specific

2  information as to why the documents would be found on the premises.

3       The Supreme Court has held that if an officer acts in objectively reasonable good faith reliance

4  on a search warrant issued by a magistrate, then even a later finding of lack of probable cause will not

5  compel suppression. United States v. Leon, 466 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). The

6  Court held as well that "It is necessary to consider the objective reasonableness not only of the officers

7  who eventually executed a warrant, but also of the officers who originally obtained it." Id. At 923 n. 24,

8  104 S.Ct. 3405

9       The courts have held that if there was no time pressure in obtaining or executing the warrant, then

10 the good faith exception is less likely to be found. See Weber,supra, at 923 F.2d 1346; United States v.

11 Lacy, 119 F.3d 742, 745 (9th Cir. 1997); United States v. Gourde, 382 F.3d 1003 (9th Cir. 2004).

12      Thus, the good faith exception of Leon does not apply, and suppression "remains an appropriate

13 remedy" when a warrant is based on "an affidavit 'so lacking in indicia of probable cause as to render

14 official belief in its existence entirely unreasonable." Leon , 468 U.S. at 823, 104 S.Ct. 3405. See also

15 Messerschmidt v. Millender, -U.S.-, 132 S.Ct. 1235, 1245, 182 L.Ed. 2d 47 (2012)

16      Here, the affidavit is unreasonable as it sets forth no basis for believing that in August of 2012

17 the officers would find evidence based on events occurring almost exclusively in 2007, with some

18 occurring nearly two years before in 2010. There was no time pressure.

19      Overboard search warrants cannot be saved by the good faith doctrine of Leon. See United States

20 v. Kow, 58 F.3d 423 (9th Cir. 1995) [A search warrant for almost all business records of a Hong Kong

21 video business was so over broad that agents could not have reasonably relied upon it.]; United States v.

22 Washington, 797 F.2d 1461 (9th Cir. 1986) [A search warrant for evidence of a prostitution ring was over

23 broad because among other things, it sought "evidence trending to establish" the suspect's wealth and

24 association with named persons, "but not limited to them". The search warrant was thus so facially

25 deficient that it could not be relied upon]; United States v. Spilotro, 800 F.2d 859 (9th Cir. 1986) [The FBI

26 was investigating bookmaking and loansharking in Las Vegas.  The warrant was found to be overboard

27 as it sought items not generally evidence of crimes. The good faith exception did not apply.]; United

28

1  States v. Stubbs, 973 F.2d 210 (9th Cir. 1989) [Search warrant for records in office were not particular;

2  the facial invalidity precluded the good faith exception.]

3  **6.      Controverting Material Misrepresentations or Omissions in Affidavits**

4          If a defendant seeks suppression of evidence based upon material falsehood or omission in an

5  affidavit, and  if the defendant proves their claim, the court must excise the falsehood or add in the

6  omission and determine if there is probable cause. If there is a finding of probable cause after the

7  excision, then there is no hearing. If there is no probable cause, then the defendant is entitled to a hearing

8  to determine if the falsity or omission was intentional. If it is found to be intentional, the evidence is

9  suppressed. Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed.2d 667 (1978). Reckless

10  misstatements are also within the ambit of Franks..  U.S. v. Bertrand, 926 F.2d 838 (9th Cir. 1991).

11  **ARGUMENT**

12  **I**

13  **THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE TO BELIEVE**

14  **THERE WOULD BE EVIDENCE OF THE STATED CRIMES AT THE TIME THE WARRANT**

15  **WAS SOUGHT**

16  **A.      The Affidavit Does Not Establish Probable Cause Under Controlling Law**

17          The Mackey affidavit, as is shown below, was a tapestry of speculation, unfounded inferences,

18  and instances separated by several years.[8] Most of what is complained of are administrative and not

19  criminal matters. Many of the alleged crimes, such as allowing subordinates to use the access code for

20  school enrollment and I-20 issues, and allowing on line education, are administrative, not criminal.  The

21  claim of the false academic warning letter is an administrative matter and there is no claim that such letter

22  was legally required.

23          Much of the probable cause assertion rests on the alleged submission of false employment letters.

24

25    8  Examples of Mackey;s speculation are that HGU offered only on line classes (¶35),
26  that students from India preferred certain programs, (¶45), and his claim that numerous
    students were being transferred to HGU without their knowledge. (¶42) There was no such
27  evidence fi large numbers of unknowing transfers.

28  16

1  Yet Mackey states in the affidavit that the regulations require either three letters from schools attesting

2  to their acceptance of transfer students from HGU (articulation agreements) or three employment letters,

3  not both. (¶23). Mackey further states that it is unclear and there is no explanation provided as to why

4  SEVP wanted three more articulation agreements. (Id)

5      The warrant should not have been issued, because the affidavit was facially deficient and it should

6  have been clear to any magistrate or law enforcement officer that the facts alleged in the affidavit do not

7  provide probable cause to believe the requested items of evidence would be found on the premiss to be

8  searched at the time the warrant was requested. This was due to the overbreadtth of the warrant, the

9  staleness of the information, and the lack of substantial evidence to support a search at the time requested.

10     The affidavit was facially deficient as it failed to present facts which would allow a reasonable

11  magistrate or law enforcement officer to believe that the schools would posses the wide range of

12  requested items because the affidavit was based on very old and very stale information and there was no

13  showing that the school(s) were providing no legitimate education or that all students were issued visas

14  fraudulently. There was no showing of relevance to criminal conduct for most of the requested items.

15     As the above  statement of facts makes clear, this investigation is primarily focused on whether

16  the I-17 petition which was approved in February, 2008, and which authorized HGU to admit foreign

17  students and issue them I-20s asa basis for their visas, was based on fraudulent documents.  All else is

18  a case of the tail wagging the dog. According to the affidavit of Agent Mackey, the petition was submitted

19  in 2007 and approved in 2008. The fraudulent employment letters, accreditation letters and transcripts.

20  were submitted to SEVIS in 2007. In 2010 an allegedly false academic warning letter was submitted, but

21  that is an entirely different issue.

22     Many of the items sought in the warrant are not mentioned or linked to the affidavit's content in

23  any meaningful way.  Attachment B, the Items to Be Seized, described above, seeks  travel documents

24  of defendant. Presumably, this is in reference to the allegation that defendant delegated his duties as DSO

25  to unauthorized persons when he was out of the country. Mackey states in paragraph 32 of his affidavit

26  that he was able to obtain records of defendant's thrips in 2009 and 2010 and that this information was

27  obtained from U.S. Customs and Border Patrol (CBP). There is no reference to other trips, or whether

28

17

1  the government has probable cause to believe defendant may have made trips that were not recorded by

2  CBP.

3        No reasons at all are given as to why the personal information of the defendant is relevant (§§ 5-7

4  of Attachment B), there is nothing in the affidavit which would indicate why any of the financial records

5  or  personal items are remotely relevant here, let alone documents relating to the building purchase,

6  escrow, and personal income tax returns. There are no counts involving financial transactions or money.

7  The affidavit merely states that over a three year period the school took in and disbursed ten million

8  dollars. There is no allegation that any financial transactions were illegal or even suspect. This was in

9  essence a fishing expedition seeking evidence after indictment. This is shown by the overbreadtth of the

10  warrant, the sheer speculation and unsubstantiated inference, and the lack of rational limitations of any

11  sort.

12        The affidavit also refers to responses to SEVP requests which occurred in the summer of 2007.

13  The next dates which are related to any alleged visa fraud are November and December of 2010, dealing

14  with a SEVP site visit and request for information and the response . The request were related to whether

15  or not HGU was complying with SEVIS regulations and whether other schools accepted HGU students

16  as transfers.  The affidavit does not claim that there are any regulations or statutes  governing academic

17  warning and attendance.

18        If the government's statements in the affidavit are taken at face value, then there as evidence that

19  the I-17 petition which was filed in July of 2007 and approved in February of 2008, was supported by

20  false documents. Among the false documents were what can be termed doctored records of Shane Guan

21  and Candace Zhang, to make it appear that they had attended HGU and had worked on jobs related to

22  their education.  There was also evidence that defendant delegated his authority to access the SEVIS

23  system so that employees could perform his function of inputting the information needed for an I-20 and

24  printing the I-20, and signing defendant's name for him. It should be noted that none of this truly supports

25  visa fraud, as it does not mean that the students were not properly admitted to pursue a course of study

26  at a school granted permission by the government to do so.

27        What the government is attempting here is to create a series of inferences upon inferences so that

28

the Court would presume that in August of 2012, the premises of HGU and UEWM would contain evidence of fraudulent visa applications and related immigration violations. However, there are no reliable building blocks detailed. There is an allegation of fraudulent documents presented in connection with the I-17 petition whereby HGU sought permission to admit foreign students and provide them with I-20s.Thos occurred in the second half of 2007.  Then the allegations jump to the end of 2010, where it is alleged that fraudulent documents were proved to show that HGU had been in compliance with SEVIS regulations governing academic standards and student attendance and grades. However, none of the latter have to do with fraudulent visa applications. No connection is claimed or shown.

In <u>Weber</u>, the Court cautioned against creating a lengthy chain of inferences to buttress probable cause. 923 F.3d 1344-45; <u>see also United States v. Gourde</u>, 382 F.3d 1003, 1011 (9th Cir. 2004).

As is noted above in the legal argument, the courts have insisted that there be a showing of probable cause that at the time the warrant is sought, the desired evidence would be present.  <u>See United States v. Weber,</u> 923 F.2d 1338, 1342 (9th Cir. 1990)*as amended on denial of rehearing*.

In <u>Weber</u>, the Court cautioned against creating a lengthy chain of inferences to buttress probable cause. 923 F.3d 1344-45; <u>see also United States v. Gourde</u>, 382 F.3d 1003, 1011 (9th Cir. 2004).

Here, there was no showing of probable  cause that the desired items were relevant or would be present in August of 2012. Certainly, there is no showing of probable cause or any connection between the alleged visa fraud and unauthorized access in the past and financial and tax records in 2012.

**B. The Evidence Was Stale**

 "[A]n affidavit must be based on facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." <u>United States v, Lacy</u>, 119 F.3d 742, 745 (9th Cir. 1997).  "[A]n affidavit must be based on facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."  Here, there is nothing in the affidavit to suggest that in August of 2012 a search would uncover evidence of ongoing visa fraud. The last instance of a fraudulent application fraudulent  documents related to a student is alleged to have occurred in 2007  in

1  the context of response to requests for evidence about the I-17. [9], [10]

2      See  Durham v. United States, 403 F.2d 190. 193 (9th Cir. 1968), "The most convincing proof that

3  the property was in the possession of the person or upon the premises at some remote time in the past will

4  not justify a present invasion of privacy."

5      Thus, the fact, even if established, that the defendant was in possession and used fraudulent

6  documents or applications in 2007 in no way provides probable cause to believe that the same is true in

7  2012 or that a search would reveal such information.

8      In Weber, the Court cautioned against creating a lengthy chain of inferences to buttress probable

9  cause.  923 F.3d 1344-45; see also United States v. Gourde, 382 F.3d 1003, 1011 (9th Cir. 2004.

10     It should be noted that at the time the affidavit was executed and presented, there had been almost

11 five years of investigation of these matters, and a grand jury had returned an indictment.

12 It would be expected after all of these events, that if there were genuine probable cause, it would have

13 easily been established.

14     Here, there is nothing contained in the affidavit which would suggest that the items sought would

15 in fact be present at the time of the search.  The petition was filed in 2007 and the response to the request

16 for evidence supporting the petition were submitted in 2007 and 2008. In 2010 there was simply a request

17 for documents showing maintenance of academic standards, which is not in itself a criminal matter.

18 Similarly, there is reference to classes being solely on line; while defendant does not agree that this was

19 true, even if it were, that would be at most a violation of administrative records and not a crime. The

20 agent does not cite any criminal statute violated by such acts.

21     Defendant correctly characterizes the search warrant application as a fishing expedition, hoping

22

23 8  The affidavit refers to the delegation of authority to access the SEVIS data base and to
    sign the I-20s, but this is not evidence that the applications themselves were fraudulent
24 and is essentially a violation of the administrative agency regulations.

25

26 [10] There is also an allegation that one Brodsky was solicited for a bribe but this evidence
    was so vague and unclear as to be utterly devoid of any probative value. There was no
27 distinct identification of defendant or anyone else, no details as tow hat bribe was offered  and how,
    and the date is not even clear.

28                                    20

1   to find incriminating evidence without having to specify why it is incriminating or what probable cause

2   exists for the particular item. These allegations of submitting false documents in 2007 and 2008, an

3   allegedly false warning g letter in 2010, and alleged improper delegation of computer access between

4   2008 and 2010 do not in any way explain the connection to bank, tax, and property records of individuals

5   or businesses.

6                                                 **II**

7                          **THE WARRANT WAS OVERBROAD**

8           As was described in greater detail above, the requirement that a warrant not be overbroad

9   generally requires limitations not only on the items to be seized, but if the items are records, they must

10  also be limited as to dates, because as is noted above, there is no presumption that criminal activity is

11  always ongoing. In <u>In Re Grand Jury Investigation concerning SSDI</u>, 130 F.3d 853 99th Cir. 1997)**.**

12          As is argued above in the probable cause discussion, the affidavit in support of the warrant makes

13  no references to a anything which might support probable cause to seize the financial records, property

14  records, telephone and address directories , or travel records.

15          In addition to being overbroad because it seeks evidence without any showing of probable cause

16  related to the specific items sought, the warrant is also poverbroad because it places no limitations on the

17  scope or time period on the items to be seized.  In <u>United States v. Kow</u>, 58 F.3d 423, 427 (9th Cir. 1995),

18  the Court noted that "[a] generalized seizure of business documents may be justified if the government

19  establishes probable cause to believe that the entire business is merely a scheme to defraud or that all of

20  the business's records are likely to evidence criminal activity."   As is argued in the probable cause

21  sections, there is no evidence of ongoing or continuous criminal activity.  There is no evidence that both

22  HGU and UEWM were purely criminal enterprises. To the contrary, the Mackey affidavit informs that

23  UEWM offered legitimate courses in traditional Chinese medicine. (¶ 43) It is also noted that Mackey

24  concedes lack of criminality in the letters from Shi of UEWM and Lau of Yao San University. (¶¶ s 21-

25  22). Thus, the use of this search warrant as a fishing expedition is clear. The government did not have

26  probable cause to believe that they would find any such evidence; they were merely hoping they would.

27          The warrant sought records from 2007 to the present in connection with some categories and from

28                                                 21

1  February, 2008 for others. As is argued, there is no showing that any such evidence would be present

2  because there was very limited evidence of fraud and was quite state, and there was no evidence of an

3  ongoing and total criminal enterprise. Therefore, the warrant was overbroad on its face and no reasonable

4  magistrate of law enforcement official should believe otherwise.

5                                          **III**

6                **THERE WERE MATERIAL OMISSIONS IN THE AFFIDAVIT**

7           As is explained ion the legal background section, if an affidavit is shown to contain material

8  misrepresentations or material omissions, then the court must determine if the omissions were intentional

9  and this could require an evidentiary hearing. If such a finding is made, the court  reweighs the affidavit

10 to determine if probable cause exists.  Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L. Ed.2d 667

11 (1978).

12          Here, the affidavit refers to numerous interviews with witnesses whose statements support the

13 warrant. None of these references state the date of the interviews. (See §§s 21, 22, 25, 26, 27, 28-29, 30-

14 31, 44).  All of the events being investigated occurred in 2007 (§§s 21, 22, 25, 26, 27, 44) or in 2010

15 between May, 2009 and August 2010 and between October, 2008 and September 2009. (§§ s 28-29, 30-

16 31)[11] The only interview date offered is the interview of Mr. Brodsky (¶ 41) of Lincoln University, and

17 as is noted above, this information does not even identify defendant as being involved and the information

18 is so vague as to be useless in a probable cause determination.

19          Defendant has also challenged the e mail search and has filed a motion with this Court. Attached

20 to that motion is an affidavit of Agent Mackey dated January 24, 2012. In this declaration, submitted to

21 a different magistrate than the instant warrant, Agent Mackey disclosed that all of the above interviews

22 had taken place in September of 2011. (See Mackey affidavit in support of the e mail warrant, which is

23 attached to the motion seeking to suppress that evidence, pending before this Court,§§ s 36 [Candace

24 Zhang], 37, 50  [Alex Shi], 40 [Ling Li], 44 [Jing Gang Tang], 47 [Shane Guan], 46 [Andres Bella].

25

26          [11] As is noted above in this motion, the allegations in ¶¶s 28-31 refer to the unauthorized
            access charge and as is stated in ¶ 32, the agent could obtain information about travel
27     to and from the U.S. from CBP and offers no evidence that there were other types of
       travel.

28                                          22

There is no need to hold an evidentiary hearing on the state of mind of Agent Mackey. It was either intentional or grossly negligent. He was clearly aware of the dates he interviewed these critical witnesses, as he interviewed them himself and disclosed the dates to the Magistrate Judge in San Francisco seven months before he submitted the affidavit in this warrant.

There is also no doubt that the omission was material. The Magistrate Judge in this matter was presented with non-incriminating evidence of letters and transcripts presented to witnesses who were either the signatory or subject of the documents. In many instances, the witnesses could not recall signing or seeing the documents and in some were unsure as to the details surrounding the documents and the signing. The failure to disclose that the interviews occurred several years after the events at issue (in the cases of Zhang, Guan, she, Bellas and Jing, the interviews occurred almost five years after the events) would cause the Magistrate to believe that the interviews were conducted a t a time reasonably close to the events; if they were done years after the events, this would be a material fact necessary ind determining the reliability fo the information in the probable cause analysis.[12]

The revelation that the interviews used to support the current warrant were done four and a half years after the documents were submitted and between two and four years after the last observed unauthorized I-20 instances or computer access would surely have caused the Magistrate Judge to wonder why the interviews took so long to be done, and whether the information could be deemed reliable in view of the lack of many details and the uncertainty of some witnesses as to whether they signed, and why the signed. Unlike the e mail warrant, where the document submission was merely background and the e mail request rested primarily on more recent e mails, the dates of the interviews in relation to the dates of the occurrences are highly significant. In the e mail affidavit, the fact that the witnesses at issue here were interviewed years after the events may have undermined their credibility as informants, but the warrant was based on other and more current e mails and that was a search for e mails, not visa

[12]   The e mail warrant presented different factual issues to the Magistrate Judge in San Francisco, as the request for e mails and related documents was also supported by a series of e mails in December of 2010 and in interview with a Dr. Martinez, who provided the e mails that same month. The issue on the companion motion to suppress is not directed at the old evidence except to argue that it was irrelevant to the e mail search.

documents.[13] Here, the request is for an overbroad category of documents covering visas and finances, and the gap between the occurrences and the interviews, combined with the vagueness, are highly significant.

Defendant argues that the warrant affidavit as it currently stands lacks a sufficient showing or probable cause. Thus, if the affidavit is retested for probable cause with the dates of September, 2011 added where omitted, there is no probable cause.

## IV

## THE GOOD FAITH EXCEPTION DOES NOT APPLY

The good faith expectation of United States v. Leon, 466 U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984) does not apply here and cannot save the warrant. Suppression "remains an appropriate remedy" when a warrant is based on "an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Leon , 468 U.S. at 823, 104 S.Ct. 3405. See also Messerschmidt v. Millender, -U.S.-, 132 S.Ct. 1235, 1245, 182 L.Ed. 2d 47 (2012). Even if there were a good faith exception based solely on the lack of probable cause neutralized by good faith reliance, the Franks issues result in a separate ground where the good faith exception does not apply as inherent in the findings of the Court would be intentional or grossly negligent misrepresentations which would preclude good faith reliance.

The omission is especially significant here, as the information in the affidavit is very stale, and the failure to state the dates of the interviews has the strong potential of misleading the magistrate who reviews such an affidavit to believe that the interviews were close in time to the events and thus the witnesses's accounts are accurate and reliable. It is no surprise that the signatories of the letters have little recollection in many instances as they were queried years later. No explanation for such delay is offered.

## CONCLUSION

The warrant was overbroad as it sought evidence which was unrelated to the crimes investigated

---

[13] The defendant arguments for suppressing the e mail warrant are based on lack of probable cause, overbreadtth and intentional omission of material facts.

and reasonable time limitation were not imposed; asked for years worth of records where there was no showing of current or ongoing violations constitutes overbreadtth.  There was no showing or connection between the events complained of by the government and the documents they sought.

The affidavit lacked probable cause and contains material omission. The affidavit of Agent Mackey is inherently unreliable due to the staleness and the misrepresentation.

The alleged probable cause is based upon a strong of unconnected events spread out over several years and the most recent occurrence was over a year and a half before the warrant was sought and consisted of an allegedly false academic warning letter, not a fraudulent visa application.

The issues here can be decided without an evidentiary hearing as the facts  are clear beyond dispute.

Accordingly, the evidence seized during the search of August 2, 2012 should be suppressed and all evidence obtained as a result of the seized items also suppressed.

Dated December 7, 2012

Respectfully submitted,

THE LAW OFFICES OF STEPHEN SHAIKEN

By: _____

Stephen Shaiken, Esq.

25

## DECLARATION OF COUNSEL

I, Stephen Shaiken, declare:

1.)   I am an attorney at law, duly admitted to practice before this Court. I am counsel fro defendant.

2.)   I make this declaration based upon personal knowledge, except where stated upon information and belief, and as to those matters, I believe them to be true. If called to testify as a witness, I would testify as is set forth herein.

3.)   The search warrant related documents attached hereto as Exhibits A are the warrant form request with its own Attachment A containing the items to be copied and provided and the Affidavit of Jason Mackey.

4.)   The above documents were provided by the government to counsel through the discovery process.

5.)   Special Agent Mackey prepared a report of his September, 2011 interview with Shane Guan. The report contains the statements by guan as reported in the Mackey affidavit dated July 31, 2012, but omitted in his declaration of January 24, 2012. These statements were that Guan may have attended and graduated HGU without realizing it.

In order to avoid issues about release o this report, which was provided to counsel through discovery, counsel makes this representation. No dispute about this is anticipated, as Agent Mackey himself makes this statement in the July 31, 2012 declaration and the report which he prepared was provided.

6.)   My client informs me that among th items seized and not returned were documents of two companies that are unrelated to the school and were no mentioned in the warrant, Internal enterprises, LLC, and Internal Educational Development, LLC.

7..)   I declare under penalty of perjury that the forgoing is true and correct.

Dated December 7, 2012 at San Francisco, CA

s/sshaikenesq

Stephen Shaiken, Esq.

26

**CERTIFICATION OF ELECTRONIC SERVICE**

I certify that on December 10, 2012, I caused to be filed the defendant's Motion to Suppress, and that counsel for both parties are registered users of the electronic filing system of the Court:

Hartley West, AUSA

N.D. CA

450 Golden Gate Ave., 11th Floor

San Francisco, CA 94102

Dated December 10, 2010

                                        s/sshaikenesq

                                        Stephen Shaiken, Esq.