Shi did not recall TONG being enrolled as a student at UEWM.

    (3)    <u>SEVP Email</u>

    51.    On January 14, 2008, SEVP sent HU an electronic request for additional details about HU's academic facilities and physical capacity. On January 14, 2008, J WANG responded to SEVP by email from <u>fei@uewm.edu</u>. In the email, J WANG stated that HU had three classrooms, and that "all 3 classrooms is used for instruction. The maximum capacity for classroom A is 24 students, B is 20 students, C is 16 students. Sincerely, Jerry Wang."

**C.    The Site Visit**

    52.    HU's I-17 was approved on February 14, 2008. By November 2010, the SEVIS databases showed that HU had over 900 F-1 foreign students enrolled. On November 11, 2010, SEVP employees and HSI agents visited HU and interviewed J WANG to determine HU's compliance with the SEVP regulations. Agents observed that most of HU's facilities were under construction and not fit for conducting classes. Although the site visit was conducted at a time that HU classes were scheduled, agents did not observe a single HU student on campus. J WANG nonetheless insisted that more than 900 F-1 students were physically attending classes at the HU facility.

    53.    As part of the visit, SEVP asked J WANG several questions relating to his duties as a DSO. When asked what action HU takes if a student is not making academic progress, J WANG responded that such a student is put on academic probation and issued academic warning letters. J WANG advised that HU's faculty takes attendance, and that school policy allows three absences from any particular course. When asked about the school's response when a student fails to attend class, J WANG advised that HU terminates such students' status in SEVIS and assigns an "F" to any student who accumulates three absences in any one course.

54. After the November 11, 2010 Site Visit, SEVP issued a request for copies of attendance records and academic warning letters. J WANG formerly responded in writing to this request on December 16, 2010, explaining that HU allowed its students to enroll in "simultaneous broadcasting" (online) classes for the Fall 2010 semester due to the school's renovations. J WANG attached to his letter copies of HU's attendance records and academic warning letters.

D. **Dean Martinez**

55. On December 8, 2010, HU's Dean of Academic Affairs, Dr. Anthony Martinez, contacted SEVP by email, expressing concerns about HU's truthfulness with SEVP personnel, its violation of SEVIS regulations, and its admission of students whom HU officials seldom see. HSI agents interviewed Martinez on December 15, 2010. Martinez stated that he had information about several HU employees, including J WANG and HU's Vice President, Richard FRIBERG. Martinez provided agents with several emails on which he had been copied, reflecting J WANG's and FRIBERG's attempts to conceal facts from SEVP.

56. A December 1, 2010 email to FRIBERG from J WANG at fei@uewm.edu states: "Institution's attendance and academic warning letters do we have them? I know we have institution's attendance policy is in the catalog. But we never have academic warning letters. Can you create one? Jerry." FRIBERG responded on December 2, 2010, from email account Richard@uewm.edu, asking if J WANG's request was related to SEVIS regulations. FRIBERG advised: "You create a trap for yourself because they could come in and go through the student records and find out how you have not dropped students for 3 absences or have not put students on probation for SAP." He continued: "They are asking for these letters for a reason. Don't step in a trap."

18

57. On December 3, 2010, J WANG responded to FRIBERG from email account fei@uewm.edu: "SEVP was asking me if student did not meet the full academic standing what does the school do. I said if student do not follow meet the full academic standing we will find out from our system and dismiss the student. SEVP said they want to see the academic warning letters to the students." FRIBERG answered from email account Richard@uewm.edu on December 5, 2010: "I would NOT send them a letter specifically designed just for them because that would be obvious that you just created it for them and not one that you regularly use."

58. A December 5, 2010 email to J WANG from FRIBERG at Richard@uewm.edu states: "On November 22, when you told me about the SEVP visit, I advised you to make sure you dropped all students that were non attenders if you had any. . . . You need to take action. It is the non atttenders and the people that are taking advantage of their visas that are going to cause the most trouble for you with SEVP. These people are not defendable. There is no reason for them to have a visa. GET RID OF THEM FAST if you have not already."

59. Finally, I have also reviewed a December 2, 2010 email from Martinez to J WANG at fei@herguanuniversity.org and FRIBERG at Richard@herguanuniversity.org. In this email, Martinez advised that he had been contacted by a student who stated that he enrolled at HU in January 2010 based on representations that the school was "fully-online" and that he was "never going to have to come to campus."

### VII. CONCLUSION

60. Based upon the foregoing, I believe there is probable cause that the SUBJECT ACCOUNTS contains evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 1546(a) (Visa fraud), 18 U.S.C. § 1001 (False Statements to a Government Agency), and 18 U.S.C. § 371 (Conspiracy). More specifically, I believe that the Google email accounts

fei@herguanuniversity.org, fei@uewm.edu, Richard@herguanuniversity.org, and Richard@uewm.edu contain communications documenting a conspiracy by J WANG, YQ WANG, and others to make materially false statements to HSI agents and to SEVP in connection with HU's petition to admit foreign students. By this affidavit and application, I request that the Court issue a search warrant directed to Google, allowing agents to seize email and other information stored on Google's servers, as set forth in Attachment A.

## VIII. REQUEST FOR SEALING

61.     Because this investigation is continuing, disclosure of this affidavit, the application for search warrant, search warrant, and the attachments thereto will jeopardize the progress of the investigation. Specifically, disclosure may cause persons or entities to destroy or hide evidence and to take countermeasures to defeat investigation and prosecution in future unlawful activities. Accordingly, I request that the Court order that this affidavit, the application for search warrant, search warrant, and the attachments thereto be filed under seal until further order of this Court.

Jason Mackey, Special Agent
Department of Homeland Security
Homeland Security Investigations

Sworn to and subscribed before me this 24th day of January, 2012.

HON. JACQUELINE SCOTT CORLEY
United States Magistrate Judge

## ATTACHMENT A

### I. SEARCH PROCEDURE

A. In order to ensure that agents search only those computer accounts and/or files described herein, this affidavit and application for a search warrant seek authorization to permit employees of Google, Inc., located at 1600 Amphitheater Parkway, Mountain View, CA 94043, to assist agents in the service of the requested warrant. To further ensure that agents serving the warrant search only those computer accounts and/or files described in Attachment A, the following procedures will be used:

B. The search warrant will be presented to Google personnel who will be directed to isolate those accounts and files described herein;

C. In order to minimize any disruption of computer service to innocent third parties, Google employees and law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts described herein, including an exact duplicate of all information stored in computer accounts and files described herein;

D. Google employees will provide the exact duplicate in electronic form of the accounts and files described herein and all information stored in those accounts and files to the agent who serves this search warrant;

E. Law enforcement personnel with thereafter review the information stored in the accounts and files received from Google employees and then identify and copy the information contained in those accounts and files which are authorized to be further copied by this search warrant; and

F. Law enforcement personnel will then seal the original duplicate of the accounts and files received from Google employees and will not further review the original duplicate absent an order from the Court.

### II. FILES AND ACCOUNTS TO BE COPIED BY GOOGLE EMPLOYEES

A. All electronic mail in the following accounts: fei@herguanuniversity.org, fei@uewm.edu, Richard@herguanuniversity.org, and Richard@uewm.edu;

B. All existing printouts from original storage of all of the electronic mail described above in Section II(a);

C. All transactional information of all activity of the electronic mail address and/or individual accounts described above in Section II(a) including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations;

D.  All business records and subscriber information, in any form kept, pertaining to the electronic mail addresses and/or individual accounts described above in Section II(a), including applications, subscribers' full names, all screen names associated with the subscriber accounts, all account names associated with the subscribers, methods of payment, telephone numbers, addresses, and detailed billing records; and

E.  All records indicating the services available to the subscriber of the electronic mail address described above in Section II(a).

### III. FILES AND ACCOUNTS TO BE FURTHER COPIED BY LAW ENFORCEMENT

A.  All email communications involving: Herguan University foreign (F-1) students; student tuition, recruitment, or referral payments; letters of acceptance or denial; grade sheets, transcripts, or attendance records; course materials or schedules; applications or authorizations to admit foreign students; Student Exchange and Visitor Program; Student and Exchange Visitor Information System; site visits or inspections; Designated School Officials; passports, visas, immigration status, travel records, or associated correspondence; records from banks or other financial institutions relating to accounts controlled by Herguan University, Jerry WANG, Ying Qiu WANG, Su Fang TONG, or Richard FRIBERG; tax records for Herguan University, Jerry WANG, Ying Qiu WANG, Su Fang TONG, or Richard FRIBERG; and U.S. immigration law and regulations.

B.  Existing printouts from original storage of all items mentioned in Section III(A); and

C.  All of the records and information described above in Sections II(C), (D), and (E).