term "digital storage media" includes traditional forms of digital storage media, as well as any other electronic device or storage medium which is capable of storing information in digital form and being connected to a computer.

52.  During the execution of a search warrant involving computers and other electronic evidence, it is often necessary to seize hardware, software, and documentation for subsequent examination. In particular, a proper forensic examination of computers or digital storage media can often be conducted only in the controlled setting of a computer forensic lab, both to ensure, and to be able to prove, that the evidence has not been modified or deleted from the time of seizure. This is true for a number of reasons, including the following:

    a.  Computer storage devices can store the equivalent of thousands of pages of information. Additionally, a suspect may try to conceal evidence; he or she might also store it in random order with deceptive file names. This may require searching authorities to examine all the stored data to determine which particular files are evidence or instrumentalities of crime. This sorting process can take weeks or months, depending on the volume of data stored, and often it would be impractical to attempt this kind of search on site.

    b.  Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. For example, on site and laboratory analysis by a qualified computer specialist is often required in order to properly retrieve and analyze electronically-stored (computer) data, document and authenticate the data, and prevent the loss of the data either from accidental or deliberate programmed destruction.

    c.  Computer users can attempt to conceal data within computer equipment and storage devices through a number of methods, including the use of innocuous or misleading filenames and extensions. For example, files with the extension ".jpg" often are image files; however, a user can easily change the extension to ".txt" to conceal the image and make it appear that the file contains text. Computer users can also attempt to conceal data by using encryption, which means that a password or device is necessary to decrypt the data into readable form. In addition, computer users can conceal data within another seemingly unrelated and innocuous file, for example to conceal text in an image file which cannot be viewed when the image file is opened. Therefore, a substantial amount of time is necessary to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or instrumentalities of a crime.

    d.  In many cases, the evidentiary data can be backed up to government-owned computer data storage devices at the site of the search. However, there are circumstances that may necessitate the seizure and removal of the entire computer system and peripheral devices to a secure laboratory setting in order to analyze and extract the evidence. To effect accurate and complete analysis may require seizure of all computer equipment and peripherals which may be interdependent, the software to operate the computer system, data security devices (including passwords) and related instruction manuals which contain directions concerning the operation of the computer system and software programs. This is true because the peripheral devices that allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular

input/output devices in order to read the data on the system. It is important that the computer expert be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence. In addition, the computer expert needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices.

    e. Furthermore, seizure of computer hardware, software, and documentation is not only necessary at times, but is often the more practical alternative and less intrusive than requiring federal agents to remain at the search site for the lengthy amount of time that would be required to review, analyze, and copy pertinent data.

  53. Based on the above facts and circumstances and information, permission is requested to seize all computer systems and peripherals if necessary even though there may be unrelated information stored on the computer system(s). This unrelated data will not be used and will be separated (to the extent possible) from the evidentiary data and preserved. The search will be performed in compliance with the Northern District of California Protocol for Searching Devices or Media that Store Data Electronically, as set forth in Attachment C to this affidavit, and as discussed in greater detail in Paragraphs 52 through 60 below.

### B. Definitions

  54. The terms "records," "documents," and "materials" include all of the items described in Attachment B in whatever form and by whatever means they may have been created and/or stored. This includes any handmade, photographic, mechanical, electrical, electronic, and/or magnetic forms. It also includes items in the form of computer hardware, software, documentation, passwords, and/or data security devices.

  55. Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. This includes any data-processing devices (such as central processing units, memory typewriters, and self-contained "laptop" or "notebook" computers); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, compact flash cards, smart media cards and other memory storage devices); peripheral input/output devices (such as keyboards, printers, scanners, plotters, video display monitors, and optical readers); related communications devices (such as modems, cables and connections, recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic tone-generating devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys and locks).

  56. Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way it works. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating

systems, applications (like word-processing, graphics, or spreadsheet programs, utilities, compilers, interpreters, and communications programs).

57. Computer-related documentation consists of written, recorded, printed, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or other related items.

58. Computer passwords and other data security devices are designed to restrict access to or hide computer software, documentation, or data. Data security devices may consist of hardware, software, or other programming code. A password (a string of alpha-numeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security hardware may include encryption devices, chips, and circuit boards. Data security software or digital code may include programming code that creates "test" keys or "hot" keys, which perform certain pre-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it.

59. System peripherals are pieces of equipment that send data to, or receive data from, a computer. Keyboards, mouses, printers, scanners, plotters, video display monitors, and certain types of facsimile machines are examples of peripherals.

60. Storage media comprises any material capable of storing information in a manner that can be used by computer hardware to save and/or retrieve information. Examples of storage media include diskettes, CD-ROMs, DVDs, magnetic tapes, ZIP disks, JAZ disks, and EPROMS.

C. **Electronic Search and Seizure Procedures**

61. In executing the warrant, law enforcement agents will comply with the Northern District of California Protocol for Searching Devices or Media that Store Data Electronically, as set forth in Attachment C to this affidavit. Law-enforcement officers will begin by ascertaining whether all or part of a search of a device or media that stores data electronically ("the device") reasonably can be completed at the location listed in the warrant ("the site") within a reasonable time. If the search reasonably can be completed on site, the officers will remove the device from the site only if removal is necessary to preserve evidence, or if the item is contraband, a forfeitable instrumentality of the crime, or the fruit of a crime.

62. If the law enforcement officers determine that a search reasonably cannot be completed on site within a reasonable time period, they must determine whether all or part of the authorized search can be completed by making a mirror image of, or in some other manner duplicating, the contents of the device and then conducting the forensic review of the mirror image or duplication off site. The law enforcement officers will complete a forensic review of that mirror image within 120 days of the execution of the search warrant.

63. In a circumstance where the law enforcement officers determine that a mirror image of the contents of a device cannot be created on site in a reasonable time, the government

cause to believe, that evidence, fruits, and/or instrumentalities of these violations, including those items listed in Attachment B, will be found at the SUBJECT PREMISES.

I declare under penalty of perjury under the laws of the United States the foregoing is true and correct.

Jason G. Mackey, Special Agent
U.S. Department of Homeland Security
Immigration and Customs Enforcement

Sworn and subscribed to before me this 31 day of July, 2012.

HON. PAUL S. GREWAL
United States Magistrate Judge

15