Stephen Shaiken, Esq. (CA Bar No. 90915)
LAW OFFICES OF STEPHEN SHAIKEN
170 Columbus Avenue, Suite 100
San Francisco, CA 94133
Telephone: (415) 248-1012
Fax: (415) 248-0019
e mail: stephenshaikenesq@shaikenlaw.com

Attorney for Defendant
Jerry Wang

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE

| UNITED STATES OF AMERICA | ) | **NO: CR 12-581 EJD** |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **REPLY TO GOVERNMENT OPPOSITION TO MOTIONS TO SUPPRESS & DISMISS** |
| Jerry Wang | ) | Date: January 7, 2013 |
| | ) | Time: 1:30 p.m. |
| Defendant | ) | |

**TO THE ABOVE ENTITLED COURT AND TO THE GOVERNMENT:**

**PLEASE TAKE NOTICE THAT** defendant Jerry Wang, by and through his counsel, hereby files the following reply to the government's opposition to his motion to suppress the search of e mails, the motion to suppress the search of the business premises, and the motion to dismiss Count Six of the indictment.

Dated December 24, 2012

                                                      Respectfully submitted,

                                                THE LAW OFFICES OF STEPHEN SHAIKEN

                By:       s/sshaikenesq

                                              Stephen Shaiken, Esq.

**INTRODUCTION**

Defendant has filed motions seeking to suppress evidence obtained as a result of a search of e mail records, a search of his business premises, and a motion seeking to strike the count alleging unauthorized use of an access code. The government has filed written opposition, and this is Defendant's reply to the points raised in the opposition.

The parties do not have any significant dispute over the applicable law, nor does there appear to be any significant dispute over the facts-the information provided to the magistrates- alleged. The issues in dispute are whether the government provided the magistrates with sufficient reliable and current information to support a finding of probable cause that the sought after evidence was likely to be found in the locations sought to be searched.

Defendant has argued that the information was stale, that the scope of the warrant was overbroad, and that there were material omissions in the affidavits. The government has argued that under the totality of the circumstances, there was sufficient information to believe the items sought would be present, that the scope was not overbroad, and that any omissions by the agent had no bearing on the affidavit or in the alternative, the good faith exception applied.

**ARGUMENT**

**I**

**THE GOVERNMENT HAS NOT REFUTED THE SHOWING THAT THE INFORMATION WA STALE**

As is noted above, the parties do not dispute the chronology or the controlling law, but differ on whether the information contained in the affidavits for th two warrants are sufficient to establish probable cause. The information contained in the two affidavits were similar but not totally identical. The e mail warrant was presented and signed in January of 2012 and the premises warrant and affidavit on July 31, 2012.

With regard to the premises search warrant affidavit, the agent failed to disclose the date of the interviews with the witnesses. The government argues that this is of no significance and is not a material omission to be considered. However, on the other hand, the government places great weight on the fact

1  that the interviews with the witnesses were conducted in September of 2011. The government in effect
2  argues that the time of the interviews shows that the information relied upon was not stale, as the
3  premises search warrant was issued on July 31, 2012, approximately ten or so months after the
4  interviews.

5  The first question tat comes to mind is if the date of the interviews were so important, why did
6  the agent omit it from his lengthy and detailed affidavit?

7  The reason proffered by the defendant makes the most sense. The agent knew that the facts that
8  were being relied upon in support of the warrant as pertaining to visa fraud occurred almost exclusively
9  in 2007 and 2008 and involved the alleged submission of false letters and transcripts to support the
10 application of Herguan University for authorization to accept foreign students and issue them I-20s
11 which were part of the student visa process.

12 The interviews with Shane Guan and Candace Zhang may have occurred in September of 2011,
13 but they referred to events occurring in 2007 and possibly 2008. Clearly, a witnesses' recollection of
14 events occurring three to four years before is not the same as a recollection provided near the time of the
15 events. The omission of the date of the interviews presents the clear danger of misleading the magistrate
16 into thinking that the statements from these witnesses were taken around the time of the vents and not
17 years after the fact.

18 In any event, in assessing whether information is stale, the operative date is not the interview
19 with the witness, it is the date of the event the witness is describing. In assessing whether the information
20 means that evidence of criminality will be found, the operative date is the date the witness observed the
21 events and not when they reported the events.  For reasons we do not know, as none were proffered in
22 the opposition and there is no declaration from the agent explaining why, the witnesses who were known
23 to government since 2007, were not contacted until 2011. The operative date for assessing staleness is
24 not the interview date of September f 2011, but rather, the submission of the allegedly false documents
25 back in 2007. The fact that the agent waited until 2011 to interview witnesses does not in any way
26 increase the likelihood that documents such as the ones filed in 2007 would be on the premises in 2012.

27 Similarly, the December, 2010 interview with Dr. Martinez does not overcome the staleness of
28

3

the information from 2007 and 2008. Dr. Martinez provided e mails between defendant and a school official in which they discussed SEVP's request for a copy of an academic warning letter, and the school official advised defendant not to be trapped into providing a false document and also later advised defendant to purge the school of students who should not be enrolled. While this latter e mail exchange my indicate that there had been a violation of regulations governing maintenance of student status, it is certainly not evidence of the over-arching criminal conspiracy implied by the government, which involved massive student visa fraud if it is to be believed. One e mail exchange about a form letter and advice to discharge students is not such of and cannot support the weeping warrant of the premises, which sough all records of any sot, academic, immigration, personal, financial property and anything else the government might seize during a search.[1]

The staleness of the information is beyond dispute. Candace Zhange and Shane Guan described events occurring in 2007 (¶¶s 25 and 26 of Mackey affidavit). Ling Li, also interviewed in September of 2011, provided information about a letter sent in 2007 (¶27). The allegations that there was commingling of students between HGU and UEWM (assuming this was criminal, which is not at all clear) supposedly occurred in October of 2008 (¶42)b and this allegation was supported by the September, 2011 interview of Ling Zhang, who provided o specific details, only a general allegation. (¶43). Ms. Zhang had worked for HGU as registrar between October of 2008 and September of 2009, so at the time of her interview, her information was already at least two years old, and by the time the affidavit was presented, she had not worked three for over three and a quarter years. Even the allegations of improper delegation of the access code are based on statements by witnesses who refer to events described by Carrie Yang, who worked at the school between May 2009 and August, 2010, and Ms. Yang. (¶¶s 29, 30).

---

[1] It is noted that while the Mackey affidavit for the e mails specifically refers to Martinez and his interview and the e mails he provided (¶¶s 55-59), his affidavit for the premises search warrant refers only to the e mails between defendant and the school vice president and says nothing about Martinez (¶¶s 37-39 of premises affidavit.)

1  The information relied upon for the e mail warrant, which was sough in January of 2012, whereas
2  the premises affidavit was presented on July 31, 2012, relied on essentially the same stale information,
3  except it placed greater emphasis on the e mails provided by Martinez, but the warrant initially sought
4  e mails, include financial, tax and bank records not related to any e mails. The staleness issue is no more
5  overcome in th e mail affidavit than in the premises affidavit, as a showing of a handful of e mails linked
6  to matters different than he alleged false letters and transcripts submitted in 2007 do not cerate a basis
7  for believing that in January of 2012 a search of e mails and all electronically filed documents would
8  yield evidence going back that far in time.

## II

## THE GOVERNMENT'S ATTEMPTS TO REFUTE DEFENDANT'S CLAIM OF OVER BROADNESS IS BASED ON SPECULATION AND NOT ON EVIDENCE PROVIDED TO THE MAGISTRATE

13  If everything alleged in th affidavits for the two search warrants were entirely true and were not
14  stale, then at best, the government would be in a position to seek documents relating to visa fraud, as
15  they have alleged is that there were false documents submitted in connection with an I-17 petition and
16  that students were provided records from a school different than the one they enrolled in. However,
17  nothing in the affidavits suggest that these records would still be available at the sites to be searched.
18  There is nothing at all in either affidavit which would suggest that financial records or property records
19  are relevant or related to the matters being investigated, nor is thee any time limit placed on any of these
20  records.[2]

21  The government's position is that the authority to issue student visas was obtained by fraud and
22  that therefore every single document relating to the school or its owners was subject to seizure. However,
23  this is not alleged in the affidavits nor in the indictment, and in fact, UEWM is not conceded to have

---

[2] As is set forth in the motion itself, limitations on the scope of items to be seized, as well as limitations on the time period covered by a warrant, are essential components of a request, as they protect against over broadness and are necessary to comply with the Fourth Amendment

been duly authorized to admit students do designated courses of study. There are no financially related charges against any person or entity elated to either school. The government asserts, without any proof, and without it being alleged anywhere in any government filing, that there may have been tuition funds issued in exchange for a visa (presumably, while not clearly stated, the school was "selling" visas without requiring any school attendance or work); not only is this not stated or claimed anywhere other than the opposition pleading (see pp 10-11 of the Opposition), it is not supported by any evidence. There is no reliable or specific evidence presented in the affidavits that anyone paid money for an I-20 with the expectation that they would not have to comply with any school requirements; in fact there is no such evidence. The evidence at best for the government is that student believed they could take on- line classes, which may or may not violate regulations, but it is not clear why it is criminal.

Here, the government is speculating as to what might have been the case with the issuance of visas, and they are speculating as to what the agent intended to present to the magistrate, and they are speculating as to whether the magistrates interpreted the affidavit and its content as alleging a continuous and complete fraud so that ever document related to the school or its owners, created at any time, was subject to seizure. The government does not explain why there is no such evidence and why this was not clearly stated in the affidavits.

The government also asserts that a broad search was permissible as there was evidence of a potential conspiracy involving defendant's parents and others. (Opp. P.11). The government contends that the financial and property records might establish such a conspiracy.

The problem with the government's argument is that non of this is stated in the affidavits as a basis for the search. It is not the role of a magistrate to speculate upon what charges might eventually be filed against other parties. If the agent believed that he had a basis for the warrant emanating from a conspiracy, then he should have told that to the magistrates. Reading the affidavits as they stand would not allow a magistrate to form a basis for authorizing the broad search which included financial, tax and property records of HGU, UEWM and defendant and his family.

## IIII

## THE GOOD FAITH EXCEPTION DOES NOT APPLY

In the e mail affidavit, Agent Mackey omits statements by Shane Guan which soften and change his initial statement that he never attended HGU. The government has decided, unilaterally, that this information was not exculpatory and had no bearing on the issue of probable cause.

In the premises affidavit, the date of the interview is omitted. Again, the government had determined that this could not have made any difference to the magistrate.

Defendant has argued in his motions and herein and that these omissions were indeed material. There are serious allegations of visa fraud, identity theft, and commingling of students. Much of this is supported by he case of Shane Guan, and is based on an interview occurring years after the facts.

The omission of the dates of the interview and the complete statement of Shane Guan were indeed material.

It is not up to the government to edit statements by witnesses and to edit accounts of interviews on the misguided notion that the government may make credibility assessments that under our Constitution are the exclusive province of a neutral and detached magistrate. It is up to the magistrate to decode if the late date of the interview is relevant witness recollections and to staleness, and the same holds true as to censored statements like that of Shane Guan.

In other words, the agent here took liberties which he had no business doing. Not surprisingly, the omissions both favor the government to the determent of defendant's Fourth Amendment rights.[3]

---

[3] The government attempts to portray the omissions issue as some unwarranted and specious attack on the integrity of a federal agent. It is nothing of th sort. Rather, defendant has provided a factually accurate account of what evidence was omitted from two sworn affidavits and has explained why they should have been included. It is the agent's responsibility to include all relevant facts in a warrant affidavit, it is a defense counsel's obligation to advise the court when this was not done, and it is the Court's responsibility to detriment he effect of said omissions in weighing probable case. Our legal system has long ago determined that this procedure protects citizens   and promotes compliance by law

1    The government argues that even if these were material omissions, the good faith exception of United States v. Leon, 468 U.S. 897, 823 (1984) applies. However, the government also contends that pursuant to Messerschmidt v. Millender, -U.S.-, 132 S. Ct. 1235, 1245 (2012), an agent is not expected to question the magistrate's finding of probable cause. (Opp at p. 13). However, there is no good faith exception under either of these two cases where the omission was grossly negligent or intentional and if excised there is no probable cause. Here it cannot be disputed that Agent Mackey's failure to include the complete Guan statement to the magistrate in the e mail affidavit was either intentional or grossly negligent and the same is true as to his omission of the interview dates in the premises e mail. Indeed, the government places great emphasis on the fact that there were interviews conducted in September of 2011, as if that somehow makes information from 2007 less stale in 2012. However, the agent omitted this necessary detail from the premises affidavit.

There is a substantial likelihood that if the magistrates had known of the omissions, the warrants would no have bene signed or would have be severely limited, as I would have been clear to the magistrate that the information was old and in Guan's case, equivocal. At a minimum, a hearing would be necessary to determine how the affidavits would be assessed when the omissions were known. Agent Mackey would then have an opportunity to explain the omissions.

## IV

## COUNT SIX SHOULD BE DISMISSED AS THE ACTS COMPLAINED OF ARE BEYOND THE REACH OF THE STATUTE

The government asserts that the case cited by defendant, U.S. v. Nosal, 676 F.3d 854 (9th Cir. 2012) does not apply here as it addresses a different subsection of he statute. Defendant so stated in his motion and noted that the Court described the entire CFAA statute as addressing hacking and that the court had narrowed the scope of "unauthorized" persons. These apply to the entire statute, not just one enforcement.

8

section.

Here, there is no allegation that people went into a date base that defendant was not entitled to enter, but rather, that he had no authorization to allow his employees to do so. While this may be a basis for SEVP to revoke the authorization, it does not remotely constitute hacking.

This is indeed a case of first impression as to this subsection, but in view of the circuit case all, the <u>Nosal</u> analysis should apply here, for the reasons stated in he motion to dismiss.

## CONCLUSION

For the reasons stated in the motions and herein, all three motions should be granted.

Dated December 24, 2012

                THE LAW OFFICES OF STEPHEN SHAIKEN

                By:      s/sshaikenesq

                Stephen Shaiken, Esq.

**Certification of Service**

I, Stephen Shaiken, declare, that on December 25, 2012, I caused to be filed by the Court's electronic filing system to attached Reply to Government Opposition to Motions to Suppress & Dismiss, and that all counsel in this case are registered users thereof. Counsel for the government has thus been served:

Hartley West, AUSA

450 golden Gate Ave, 11th floor,

San Francisco, CA 94102

Dated December 25, 2012

                                                s/sshaikenesq