JAMES McMANIS (40958)
MATTHEW SCHECHTER (212003)
TYLER ATKINSON (257997)
McMANIS FAULKNER
A Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:    (408) 279-8700
Facsimile:     (408) 279-3244
Email:  tatkinson@mcmanislaw.com

Attorneys for Defendant
JERRY WANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>         vs.<br><br>JERRY WANG,<br><br>                Defendant. | Case No. 12-CR-00581 (EJD)<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COUNTS TWO THROUGH SIX OF INDICTMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:            August 9, 2013<br>Time:           1:30 p.m.<br>Courtroom:   4, 5th Floor<br>Judge:          Hon. Edward J. Davila |

///

///

///

///

///

///

///

**TO THE ABOVE ENTITLED COURT AND TO THE GOVERNMENT:**

PLEASE TAKE NOTICE THAT on Friday, August 9, 2013, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 4, 5th Floor, in the above-entitled court, located at 280 S. First Street, San Jose, California 95113, defendant, Jerry Wang ("defendant"), will move the Court for an Order dismissing Counts Two, Three, Four, and Five of the indictment alleging Visa Fraud in violation of 18 U.S.C. § 1546(a) and 18 U.S.C. § 2, and Count Six of the indictment alleging Unauthorized Access of a Government Computer in violation of 18 U.S.C. § 1030(a)(3) and 18 U.S.C. § 2.

The motion will be based on this notice and memorandum of points and authorities in support and attached hereto, the Declaration of Tyler Atkinson and exhibits thereto, the pleadings and papers filed herein, and upon such oral argument as the Court may permit on this matter.

As to Counts Two though Five of the Indictment, the basis of this motion is that defendant authorized his employees to sign Form I-20's on his behalf, or, at minimum, ratified such conduct after the fact, thereby negating any allegation that the Form I-20's at issue were forged.  With respect to Count Six, the statute as applied is overbroad and the conduct alleged is not within the intended ambit of this criminal statute given that defendant had authorization to access the government computer and there is nothing prohibiting him from delegating that authorization to another person under his authority and control.

Dated: July 26, 2013

McMANIS FAULKNER

  /s/ Tyler Atkinson
JAMES McMANIS
MATTHEW SCHECHTER
TYLER ATKINSON

Attorneys for Defendant
JERRY WANG

## TABLE OF CONTENTS

BACKGROUND .................................................................................................................1

LEGAL ARGUMENT.........................................................................................................2

    I.    THE ACTS ALLEGED IN THE INDICTMENT FAIL TO SUPPORT THE CHARGED CRIME OF AIDING AND ABETTING VISA FRAUD.........................................................................2

    II.   THE ACTS ALLEGED IN THE INDICTMENT FAIL TO SUPPORT THE CHARGED CRIME OF UNAUTHORIZED ACCESS TO A GOVERNMENT COMPUTER ............................................5

CONCLUSION.................................................................................................................. 10

i

NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COUNTS TWO THROUGH SIX OF THE INDICTMENT & MPA'S IN SUPPORT; Case No. 12-CR-00581 (EJD)

# TABLE OF AUTHORITIES

**Cases**

*Clews v. Jamieson*,
　182 U.S. 461 (1901) .................................................................................................................. 5

*In re Feagins*,
　439 B.R. 165 (D. Haw. 2010) ............................................................................................ 3, 4, 5

*LVRC Holdings LLC v. Brekka*,
　581 F.3d 1127 (9th Cir. 2009) ............................................................................................ 6, 7, 8

*Maui Finance Co. v. Han*,
　34 Haw. 226, 1937 WL 4450 (Haw.Terr.1937) ........................................................................ 5

*Perrin v. United States*,
　444 U.S. 37 (1979) .................................................................................................................... 6

*Powerex Corp. v. Reliant Energy Servs., Inc.*,
　551 U.S. 224 (2007) .................................................................................................................. 7

*U.S. v. Nosal*,
　676 F.3d 854 (9th Cir. 2012) ........................................................................................... 6, 7, 8, 9

*U.S. v. Price*,
　655 F.2d 958 (1981) .................................................................................................................. 3

*United States v. Kozminski*,
　487 U.S. 931 (1988) .................................................................................................................. 8

*Vizcarra-Ayala v. Mukasey*,
　514 F.3d 870 (9th Cir. 2008) ..................................................................................................... 4

**Statutes**

18 U.S.C. § 2 .................................................................................................................................. 2, 1

18 U.S.C. § 371 .................................................................................................................................. 1

18 U.S.C. § 1001(a)(3) ....................................................................................................................... 1

18 U.S.C. § 1028A ............................................................................................................................. 1

18 U.S.C. § 1030(a)(2) ....................................................................................................................... 6

18 U.S.C. § 1030(a)(3) ............................................................................................................. 2, 1, 6, 9

18 U.S.C. § 1030(a)(4) ....................................................................................................................... 6

18 U.S.C. § 1546(a) ................................................................................................................... 2, 1, 3

Cal. Com. Code § 1201(b)(41) .......................................................................................................... 4

Model Penal Code § 224.1(1) .................................................................................................... 4

U.C.C. § 1-201(41) (2004) ......................................................................................................... 4

**Other Authorities**

4 Wharton's Criminal Law § 487 (15th ed.) ............................................................................... 4

iii

NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COUNTS TWO THROUGH SIX OF THE INDICTMENT & MPA'S IN SUPPORT; Case No. 12-CR-00581 (EJD)

# BACKGROUND

Defendant was the Chief Executive Officer and President of Herguan University ("HGU") and University of East West Medicine ("UEMW"), which shared a campus in Sunnyvale, California. Defendant was also the Designated School Official ("DSO"), authorized by SEVIS, a unit of the Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"). SEVIS administers the program by which U.S. schools are authorized to admit foreign students and to issue them visas for their studies. The DSO is given an access code by SEVIS to enable them to enter the name and other information about the student and then print out a Form I-20, also known as a Certificate of Eligibility for Nonimmigrant Student Status. A foreign student must present a Form I-20 in order to enter the United States on a student visa.

On July 24, 2012, the Grand Jury returned an indictment against Defendant. He was charged with the following offenses:

- Count One – Conspiracy to Commit Visa Fraud (18 U.S.C. § 371);
- Counts Two through Five – Aiding and Abetting Visa Fraud (18 U.S.C. § 1546(a) and 18 U.S.C. § 2);
- Count Six – Aiding and Abetting Unauthorized Access to Government Computer (18 U.S.C. § 1030(a)(3) and 18 U.S.C. § 2);
- Counts Seven through Thirteen – Use of False Document (18 U.S.C. § 1001(a)(3)); and
- Counts Fourteen and Fifteen – Aggravated Identity Theft (18 U.S.C. § 1028A).

Counts Two through Five are based on defendant instructing a HGU employee to print out Form I-20's for two students and having the employee sign defendant's signature when he was unavailable. (Indictment, ¶ 12, attached as Exh. A to the Declaration of Tyler Atkinson in Support of Motion to Dismiss Counts 2-6 of Indictment ["Atkinson Decl."].)

Count Six is based upon defendant allegedly having delegated his authority as DSO to his subordinates at HGU and allowing them to access SEVIS's computer, using defendant's

1

authorized login name and password, so that they could input data about new and continuing students and to issue and sign the Form I-20's.[1] (Indictment, ¶¶ 12 and 15(f).)

In addition, before the Indictment was unsealed and defendant was arrested, Agent Jason Mackey of ICE obtained a search warrant for the premises of HGU and UEWM, seeking documents and computers which would contain evidence of the alleged crimes. Defendant's papers and records were specifically sought along with the papers and records of the schools and defendant's parents. The warrant was supported by the affidavit of Agent Mackey and issued by the court on July 31, 2012. (Atkinson Decl., Exh. B.) According to the affidavit, Agent Mackey has been a Special Agent with DHS since 2002 and, since 2009, has been assigned to the Document and Benefit Fraud Task Force. (Mackey Affidavit, ¶ 4, attached as Exh. C to the Atkinson Decl.) He participated in at least fifty (50) visa fraud cases since 2004, three of which involved educational systems. (*Id.* at ¶ 5.) He also sets forth the procedures by which a school files a Form I-17 to obtain authority to admit foreign students, and to issue I-20 visas using an access code provided by SEVIS. (*Id.* at ¶¶ 9-12.)

On July 30, 2007, the Student Exchange and Vistor Program ("SEVP") conducted a site-visit at the schools' former premises during which time defendant was interviewed as the "owner" and "Primary DSO" of HGU. (*Id.* at ¶¶ 19-20.) According to the affidavit, defendant allegedly authorized two former employees to use his account with SEVIS to create Form I-20's for new students and to sign the Form I-20's in his absence. (*Id*. at ¶¶ 28-32.)

## LEGAL ARGUMENT

I. **THE ACTS ALLEGED IN THE INDICTMENT FAIL TO SUPPORT THE CHARGED CRIME OF AIDING AND ABETTING VISA FRAUD.**

Defendant has been accused of aiding and abetting in the commission of visa fraud. The applicable statutory section at issue states that:

///

---

[1] Even if true, signing the I-20s does not appear to be in any way covered by a statute criminalizing unauthorized access of a government computer as it does not require any computer usage in its commission.

> Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained[.]

18 U.S.C. § 1546(a).[2]

According to the Indictment, the incidents that make up the four counts for which defendant has been charged took place on or about September 20, 21, and 23, 2010. (Indictment, ¶ 17.) The reasons for those particular dates are not specified in the indictment itself. However, according to the affidavit supporting the search warrant, four (4) Form I-20's were created during the time frame of September 11, 2010 and October 6, 2010, when defendant, according to United States Customs and Border Patrol records, was out of the country. (Mackey Affidavit, ¶ 32.) All four of the Form I-20's from this time frame contain defendant's signature. (*Id.*) Given the allegations made in the affidavit, the basis for the charges is that defendant caused HGU employees to forge his signature on the Form I-20's and then caused those Form I-20's to be given to students for their use. Neither the Indictment, nor the Mackey Affidavit, make any allegation that any of the information contained in the Form I-20's for which defendant has been indicted contain any false information.

Section 1546 does not define the term "forgery" or "forges." The term, however, has been defined in other cases dealing with federal or state statutes involving forgery. Thus, the Supreme Court, in *U.S. v. Price*, 655 F.2d 958 (1981), held that, "[i]n general, forgery is the false making, with the intent to defraud, of a document which is not what it purports to be, as distinct from a document which is genuine but nevertheless contains a term or representation known to be false." *Id.* at 960; *see also In re Feagins*, 439 B.R. 165, 174 (D. Haw. 2010), quoting Black's

---

[2] All future statutory references are to Title 18 of the United States Code, unless otherwise indicated.

3

NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COUNTS TWO THROUGH SIX OF THE INDICTMENT & MPA'S IN SUPPORT; Case No. 12-CR-00581 (EJD)

Law Dictionary 722 (9th ed. 2009) ("Forgery is '[t]he act of fraudulently making a false document or altering a real one to be used as if genuine.'").  Indeed, the "falseness" of the document is central to a finding that a document has been forged.  Thus, "'when a person writes a letter or completes a loan application or other instrument and signs it with his own name, he is not guilty of forgery because a false statement is contained therein, even if he knew it was false and acted with intent to defraud.'"  *Vizcarra-Ayala v. Mukasey*, 514 F.3d 870, 875 (9th Cir. 2008), quoting 4 Wharton's Criminal Law § 487 (15th ed.).  Moreover, other statutory definitions equate an unauthorized signature with forgery.  *See*, *e.g.*, *Vizcarra-Ayala*, 514 F.3d at 875, quoting Model Penal Code § 224.1(1) (Forgery, "in relevant part, [is defined] as 'alter[ing] any writing of another without his authority' or making 'any writing so that it purports to be the act of another who did not authorize that act.'"); Cal. Com. Code § 1201(b)(41) ("'Unauthorized signature' means a signature made without actual, implied, or apparent authority. The term includes a forgery."); U.C.C. § 1-201(41) (2004) (same).  Here, these elements do not exist.

Significantly, neither the Indictment or Mackey Affidavit allege that the Form I-20's have been altered in any way, that they are not what they purport to be, or that there is any attempt to defraud.  In fact, in Agent Mackey's affidavit in support of the Warrant, he titles sections addressing problems with Form I-17's as "False Attachments" or "False Supplemental Submissions," while the section addressing the Form I-20's simply refers to them as "Forged." (Affidavit, Section B at p. 4, Section C at p. 5, and Section D at page 6.)

Furthermore, the affidavit clearly says that when defendant was unavailable he "request[ed]" others to sign the printed Form I-20's on his behalf. (Mackey Affidavit, ¶ 29.)  As defendant authorized the HGU employees to sign his name on the Form I-20's, their doing so cannot constitute forgery.  *See In re Feagins*, *supra*, 439 B.R. at 174.  Even if the signatories were not authorized to sign for defendant, his subsequent actions ratified the conduct. "Ratification is 'the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him.'  Any conduct manifesting an intent to treat an unauthorized act as authorized, including the failure to repudiate the unauthorized act, supports a

4

NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COUNTS TWO THROUGH SIX OF THE INDICTMENT & MPA'S IN SUPPORT; Case No. 12-CR-00581 (EJD)

1  finding of ratification. A principal may ratify the forgery of his signature by an agent." *Id.* at
2  174-175, quoting *Maui Finance Co. v. Han,* 34 Haw. 226, 230, 1937 WL 4450 (Haw.Terr.1937);
3  *see also Clews v. Jamieson*, 182 U.S. 461, 483 (1901) ("A principal can adopt and ratify an
4  unauthorized act of his agent who in fact is assuming to act in his behalf, although not disclosing
5  his agency to others, and when it is so ratified it is as if the principal has given an original
6  authority to that effect and the ratification relates back to the time of the act which is ratified.").
7  Defendant has never repudiated the signatures made in his name by HGU employees and, in fact,
8  has treated those signatures as authorized by him.

9  The Form I-20's identified by date in the indictment were signed under defendant's name
10 by individuals who had defendant's authority to sign such documents. Even if, *arguendo*, such
11 signatures were not authorized at the time, defendant has subsequently ratified the signatures by
12 his actions and lack of repudiation. Moreover, if the Form I-20's themselves were not forged,
13 then, logically, there is no use or possession of a forged document possessed by another.
14 Because of the authorization granted to HGU employees by defendant to sign on his behalf, or
15 his subsequent ratification of those signatures, combined with a lack of any allegation that the
16 document has been otherwise altered or intended to defraud, the indictment fails to make out the
17 crime of aiding and abetting visa fraud and counts two, three, four, and five of the indictment
18 must be dismissed.[3]

## II. THE ACTS ALLEGED IN THE INDICTMENT FAIL TO SUPPORT THE CHARGED CRIME OF UNAUTHORIZED ACCESS TO A GOVERNMENT COMPUTER.

Defendant is accused of violating the Computer Fraud and Abuse Act ("CFAA"). The applicable statutory section at issue states that:

> Whoever … intentionally, without authorization to access any nonpublic computer of a department or agency of the United States, accesses such a computer of that department or agency that is exclusively for the use of the

---

[3] To the extent that it is a crime for anyone other than the named signatory to sign a Form I-20, or for the DSO to authorize another individual to sign on his or her behalf, no such facts or allegations appear in the Indictment, nor has that particular crime been alleged against defendant.

5

NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COUNTS TWO THROUGH SIX OF THE INDICTMENT & MPA'S IN SUPPORT; Case No. 12-CR-00581 (EJD)

>   Government of the United States or, in the case of a computer not exclusively for such use, is used by or for the Government of the United States and such conduct affects that use by or for the Government of the United States[] … shall be punished as provided in subsection (c) of this section.

18 U.S.C. § 1030(a)(3).

There is limited authority on the statute, most likely because it is not used often aside from cases involving hacking. Two recent cases decided by the Ninth Circuit, though – *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127 (9th Cir. 2009) and *U.S. v. Nosal*, 676 F.3d 854 (9th Cir. 2012) – prove instructive as to why the charge against defendant in this case cannot stand.

*Brekka* was a civil case brought by Mr. Brekka's former employer who claimed he acted "without authorization" when he accessed LVRC's computer both during and after his employment with the company, thus violating Sections 1030(a)(2) and 1030(a)(4) of the CFAA. *Id.* at 1128-1129. In affirming summary judgment in Mr. Brekka's favor, the Ninth Circuit held that "[b]ecause Brekka was authorized to use LVRC's computers while he was employed at LVRC, he did not access a computer 'without authorization' in violation of § 1030(a)(2) or § 1030(a)(4) when he emailed documents to himself and to his wife prior to leaving LVRC." *Id.* at 1129. The court also held that Mr. Brekka's emailing of the documents did not "exceed authorized access," and that LVRC did not "establish the existence of a genuine issue of material fact as to whether Brekka accessed the LVRC website without authorization after he left the company." *Id.*

What makes *Brekka* relevant to the case at bar is that it needed to interpret the phrase "without authorization" given that the CFAA itself fails to define the word "authorization." After noting that "it is a 'fundamental canon of statutory construction … that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning[]'" (*Id.* at 1132, quoting *Perrin v. United States,* 444 U.S. 37, 42(1979)), the court looked at definitions of "authorization" as found in case law and dictionaries. Ultimately, the court settled on a narrow definition of the term, concluding that "an employer gives an employee 'authorization' to access a company computer when the employer gives the employee permission to use it." *Brekka*, 581 F.3d at 1133. The court also noted that "[n]o language in the CFAA

6

1 supports [the] argument that authorization to use a computer ceases when an employee resolves
2 to use the computer contrary to the employer's interest.  […]  In other words, for purposes of the
3 CFAA, when an employer authorizes an employee to use a company computer subject to certain
4 limitations, the employee remains authorized to use the computer even if the employee violates
5 those limitations." *Id.*  This means that "a person who intentionally accesses a computer without
6 authorization … accesses a computer without any permission at all, while a person who exceeds
7 authorized access … has permission to access the computer, but accesses information on the
8 computer that the person is not entitled to access." *Id.* (Internal quotations and citations
9 omitted.)

10     *Nosal* was a criminal prosecution for use of an employer's computer for personal
11 business.  Mr. Nosal had convinced former colleagues at his former employer to download and
12 forward to him confidential information which he was planning to use in competition with the
13 former employer.  The former colleagues had authorization to access the computer but not for
14 these purposes.  *Id.* at 856.  *Nosal*, like *Brekka*, involved violations of Sections 1030(a)(2) and
15 1030(a)(4); unlike *Brekka*, it concerned itself only with the "exceeds authorized access" portion
16 of the statute.  What is key for this case, though, is that *Nosal* acknowledged that "[o]nce we
17 define [a] phrase for the purpose of [one] subsection [in the statute], that definition <u>must apply
18 equally to the rest of the statute</u> pursuant to the 'standard principle of statutory construction …
19 that identical words and phrases within the same statute should normally be given the same
20 meaning.'"  *Nosal*, 676 F.3d at 859, quoting *Powerex Corp. v. Reliant Energy Servs., Inc.*,551
21 U.S. 224, 232 (2007) (emphasis added).  In other words, the definition given by the *Brekka* court
22 to the word "authorization" for purposes of subsections (a)(2) and (a)(4), applies with equal force
23 for purposes of subsection (a)(3), the subsection under which defendant is charged here.

24     The government alleges that defendant aided and abetted another person to access the
25 SEVIS computers "without authorization."  What the government, and thereby the Indictment,
26 ignores in making this allegation, though, is that defendant had explicit authorization to access
27 SEVIS.  Indeed, the Indictment says that DSOs "are issued login IDs and passwords enabling
28 them to access SEVIS[]" (Indictment, ¶ 7), while the affidavit in support of the Warrant

acknowledges that defendant had a SEVIS user name and password. (Mackey Affidavit, ¶ 28.) There is no allegation that defendant did not have authorization to access SEVIS, nor did he ask his employees to break into any computer or to obtain information to which he himself was not authorized to receive  Rather, the basis of the charge is that defendant delegated his authority to access a government computer to another individual for them to access SEVIS on his behalf so as to input information about students HGU had enrolled and issue them I-20 cards. In delegating authority, the employees were given defendant's valid login name and password. That, in and of itself, does not violate the statute. There is nothing in the law that says a person authorized to access a computer is prohibited from delegating or designating that access to another employee within the same company or educational facility.[4]

Under the government's interpretation of the statute, if the office manager at a business was given a login name and password for a restricted site – say, for example, an online research tool – and the office manager then disseminated or authorized other employees at the company to use that sole login and password, because the login and password was given only to the office manager, he or she has now committed a crime by aiding and abetting others in accessing the site "without authorization."  Such an interpretation of the statute is not reasonable or logical. *See United States v. Kozminski*, 487 U.S. 931, 949 (1988) (refusing to adopt a broad interpretation of a statute as it would "criminalize a broad range of day-to-day activity[]" and would "delegate to prosecutors and juries the inherently legislative task of determining what type of … activities are so morally reprehensible that they should be punished as crimes" thereby "subject[ing] individuals to the risk of arbitrary or discriminatory prosecution and conviction.").

As pointed out by both *Brekka* and *Nosal*, the CFAA was not designed to be "an expansive misappropriation statute" (*Nosal*, 676 F.3d at 857), but, rather, was enacted "primarily to address the growing problem of computer hacking, recognizing that, [i]n intentionally trespassing into someone's computer files, the offender obtains at the very least information as to

---

[4] Significantly, Count Six alleges that defendant was aiding and abetting, presumably the employees. However, there is <u>no claim</u> that the employees acted criminally as opposed to violating other laws or regulations, and they are not charged with any crimes.

8

NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COUNTS TWO THROUGH SIX OF THE INDICTMENT & MPA'S IN SUPPORT; Case No. 12-CR-00581 (EJD)

1  how to break into that computer system." *Id.* at 858 (internal quotation omitted); *Brekka*, 581
2  F.3d at 1130 (internal quotation omitted) ("The CFAA was enacted in 1984 to enhance the
3  government's ability to prosecute computer crimes.  The act was originally designed to target
4  hackers who accessed computers to steal information or to disrupt or destroy computer
5  functionality, as well as criminals who possessed the capacity to access and control high
6  technology processes vital to our everyday lives…."). Simply put, "[w]hile ignorance of the law
7  is no excuse, we can properly be skeptical as to whether Congress, in 1984, meant to criminalize
8  conduct beyond that which is inherently wrongful, such as breaking into a computer." *Nosal*,
9  676 F.3d 859.
10        Here, defendant is charged criminally because instead of inputting data himself and
11 printing and signing the I-20 himself, he delegated this administrative function to his
12 subordinates.  While this may well be a violation of SEVP regulations, it does not remotely
13 approach hacking, breaking into a system, or theft, nor was there any criminal intent.  If this
14 conduct were allowed to be prosecuted, than employees like those in this case, as well as
15 defendant and other employers, would face criminal prosecution for what amount to
16 administrative violations.
17        Defendant had legal authorization to access the SEVIS computer.  He delegated such
18 access to one of his employees.  The is nothing indicating that defendant's authorization was
19 limited to him and him alone, and nothing in the statute prohibits a authorized individual from
20 delegating his or her access to someone under his or her authority.  In charging defendant, the
21 government has overreached and failed to show that any actual violation of Section 1030(a)(3)
22 took place.  As a result, Count Six of the Indictment must be dismissed.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

9

NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COUNTS TWO THROUGH SIX OF
THE INDICTMENT & MPA'S IN SUPPORT; Case No. 12-CR-00581 (EJD)

## CONCLUSION

For the reasons set forth above, defendant respectfully requests that the court dismiss Counts Two, Three, Four, Five, and Six of the Indictment.

Dated: July 26, 2013

McMANIS FAULKNER

/s/ Tyler Atkinson
JAMES McMANIS
MATTHEW SCHECHTER
TYLER ATKINSON

Attorneys for Defendant
JERRY WANG

NOTICE OF MOTION AND MOTION OF DEFENDANT TO DISMISS COUNTS TWO THROUGH SIX OF THE INDICTMENT & MPA'S IN SUPPORT; Case No. 12-CR-00581 (EJD)