1  JAMES McMANIS (40958)
   MATTHEW SCHECHTER (212003)
2  TYLER ATKINSON (257997)
   McMANIS FAULKNER
3  A Professional Corporation
   50 West San Fernando Street, 10th Floor
4  San Jose, California 95113
   Telephone:    (408) 279-8700
5  Facsimile:    (408) 279-3244
   Email:  tatkinson@mcmanislaw.com
6
   Attorneys for Defendant
7  JERRY WANG

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                SAN JOSE DIVISION

11

12  UNITED STATES OF AMERICA,              Case No. CR 12-581 EJD

13            Plaintiff,                   **NOTICE OF MOTION AND MOTION
                                           TO SUPPRESS EVIDENCE (Warrant for
                                           Electronic Mail)**
14       vs.

15  JERRY WANG,                            Date:       August 9, 2013
                                           Time:       1:30 p.m.
16            Defendant.                   Courtroom:  4, 5th Floor
                                           Judge: Hon. Edward J. Davila
17

18

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

1
NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
ELECTRONIC MAIL); Case No. CR 12-581 EJD

TO THE ABOVE ENTITLED COURT AND TO THE GOVERNMENT:

Defendant, Jerry Wang, moves the Court for an order suppressing all evidence obtained directly or indirectly as a result of a search of the records of Google, Inc. email accounts relating to communications by defendant or to defendant, and papers and records of defendant.  The basis of this motion is that the search warrant was issued without a sufficient showing of probable cause, and the warrant was overbroad and did not state with specificity the basis for seizure. Accordingly, the warrant should not have issued, and because the affidavit was so lacking in probable cause, no law enforcement officer could reasonably rely upon it.  Moreover, the supporting affidavit omitted material facts which would have undercut the claim of probable cause.

This motion is supported by the attached Memorandum of Points and Authorities, the attached exhibits, the Court file, and upon such evidence as may be adduced at a hearing on the matter.

Dated: July 26, 2013                                    McMANIS FAULKNER


                                                        /s/ Tyler Atkinson
                                                        _____
                                                        JAMES McMANIS
                                                        MATTHEW SCHECHTER
                                                        TYLER ATKINSON

                                                        Attorneys for Defendant
                                                        JERRY WANG

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR ELECTRONIC MAIL); Case No. CR 12-581 EJD

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 3

    I.     THE AFFIDAVIT IN SUPPORT OF THE WARRANT
          APPLICATION ............................................................................ 3

    II.    THE SCOPE OF THE WARRANT ISSUED ................................. 8

LEGAL ARGUMENT ........................................................................................................ 8

    I.     DEFENDANT HAS A PRIVACY INTEREST IN THE
          SUBJECT RECORDS ................................................................. 8

    II.    THE SEARCH WARRANT WAS NOT SUPPORTED BY
          PROBABLE CAUSE .................................................................. 9

          A.   The Supporting Affidavit's Facial Deficiencies ..................... 9

          B.   Lack of Probable Cause ...................................................... 12

          C.   The Evidence Was Stale ...................................................... 12

    III.   THE WARRANT WAS OVERBROAD ...................................... 13

    IV.   THE AFFIDAVIT CONTAINS MATERIAL OMMISSIONS ................... 15

    V.    THE GOOD FAITH EXCEPTION DOES NOT APPLY ............................ 15

CONCLUSION ................................................................................................................. 16

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR ELECTRONIC MAIL); Case No. CR 12-581 EJD

# TABLE OF AUTHORITIES

**Cases**

*Durham v. United States*,
   403 F.2d 190 (9 Cir. 1968)................................................................. 13

*Franks v. Delaware*,
   438 U.S. 154 (1978)........................................................................... 15

*Illinois v. Gates*,
   402 U.S. 213 (1983)............................................................................. 9

*In Re Grand Jury Investigation concerning SSDI*,
   130 F.3d 853 (9 Cir. 1997)............................................................ 13, 14

*Rakas v. Illinois*,
   439 U.S. 128, 99 S.Ct. 421, 58 L. Ed. 2d (1978)............................... 8

*U.S. v. SDI Future Health, Inc.*,
   568 F.3d 684 (9th Cir.2009)............................................................... 8

*United States v. Gourde*,
   382 F.3d 1003 (9th Cir. 2004)............................................................ 9

*United States v. Jones*,
   286 F.3d 1146 (9th Cir. 2002)............................................................ 9

*United States v. Kow*,
   58 F.3d 423 (9 Cir. 1995)................................................................. 14

*United States v. Leon*,
   466 U.S. 897 (1984).................................................................... 15, 16

*United States v. Weber*,
   923 F.2d 1338 (9th Cir. 1990)....................................................... 9, 13

**Statutes**

18 U.S.C. § 2.......................................................................................... 1

18 U.S.C. § 371...................................................................................... 1

18 U.S.C. § 1001(a)(3)........................................................................... 1

18 U.S.C. § 1030(a)(3)........................................................................... 1

18 U.S.C. § 1546(a)............................................................................... 1

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
ELECTRONIC MAIL); Case No. CR 12-581 EJD

**MEMEORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Defendant was the Chief Executive Officer and President of Herguan University (HGU) and the University of East-West Medicine (UEMW), which shared a campus in Sunnyvale, California.  Defendant was also the Designated School Official (DSO), authorized by SEVIS, a unit of the Department of Homeland Security (DHS) and Immigration and Customs Enforcement (ICE.) SEVIS administers the program by which U.S. schools are authorized to admit foreign students and to issue them visas for their studies.  Under the SEVIS-run program, "DSOs" are given access codes which allow them to enter the name and other information about a student and then print out a Form I-20, essentially proof of a lawful student visa.  Schools obtain the authority to admit students, and issue I-20s, by first filing and having approved a petition known as a Form I-17.

On July 24, 2012, the Grand Jury returned an indictment, charging defendant with:

- Conspiracy to Commit Visa Fraud (18 U.S.C. § 371);
- Aiding and Abetting Visa Fraud (18 U.S.C. § 1546(a) and 18 U.S.C. § 2);
- Aiding and abetting Unauthorized Access to Government Computer (18 U.S.C. § 1030(a)(3) and 18 U.S.C. § 2);
- Use of False Document (18 U.S.C. § 1001(a)(3))

Before the indictment was unsealed and before defendant was arrested, Agent Jason Mackey obtained a search warrant for the email accounts, seeking documents which would contain evidence of the alleged crimes. The warrant was supported by the Affidavit of Agent Mackey, dated January 27, 2012, which is detailed below.

- Allegation Defendant Lied About 900 Students "Physically" Attending School.
The government insists Wang claimed 900 people physically attended HGU.  This contention is belied by the fact that, at the time Wang allegedly made this statement, he also, according to the government's affidavits, said that many of the

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR ELECTRONIC MAIL); Case No. CR 12-581 EJD

students were not present and attending classes *online*.[1]  The affidavits also fail to mention the enormous physical size—33,500 square feet of usable space—and the large staff teaching at of the school site.

- <u>Allegation School Used Online Teaching Methods</u>.  There is no legal authority offered to demonstrate that online teaching is criminal.  Moreover, HGU's use of technology in education was not regulated or proscribed during the time at issue.

- <u>Allegation of Dual Enrollment</u>.  There is no legal authority offered to demonstrate that any students' dual enrollment in both UEWM and HGU, two sister schools operating at the same location, was criminal.

- <u>Allegation Guan Was Not Enrolled at HGU and Did Not Work For Vital Core</u>.  Guan was not sure whether he attended HGU.  The email affidavit fails to aver this critical fact, although it is included in the affidavit to search the premises.  Moreover, Guan worked for Vital Core, but knew it by its Chinese name.  The investigation should have revealed this fact.  In addition, the affidavits fail to note that English is not Guan's first language, and the interview was not done by a professional interpreter.

- <u>Allegation Zheng Did Not Recall Attending HGU And Had A Different Job Title</u>. Zheng simply did not recall whether she received HGU transcripts.  She could not say definitively whether she was enrolled at HGU.  Moreover, the records she was asked about were several years old.  As for her job title or responsibilities, Zheng simply did not and does not remember all of the tasks she performed or any "official" job title.

- <u>Allegation David Wang Did Not Work For IIHH</u>.  The government did not interview David Wang.  Ling Li did not remember writing an employment letter or recall IIHH, but did acknowledge that the letter appeared to bear her signature.  Furthermore, the

---

[1] It should be noted for the record that "online" classes fall into a variety of categories.  At the time of the site visit, HGU implemented a type of online option called simultaneous broadcasting or "simul-broadcasting."  This is different from, for example, an online course with a correspondence component, which is considered less academically rigorous.

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR ELECTRONIC MAIL); Case No. CR 12-581 EJD

affidavits fail to aver that Ling Li, who operates a school, has a vested interest in not entangling herself with the allegations charged against defendant.

- <u>Allegation Bella Did Not Sign Accreditation Letter</u>.  Andres Bella claimed he would not have signed an HGU accreditation letter.  However, the affidavits fail to disclose that Mr. Bella, who operates a school, has a vested interest in not entangling himself with the allegations charged against defendant.  Moreover, like Ling Li, Bella corroborated the authenticity of the letter by acknowledging that it bore his signature.

- <u>Allegation Wang Sought A Phony Academic Warning Letter</u>.  The premises search affidavit discusses an SEVP request for academic warning letters following a site visit the month before.  A former employee of HGU, Anthony Martinez, met with HSI officers and gave them emails purportedly between defendant and a Vice President.  In the emails, defendant appears to inquire about providing a single, *pro forma* warning letter for investigators.  Defendant purportedly asks, "can you create *one*."  (emphasis added.)  There is no mention in the reported exchange about an intent to *mislead* investigators.  Defendant does not request that someone create false warning letters.  In poor English, defendant purportedly informed his colleague that they apparently do not maintain copies of warning letters: "we never have academic warning letters."  (As opposed to, "we never write warning letters" or "we never send warning letters.")

- Any other "discrepancies" can easily be attributed to the passage of time—in some cases five years—resulting in faded memories.  Moreover, none of the key witnesses interviewed speak English as a first language, and the government failed to obtain professional interpreters for the interviews.

## FACTUAL BACKGROUND

**I.   THE AFFIDAVIT IN SUPPORT OF THE WARRANT APPLICATION**

The purported basis for the search warrant is set forth in the Affidavit of Jason Mackey, a Special Agent of the U.S. Department of Homeland Security.  Agent Mackey explained he has been a Special Agent with DHS since 2002 and, since 2009, he has been assigned to the

3

1 Document and Benefit Fraud Task force.  He participated in at least 50 visa fraud cases since

2 2004, three of which involved educational systems. (Mackey Affidavit, ¶¶ 4-8.)  He also set forth

3 the procedures by which a school files a Form I-17 to obtain authority to admit foreign students,

4 and to issue I-20 forms by use of an access code provided by SEVIS.  (*Id*. at ¶¶ 9-20)

5 　　　　Mackey identified defendant as a co-owner of HGU and UEWM.  (*Id*. at ¶ 28.)  He states

6 defendant's father submitted a petition to have HGU qualified to accept foreign students, and this

7 was done on July 6, 2007, and again on July 10, 2007.  Defendant later signed as the DSO.  (*Id*.

8 at ¶ 30).

9 　　　　The affidavit stated that on May 30, 2006, defendant's father submitted a license

10 application for HGU to the California entity that license private schools, that the license

11 application said that no students were yet enrolled, and that once the school opened, it was

12 anticipated there would be 20-25 students in each program. The license was approved on June 5,

13 2007, the day before HGU submitted the I-17 petition to qualify the school for acceptance of

14 foreign students. (*Id*. at ¶ 31.)  It is worth noting the California entity was "sunseted" out shortly

15 after license approval, and therefore it could not have been updated as classes expanded.

16 　　　　Mackey contended the date of the school's establishment is material, because a school

17 cannot obtain an I-17 approval without showing that it is a bona fide school, and established

18 institution of learning, and actually engaged in a course of instruction.  (*Id*. at ¶ 30.)

19 　　　　Mackey also stated SEVP requested that HGU present three letters from employers.  (*Id*.

20 at ¶¶ 28-59.)  Mackey states defendant responded with three fraudulent letters from employers

21 and two fraudulent letters from accredited schools. (*Id*. at ¶ 33.)

22 　　　　Mackey identified an allegedly fraudulent letter from Alex Shi, relating to Candace

23 Zhang, stating that Ms. Zhang graduated from HGU on April 15, 2007 and was hired by UEWM

24 in May 1, 2007.  Transcripts of Ms. Zhang's studies at HGU were attached. (*Id*. at ¶ 34)

25 　　　　Mackey stated that in September of 2011, he interviewed Ms. Zhang and she stated she

26 had not attended or graduated from HGU but had attended UEWM and had worked for its clinic

27 as a receptionist. (*Id*. at ¶ 36)  Ms. Zhang was apparently not asked whether she could have been

28 simultaneously enrolled in both HGU and UEWM.

1    Zhang does not recall if she was simultaneously enrolled at HGU and UEWM.  She could

2    have been enrolled in HGU, and even received a transcript, but she would not have remembered.

3    Furthermore, it is undisputed Zhang performed a variety of work tasks at UEWM, and Zhang

4    had no particular title or specific job description.

5    Shi was also interviewed in September, 2011, and said Zhang had worked in the clinic,

6    but could not recall whether he supervised her or what her position was. (*Id.* at ¶ 37.)

7    The Mackey Affidavit did not provide any factual allegations about defendant coercing,

8    or otherwise forcing Shi to sign the letter regarding Zhang's employment, a letter which

9    evidently was factually correct.

10   Mackey further stated that a letter, signed "Lin Lee," President of IIHH, represented that

11   David Wang was hired as an Herbal Researcher based on his training at HGU.  (*Id.* at 38)  It

12   further stated that David Wang graduated from HGU in April, 2007.  The letter had a telephone

13   number for Lin Lee and IIHH and was accompanied by transcripts of Wang's studies at HGU.

14   (*Id.*)  Mackey interviewed Lin Lee, also known as Ling Li, in September of 2011.  She told

15   Mackey that she had worked as Dean of Admission for UEWM in 2007 and was supervised by

16   defendant.  She said she never worked or heard of IIHH and did not know David Wang.  She

17   also claimed that she had never used the name of Lin Li, but confirmed that the signature on the

18   letter resembled hers and the contact number was her personal cell phone, which Mackey

19   confirmed to be true. (*Id.* at ¶ 40.)

20   The Mackey Affidavit did not provide a factual basis to find that defendant wrote the

21   Ling Li letter.  The affidavit also does not provide any information about the circumstances

22   under which Ling Li left UEWM.

23   David Wang was never interviewed. (*Id.* at ¶ 41)

24   The affidavit then addressed an employment letter written on behalf of Shane Guan by

25   Jing Gang Tang, the manager of Vital Core Biosystems ("Vital Core"), stating Guan worked for

26   Vital Core and graduated from HGU on April 15, 2007.  (*Id.* at ¶ 42)  Mackey interviewed Guan

27   in September of 2011, more than four (4) years later, and reports Guan said he never heard of

28   Vital Core.  (Guan has since realized that he did in fact work for Vital Core, which he knew by

5

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
ELECTRONIC MAIL); Case No. CR 12-581 EJD

1  its Chinese name.)

2      Guan did not recall attending or graduating from HGU. (*Id*. at ¶ 45.)  Guan averred that

3  he may have been simultaneously enrolled.

4      Mackey also interviewed Tang in September of 2011 and was told that defendant had

5  been his supervisor and had written the letter, telling Tang that it was a reference letter to enable

6  Guan to obtain employment. Tang said he did not know Guan, and he had never worked for him.

7  (*Id*. at ¶ 44.)

8      On February 17, 2008, SEVP received a letter from The Academy of Chinese Culture and

9  Health Service (ACCHS), signed by Andres Bella, the Director of Institutional Relations, stating

10 that in the Summer 2007, the school had accepted as a transfer student from HGU, Li Ling, and

11 she was given full credit for HGU courses. (*Id*. at ¶ 46.)  The letter also says the school

12 unconditionally accepts and credits courses from HGU.  (*Id*.)  Bella was interviewed by Mackey

13 in September of 2011.  Bella said that he would not have written the letter and did not know Li

14 Ling or that she had transferred. (*Id*. at ¶ 47.) Mackey believes that Li Ling refers to Ling Li. (*Id*.

15 at ¶ 48.)

16     The affidavit refers to an allegedly fraudulent accreditation letter from UEWM, signed by

17 the same Alex Shi who signed the UEWM employment letter.  The accreditation letter states

18 defendant's mother had been a transfer student from HGU and her HGU credits were transferred

19 to UEWM.  The letter also stated that UEWM unconditionally accepts transfers from HGU.  (*Id*.

20 at ¶ 49.) Mackey states that when Shi was interviewed in September, 2011, he did not recall

21 signing the document or defendant's mother having been enrolled. (*Id*. at ¶ 50.)  The letter had

22 been submitted to SEVIS on February 14, **2007**.  (*Id*. at ¶ 49.)

23     SEVP and DHS agents, identified with Homeland Security Investigations (HSI),

24 conducted a site visit on November 10, 2010.  The SEVP database indicated about 900 students

25 were enrolled at HGU.  When the site visit team arrived, they saw most of HGU's facilities were

26 under construction and in their view not fit for conducting classes. The SEVP visitors did not see

27 any HGU students on campus, although defendant stated that all students did attend classes at

28 HGU.  (*Id*. at ¶ 52.)  SEVP personnel asked defendant about students who were not making

6

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR ELECTRONIC MAIL); Case No. CR 12-581 EJD

1   academic progress.  Defendant replied that they are placed on academic probation and issued

2   warning letters, and that the school takes attendance and allows three absences per course,

3   students who fail to meet attendance requirements are terminated, and three absences results in

4   an F in any course. (*Id.* at ¶ 53.)  SEVP then requested copies of attendance records and

5   academic warning letters and this was provided by defendant on December 16, 2010, where

6   defendant stated that due to renovations, students were attending simultaneous online classes.

7       The affidavit does not contain any information regarding any alleged illegality as to

8   offering "online classes."  (Indeed, as widely reported in the media, major academic institutions,

9   including the University of California and Arizona State University, have embraced the

10  movement toward online classes.)

11      On December 15, 2010, Mackey interviewed HGU's Dean of Academic Affairs, Dr.

12  Anthony Martinez.  Martinez had contacted SEVP by mail on December 8, 2010, expressing

13  concerns about the school violating regulations and its admission of students the school seldom

14  sees.  He stated he had information about HGU employees, including defendant.  He provided

15  several emails. (*Id.* at ¶ 55.)  In one email, dated December 1, 2010, defendant asked the HGU

16  Vice President if he could create an academic warning letter to provide SEVP.  The Vice

17  President replied that this could be a "trap" that defendant should not fall into it. (*Id.* at ¶ 56.)

18  Defendant emailed the Vice President and said SEVP wanted to see the letter sent to students

19  who were not meeting academic standards, and the Vice President replied by stating not to send

20  a letter prepared just for the response to SEVP.  (*Id.* at ¶ 57.)

21      There is no information in the affidavit suggesting it would have been illegal to provide a

22  *pro forma* academic warning letter to the investigators.  Furthermore, there is no information in

23  the affidavit suggesting defendant wanted to provide an inaccurate *pro forma* letter to the

24  investigators.  It is apparent from the affidavit that English is not the first language of defendant

25  or, indeed, most of the witnesses.

26      The affidavit states that the Vice President advised defendant to drop students who were

27  not attending classes as required. (*Id.* at ¶ 58.)  Martinez himself emailed the Vice President,

28  claiming to have been contacted by a student who said that he had enrolled at HGU in January,

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
ELECTRONIC MAIL); Case No. CR 12-581 EJD

1   2010, "based on representations the school was "fully on line" and he was "never going to have

2   to come to campus." (*Id*. at ¶ 59.) The Affidavit does not provide further information, such as

3   who the student was, who made the alleged representation, or what "fully on line" meant.

4   Mackey does not refer to any other specific information provided by Martinez.

5       Based upon the above, Mackey sought a warrant for the Google email accounts of

6   defendant and the Vice President, alleging that they would contain evidence of a conspiracy to

7   commit visa fraud and to make false statements to SEVP and HSI agents in connection with the

8   Form I-17 petition to admit foreign students. (*Id*. at ¶ 60).

9   **II.  THE SCOPE OF THE WARRANT ISSUED**

10      Attachment A, Section II, of the warrant is titled "FILES AND ACCOUNTS TO BE

11  COPIED BY GOOGLE EMPLOYEES."  The section lists email accounts and related

12  documents.  Section III seeks additional email relating to applications, immigration documents,

13  including those related to visas, financial records and travel records. Defendant is specifically

14  named.

15      There is no explanation offered as to the relevance of financial records.

16      There is no limitation on the relevant period.

17  <u>**LEGAL ARGUMENT**</u>

18  **I.  DEFENDANT HAS A PRIVACY INTEREST IN THE SUBJECT RECORDS.**

19      In order to invoke the Fourth Amendment and seek suppression of evidence obtained in

20  violation thereof, the moving party must have standing, which the Supreme Court has held to be

21  based upon a "legitimate expectation of privacy." *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421,

22  58 L. Ed. 2d (1978.) Here, the warrant specifically sough defendant's emails and business

23  records of the schools.  The affidavit identifies defendant as an "owner" of HGU.  (Mackey

24  Affidavit ¶ 20.)

25      The owner of a business has a reasonable expectation of privacy in their offices and their

26  homes.  *Mancusi v DeForte*,  392 U.S. 364 (1968.) A non-owner employee, particularly a

27  manager, will have standing based on a reasonable expectation of privacy in his office and in

28  other parts of the business.  *U.S. v. SDI Future Health, Inc*., 568 F.3d 684, 698 (9th Cir.2009.)

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
ELECTRONIC MAIL); Case No. CR 12-581 EJD

## II.  THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE.

The warrant should not have been issued because the affidavit was facially deficient, and the facts alleged in the affidavit do not provide probable cause to believe relevant evidence would be found on the premises to be searched at the time the warrant was requested. Furthermore, the affidavit was based on exceedingly stale information.

A magistrate presented with a search warrant application must make a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 402 U.S. 213, 238 (1983.) While great deference is afforded to the magistrate's finding, there must always be such substantial basis for finding probable cause. *United States v. Jones*, 286 F.3d 1146, 1150 (9th Cir. 2002).

Under the Fourth Amendment, there are two related but distinct rules governing issuance of a search warrant. "First, it must describe the place to be searched or things to be seized with sufficient particularity, taking account of the circumstances of the case and the type of items involved. Second, it must be no broader than the probable cause upon which it was based." *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990.)  In *Weber*, the Court cautioned against creating a lengthy chain of inferences to buttress probable cause. 923 F.3d 1344-45; *see also United States v. Gourde*, 382 F.3d 1003, 1011 (9th Cir. 2004.)

### A.  The Supporting Affidavit's Facial Deficiencies

In the present case, the Mackey Affidavit was facially deficient as it failed to present facts that would allow a reasonable magistrate or law enforcement officer to believe Google records contained the requested items.  Furthermore, there was no showing that either HGU or UEWM records were relevant to the allegations of the indictment.

As a threshold matter, the affidavit fails to explain why allegations of "online course" or the school's alleged failure to maintain academic standards are crimes.

In addition, while the government's investigation was nearly five years in the making, and English is not the native language of any of the material witnesses—and most of the material witnesses do not speak English fluently—no attempt was made by the investigators to use

9

1  professional interpreters or translators in conducting the interviews upon which the warrant is

2  based.

3        The affidavit refers to the filing of the Form I-17 petition for authority to admit foreign

4  students, and states that the petition was filed on August 8, 2007. (Mackey Affidavit at ¶ 33.)

5  The affidavit then discusses documents which were provided in response to requests from SEVP;

6  these documents consisted of employment letters, accreditation or transfer letters, and student

7  transcripts of three individuals.  (*Id*. at ¶¶ 33-34, 38.)  These documents were allegedly

8  transmitted in August 2007.

9        Agent Mackey also interviewed Tang in September 2011 concerning an employment

10 letter he had written in 2007.  Mackey also interviewed Shan Guan, the student discussed in the

11 letter.  (*Id*. at ¶¶ 42, 44, 45.)  Mackey reports Tang had not read the letter and thought that it was

12 a reference letter.  Mackey further reports Guan did not recall working at "Vital Core" or

13 attending HGU.  Guan did, however, say that he studied at UEWM, which is collocated with

14 HGU.  (*Id*.)  Guan also worked at the site as well, but did not recall specifics.  Mackey

15 previously identified Vital Core as a business entity affiliated with the Wang family.  It was not

16 established in the Affidavit whether Vital Core may have had alternative names, including a

17 Chinese name, despite the fact that all of the individuals involved are from China and do not

18 speak English well.

19       Zheng stated she had worked as a receptionist for UEWM as opposed to the job described

20 in the employment letter, and she had not attended HGU, only UEWM.  (*Id*. at ¶ 36)

21       More than four years later, in September, 2011, Mackey interviewed the authors of the

22 employment letters and two of the students, and determined that the letters and transcript

23 submitted back in 2007 were fraudulent.  One of the authors, Shi, recalled little about the

24 employment of Zhang.  Ling Li also recalled little but did state that the signature looked like hers

25 and that the cell number referenced in the letter belonged to her as well.  (*Id*. at ¶¶ 37, 39.)  Ling

26 (Ling Li also admitted to trying to buy an accreditation letter for her own school.)

27       The affidavit discusses two accreditation letters which are allegedly fraudulent.  One

28 letter, by Andres Bella of ACCHS, was dated February 14, 2008.  Bella was interviewed in

10

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
ELECTRONIC MAIL); Case No. CR 12-581 EJD

1  September of 2011, when he stated he had not written the letter for HGU. (*Id.* at ¶¶ 46-47.)

2  There are no allegations of forensic analysis showing that Bella's signature was forged or that

3  the document was otherwise doctored.

4        The second accreditation letter was written by Shi of UEWM, who also wrote the Zhang

5  letter.  This letter was submitted on February 14, 2008.  Shi was interviewed in September of

6  2011, when he could not recall anything about the letter or the transfer student issue. (Id. at ¶¶

7  49-50).

8        Jumping to December 2010, the affidavit discusses the SEVP request for academic

9  warning letters following a site visit the month before.  A former employee of HGU, Anthony

10  Martinez, met with HSI officers and gave them emails purportedly between defendant and a Vice

11  President.  In the emails, defendant appears to inquire about providing a single, pro forma

12  warning letter to investigators.  There is no mention in the reported exchange about an intent by

13  defendant to mislead investigators.  Defendant does not request that someone create a false

14  warning letter.  Presumably, the investigators wanted to know the *content* of the warning letters

15  generated by the school.  If they wanted something more than that, Jerry, who is not a native

16  English speaker, clearly did not grasp that.

17        It is further not alleged in the affidavit that defendant represented to investigators that (a)

18  he knew that the school kept copies of previously issued warning letters, (b) he had access to

19  such copies, and (c) he would deliver exact copies of these letters to the investigators.  The Vice

20  President, who did not meet with the investigators, apparently thought the investigators wanted

21  exact historical copies states that this is not proper.  (*Id.* at ¶¶ 55-58.)  The affidavit does not

22  provide material context to this communication, in particular, defendant's poor English writing

23  skills.  The affidavit also does not explain how a purportedly false academic warning letter

24  represents *visa fraud*.

25        Mackey states Martinez gave him an email which Martinez had sent to defendant, in

26  which Martinez claims that he had received an email from a student who stated that he had

27  enrolled in HGU in January of 2010 because it was "fully online" and he had no intention of

28  coming to campus. (*Id.* at ¶ 59.)  The affidavit does not provide any evidence defendant knew of

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
ELECTRONIC MAIL); Case No. CR 12-581 EJD

1   the Martinez email, or knew about any alleged representations regarding online classes. The

2   affidavit also does not provide a legal basis for finding that online classes are unlawful, or that

3   defendant acted unlawfully in connection with the Martinez email.

4          B.  **Lack of Probable Cause**

5          The evidence offered to support a probable cause finding was, in summary, no more than

6   a mélange of five-year-old faded memories, an ambiguous email, and a suggestion that online

7   classes would have been impossible or illegal.  It bears repeating that no one who was

8   interviewed went as far as to say that their signature had been forged.  Nevertheless, the

9   government avers that the allegations support probable cause that defendant engaged in visa

10  fraud in 2007, and that somehow, Google records in late January 2012 would support this charge.

11         However, the affidavit fails to provide legally compelling inferences to support a finding

12  of probable cause.  Moreover, the affidavit fails to show how 2012 Google records are related to

13  the allegations of 2007. There is nothing to indicate how they would shed any light on the crimes

14  investigated.  In addition, the lack of any specificity or limitations as to what was to be seized,

15  including an operative time period, demonstrate that the warrant was part of an impermissible

16  fishing expedition.

17         C.  **The Evidence Was Stale.**

18         "[A]n affidavit must be based on facts so closely related to the time of the issue of the

19  warrant as to justify a finding of probable cause at that time." *United States v, Lacy*, 119 F.3d

20  742, 745 (9 Cir. 1997.)  The information contained in the affidavit establishing probable cause

21  must be current and not "stale" as the issue is the likelihood of finding the identified evidence in

22  the specific location. The court must evaluate the staleness of the information in the affidavit "in

23  light of the particular facts of the case and the nature of the criminal activity and property

24  sought."

25         Here, there is nothing in the affidavit to suggest that, in 2012 a search would uncover

26  evidence of ongoing visa fraud.  The crux of the factual allegations centers around the year 2007

27  and an ambiguous email exchange in 2010.  Based on these allegations, the government sought a

28  sweeping warrant for a wide range of items, including financial records, tax records, and student

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
ELECTRONIC MAIL); Case No. CR 12-581 EJD

1   records with no temporal limitations.  The government sought free range to look for evidence,

2   with limitations at all as to categories of evidence.  *See Durham v. United States*, 403 F.2d 190.

3   193 (9 Cir. 1968) ("The most convincing proof that property was in the possession of the person

4   or upon the premises at some remote time in the past will not justify a present invasion of

5   privacy.")

6          Thus, the fact, even if established, that the defendant was in possession and used

7   fraudulent documents or applications in 2007 in no way provides probable cause to believe that

8   the same is true in 2012 or that a search of email and other Google data would reveal such

9   information.  In *Weber*, the Court cautioned against creating a lengthy chain of inferences to

10  buttress probable cause. *Weber, supra*, 923 F.3d at 1344-45.  Here, there is nothing contained in

11  the affidavit which would suggest that the items sought would in fact be present at the time of the

12  search. The petition was filed in 2007, and responses to the request for evidence supporting the

13  petition were submitted in 2007 and 2008. In January 2010, there was simply a request for a

14  warning letter, and an attempt to provide a sample letter, which is not in itself a criminal matter.

15         The warrant is further undermined by the sheer delay between when the investigation of

16  the facts began in 2007 and when the warrant was actually sought and issued, four and a half

17  years later.

18  **III. THE WARRANT WAS OVERBROAD**

19         A warrant may not be overbroad, and generally must be limited in the items to be seized

20  and, if dated records, limited as to dates.  *In Re Grand Jury Investigation concerning SSDI*, 130

21  F.3d 853 (9 Cir. 1997), the a federal investigator learned from interviews with two SSDI

22  employees that SSDI had acquired commercial grade semiconductors that did not meet the

23  standards required under SSDI's contacts to provide semiconductor to the government.  SSDI

24  employees then mislabeled these semiconductors and falsified laboratory reports. The

25  government sought a warrant seeking all documents relating to purchases, sales, compliance and

26  testing from the year 1990 to 1995, the time of the warrant. Thousands of file drawers of records

27  were seized.

28         The Ninth Circuit held the warrant was impermissibly broad as the only limitations were

13

1  that the evidence relate to government semiconductor programs and be dated between 1990 and

2  1995.  The government did not specify why it selected the dates it chose, and agreed that the

3  warrants were very broad, but argued SSDI was so pervaded by fraud that there was probable

4  cause to seize the majority of its documents.  The Ninth Circuit found the government had not

5  provided probable cause to believe that the entire business was fraudulent such that the warrant

6  was valid.  Citing *United States v. Kow*, 58 F.3d 423 (9 Cir. 1995), the Court noted that "[a]

7  generalized seizure of business documents may be justified if the government establishes

8  probable cause to believe that **the entire business** is merely a scheme to defraud or that **all** of the

9  business's records are likely to evidence criminal activity."  130 F.3d 853 at 856.  The evidence

10 did not support a finding that the business **only** engaged "negligibly in legitimate business

11 activities."  *Id.* at 857. The court further held: "Where a business appears, as SSDI does here, to

12 be engaged in some legitimate activity, this court has required a more substantial showing of

13 pervasive fraud that was provided by the Government in the instant case." *Id.* at 857.

14 As was described in greater detail above, the requirement that a warrant not be overbroad

15 generally requires limitations not only on the items to be seized, but if the items are records, they

16 must also be limited as to dates, because as is noted above, there is no presumption that criminal

17 activity is always ongoing.

18      The affidavit in support of the warrant makes no references to anything which might

19 support probable cause to seize the financial records, property records, telephone and address

20 directories, or travel records.  The subsequent warrant is also overbroad because it places no

21 limitations on the scope or time period on the items to be seized.  In *United States v. Kow*, 58

22 F.3d 423, 427 (9 Cir. 1995), the Court noted that "[a] generalized seizure of business documents

23 may be justified if the government establishes probable cause to believe that the entire business

24 is merely a scheme to defraud or that all of the business's records are likely to evidence criminal

25 activity."

26      There is no evidence of ongoing or continuous criminal activity. There is also no

27 evidence that both HGU and UEWM were purely criminal enterprises. To the contrary, the

28 Mackey Affidavit informs that UEWM offered legitimate courses in traditional Chinese

14

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
ELECTRONIC MAIL); Case No. CR 12-581 EJD

1  medicine. (Mackey Affidavit at ¶ 43.)  The affidavit also conceded an absence of criminality in

2  the letters from Shi of UEWM and Lau of Yao San University. (*Id.* at ¶¶ 21- 22.)

3       The government did not have probable cause to believe that they would find any such

4  evidence—they were merely hoping they would.

5  **IV.  THE AFFIDAVIT CONTAINS MATERIAL OMMISSIONS**

6       If an affidavit is shown to contain material omissions, the Court must determine if the

7  omissions were intentional; this may require an evidentiary hearing. If such a finding is made,

8  the court reweighs the affidavit to determine if probable cause exists. *Franks v. Delaware*, 438

9  U.S. 154 (1978).

10      Here, paragraph 45 of the affidavit recounts the interview of Shane Guan. The affidavit

11  accompanying the email application states that Guan told Mackey that he had not worked for

12  Vital Core and that he had never attended HGU, only UEWM.  In fact, Guan was not sure

13  whether he attended HGU, as averred in the separate affidavit presented to the magistrate in the

14  application for search warrant for the premises of the schools.  Guan actually told Mackey was

15  that he might have attended HGU and might have graduated.  This is established in the affidavit

16  presented by Mackey in the application for a search warrant for the premises of the schools. The

17  full statement by Guan can be found in paragraph 26 of the Mackey affidavit dated July 31,

18  2012.

19      The missing statement is exculpatory and undermines the implication that no one

20  received credit for HGU.  Shane Guan, a key witness, had been unsure as to whether he attended

21  HGU.  The notion that Shane Guan did not attend or receive credit from HGU was a necessary

22  component of the information needed by the Magistrate to assess probable cause.

23      When the equivocation is added to his statement, Guan's interview does not provide a

24  basis for probable cause and instead *undermines* the government's case.  Indeed, Guan, a critical

25  witness, had been unsure as to whether he did or did not attend HGU, and these statements went

26  to the heart of assessing probable cause.

27  **V.      THE GOOD FAITH EXCEPTION DOES NOT APPLY**

28      The good faith expectation of *United States v. Leon*, 466 U.S. 897 (1984) does not apply

15

here and cannot save the warrant.  Suppression "remains an appropriate remedy" when a warrant is based on "an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *Id*. at 923.  The omission addressed above is especially significant here, as the information in the affidavit is very stale.

**CONCLUSION**

The evidence seized as a result of the search should be suppressed; all evidence obtained as a result of the seized items also suppressed, and the documents should be returned to the original custodians.

Respectfully submitted,

DATED: July 26, 2013                    McMANIS FAULKNER


/s/ Tyler Atkinson
JAMES McMANIS
MATTHEW SCHECHTER
TYLER ATKINSON

Attorneys for Defendant
JERRY WANG

16