1  JAMES McMANIS (40958)
   MATTHEW SCHECHTER (212003)
2  TYLER ATKINSON (257997)
   McMANIS FAULKNER
3  A Professional Corporation
   50 West San Fernando Street, 10th Floor
4  San Jose, California 95113
   Telephone:    (408) 279-8700
5  Facsimile:    (408) 279-3244
   Email:  tatkinson@mcmanislaw.com
6
   Attorneys for Defendant
7  JERRY WANG

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 SAN JOSE DIVISION

11

12  UNITED STATES OF AMERICA,            Case No. CR 12-581 EJD

13           Plaintiff,                  **NOTICE OF MOTION AND  MOTION TO
                                         SUPPRESS EVIDENCE (Warrant for
14      vs.                              Premises Search of 8/02/12)**

15  JERRY WANG,
                                         Date:        August 9, 2013
16           Defendant.                  Time:        1:30 p.m.
                                         Courtroom:  4, 5th Floor
17                                       Judge: Hon. Edward J. Davila

18

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28
                                    1
    NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
    PREMISES SEARCH); Case No. CR 12-581 EJD

**TO THE ABOVE ENTITLED COURT AND TO THE GOVERNMENT:**

PLEASE TAKE NOTICE THAT on Friday, August 9, 2013, at 1:30 p.m., or as soon thereafter as the matter may be heard in Courtroom 4, 5th Floor, in the above-entitled court, located at 280 S. First Street, San Jose, California 95113, defendant, Jerry Wang ("defendant"), will move the Court for an order suppressing all evidence obtained directly or indirectly as a result of a search of the premises of Herguan University and the University of East West Medicine, conducted on August 2, 2012. The basis for this motion is that the search warrant was issued without a sufficient showing of probable cause, the warrant was overbroad, the warrant was based on stale evidence, and did not state with specificity the basis for seizure.

Accordingly, the warrant should not have issued, and because the affidavit was so lacking in probable cause, no law enforcement officer could reasonably rely upon it and therefore the good faith exception does not apply. Furthermore, the affidavit omitted material facts that would have undermined the claim of probable cause, such that the magistrate would have viewed the request for a warrant in a different light and would not have issued it.

This motion is supported by the attached Memorandum of Points and Authorities, the attached exhibits, the Court file, and such evidence as may be adduced at a hearing on the matter.

Dated: July 26, 2013                    McMANIS FAULKNER


                                        /s/ Tyler Atkinson
                                        JAMES McMANIS
                                        MATTHEW SCHECHTER
                                        TYLER ATKINSON

                                        Attorneys for Defendant
                                        JERRY WANG

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR PREMISES SEARCH); Case No. CR 12-581 EJD

1

## TABLE OF CONTENTS

2   INTRODUCTION ................................................................................................ 1

3   FACTUAL BACKGROUND ............................................................................... 4

4
        I.    THE AFFIDAVIT IN SUPPORT OF THE WARRANT
5              APPLICATION ........................................................................... 4

6       II.   THE SCOPE OF THE WARRANT ISSUED ................................... 8

7   LEGAL ARGUMENT ........................................................................................ 9

8       I.    DEFENDANT HAS A PRIVACY INTEREST IN THE
               SUBJECT RECORDS ................................................................... 9
9
        II.   THE SEARCH WARRANT WAS NOT SUPPORTED BY
10             PROBABLE CAUSE ..................................................................... 9

11              A.   The Supporting Affidavit's Facial Deficiencies ................... 10

12              B.   Lack of Probable Cause ..................................................... 13

13              C.   The Evidence Was Stale ..................................................... 13

14      III.  THE WARRANT WAS OVERBROAD ........................................ 14

15      IV.   THE AFFIDAVIT CONTAINS MATERIAL OMMISSIONS .................... 15

16
        V.    THE GOOD FAITH EXCEPTION DOES NOT APPLY .............................. 16
17
    CONCLUSION ................................................................................................. 18
18

19

20

21

22

23

24

25

26

27

28

i

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Durham v. United States*,
    403 F.2d 190. 193 (9 Cir. 1968) ............................................................................ 13

*Illinois v. Gates*,
    402 U.S. 213 (1983) ............................................................................................... 10

*In re Grand Jury Investigation concerning SSDI*,
    130 F.3d 853 (9 Cir. 1997) .................................................................................... 14

*Mancusi v DeForte*,
    392 U.S. 364 (1968) ................................................................................................. 9

*Rakas v. Illinois*,
    439 U.S. 128, 99 S.Ct. 421, 58 L. Ed. 2d (1978) ..................................................... 9

*U.S. v. SDI Future Health, Inc.*,
    568 F.3d 684 (9th Cir.2009) ..................................................................................... 9

*United States v. Lacy*,
    119 F.3d 742 (9 Cir. 1997) ..................................................................................... 16

*United States v. Gourde*,
    382 F.3d 1003 (9th Cir. 2004) ......................................................................... 10, 16

*United States v. Jones*,
    286 F.3d 1146 (9th Cir. 2002) ............................................................................... 10

*United States v. Kow*,
    58 F.3d 423 (9 Cir. 1995) ................................................................................. 15, 17

*United States v. Leon*,
    466 U.S. 897 (1984) ............................................................................................... 16

*United States v. Spilotro*,
    800 F.2d 959 (9 Cir. 1986) ..................................................................................... 17

*United States v. Stubbs*,
    973 F.2d 210 (9 Cir. 1989) ..................................................................................... 17

*United States v. Washington*,
    797 F.2d 1461 (9 Cir. 1986) ................................................................................... 17

*United States v. Weber*,
    923 F.2d 1338 (9th Cir. 1990.) ................................................................... 10, 14, 16

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR PREMISES SEARCH); Case No. CR 12-581 EJD

**Statutes**

18 U.S.C. § 2 ................................................................................................................... 1

18 U.S.C. § 371 ............................................................................................................... 1

18 U.S.C. § 1001(a)(3) .................................................................................................... 1

18 U.S.C. § 1030(a)(3) .................................................................................................... 1

18 U.S.C. § 1546(a) ........................................................................................................ 1

iii

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## INTRODUCTION

3      Defendant was the Chief Executive Officer and President of Herguan University (HGU)

4 and the University of East-West Medicine (UEMW), which shared a campus in Sunnyvale,

5 California.  Defendant was also the Designated School Official (DSO), authorized by SEVIS, a

6 unit of the Department of Homeland Security (DHS) and Immigration and Customs Enforcement

7 (ICE.)  SEVIS administers the program by which U.S. schools are authorized to admit foreign

8 students and to issue them visas for their studies.  Under the SEVIS-run program, "DSOs" are

9 given access codes which allow them to enter the name and other information about a student

10 and then print out a Form I-20, essentially, proof of a lawful student visa.  Schools obtain the

11 authority to admit students and issue I-20s by filing and having approved a petition known as a

12 Form I-17.

13      On July 24, 2012, the Grand Jury returned an indictment, charging defendant with:

14 • Conspiracy to Commit Visa Fraud (18 U.S.C. § 371);

15 • Aiding and Abetting Visa Fraud (18 U.S.C. § 1546(a) and 18 U.S.C. §2);

16 • Aiding and abetting Unauthorized Access to Government Computer (18 U.S.C. §

17      1030(a)(3) and 18 U.S.C. § 2);

18 • Use of False Document (18 U.S.C. § 1001(a)(3))

19      Before the indictment was unsealed and before defendant was arrested, Agent Jason

20 Mackey of ICE applied for a search warrant for the premises of HGU and UEWM, seeking

21 documents and computers which would contain evidence of the alleged crimes.

22      The warrant sought defendant's papers and records—including multiple parties' broadly

23 categorized financial records—along with the papers and records of the respective schools and of

24 defendant's parents.  The warrant lacked any restriction on the time period responsive to the search,

25 resulting in seizure of documents dating back as far as 2000.

26      As addressed below, the affidavits offered in support of the warrant applications, one for

27 email and one for a premise search, simply recounted a series of speculative claims and unfair

28 inferences based on interviews of non-English speaking witnesses with patently foggy memories.

Relevant dates and gaps in time were glossed over.  The affidavits' allegations and characterizations, upon examination and taken into context, do not provide probable cause bases for either warrant:

- <u>Allegation Defendant Lied About 900 Students "Physically" Attending School</u>.  The government insists Wang claimed 900 people physically attended HGU.  This contention is belied by the fact that, at the time Wang allegedly made this statement, he also, according to the government's affidavits, said that many of the students were not present and attending classes *online*.[1]  The affidavits also fail to mention the enormous physical size—33,500 square feet of usable space—and the large staff teaching at of the school site.

- <u>Allegation School Used Online Teaching Methods</u>.  There is no legal authority offered to demonstrate that online teaching is criminal.  Moreover, HGU's use of technology in education was not regulated or proscribed during the time at issue.

- <u>Allegation of Dual Enrollment</u>.  There is no legal authority offered to demonstrate that any students' dual enrollment in both UEWM and HGU, two sister schools operating at the same location, was criminal.

- <u>Allegation Guan Was Not Enrolled at HGU and Did Not Work For Vital Core</u>.  Guan was not sure whether he attended HGU.  The email affidavit fails to aver this critical fact, although it is included in the affidavit to search the premises.  Moreover, Guan worked for Vital Core, but knew it by its Chinese name.  The investigation should have revealed this fact.  In addition, the affidavits fail to note that English is not Guan's first language, and the interview was not done by a professional interpreter.

- <u>Allegation Zheng Did Not Recall Attending HGU And Had A Different Job Title</u>.  Zheng simply did not recall whether she received HGU transcripts.  She could not say definitively whether she was enrolled at HGU.  Moreover, the records she was

---

[1] It should be noted for the record that "online" classes fall into a variety of categories.  At the time of the site visit, HGU implemented a type of online option called simultaneous broadcasting or "simul-broadcasting."  This is different from, for example, an online course with a correspondence component, which is considered less academically rigorous.

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR PREMISES SEARCH); Case No. CR 12-581 EJD

asked about were several years old.  As for her job title or responsibilities, Zheng simply did not and does not remember all of the tasks she performed or any "official" job title.

- <u>Allegation David Wang Did Not Work For IIHH</u>.  The government did not interview David Wang.  Ling Li did not remember writing an employment letter or recall IIHH, but did acknowledge that the letter appeared to bear her signature.  Furthermore, the affidavits fail to aver that Ling Li, who operates a school, has a vested interest in not entangling herself with the allegations charged against defendant.

- <u>Allegation Bella Did Not Sign Accreditation Letter</u>.  Andres Bella claimed he would not have signed an HGU accreditation letter.  However, the affidavits fail to disclose that Mr. Bella, who operates a school, has a vested interest in not entangling himself with the allegations charged against defendant.  Moreover, like Ling Li, Bella corroborated the authenticity of the letter by acknowledging that it bore his signature.

- <u>Allegation Wang Sought A Phony Academic Warning Letter</u>.  The premises search affidavit discusses an SEVP request for academic warning letters following a site visit the month before.  A former employee of HGU, Anthony Martinez, met with HSI officers and gave them emails purportedly between defendant and a Vice President.  In the emails, defendant appears to inquire about providing a single, *pro forma* warning letter for investigators.  Defendant purportedly asks, "can you create *one*."  (emphasis added.)  There is no mention in the reported exchange about an intent to *mislead* investigators.  Defendant does not request that someone create false warning letters.  In poor English, defendant purportedly informed his colleague that they apparently do not maintain copies of warning letters: "we never have academic warning letters."  (As opposed to, "we never write warning letters" or "we never send warning letters.")

- Any other "discrepancies" can easily be attributed to the passage of time—in some cases five years—resulting in faded memories.  Moreover, none of the key witnesses interviewed speak English as a first language, and the government failed to obtain

3

professional interpreters for the interviews.

## FACTUAL BACKGROUND

### I.  THE AFFIDAVIT IN SUPPORT OF THE WARRANT APPLICATION

The purported basis for the search warrant is set forth in the Affidavit of Jason Mackey, a Special Agent with the Department of Homeland Security.  In the Affidavit, Agent Mackey explains he has been a Special Agent with DHS since 2002 and, since 2009, he has been assigned to the Document and Benefit Fraud Task Force.  He participated in at least 50 visa fraud cases since 2004, three of which involved educational systems.  He also sets forth the procedures by which a school files a Form I-17 to obtain authority to admit foreign students, and to issue I-20 visas using an access code provided by SEVIS.

On July 30, 2007, the SEVP conducted a site-visit at the schools' former premises. (Mackey Affidavit at ¶ 19.)  There, defendant Jerry Wang was identified as an owner of HGU. According to the affidavit, defendant gave the SEVP inspector the original petition by HGU to enroll foreign students, as well as three accreditation letters to show that other schools would accept transfer students from HGU.  Mackey reports he interviewed the author of one of the three letters, Mr. Andres Bella, and Bella denied writing the letter for HGU and said he had written one for UEWM.  Mackey does not state when he interviewed Bella.  (*Id.* at ¶ 21), although it is clear from Mackey's affidavits that this interview took place several years after the letter was written.

Mackey also discusses a second letter from UEWM, which stated that Su Tong, defendant's mother, transferred to UEWM from HGU.  Mackey states that the author, Alex Shi, had no recollection of the events described in the letter.  Again, there is no reference to when the interview occurred.  It is clear from Mackey's affidavits that this interview took place several years after the letter was written.

There was a third letter, from Lawrence Lau at Yo San University of Traditional Chinese Medicine, which Mackey grudgingly concedes was not improper.  (*Id.* at ¶ 22.)  Mackey notes that neither the Shi letter nor the Lau letter are charged in the criminal indictment. (*Id.*)

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR PREMISES SEARCH); Case No. CR 12-581 EJD

1    Mackey then proceeds to list what he terms a fraudulent supplemental submission to

2    SEVP.

3    According to the affidavit, on August 8, 2007, SEVP requested letters from three schools

4    attesting that they have accepted credits from HGU or three letters showing that graduates of

5    HGU are hired to work in their field because of the training they received. (*Id.* at ¶ 23.)  The

6    affidavit admits it is not clear why SEVP requested three more articulation agreements; SEVP

7    personnel are not able to say based on their records.  (*Id.*)  Moreover, neither the affidavit, nor

8    any authority provided by the government to date, connects SEVP's demand for employment

9    letters to any particular regulation under the I-17 process.  The government effectively concedes

10    its demand for employment letters was gratuitous.

11    The affidavit then states defendant sent a cover letter with employment letters and

12    transcripts for three HGU graduates, Candace Zhang, Shane Guan, and David Wang. The cover

13    letter itself was undated, but SEVP records show it was received on August 16, 2007 (*Id.* at ¶

14    24.)  The first employment letter was signed by Mr. Shi, and stated that Candace Zhang had

15    worked as "an herbal consultant/manager assistant" and graduated from HGU in April 2007.

16    Mackey states that Shi could not recall Zhang's position but remembered she had worked at the

17    school. The declaration also states, without any details as to the circumstances or time, that

18    Zhang had said she had never attended HGU but did graduate from the collocated UEWM in

19    December 2008.  While the interview was several years after her attendance, Ms. Zhang

20    expressed her belief that there were inaccuracies as to the dates of attendance as well.  She also

21    said that she worked as a receptionist for UEWM.  (*Id.* at ¶ 25.)  Ms. Zhang apparently did not

22    express any opinion about whether HGU had different graduation requirements from UEWM, or

23    whether HGU required less units to graduate.

24    The third letter was from a Jing Gang Tang of Vital Core Bisosystems (Vital Core), who

25    wrote that Shane Guan graduated from HGU on April 15, 2007, and was employed by Vital Core

26    as a marketing officer. Again, while no date or other details are provided, Mackey writes that

27    Guan was interviewed and said he had never heard of Vital Core and never worked for them.  He

28    purportedly said he was a student at UEWM and had not graduated.  He also told the agent that

5

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

1   he might have taken courses at HGU and graduated without realizing it.  Mackey then states

2   once more with no details or even a date, that he interviewed Tang, the author of the Vital Core

3   letter, and Tang recalled it being a reference letter to help Guan find a job and that he did not

4   know Guan and felt pressured to sign it. (*Id.* at ¶ 26.)

5        The third letter was from a Lin Lee of International Institute for Health and Healing

6   (IIHH) starting that David Wang was an Herbal Researcher who graduated from HGU on April

7   15, 2007.  Without further explanation, Mackey refers to an undated interview with "Li," who

8   denied having seen the letter or having worked for IIHH or knowing David Wang.  She admitted

9   the signature looked like hers and the phone number on the letter was her cell phone.

10       David Wang was never located and therefore never interviewed. (*Id.* at ¶ 27)

11       Mackey then refers to unauthorized SEVIS access and allegedly forged I-20 visas, which

12   are the documents issued to students once they have been accepted to an authorized school.  (See

13   *Id.* at ¶ 12.)  Defendant allegedly authorized two former employees to use his account with

14   SEVIS to create I-20s for new students and to sign the I-20s.  (*Id.* at ¶¶ 28-32.)  The affidavit

15   does not specify what law would have prohibited defendant from delegating his job duties.

16       According to the affidavit, defendant hardly ever appeared at the office. (*Id.* at ¶ 30.)

17   Wang supposedly asked one of the employees to become a DSO on her own, and she declined.

18   (The government's affidavits do not report the fact that other employees were willing to act as

19   DSO, but SEVIS was apparently backlogged in setting up new credentials.)

20       On November 10, 2010 SEVP and ICE agents toured the HGU / UEWM campus,

21   whereupon Mackey interviewed defendant.  (*Id.* at ¶¶ 31-41.)

22       Defendant told agents attendance is monitored by sign-in sheets, and students receive a

23   failing grade if they fail to attend classes.  Defendant also said that foreign students failing to

24   meet academic standards are issued warning letters and then terminated in SEVIS.  Defendant

25   also stated that student records were then stored in a locked fireproof cabinet in the registrar's

26   office.  (*Id.* at ¶ 33.)

27       Defendant stated students were allowed to attend classes online but that this was

28   temporary and would end soon.  At the end of the site visit, SEVP asked defendant to provide

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

1   attendance records, academic warning documents, and transfer agreements with other schools.

2   (*Id.* at ¶ 34.)  Defendant submitted a response on December 16, 2010.  Defendant included a

3   letter confirming his statements about online (or, more accurately, simulcasted) courses, but

4   Mackey believed that many student had been taking all online courses since Fall 2009.  (*Id.* at ¶

5   35.)  The affidavit does not specify which law was purportedly violated by permitting students to

6   attend courses by simulcast.  (Also missing from the warrant affidavits is an acknowledgment

7   that classes *were* taking place at the time on the site visit; Mackey did not consider them to be

8   classes because they did not have a large number of students in *physical* attendance.)

9          The affidavit refers to emails between defendant and HGU's Vice President of

10  Organizational Development, written between the SEVP site visit and the submission by

11  defendant on December 16, 2010.  In the emails, defendant asks the Vice President for an

12  academic warning letter, saying that the school did not have one. (*Id.* at ¶ 37.) Mackey contends

13  the Vice President sent a response with two sample letters, virtually identical to the letters

14  defendant submitted on December 16, 2010.

15         Mackey reports that in June, 2012, he interviewed Michael Brodsky, President of Lincoln

16  University in Oakland, who stated in late 2010 or early 2011, an Asian family consisting of a

17  husband, wife, and son, approached him at his office and told him they were the owners of HGU

18  and attempted to bribe him for an articulation agreement, which he declined. There are no other

19  details, such as how the bribe was presented, what it consisted of, who proposed it, and what role

20  if any defendant played.  No names or other identifiable information was provided. (*Id.* ¶ 41)

21         Agent Mackey describes what he characterizes as a "Commingling of UEWM and HGU

22  Foreign Students," contending that HGU enrolled at least some UEWM students without their

23  knowledge.  *Id.* at ¶ 42-45.  The basis of the claim is that between April, 2007, and September,

24  2008, UEWM enrolled students in programs that UEWM was not authorized to offer.  In support

25  of this contention, Mackey relays an undated interview with a former employee, Ling Zhang. (*Id.*

26  at ¶ 45.)  The only other evidence he offers is a letter postmarked November 8, 2007, from an

27  unnamed person who claimed to have graduated from UEWM when he had enrolled in HGU

28  (the exact opposite of Mackey's speculation.)  (*Id.* at ¶ 45.)

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

1    The narrative portion of the affidavit concludes with a section addressing financial

2    records.  This section merely states that there is a bank account indicating money was collected

3    from students and subsequently withdrawn.  This section is void of relevance.  (*Id.* at ¶¶ 46, 47.)

4    **II.      THE SCOPE OF THE WARRANT ISSUED**

5    Attachment B of the Warrant application is titled "Items to Be Seized."  This attachment

6    seeks evidence, fruits, or instrumentalities of specific crimes, specifically, Conspiracy to Commit

7    Visa Fraud, Visa Fraud, Unauthorized Access to a Government Computer, Use of False

8    Documents, Aggravated Identity Theft, and Aiding and Abetting. Not surprisingly, these offense

9    are the very offenses charged in the indictment returned on July 24, 2012, following an

10   investigation of over four and a half years, the last action undertaken by the government

11   occurring in November, 2010, and the last action taken by defendant in December of 2010.

12   Precious little information has been provided by the government about what it did—or did not do

13   –to verify or investigate the documents in 2007.

14   Agent Mackey executed the affidavit on July 31, 2012, and it was presented to the

15   magistrate and issued the same day.  The warrant seeks: "Records related the [sic] acquisition

16   and maintenance of foreign students (F-1) status for current and former foreign Herguan

17   University (HGU) and University of East West Medicine (UEWM) students and applicants for

18   the period between July 6, 2007 and the present" and specifies numerous documents related to

19   applications and obtaining and maintaining student status as a foreigner.  (Attachment B §1.)

20   Section 2 of Attachment A seeks records related to HGU and UEWM's authorization to

21   admit foreign students.  The I-17 petition was filed in 2007 and the last request for information

22   on this procedure was issued in November 2010.  The last response was in December 2010.

23   Paragraph 3 seeks records relating to David Wang, Shane Guan and Candace Zhang, who

24   are referenced in the affidavit and Zhang and Guan are referenced in the indictment as well in

25   Counts 7-15, identified as "C.Z." and "S.G."

26   Paragraph 4 seeks travel records for defendant from the period February 14, 2008 through

27   the present, including passports and all travel related documents.

28

8

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

1    Next, the warrant seeks address books, telephone lists and directories and telephone

2    records of defendant and his parents from July 6 to the present, financial records related to the

3    two schools, IIHH, defendant at and his parents.  Also sought are evidence of properties owned

4    or leased by the defendant and his parents or the two schools.  (*Id.* at ¶¶ 5-7.)

5    Paragraph 8 seeks "receipts relating to or constituting proceeds from the production or

6    filing of fraudulent visa applications or visa related forms, or relating to or constituting payments

7    from foreign nationals for the maintenance of immigration status, for the ;period between

8    February 14, 2008 , and the present."

9    Following the search, the government returned some of the computers, some of which

10   were damaged or destroyed, and several boxes of records.  The government retained numerous

11   other records, including student records, visa materials and financial records.  Defendant has

12   been provided a disc with these items but it is unclear how and for what purpose the government

13   would use the evidence.

14                                   **LEGAL ARGUMENT**

15   **I.  DEFENDANT HAS A PRIVACY INTEREST IN THE SUBJECT RECORDS.**

16   In order to invoke the Fourth Amendment and seek suppression of evidence obtained in

17   violation thereof, the moving party must have standing, which the Supreme Court has held to be

18   based upon a "legitimate expectation of privacy."  *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421,

19   58 L. Ed. 2d (1978.) Here, the warrant specifically sough defendant's emails and business

20   records of the schools.  The affidavit identifies defendant as an "owner" of HGU.  (Mackey

21   Affidavit ¶ 20.)

22   The owner of a business has a reasonable expectation of privacy in their offices and their

23   homes.  *Mancusi v DeForte*,  392 U.S. 364 (1968.)  A non-owner employee, particularly a

24   manager, will have standing based on a reasonable expectation of privacy in his office and in

25   other parts of the business.  *U.S. v. SDI Future Health, Inc*., 568 F.3d 684, 698 (9th Cir.2009.)

26   **II.  THE SEARCH WARRANT WAS NOT SUPPORTED BY PROBABLE CAUSE.**

27   The warrant should not have been issued because the affidavit was facially deficient, and

28   the facts alleged in the affidavit do not provide probable cause to believe relevant evidence

9

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

1  would be found on the premises to be searched at the time the warrant was requested.

2  Furthermore, the affidavit, and the ensuing warrant, were based on exceedingly stale

3  information.

4         A magistrate presented with a search warrant application must make a "practical,

5  common-sense decision whether, given all the circumstances set forth in the affidavit before him

6  . . . there is a fair probability that contraband or evidence of a crime will be found in a particular

7  place." *Illinois v. Gates*, 402 U.S. 213, 238 (1983.)  While great deference is afforded to the

8  magistrate's finding, there must always be such substantial basis for finding probable cause.

9  *United States v. Jones*, 286 F.3d 1146, 1150 (9th Cir. 2002.)

10        Under the Fourth Amendment, there are two related but distinct rules governing issuance

11  of a search warrant.  "First, it must describe the place to be searched or things to be seized with

12  sufficient particularity, taking account of the circumstances of the case and the type of items

13  involved. Second, it must be no broader than the probable cause upon which it was based."

14  *United States v. Weber*, 923 F.2d 1338, 1342 (9th Cir. 1990.)  In *Weber*, the Court cautioned

15  against creating a lengthy chain of inferences to buttress probable cause. 923 F.3d 1344-45; *see*

16  *also United States v. Gourde*, 382 F.3d 1003, 1011 (9th Cir. 2004.)

17        **A.      The Supporting Affidavit's Facial Deficiencies**

18        In the present case, the Mackey Affidavit was facially deficient as it failed to present

19  facts that would allow a reasonable magistrate or law enforcement officer to believe the targeted

20  HGU or UEWM records—with no limitation as to time—were relevant to the allegations of the

21  indictment.

22        As a threshold matter, the affidavit fails to explain why allegations of "online course" or

23  the school's alleged failure to maintain academic standards are crimes.

24        In addition, while the government's investigation was nearly five years in the making,

25  and English is not the native language of any of the material witnesses—and most of the material

26  witnesses do not speak English fluently—no attempt was made by the investigators to use

27  professional interpreters or translators in conducting the interviews upon which the warrant is

28  based.  (Indeed, as to many of the perceived discrepancies identified by the investigation, the

1  government's confusion about certain facts could easily have been remedied by a professional

2  interpreter.)

3      The affidavit refers to the filing of the Form I-17 petition for authority to admit foreign

4  students.  The affidavit then discusses documents which were provided in response to requests

5  from SEVP; these documents consisted of employment letters, accreditation or transfer letters,

6  and student transcripts of three individuals.  (*Id.* at ¶¶ 23-24.)  These documents were allegedly

7  transmitted in August 2007.

8      Agent Mackey also interviewed Tang in September 2011 concerning an employment

9  letter he had written in 2007.  Mackey also interviewed Shan Guan, the student discussed in the

10  letter.  (*Id.* at ¶ 26.)  Mackey reports Tang had not read the letter and thought that it was a

11  reference letter.  Mackey further reports Guan did not recall working at "Vital Core" or attending

12  HGU.  Guan did, however, say that he studied at UEWM, which is collocated with HGU.  (*Id.*)

13  Guan also worked at the site as well, but did not recall specifics.  Mackey previously identified

14  Vital Core as a business entity affiliated with the Wang family.  It was not established in the

15  Affidavit whether Vital Core may have had alternative names, including a Chinese name, despite

16  the fact that all of the individuals involved are from China and do not speak English well.

17      Zheng stated she had worked as a receptionist for UEWM as opposed to the job described

18  in the employment letter, and she had not attended HGU, only UEWM.  (*Id.* at ¶ 30.)

19      More than four years later, in September, 2011, Mackey interviewed the authors of the

20  employment letters and two of the students, and determined that the letters and transcript

21  submitted back in 2007 were fraudulent.  One of the authors, Shi, recalled little about the

22  employment of Zhang.  Ling Li also recalled little but did state that the signature looked like hers

23  and that the cell number referenced in the letter belonged to her as well.  (*Id.* at ¶¶ 27.)  (Ling Li

24  also admitted to trying to buy an accreditation letter for her own school.)

25      The affidavit discusses two accreditation letters which are allegedly fraudulent.  One

26  letter, by Andres Bella of ACCHS, was dated February 14, 2008.  Bella was interviewed in

27  September 2011, when he stated he had not written the letter for HGU.  (*Id.* at ¶¶ 21.)  There

28  are no allegations of forensic analysis showing that Bella's signature was forged or that the

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

1   document was otherwise doctored.

2        The second accreditation letter was written by Shi of UEWM, who also wrote the Zhang

3   employment letter.  The Shi accreditation letter was submitted on February 14, 2008.  Shi was

4   interviewed in September of 2011, when he could not recall anything about the letter or the

5   transfer student issue.

6        Jumping to December 2010, the affidavit discusses the SEVP request for academic

7   warning letters following a site visit the month before.  In emails purportedly written by

8   defendant, defendant appears to inquire about providing a *single* pro forma warning letter to

9   investigators.  There is no mention in the reported exchange about an intent by defendant to

10   mislead investigators about generating multiple fake letters.  Defendant does not request that

11   someone create even one false warning letter.

12        It is further not alleged in the affidavit that defendant represented to investigators that (a)

13   he knew with certainty that the school kept copies of previously issued warning letters, (b) he

14   had access to such copies, and (c) he would deliver exact copies of these letters to the

15   investigators.  The Vice President, who did not meet with the investigators, apparently thought

16   the investigators wanted exact historical copies states that this is not proper.  (*Id.* at ¶¶ 55-58.)

17   The affidavit does not provide material context to this communication, in particular, defendant's

18   poor English writing skills.  The affidavit also does not explain how a purportedly false academic

19   warning letter represents *visa fraud*.

20        Mackey states Martinez gave him an email which Martinez had sent to defendant, in

21   which Martinez claims that he had received an email from a student who stated that he had

22   enrolled in HGU in January of 2010 because it was "fully online" and he had no intention of

23   coming to campus. (*Id.* at ¶ 59.)  The affidavit does not provide any evidence defendant knew of

24   the Martinez email, or knew about any alleged representations regarding online classes. The

25   affidavit also does not provide a legal basis for finding that online classes are unlawful, or that

26   defendant acted unlawfully in connection with the Martinez email.

27   ///

28   ///

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

**B.**     **Lack of Probable Cause**

The evidence offered to support a probable cause finding was, in summary, no more than a mélange of five-year-old faded memories, an ambiguous email, and a suggestion that online classes would have been impossible or illegal.  The government avers that these allegations support probable cause that defendant engaged in visa fraud in 2007, and that somehow, relevant documents would be found at the subject premises, in 2012.

However, the affidavit fails to provide legally compelling inferences to support a finding of probable cause.  Moreover, the affidavit fails to show how premises records would be related to the allegations of 2007.  In addition, the lack of any specificity or limitations as to what was to be seized, including an operative time period, demonstrate that the warrant was part of an impermissible fishing expedition.

**C.**     **The Evidence Was Stale.**

"[A]n affidavit must be based on facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."  *United States v, Lacy*, 119 F.3d 742, 745 (9 Cir. 1997.)  The information contained in the affidavit establishing probable cause must be current and not "stale" as the issue is the likelihood of finding the identified evidence in the specific location. The court must evaluate the staleness of the information in the affidavit "in light of the particular facts of the case and the nature of the criminal activity and property sought."

Here, there is nothing in the affidavit to suggest that, in 2012 a search would uncover evidence of ongoing visa fraud.  The crux of the factual allegations centers around the year 2007 and an ambiguous email exchange in 2010.  Based on these allegations, the government sought a sweeping warrant for a wide range of items, including financial records, tax records, and student records with no temporal limitations.  The government sought free range to look for evidence, with limitations at all as to categories of evidence.  *See Durham v. United States*, 403 F.2d 190. 193 (9 Cir. 1968) ("The most convincing proof that property was in the possession of the person or upon the premises at some remote time in the past will not justify a present invasion of privacy.")

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR PREMISES SEARCH); Case No. CR 12-581 EJD

1   Thus, the fact, even if established, that the defendant was in possession and used

2   fraudulent documents or applications in 2007 in no way provides probable cause to believe that

3   the same is true in 2012 or that a search of email and other Google data would reveal such

4   information.  In *Weber*, the Court cautioned against creating a lengthy chain of inferences to

5   buttress probable cause. *Weber, supra*, 923 F.3d at 1344-45.  Here, there is nothing contained in

6   the affidavit which would suggest that the items sought would in fact be present at the time of the

7   search. The petition was filed in 2007, and responses to the request for evidence supporting the

8   petition were submitted in 2007 and 2008. In 2010, there was simply a request for a warning

9   letter, and an attempt to provide a sample letter, which is not in itself a criminal matter.

10   The warrant is further undermined by the sheer delay between when the investigation of

11   the facts began in 2007 and when the warrant was actually sought and issued, four and a half

12   years later.

13   **III.     THE WARRANT WAS OVERBROAD**

14   A warrant may not be overbroad, and generally must be limited in the items to be seized

15   and, if dated records, limited as to dates.  In *In re Grand Jury Investigation concerning SSDI*,

16   130 F.3d 853 (9 Cir. 1997), a federal investigator learned from interviews with two SSDI

17   employees that SSDI had acquired commercial grade semiconductors that did not meet the

18   standards required under SSDI's contacts to provide semiconductor to the government.  SSDI

19   employees then mislabeled these semiconductors and falsified laboratory reports. The

20   government sought a warrant seeking all documents relating to purchases, sales, compliance and

21   testing from the year 1990 to 1995, the time of the warrant. Thousands of file drawers of records

22   were seized.

23   The Ninth Circuit held the warrant was impermissibly broad as the only limitations were

24   that the evidence relate to government semiconductor programs and be dated between 1990 and

25   1995.  The government did not specify why it selected the dates it chose, and agreed that the

26   warrants were very broad, but argued SSDI was so pervaded by fraud that there was probable

27   cause to seize the majority of its documents.  The Ninth Circuit found the government had not

28   provided probable cause to believe that the entire business was fraudulent such that the warrant

14

1   was valid.  Citing *United States v. Kow*, 58 F.3d 423 (9 Cir. 1995), the Court noted that "[a]

2   generalized seizure of business documents may be justified if the government establishes

3   probable cause to believe that **the entire business** is merely a scheme to defraud or that **all** of the

4   business's records are likely to evidence criminal activity."  130 F.3d 853 at 856.  The evidence

5   did not support a finding that the business **only** engaged "negligibly in legitimate business

6   activities." *Id.* at 857. The court further held: "Where a business appears, as SSDI does here, to

7   be engaged in some legitimate activity, this court has required a more substantial showing of

8   pervasive fraud that was provided by the Government in the instant case." 130 F.3d at 857.

9          In the present case, the tenuous showing presented by the affidavit and described above

10  does not demonstrate that HGU and defendant, whose records were searched without limit, were

11  only engaged in illegal business or only involved a negligible amount of legitimate business—

12  indeed, the allegations do not support a view that *any* improper conduct occurred.

13         Moreover, none of the allegations explain why the government should seek, or is entitled

14  to, all financial and tax records. (Attachment A, section III.)

15         **IV.    THE AFFIDAVIT CONTAINS MATERIAL OMMISSIONS**

16         Here, the affidavit refers to numerous interviews with witnesses whose statements

17  support the warrant.  None of these references state the date of the interviews. (See Mackey

18  Affidavit at ¶¶ 21, 22, 25, 26, 27, 28-29, 30- 31, 44.)  All of the events at issue occurred in 2007

19  (*Id.* at ¶¶ 21, 22, 25, 26, 27, 44), or between May 2009 and August 2010, or between October,

20  2008 and September 2009.  (*Id.* at §§ 28-29, 30-31.)  The only interview date offered is the

21  interview of Mr. Brodsky (*id.* at ¶ 41) of Lincoln University, and the information provided by

22  Mr. Brodsky does not even identify defendant as being involved and the information is so vague

23  as to be useless in a probable cause determination.

24         Defendant has also challenged the email search and has filed a motion with this Court.

25  Attached to that motion is an affidavit of Agent Mackey dated January 24, 2012.  In that

26  affidavit, which was submitted to a different magistrate than the warrant at issue, Agent Mackey

27  disclosed all of the above interviews took place in September 2011. (See Mackey Affidavit In

28

15

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

1 | Support of Email Warrant, ¶¶ 36 (Zhang), 37, 50 (Shi), 40 (Ling Li), 44 (Tang), 47 (Guan), 46
2 | (Bella.)

3 |      The failure to disclose that most of the interviews occurred almost five years after the

4 | events at issue would cause a magistrate to infer the interviews were conducted at a time

5 | reasonably close to the events.  The revelation that the interviews used to support the current

6 | warrant were conducted four and a half years after the documents were submitted and between

7 | two and four years after the last observed allegedly unauthorized I-20 issuance would have

8 | caused a magistrate to wonder why the interviews took so long to be done, and whether the

9 | information could be deemed reliable.

10 | **V.     THE GOOD FAITH EXCEPTION DOES NOT APPLY**

11 |      There is a "good faith" exception to the probable cause requirement, available where the

12 | officers who executed the warrant could reasonably rely upon the magistrate's finding of

13 | probable cause. This exception does not apply here, for several reasons, detailed below.

14 |      The affidavit did not state why the targeted documents would be found on the premises.

15 | The Supreme Court has held that if an officer objectively, reasonably relies in good faith on a

16 | search warrant issued by a magistrate, then even a later finding of lack of probable cause will not

17 | compel suppression. *United States v. Leon*, 466 U.S. 897 (1984.)

18 |      Since HGU and UEWM shared a facility and had common ownership, it could not

19 | reasonably be assumed that any student at one of the schools who took courses at the other and

20 | received credit was engaged in or a victim of illegal activity.  There is no such claim that any

21 | student who takes courses in both schools is in violation of any law or regulation. Guan's

22 | acknowledgment further undermines the government's assumption that this was always done

23 | illegally or unknowingly.

24 |      Courts have held that if there was no time pressure in obtaining or executing the warrant,

25 | then the good faith exception is less likely to be found. See *Weber, supra*, at 923 F.2d 1346;

26 | *United States v.  Lacy*, 119 F.3d 742, 745 (9 Cir. 1997); *United States v. Gourde*, 382 F.3d 1003

27 | (9 Cir. 2004.)  Here, the government does not even attempt to account for years of idleness,

28 | while exculpatory documents were lost, and material witnesses' memories faded.

16

1    Thus, the good faith exception of Leon does not apply, and suppression "remains an

2    appropriate remedy" when a warrant is based on "an affidavit 'so lacking in indicia of probable

3    cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 823.

4    The affidavit is unreasonable as it sets forth no basis for believing that, at the date of the search,

5    the officers would find evidence based on events occurring almost exclusively in 2007, with

6    some occurring nearly two years before in 2010.  There is no showing that the documents sought

7    would contain evidence of the crimes alleged.

8        Furthermore, overbroad search warrants cannot be saved by the good faith doctrine.  *See*

9    *United States v. Kow*, 58 F.3d 423 (9 Cir. 1995) (search warrant for almost all business records

10   of a Hong Kong video business was so overbroad that agents could not have reasonably relied

11   upon it); *United States v. Washington*, 797 F.2d 1461 (9 Cir. 1986) (search warrant for evidence

12   of a prostitution ring was overbroad because among other things, it sought "evidence trending to

13   establish" the suspect's wealth and association with named persons, "but not limited to them".

14   The search warrant was thus so facially deficient that it could not be relied upon); *United States*

15   *v. Spilotro*, 800 F.2d 959 (9 Cir. 1986) (FBI was investigating bookmaking and loansharking in

16   Las Vegas; warrant was found to be overboard, and the good faith exception did not apply, as the

17   warrant sought items not generally evidence of crimes); *United States v. Stubbs*, 973 F.2d 210 (9

18   Cir. 1989) (search warrant for records in office were not particular; the facial invalidity

19   precluded the good faith exception.)

20       Suppression "remains an appropriate remedy" when a warrant is based on "an affidavit

21   'so lacking in indicia of probable cause as to render official belief in its existence entirely

22   unreasonable." *Leon*, 468 U.S. at 823, 104 S.Ct. 3405.  Even if there were a good faith exception

23   based solely on the lack of probable cause neutralized by good faith reliance, the *Franks* issues

24   result in a separate ground where the good faith exception does not apply as inherent in the

25   findings of the Court would be intentional or grossly negligent misrepresentations which would

26   preclude good faith reliance.

27   ///

28   ///

17

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR
PREMISES SEARCH); Case No. CR 12-581 EJD

**CONCLUSION**

The evidence seized as a result of the search should be suppressed; all evidence obtained as a result of the seized items also suppressed, and the documents should be returned to the original custodians.

Respectfully submitted,

DATED: July 26, 2013                    McMANIS FAULKNER


                                        /s/ Tyler Atkinson
                                        JAMES McMANIS
                                        MATTHEW SCHECHTER
                                        TYLER ATKINSON

                                        Attorneys for Defendant
                                        JERRY WANG

18

NOTICE OF MOTION AND MOTION TO SUPPRESS EVIDENCE (WARRANT FOR PREMISES SEARCH); Case No. CR 12-581 EJD