MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

HARTLEY M. K. WEST (CABN 191609)
Assistant United States Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-6747
      FAX: (415) 436-7234
      Hartley.West@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR 12-0581 EJD |
| Plaintiff, | ) |
| | ) UNITED STATES' OPPOSITION TO |
| vs. | ) DEFENDANT'S MOTION TO DISMISS |
| | ) COUNTS TWO THROUGH SIX |
| JERRY WANG, | ) |
| | ) Date:  December 13, 2013 |
| Defendant. | ) Time: 1:30 p.m. |
| | ) |

## I.     INTRODUCTION

Defendant Jerry Wang moves to dismiss Counts Two through Six of the Indictment on the basis that the allegations do not state an offense.  Specifically, he contends that he delegated his authority to sign visa-related documents and therefore cannot be guilty of aiding and abetting visa fraud, as charged in Counts Two through Five.  He further asserts that he delegated his authority to access a nonpublic government computer and therefore cannot be guilty of aiding and abetting unauthorized access, as charged in Count Six.  Both arguments fail.  The allegations, which the Court must accept as true, fairly state the offenses of visa fraud and unauthorized access.  Defendant's motion should thus be denied.

U.S. OPP. TO DEFT'S MTN. TO DISMISS
COUNTS TWO THROUGH SIX
CR 12-0581 EJD               1

1

## II.   SUMMARY OF RELEVANT FACTS

2     On July 24, 2012, a grand jury returned a 14-count Indictment against defendant based on

3  actions he took in connection with Herguan University, where he was and is CEO, located in Sunnyvale,

4  California.  The Indictment charges defendant with conspiracy to commit visa fraud, in violation of 18

5  U.S.C. § 371 (Count 1); aiding and abetting visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 2

6  (Counts 2-5); aiding and abetting unauthorized access of a government computer, in violation of 18

7  U.S.C. §§ 1030(a)(3) and 2 (Count 6); use of false documents, in violation of 18 U.S.C. § 1001(a)(3)

8  (Counts 7-13); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts 14 and 15).

9     Starting in July 2007, the Indictment alleges, defendant caused Herguan to submit a petition to

10  admit foreign students and supporting documents to the U.S. Department of Homeland Security (DHS),

11  Student and Visitor Exchange Program (SEVP), and that these submissions contained false

12  representations regarding Herguan's students as well as false transfer letters.  Indictment (Ind.) ¶ 11.

13     After SEVP approved Herguan's petition, the Indictment explains, defendant – as the school's

14  Designated School Official (DSO) – was issued a login ID and password enabling him to access

15  "SEVIS," "a nonpublic computer system . . . which is used by the United States government and

16  operated through SEVP for the purpose of collecting nonimmigrant student information from approved

17  schools and monitoring such aliens' status."  Ind. ¶ 7.  From SEVIS, "a Certificate of Eligibility for

18  Nonimmigrant ("F-1") Student Status, also known as a Form I-20," is issued and provided to the alien

19  student.  Ind. ¶ 8.  The I-20 "certifies that the student has been accepted for enrollment in a full course of

20  study, and is signed by a DSO."  *Id.*

21     In the "Manner and Means" section of Count One, Conspiracy to Commit Visa Fraud, the

22  Indictment alleges that defendant "caused a Herguan employee to access [his] SEVIS account without

23  SEVP authorization to enter data and create I-20s."  Ind. ¶ 12.  The "Overt Acts" section of the

24  conspiracy count alleges: "In or about May 2009, WANG instructed a Herguan employee to use

25  WANG's identification code and password to access SEVIS."  Ind. ¶ 15(f).  The Indictment further

26  alleges that, "[a]t WANG's instruction, the Herguan employee presented the printed I-20s to Y.W. and

27  S.T. to forge WANG's signature when WANG was unavailable.  At WANG's instruction, the forged I-

28

U.S. OPP. TO DEFT'S MTN. TO DISMISS
COUNTS TWO THROUGH SIX
CR 12-0581 EJD                                    2

1  20s were disseminated to Herguan students." *Id.* The Indictment identifies Y.W. as defendant's father

2  and Herguan's President, and S.T. as defendant's mother and Herguan's CFO. Ind. ¶¶ 2-3.

3  　　Rounding out the charges, the Indictment alleges that defendant "made false representations and

4  submitted false documents to DHS agents and SEVP officials, who contacted Herguan to ensure

5  compliance with applicable regulations." Ind. ¶ 14. Some of the falsified student records that defendant

6  submitted contained personal identifying information – including names, social security numbers, and

7  dates of birth – of true individuals without their authorization. Ind. ¶ 15(e).

8  　　As to the visa fraud charges, Counts Two through Five allege that, on specified dates and for

9  specified individuals, defendant:

10　　　did knowingly cause another to forge and falsely make a document prescribed by
　　　statute and regulation for entry into and as evidence of an authorized stay in the
11　　　United States, specifically a Form I-20 for each of the following individuals, and
　　　did knowingly cause another to use, attempt to use, possess, obtain, and receive
12　　　such document, knowing it to be forged, falsely made, and procured by means of
　　　a false claim and statement, and to have been otherwise procured by fraud and
13　　　unlawfully obtained.

14 Ind. ¶ 17. As to Count Six, charging unauthorized access, the Indictment alleges that defendant:

15　　　did knowingly and intentionally cause another to access, without authorization, a
　　　nonpublic computer of a department and agency of the United States, specifically
16　　　DHS's SEVIS, which is used by and for the Government of the United States and
　　　such conduct affects that use by and for the Government of the United States.

17

18 Ind. ¶ 19.

19　　　　　　　　　　**III.　ARGUMENT**

20　　A district court evaluating a motion to dismiss for failure to state an offense "is bound by the

21 four corners of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). "An

22 indictment which tracks the words of the statute charging the offense is sufficient so long as the words

23 unambiguously set forth all elements necessary to constitute the offense." *United States v. Fitzgerald*,

24 882 F.2d 397, 399 (9th Cir. 1989). The "indictment should be read in its entirety, construed according

25 to common sense, and interpreted to include facts which are necessarily implied." *United States v.*

26 *Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (internal quotation marks omitted). "[T]he court must

27 accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been

28

U.S. OPP. TO DEFT'S MTN. TO DISMISS
COUNTS TWO THROUGH SIX
CR 12-0581 EJD　　　　　　　　　　　　　3

1  charged." *Boren*, 278 F.3d at 914. For purposes of a motion to dismiss, the proof at trial is irrelevant.

2  *See id.*; *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996).

3      **A. Counts Two Through Five State the Offense of Aiding and Abetting Visa Fraud**

4      Counts Two through Five track the language of the visa fraud statute, 18 U.S.C. § 1546(a),

5  which accurately sets forth the elements of this offense. *See* Ninth Cir. Model Crim. Jury Instr. (2010)

6  Nos. 8.132 and 8.133. On its face, this is sufficient. *Fitzgerald*, 882 F.2d at 399. Moreover, the

7  allegations in the "Manner and Means" section of the conspiracy charge asserts that defendant instructed

8  a Herguan employee to get forged signatures on visa-related documents, the I-20 forms, and to have

9  these disseminated to Herguan students. Ind. ¶ 12. Reading the Indictment as a whole, as the Court

10  must, these allegations state the criminal offense of aiding and abetting visa fraud.

11      Defendant's argument that he delegated his authority to sign the I-20s is premature. In

12  considering a motion to dismiss, the Court "must accept the truth of the allegations in the indictment";

13  the eventual proof at trial is irrelevant. *Boren*, 278 F.3d at 914.

14      **B. Count Six States the Offense of Aiding and Abetting Unauthorized Access**

15      Counts Six, too, tracks the statutory language, setting forth all of the elements of 18 U.S.C.

16  § 1030(a)(3). *See* Ninth Cir. Model Crim. Jury Instr. (2010) No. 8.98. The factual allegations support

17  such an offense, as well. The Indictment alleges that DSOs are issued a login ID and password enabling

18  them to access SEVIS, which is "a nonpublic computer system" used by the United States government

19  and operated through SEVP. It alleges that defendant, as Herguan's DSO, "instructed a Herguan

20  employee to use WANG's identification code and password to access SEVIS." Ind. ¶ 15(f). It further

21  alleges that defendant "caused a Herguan employee to access [his] SEVIS account without SEVP

22  authorization to enter data and create I-20s." Ind. ¶ 12. Because these allegations must be taken as true,

23  *see Boren*, 278 F.3d at 914, defendant's arguments that he delegated his government-issued

24  authorization to access SEVIS and that he lacked criminal intent are irrelevant.

25      The decisions in *United States v. Nosal*, 676 F.3d 854 (9th Cir. 2012), and *LVRC Holdings LLC

26  v. Brekka*, 581 F.3d 1127 (9th Cir. 2009), do not change this conclusion, as both involve different and

27  inapplicable subsections of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, as well as

28

1    materially different facts.

2          Nosal was a former employee of an executive search firm who convinced some current

3    employees to download source lists and contacts from a confidential database on the company computer

4    and transfer that information to Nosal to help him start a competing business.  Company policy

5    authorized the employees to access the database, but only to work on the company's business.  *Nosal*,

6    676 F.3d at 856.  The government charged Nosal under 18 U.S.C. § 1030(a)(4) with aiding and abetting

7    the current employees in "exceed[ing their] authorized access" with fraudulent intent.  *Id.*  The Ninth

8    Circuit held that "'exceeds authorized access' in the CFAA is limited to violations of restrictions on

9    *access* to information, and not restrictions on *use*."  *Id.* at 864 (emphasis in original).  Because the

10   current employees were authorized to access the database, their use of the information they obtained

11   from it, the Court concluded, did not violate § 1030(a)(4).  *Id.*

12          *Brekka* is a civil case in which an employer alleged violations of § 1030(a)(2) and (a)(4) against

13   an employee who accessed the company computer during his employment for improper purposes.  See

14   *Brekka*, 581 F.3d at 1129-32.  As in *Nosal*, the Court distinguished between access and use:  "[A] person

15   who intentionally accesses a computer without authorization. . . accesses a computer without any

16   permission at all, while a person who exceeds authorized access . . . has permission to access the

17   computer, but accesses information on the computer that the person is not entitled to access."  *Id.*

18   Because the employer had authorized Brekka's use of the computer, the Court held that he did not

19   access it without authorization or exceed authorized access.  *Id.* at 1135 and n.7.  Finally, the Court

20   observed that "[t]here is no dispute that if Brekka accessed" the website after his employment ended, he

21   "would have accessed a protected computer 'without authorization' for purposes of the CFAA."  *Id.* at

22   1136.  There was insufficient evidence, however, that he had done so.  *Id.*

23          Whereas Nosal and Brekka involved defendants who had authorization to access a government

24   computer, but who did so for an improper purpose, in this case defendant is charged under § 1030(a)(3)

25   with aiding and abetting access to a government computer by someone who lacks authorization

26   altogether.  Section 1030(a)(3) makes it unlawful for one

27                    intentionally, without authorization to access any nonpublic computer of a
                      department or agency of the United States, [to] access[] such a computer of that
28                    department or agency that is exclusively for the use of the Government of the

1    United States or . . . is used by or for the Government of the United States and
      such conduct affects that use by or for the Government of the United States.

2

3   18 U.S.C. § 1030(a)(3).  Defendant's alleged conduct directly implicates restrictions on access, rather

4   than mere use restrictions.  *Nosal* and *Brekka* are therefore inapplicable.

5        Moreover, interpreting § 1030(a)(3) according to its plain text does not, as defendant suggests,

6   "criminalize a broad range of day-to-day activity," improperly "delegate to prosecutors and juries the

7   inherently legislative task of determining" what to prosecute as crimes, or "subject individuals to the risk

8   of arbitrary or discriminatory prosecution and conviction."  Def. Mtn. at 8 (citing *United States v.*

9   *Kozminski*, 487 U.S. 931, 949 (1981)).  Rather, it fulfills Congress's expressly articulated intent to

10  punish people for intentionally accessing nonpublic government computers without authorization and,

11  through 18 U.S.C. § 2, aiding and abetting such unauthorized access.

12       Defendant is right that the government expressly authorized him to access SEVIS when it gave

13  him – as DSO – an identification code and password.  The government did *not* grant access to Herguan

14  employees who were not DSOs.  When defendant caused an employee to access SEVIS without

15  government authorization, he aided and abetted the crime of unauthorized access to a government

16  computer.  The allegations underlying Count Six adequately state this offense.

17                    **IV.    CONCLUSION**

18       For the above-stated reasons, the Court should deny the defendant's motion to dismiss Counts

19  Two through Six.

20

21  DATED: November 8, 2013                    Respectfully submitted,

22                                             MELINDA HAAG
                                               United States Attorney
23
                                                  /s/
24
                                               _____
                                               HARTLEY M. K. WEST
25                                             Assistant United States Attorney

26

27

28

U.S. OPP. TO DEFT'S MTN. TO DISMISS
COUNTS TWO THROUGH SIX
CR 12-0581 EJD                              6