MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

HARTLEY M. K. WEST (CABN 191609)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6747
    FAX: (415) 436-7234
    Hartley.West@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR 12-0581 EJD |
| Plaintiff, | ) |
| vs. | ) UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS FRUITS OF EMAIL AND PREMISES SEARCH WARRANTS |
| JERRY WANG, | ) |
| Defendant. | ) Date:  December 13, 2013<br>) Time: 1:30 p.m. |

U.S. OPP. TO DEFT'S MTN. TO SUPPRESS
CR 12-0581 EJD

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................1
II.  SUMMARY OF RELEVANT FACTS ......................................................................1
    A.   The Email Search Warrant..............................................................................1
    B.   The Indictment ................................................................................................3
    C.   The Premises Search Warrant .........................................................................4
III. ARGUMENT ................................................................................................................5
    A.   The Magistrate Did Not Clearly Err in Issuing the Email Search Warrant ....5
    B.   The Magistrate Did Not Clearly Err in Issuing the Premises Search Warrant ..................10
    C.   At Minimum, the Good Faith Exception Applies ........................................11
IV.  CONCLUSION ..........................................................................................................12

# TABLE OF AUTHORITIES

**CASES**

Franks v. Delaware,
    438 U.S. 154 .................................................................................................................... 10

Messerschmidt v. Millender,
    _ U.S. _, 132 S. Ct. 1235 ................................................................................................. 14

United States v. Flyer,
    633 F.3d 911 .................................................................................................................... 10

United States v. Grant,
    682 F.3d 827 ............................................................................................................ 7, 9, 14

United States v. Kow,
    58 F.3d 423 ...................................................................................................................... 11

United States v. Leon,
    468 U.S. 897 .................................................................................................................... 14

United States v. Luong,
    470 F.3d 898 .................................................................................................................... 14

United States v. Nguyen,
    673 F.3d 1259 .................................................................................................................... 7

United States v. SDI Future Health, Inc.,
    568 F.3d 684 .............................................................................................................. 12, 13

United States v. Taylor,
    716 F.2d 701 .................................................................................................................... 10

## I. INTRODUCTION

Defendant Jerry Wang – the CEO of the Sunnyvale-based Herguan University and University of East-West Medicine (UEWM) – is charged in a fifteen-count Indictment with conspiracy, visa fraud, use of false documents, aggravated identity theft, and aiding and abetting unauthorized access of government computers. The Indictment generally alleges that Wang fraudulently obtained and maintained approval from the United States for Herguan to admit foreign students, and seeks forfeiture of all proceeds from that fraud and all facilitating property.

Wang now moves to suppress evidence obtained from search warrants for four school email accounts and for the schools' administrative offices on the ground that they are not supported byprobable cause and were overbroad. The magistrate judges did not clearly err in issuing the search warrants, which were supported by probable cause and articulated an adequate nexus to the items to be seized. Even were there error, suppression is unwarranted where, as here, the agents reasonably relied upon the magistrate judges findings of probable cause. The motions to suppress should thus be denied.

## II. SUMMARY OF RELEVANT FACTS

**A. The Email Search Warrant**

On January 24, 2012, U.S. Magistrate Judge Jacqueline Scott Corley issued a warrant to search four email accounts connected with Herguan and UEWM – fei@herguanuniversity.org, fei@uewm.edu, Richard@herguanuniversity.org, and Richard@uewm.edu – all located on the servers of Google, Inc. *See* MISC No. 3-12-70062 JSC ("Email SW"). The warrant was based on an affidavit submitted by Special Agent Jason Mackey of the U.S. Department of Homeland Security (DHS), Immigration and Customs Enforcement, Homeland Security Investigations (ICE/HSI). The affidavit alleges facts connecting the former two accounts with Wang, and the latter two with Herguan's Vice President, Richard Friberg. It asserts probable cause that these accounts contained evidence of, and were used in committing, the crimes of conspiracy, false statements, and visa fraud. As explained in the affidavit, visa fraud encompasses the use of a document prescribed by statute or regulation for entry into or as evidence of authorized stay in the United States, knowing it to have been procured by fraud. Email Aff. ¶ 9; 18 U.S.C. § 1546(a).

///

Agent Mackey's affidavit alleges that Wang and his father, Herguan's President, submitted false documents to DHS's Student and Exchange Visitor Program (SEVP) in support of Herguan's petition to admit foreign students, including false employment letters, student transcripts, and accreditation letters. Email Aff. ¶¶ 28-50.  Based on these submissions, Herguan's petition to admit foreign students was approved on February 14, 2008.  Email Aff. ¶ 52.

During a 2010 site visit to determine Herguan's compliance with SEVP regulations, the affidavit alleges, Wang made additional false statements regarding students physically attending classes and the school's attendance and academic probation policies.  Despite the fact that most of Herguan's facilities were under construction and did not appear fit for class use, as well as the lack of a single student on campus, Wang insisted that more than 900 foreign students were physically attending classes on campus.  He described Herguan's attendance policies and explained that students get academic warning letters if they fail to make academic progress.  The affidavit alleges that SEVP then requested copies of attendance records and the academic warning letters, and that Wang sent SEVP a letter dated December 16, 2010, enclosing the requested documents.  Email Aff. ¶¶ 52-54.

The affidavit explains that, just prior to receiving this letter from Wang, SEVP had been contacted by Herguan's Dean of Academic Affairs, Dr. Anthony Martinez.  During a December 15, 2010 interview, Martinez provided HSI agents with emails on which he had been copied, reflecting Wang's and Friberg's attempts to conceal facts from SEVP.  Email Aff. ¶ 55.  A December 1, 2010 email from Wang at fei@uewm.edu to Friberg admits that Herguan does not have academic warning letters and asks Friberg to create one.  Email Aff. ¶ 56.  Friberg responded from Richard@uewm.edu on December 2, 2010, asking if it related to regulations regarding DHS's computer tracking system, the Student and Exchange Visitor Information System (SEVIS), and warned Wang not to "step in a trap." *Id.*  Wang confirmed the following day that he wanted to provide the academic warning letter to SEVP in response to its request, and Friberg responded on December 5, 2010, advising Wang not to send a letter "specifically designed just for them because that would be obvious that you just created it for them."  Email Aff. ¶ 57.  The same day, Friberg sent Wang an email advising him to "get rid of" the "non attenders and the people that are taking advantage of their visas," who "are going to cause the most trouble for you with SEVP."  Email Aff. ¶ 58.

The affidavit also describes a December 2, 2010 email from Martinez to Wang at fei@herguanuniversity.org, and Friberg at Richard@herguanuniversity.org, advising that he had been contacted by a student stating that he had enrolled at Herguan in January 2010 based on representations that the school was "fully-online" and that he would never have to come to campus. Email Aff. ¶ 59.

**B.     The Indictment**

Wang was indicted on July 24, 2012. He was charged with conspiracy to commit visa fraud, in violation of 18 U.S.C. § 371 (Count 1); aiding and abetting visa fraud, in violation of 18 U.S.C. §§ 1546(a) and 2 (Counts 2-5); aiding and abetting unauthorized access of a government computer, in violation of 18 U.S.C. §§ 1030(a)(3) and 2 (Count 6); use of false documents, in violation of 18 U.S.C. § 1001(a)(3) (Counts 7-13); and aggravated identity theft, in violation of 18 U.S.C. § 1028A (Counts 14 and 15).

In summary, the Indictment alleges that, starting in July 2007, Wang caused Herguan to submit a petition to admit foreign students and supporting documents to DHS's Student and Visitor Exchange Program (SEVP), and that these submissions contained false representations regarding Herguan's students and false transfer letters. Some of the falsified student records that Wang submitted contained personal identifying information – including names, social security numbers, and date of birth – of true individuals without their authorization. The Indictment explains that, in support of its petition, a school must identify Designated School Officials (DSOs), and that DSOs must submit a certification of their knowledge of and intent to comply with student immigration laws and regulations. It is alleged that Herguan designated Wang as its DSO, and that Wang filed with SEVP a document falsely promising to comply with all federal regulations regarding nonimmigrant students. (Counts 1, 7-12, 14, 15.)

After Herguan received the necessary SEVP approval to admit foreign students, the Indictment alleges, Wang, as DSO, was issued a login ID and password to access SEVIS – a nonpublic database used by the United States government and operated through SEVP for the purpose of collecting nonimmigrant student information from approved schools and monitoring such aliens' status. The Indictment alleges that, between May 2009 and August 2010, Wang caused a Herguan employee to access his SEVIS account without authorization to enter data and create immigration documents (Forms I-20) for Herguan students. It is explained that schools issue initial I-20s to foreign students so they can

obtain visas to enter the United States, and then active I-20s as proof of the students' authorized stay in the country. At Wang's instruction, the Indictment alleges, the Herguan employee presented I-20s to Herguan's President (Wang's father) and CFO (Wang's mother) for them to forge Wang's signature when he was unavailable. Again at Wang's instruction, these forged I-20s were disseminated to Herguan students, including four in September 2010. The Indictment further alleges that, in exchange for maintaining the foreign students in active status for visa purposes, Wang and others collected tuition and other payments from Herguan students. (Counts 1-6.)

Finally, the Indictment alleges that Wang made false representations and submitted false documents to DHS agents and SEVP officials who contacted Herguan to ensure compliance with applicable regulations. Specifically, in response to interviews and Requests for Evidence, Wang made false statements regarding Herguan's classes and school policies and, in December 2010, provided false documents including a newly created Academic Warning Letter. (Counts 1, 13.)

**C.     The Premises Search Warrant**

On July 31, 2012, Magistrate Judge Paul S. Grewal issued a warrant to search the Administrative Offices of Herguan and UEWM, which were co-located in Sunnyvale, California. *See* MISC No. 12-70860 PSG ("Premises SW"). This subsequent warrant, also based on an affidavit by Agent Mackey, includes basically the same information as the prior affidavit, and then some. The premises warrant sought evidence, fruits, and/or instrumentalities of conspiracy, false documents, aggravated identity theft, unauthorized use of government computers, and visa fraud – the same violations with which Wang is charged in the Indictment.

In support of the premises warrant, Agent Mackey described Herguan's false petition and supporting documents and Wang's materially false statements during the site visit and in follow-up communications with SEVP. He also included statements from two Herguan registrars, both of whom stated that Wang gave them his SEVIS user name and password and instructed them to created I-20s for foreign students, to print them, and when Wang was unavailable, to have his parents forge his signature. One former registrar stated that Wang instructed her to sign the I-20s herself when Wang and his parents were all traveling, but that she refused. The other registrar stated that Wang told her it was illegal for her to access SEVIS. Premises Aff. ¶¶ 28-31. The affidavit explains that I-20s were issued on dates

1   that Customs and Border Protection records show Wang was out of the country. Premises Aff. ¶ 32.

2         The affidavit also describes evidence that numerous UEWM students were unilaterally enrolled
3   at Herguan without their knowledge. Premises Aff. ¶¶ 42-45. Additionally, it alleges that virtually all
4   tuition revenue generated at Herguan comes from foreign students, which could not have been paid
5   absent the initial fraudulent submissions in support of Herguan's petition. In Wang's signed and
6   notarized letter to SEVP, dated December 16, 2010, he stated "pending accreditation, [Herguan] attracts
7   only international students . . . there is no good reason for a U.S. student to attend an institution of
8   higher education in the United States until it become an accredited institution." The letter further stated
9   that Herguan charges "approximately $2,655 per semester." While Herguan's petition and website
10  confirm that the school has three terms per year, foreign students are required to register for only two
11  terms each year. SEVIS records showed 626 foreign students in active status at Herguan as of the time
12  of the premises search warrant, thus resulting in expected tuition revenue from foreign students of at
13  least $3,324,060 per year. Bank of America records for Herguan show that the account had
14  $10,426,756.54 in deposits and $10,236,907.41 in withdrawals between February of 2008 and
15  September of 2011. Premises Aff. ¶¶ 46-47.

### III.    ARGUMENT

"A court evaluating the constitutionality of a search conducted pursuant to a search warrant issued by a magistrate reviews the magistrate's probable cause determination for clear error." *United States v. Nguyen*, 673 F.3d 1259, 1263 (9th Cir. 2012). "Probable cause for a search requires a fair probability that . . . evidence of a crime will be found in a particular place, based on the totality of the circumstances." *United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012) (internal quotation marks omitted). "This requires only a probability or substantial chance of criminal activity." *Nguyen*, 673 at 1264 (internal quotation marks omitted).

**A.    The Magistrate Did Not Clearly Err in Issuing the Email Search Warrant**

    1.    <u>There is probable cause that evidence of conspiracy, visa fraud, and false statements would be found in the subject email accounts</u>

The affidavit submitted in support of the email search warrant establishes at least "a fair probability" that evidence of visa fraud, false statements, and conspiracy would be found in the Herguan

and UEWM email accounts of Wang and Vice President Friberg. On their face, the emails described in the affidavit – to and from the subject accounts – are evidence of Wang's knowingly false statement to SEVP regarding Herguan's academic warning letters. They also show that there are "non attenders" who are likely to cause "trouble" with SEVP, and that at least one student understood that Herguan allowed him "never" to come to campus. This, combined with construction and lack of any students seen during the site visit, is relevant to show that Wang lied when he told DHS personnel that more than 900 students were physically attending classes at Herguan. Moreover, taken together with the false employment letters and transcripts that Herguan submitted in support of its petition to admit foreign students, the emails are relevant evidence that Herguan's petition was approved based on false statements, and thus that any visa-related documents Herguan later issued were procured by fraud.

Despite the affidavit's specific facts tying each of the subject email accounts to the crimes then under investigation, Wang argues that the information on which the affidavit relies was stale. Not so. The witness interviews proving the falsity of the employment letters and transcripts occurred in September 2011, a few months before the email search warrant issued. The emails provided by Martinez were from December 2010, approximately one year before the search warrant. As Agent Mackey explains in his affidavit, for email accounts maintained by Google, as the subject accounts were, "[u]nless the sender of the email specifically deletes the email from the Google server, the email can remain on the system indefinitely." Email Aff. ¶ 25.

Wang also suggests that Agent Mackey intentionally or with gross negligence omitted a material fact from his affidavit. CR 51:17. This suggestion is wholly unsupported by the facts. The affidavit explains that SEVP specifically requested, as part of its evaluation of Herguan's petition to admit foreign students, that Herguan provide letters from employers of recent graduates attesting that its "graduates . . . are fully qualified in their field of study, as a result of the training they gained" at Herguan. Email Aff. ¶ 33. In response, the affidavit alleges that Herguan submitted to SEVP in February 2008 a purported employment letter from Vital Care Biosystem, of which Wang is the CEO. Email Aff. ¶ 42-43. The letter was signed by a JingGang Tang, stating that "Shane Guan graduated from [Herguan] on April 15th 2007. Shane Guan has been demonstrating outstanding performance from the beginning of his employment due to his knowledge and competent qualifications in the field marketing after completing

his training at [Herguan]." Attached to the letter were Herguan transcripts for Guan bearing his name, date of birth, social security number, and address, and showing that he attended Herguan from Fall 2005 through his graduation on April 15, 2007. Email Aff. ¶ 42.

When Agent Mackey interviewed Tang in September 2011, Tang stated that Wang wrote the letter and told him that it was to be used as a reference letter for a friend looking for a job. Tang admitted that he signed the letter without reading it because he felt pressured by Wang as his supervisor. Tang advised that he did not know Guan, and that Guan never worked for him. Email Aff. ¶ 44.

The affidavit alleges that Guan, whom Agent Mackey also interviewed in September 2011, confirmed the biographical data on the transcripts but stated that he never heard of Vital Core and never worked there. The affidavit alleges that Guan said he "did not recall ever attending or graduating from [Herguan], but said he was currently attending and pursuing a degree at UEWM, which he knows to be co-located with [Herguan]." Email Aff. ¶ 45.

Citing a more detailed description of this interview in the premises search warrant (¶ 26), Wang contends that the government omitted exculpatory information. That paragraph recites the same information contained in the email search warrant, but adds: "After being shown a copy of the [Herguan] transcript, Guan stated that he did not want to say anything derogatory about UEWM or [Herguan] because his mother is friends with the schools' owners." Premises Aff. ¶ 26. It further states that Guan "suggested that perhaps he had taken [Herguan] courses and graduated without realizing it." *Id.*

These additional statements are not inconsistent or exculpatory. More importantly, neither these purported omissions nor other assertions of supposed innocent explanations negate the magistrate judge's finding of probable cause. A search warrant "affidavit need not establish that it was 'more likely than not' that evidence would be found or preclude other innocent interpretations for the activities at [the location to be searched]. The affidavit need only enable the magistrate to conclude that it would be reasonable to seek the evidence in the place indicated by the affidavit." *United States v. Taylor*, 716 F.2d 701, 705-06 (9th Cir. 1983) (internal quotation marks omitted).

//

1    Finally, the Court should reject Wang's suggestion that an evidentiary hearing pursuant to
2    *Franks v. Delaware*, 438 U.S. 154 (1978), is appropriate.  Wang has not met the threshold "substantial
3    preliminary showing" – or indeed any showing at all – "that false or misleading statements were (1)
4    deliberately or recklessly included in an affidavit submitted in support of a search warrant; and (2)
5    necessary to the finding of probable cause." *United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011)
6    (internal quotation marks omitted).

7        2.    <u>The items to be seized are not overly broad</u>

8    Wang objects that the search warrant is overly broad because it does not contain date restrictions
9    for the items to be seized and because certain items lack a foundation in the affidavit. CR 48:13-14.

10   First, the affidavit alleges that Herguan was in the business of fraud since its inception. The
11   school was issued a license to operate on June 5, 2007, the day before it submitted its petition to admit
12   foreign students. Email Aff. ¶ 31. The petition, however, falsely stated that Herguan had student
13   enrollment between Fall 2005 and Spring 2007. Email Aff. ¶ 30. This false statement is material
14   because a school cannot obtain SEVP approval to admit foreign students without showing that it is a
15   bona fide school, an established institution of learning, and actually engaged in course instruction.
16   Email Aff. ¶ 32; 8 C.F.R. § 214.3(a)(3)(i). SEVP clarifies these requirements on its website describing
17   the petition process: "[B]efore a school applies, it [m]ust have already opened its doors and begun
18   instructing students in the courses/programs for which it is seeking approval. . . . [It w]ill have had to
19   graduate students before applying or be accredited by a nationally recognized accrediting agency."
20   Email Aff. ¶ 32 (quoting www.ice.gov/doclib/sevis/pdf/i17_process.pdf).

21   In addition to these material false statements in Herguan's petition itself are the false statements
22   in Herguan's supplemental filings discussed above, including the employment letters and transcripts, as
23   well as Wang's false certification that he intended to comply with student immigration laws and
24   regulations. Email Aff. ¶ 13, 30. In other words, Herguan obtained approval to admit foreign students
25   based on fraud, and every visa-related document issued by Herguan to a foreign student and every
26   tuition payment from a foreign student were therefore procured by fraud. Accordingly, this is the case
27   where "a generalized seizure of business documents may be justified" because "all of the business's
28   records are likely to evidence criminal activity." *United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995).

U.S. OPP. TO DEFT'S MTN. TO SUPPRESS
CR 12-0581 EJD                                          8

Nonetheless, the search warrant did not seek a "generalized seizure of business documents." Rather, it described with particularity the records sought:

> All email communications involving: Herguan University foreign (F-1) students; student tuition, recruitment, or referral payments; letters of acceptance or denial; grade sheets, transcripts, or attendance records; course materials or schedules; applications or authorizations to admit foreign students; Student Exchange and Visitor Program; Student and Exchange Visitor Information System; site visits or inspections; Designated School Officials; passports, visas, immigration status, travel records, or associated correspondence; records from banks or other financial institutions relating to accounts controlled by Herguan University, Jerry WANG, Ying Qiu WANG, Su Fang TONG, or Richard FRIBERG; tax records for Herguan University, Jerry WANG, Ying Qiu WANG, Su Fang TONG, or Richard FRIBERG; and U.S. immigration law and regulations.

Email SW, Att. A, ¶ III.A.

Wang was the CEO of both Herguan and UEWM, the source of each of his subject accounts. The affidavit shows that he was intermingling his fraud regarding Herguan with UEWM. Two of the fraudulent employment letters that Herguan submitted involved UEWM students. Email Aff. ¶¶ 34-37, 42-45. It submitted a suspect accreditation letter from UEWM, asserting that UEWM accepted Herguan credits for Wang's mother (a co-owner of Herguan). Email Aff. ¶¶ 28, 49-50. And Herguan and UEWM shared administrators, including Wang, his father, and Friberg, among others.

The only categories of communications that Wang specifically challenges as overbroad are financial and property records; telephone and address directories; and travel records. CR 48:14. The financial and property records are relevant because, as Agent Mackey explains he knows from training and experience, "some schools seek to profit from the demand for student visas by issuing visa-related documents and falsely reporting students' status to DHS in exchange for 'tuition' fees." Email Aff. ¶ 8. Given the non-attendance problems at Herguan and the apparent lack of consequences for non-attendance, there is a fair probability that Herguan received tuition payments from aliens who paid tuition in exchange for a student visa, rather than in exchange for education, and that Wang as CEO received proceeds from these payments. Such proceeds may fairly be identified from bank, tax, and property records.

As for the telephone and address directories, there is a fair probability that – to the extent they are contained in Wang's Herguan and UEWM email accounts – they would identify potential conspirators, including Wang's father and other Herguan/UEWM personnel. The search warrant also

1  sought "passports, visas, immigration status, travel records, or associated correspondence." As the
2  affidavit describes, Wang's role as DSO was to comply with student immigration laws and regulations.
3  Email Aff. ¶ 13; 8 C.F.R. § 214.3(l). The DSOs are the only people authorized by SEVP to access the
4  governmental SEVIS database of foreign student information, and to create student visa related records.
5  Email Aff. ¶ 13. As DSO, there is a fair probability that Wang would have records pertaining to student
6  passports, visas, immigration status, travel records, or associated correspondence.

7       Even were the court to find any of these categories overly broad, the remedy is "severing
8  violative portions of the warrant from the valid ones, and suppressing only the evidence obtained
9  pursuant to the former." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 707 (9th Cir. 2009).

10 **B.    The Magistrate Did Not Clearly Err in Issuing the Premises Search Warrant**

11      Wang also contends that the premises search warrant contains insufficient facts to support
12 probable cause. To the contrary, the facts demonstrate more than a fair probability that Wang conspired
13 with his father to make false statements to SEVP to obtain and retain approval to admit foreign students;
14 that Wang enabled his employees to access a government database without authorization, and then
15 instructed these employees to create and disseminate forged I-20s; that he used personal identifying
16 information of UEWM students to create false transcripts; and that Herguan (of which Wang is the
17 CEO, his father the President, and his mother the CFO) accrued more than $3 million per year in tuition
18 from foreign students who were admitted as a direct result of Herguan's fraudulent filings.

19      Wang's attempt to argue that the information is insufficiently particular because it omits dates of
20 certain interviews falls flat. Andrew Bella knew that he did not write a letter in support of Herguan's
21 petition to admit foreign students, and knew that he would not have written such a letter because
22 Herguan was unaccredited. Premises Aff. ¶ 21. Chengguang Shi admitted that Wang and his parents
23 were his supervisors at UEWM, before stating the he could not recall whether Wang's mother
24 transferred credits to Herguan. Premises Aff. ¶ 22. Candace Zheng recalled full well that she never
25 attended Herguan, despite a false transcript with her personal identifying information. Premises Aff. ¶
26 25. Shane Guan recalled that he never worked for Vital Core despite a fraudulent letter attesting that he
27 did, and that he attended UEWM but had not graduated. When shown the fraudulent Herguan transcript
28 with his personal identifying information, he stated that he did not want to say anything derogatory

about UEWM or Herguan because his mother was friends with the Wang family. He then speculated that perhaps he had graduated from Herguan without realizing it. Premises Aff. ¶ 26. And JingGang Tang recalled clearly that Wang was his boss and presented him with Guan's employment letter, falsely stating that it was a reference letter to help Guan get a job. Tang similarly recalled that he did not know Guan but felt pressured by Wang to sign the letter. *Id.*

Wang also argues that the information is stale, and that there is no reason to think that a search in August 2012 would uncover evidence of the alleged crimes. This, too, is wrong. The affidavit specifically alleges:

> SEVP-certified schools are required to keep certain records and information relating to each foreign student to whom it has issued a Form I-20, and such records and information must be provided to SEVIS upon request. See 8 C.F.R. § 214.3(g)(1). Among other things, the schools must retain the student names, dates of birth, applications, dates of commencement and termination of studies, and I-20s. An experienced SEVP adjudicator, who has conducted over forty Site Visits, has advised me that every school at which she has conducted a Site Visit maintained these student records on the school's campus.

Premises Aff. ¶ 13. These facts render it fairly probable that the co-located Administrative Offices of Herguan and UEWM would contain evidence of the crimes, as in fact they did.

Finally, Wang again contends that warrant was overbroad, in the same ways as the email search warrant. The argument fails for the same reasons it does for the email warrant. Moreover, the premises affidavit specifically discusses the amount of money (millions per year) that Herguan appears to have obtained from foreign student tuition paid as a result of the fraud conspiracy. It also alleges that Wang instructed his employees to create fraudulent I-20s during his absences from the country, directly relating to travel records.

**C.     At Minimum, the Good Faith Exception Applies**

"Suppression of evidence seized pursuant to a warrant unsupported by probable cause is not appropriate if the government relied on the warrant in 'good faith.'" *Grant*, 682 F.3d at 836 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984)). Indeed, suppression is appropriate only when the underlying affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923. Put another way, suppression is proper only if the affidavit cannot establish even "a colorable argument for probable cause." *Grant*, 682 F.3d at 836

1 (quoting *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006)). This threshold is intended to be "a high one," because agents ordinarily are not expected to question a magistrate judge's finding of probable cause. *Messerschmidt v. Millender*, _ U.S. _, 132 S. Ct. 1235, 1245 (2012). This test is met where the affidavit identifies no plausible nexus between the place to be searched and offense committed or the evidence sought. *See Grant*, 682 F.3d at 836-39.

Here, however, the affidavits underlying both warrants allege specific facts showing at least a fair probability that Wang engaged in a conspiracy to commit visa fraud, visa fraud, and false statements, and even more crimes in the premises warrant. Indeed, as of the time the latter warrant issued, Wang had already been indicted for conspiracy, visa fraud, false documents, unauthorized access, and aggravated identity theft. Moreover, the email affidavit alleges specific facts tying the subject email accounts to the offenses, while the premises affidavit alleges even more facts substantiating that the schools' administrative offices would then contain evidence of all these offenses. There is no ground to question or overturn the magistrate's finding of probable cause. Agent Mackey was entitled to – and did – rely on that finding in good faith.

### IV. CONCLUSION

For the above-stated reasons, the Court should deny the Wang's motion to suppress fruits of the email and premises search warrants.

DATED: November 12, 2013

Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
_____
HARTLEY M. K. WEST
Assistant United States Attorney