JAMES McMANIS (40958)
MATTHEW SCHECHTER (212003)
TYLER ATKINSON (257997)
McMANIS FAULKNER
A Professional Corporation
50 West San Fernando Street, 10th Floor
San Jose, California 95113
Telephone:   (408) 279-8700
Facsimile:    (408) 279-3244
Email:  tatkinson@mcmanislaw.com

Attorneys for Defendant
JERRY WANG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   vs.<br><br>JERRY WANG,<br><br>   Defendant. | Case No. CR 12-581 EJD<br><br>**DEFENDANT'S REPLY TO UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS EVIDENCE FROM EMAIL AND PREMISES SEARCH WARRANTS**<br><br>Date:         January 24, 2014<br>Time:        1:30 p.m.<br>Courtroom: 4, 5th Floor<br>Judge:       Hon. Edward J. Davila |

# **TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................................1

LEGAL ARGUMENT....................................................................................................................2

      I.     THE GOVERNMENT HAS FAILED TO REFUTE DEFENDANT'S ARGUMENT THAT THE EVIDENCE RELIED ON FOR ISSUANCE OF THE SEARCH WARRANTS WAS STALE ................................................................................................2

      II.    BOTH WARRANTS WERE OVERBROAD IN THE ITEMS SOUGHT TO BE SEIZED ..........................................................................5

      III.   THE GOOD FAITH EXCEPTION DOES NOT APPLY HERE. ....................7

CONCLUSION................................................................................................................................9

i

DEFENDANT'S REPLY TO UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS EVIDENCE FROM EMAIL AND PREMISES SEARCH WARRANTS; CASE NO. CR 12-581 EJD

# TABLE OF AUTHORITIES

**Cases**

*Durham v. United States*, 403 F.2d 190 (9 Cir. 1968) .................................................................. 5

*In Re Grand Jury Investigation Concerning SSDI*, 130 F.3d 853 (9th Cir. 1997) ..................... 5, 6

*Messerschmidt v. Millender*, ___ U.S. ___, 132 S.Ct. 1235 (2012) ....................................... 8

*United States v. Brien,* 617 F.2d 299 (1st Cir.1980) ....................................................................... 6

*United States v. Grant*, 682 F.3d 827 (9th Cir. 2012) ..................................................................... 7

*United States v. Kow*, 58 F.3d 423 (9th Cir. 1995) ........................................................................ 5

*United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997) ..................................................................... 2

*United States v. Leon*, 468 U.S. 897 (1984) .................................................................................. 8

*United States v. Offices Known as 50 State Distrib. Co.,* 708 F.2d 1371 (9th Cir.1983) ............... 6

*United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990) ................................................................. 5

# INTRODUCTION

Plaintiff, the United States of America ("government"), opposes the motions brought by defendant, Jerry Wang ("defendant"), to dismiss two different search warrants – one for four different email accounts maintained on Google servers (the "Email Warrant") and one for the shared Administrative Offices of Herguan University ("Herguan") and the University of East-West Medicine ("UEWM") (the "Premises Warrant"). According to the government the respective affidavits signed by Agent Jason Mackey (the "Email Affidavit" and "Premises Affidavit"), more than demonstrated that there was a "fair probability" that evidence of various crimes would be found in the four email accounts and in the records kept at Herguan/UEWM, thereby establishing probable cause. The government disputes that the information supporting either affidavit was stale or that the warrants were overbroad. The government also asserts that, even if one or both of the warrants were improperly issued, the good faith exception should apply. The government's arguments are without merit and defendant's motions to have the evidence suppressed should be granted.

The government fails to show how interviews with non-native English speakers about activities that occurred three to four years prior to the interview, would support probable cause that criminal activity was occurring in 2012. While the government takes pains to note that the interviews themselves occurred close in time to the issuance of the Email Warrant and Premises Warrant, the events discussed took place in 2007 and possibly 2008. Even if, *arguendo*, individuals were engaging in criminal activity back then, that does not automatically equate to a likelihood that such activity is present now.

The government is also incorrect that the warrants are not overbroad in scope and items sought. Neither the Email Affidavit, nor the Premises Affidavit, demonstrate there was ongoing or continuous criminal activity, or that Herguan and UEWM were purely criminal enterprises. As long as the business being targeted for the search is engaged in some legitimate activity, then the government must make a more substantial showing to be able to search all of the business' records. The government failed to do so here. Moreover, in attempting to show that the warrants

1

were not overbroad, the government relies on speculation, information that was not contained within either affidavit, and inferences of crimes committed that were not alleged.

Finally, there is no basis to apply the good faith exception so as to "save" the evidence seized by the government. As the affidavits supporting the warrants contained material omissions, relied on plainly outdated information, took advantage of witnesses lack of skill with English, and were overbroad in the items sought, application of the exception would be inappropriate in this case.

Neither the Email Warrant, nor the Premises Warrant, were supported by the necessary probable cause that would have allowed a neutral magistrate to determine if there was a "fair probability" that evidence of crime would be discovered in various email accounts or at the premises of Herguan/UEWM. Because the affidavits were not sufficient, the warrants were improperly issued and defendant's motion to suppress the evidence seized following the execution of each warrant should be granted in full.

## LEGAL ARGUMENT

**I. THE GOVERNMENT HAS FAILED TO REFUTE DEFENDANT'S ARGUMENT THAT THE EVIDENCE RELIED ON FOR ISSUANCE OF THE SEARCH WARRANTS WAS STALE.**

As set forth in defendant's opening memorandum, and unchallenged by the government, "an affidavit must be based on facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997). The information contained in the affidavit establishing probable cause must be current and not "stale" as the issue is the likelihood of finding the identified evidence in the specific location.

The government contends that the information on which each affidavit relies was not stale because the various witness interviews "proving the falsity of the employment letters and transcripts occurred in September 2011 … [and the] emails provided by Martinez were from December 2010[.]" (Gov't Opposition, 7:3-5.) The government goes on to say that, as the warrants were signed in January 2012 (the Email Warrant) and on July 31, 2012 (the Premises

Warrant), the information contained in each warrant was timely. The government's opposition misses the point.

To begin with, if the date of the witness interviews is relevant, and is relied on by the government in opposing the motions to suppress, then why is that information missing from the affidavit? The most logical explanation is because while the interviews themselves may have occurred within only a few months of the warrants being issued, the activities described in the interviews did not. Put another way, the problem with the information contained in the affidavits is not <u>when</u> it was obtained, but, rather, when the events being described actually took place.

The interviews with Chengguang Shi, Shane Guan and Candace Zhang may have occurred in September 2011, but they referred to events occurring in 2007 and possibly 2008. (Premises Affidavit, ¶¶ 22, 25 and 26.) Similarly, Ling Li, interviewed in September of 2011, provided information about a letter sent in 2007 (*Id.* at ¶27), while the interview of Ling Zhang provided only general allegations about the supposed commingling of students between Herguan and UEWM which, if at all, occurred in October 2008. (*Id.* at ¶¶ 42-43.) There can be little dispute that a witnesses' recollection of events occurring three to four years earlier is not the same as a recollection provided at or near the actual time of the events being described. Moreover, none of these witnesses speak English as a first language and the government has failed to present any evidence that the interviews were conducted using a certified interpreter, or even just an interpreter, certified or not. Omitting the date of the interviews presents the clear danger of misleading the magistrate into thinking that the witnesses' statements were obtained at or around the time of the events, instead of years after the fact. Moreover, by failing to disclose the language issue, it gives the incorrect impression that the witnesses fully understood the purpose of the interview, the questions being asked of them, and were able to answer the questions in a coherent and logical manner.

The December 2010 interview with Dr. Martinez also fails to overcome the staleness of the information from 2007 and 2008. Dr. Martinez provided emails between defendant and a school official in which they discussed SEVP's request for a copy of an academic warning letter, and the school official advised defendant not to be trapped into providing a false document and

3

later advised defendant to purge the school of students who should not be enrolled. While this latter email exchange may indicate that there had been a violation of regulations governing maintenance of student status, it is certainly not evidence of the over-arching criminal conspiracy implied by the government. One email exchange about a form letter and advice to discharge students is not such and cannot support the weeping warrant of the premises, which sought all records of any academic, immigration, personal, financial property and anything else the government might seize during a search.[1]

The information relied upon for the Email Warrant, issued in January of 2012, relied on essentially the same stale information as the Premises Warrant (issued on July 31, 2012), except that it placed greater emphasis on the emails provided by Martinez. The staleness issue is no more overcome in the Email Affidavit than in the Premises Affidavit, as a showing of a handful of emails linked to matters different than the alleged false letters and transcripts submitted in 2007 do not create a basis for believing that in January of 2012 a search of four email accounts and all electronically filed documents would yield evidence going back that far in time.

Ultimately, there is nothing in either affidavit to suggest that, in 2012, a search would uncover evidence of ongoing visa fraud. In assessing whether the information means that evidence of criminality will be found, the operative date is the date the witness observed the events and not when they reported, or were interviewed about, the events. Here, the crux of the factual allegations centers around the year 2007 and an ambiguous email exchange in 2010 and, while witnesses were known to the government as far back as 2007, they were not contacted or interviewed until 2011. That the agent did not conduct any interviews until 2011 only decreases the likelihood that documents, such as the ones filed in 2007, would be on the premises in 2012. Moreover, even if defendant allegedly possessed and used fraudulent documents or applications

---

[1] It should be noted that while the affidavit for the emails specifically refers to Martinez and his interview and the emails he provided (Email Affidavit, ¶¶ 55-59), the affidavit for the premises search warrant refers only to the emails between defendant and the school vice president and says nothing about Martinez (Premises Affidavit, ¶¶ 37-39.)

1  in 2007, that in no way provides probable cause to believe that the same is true in 2012 or that a
2  search of email and other Google data would reveal such information.
3        Although the Supreme Court has cautioned against creating a lengthy chain of inferences
4  to buttress probable cause  (*United States v. Weber*, 923 F.2d 1338, 1344-45 (9th Cir. 1990)),
5  that is exactly what occurred here in issuing these two warrants.  The evidence was three to four
6  years old, and the witness interviews conducted well after memories and details fade.  Reliance
7  on such evidence to issue a warrant, and invade defendant's privacy, was misplaced and the
8  evidence obtained from executing both warrants should be suppressed.  *See Durham v. United*
9  *States*, 403 F.2d 190. 193 (9 Cir. 1968) ("The most convincing proof that property was in the
10 possession of the person or upon the premises at some remote time in the past will not justify a
11 present invasion of privacy.")

## II. BOTH WARRANTS WERE OVERBROAD IN THE ITEMS SOUGHT TO BE SEIZED.

14       The government contends that the two warrants are legitimate in scope given that "the
15 affidavit alleges that Herguan was in the business of fraud since its inception[]" (Gov't
16 Opposition, 8:25) – including obtaining approval to admit students, issuing visa-related
17 documents, and tuition payments from foreign students – and, therefore, all of Herguan's records
18 would likely have evidence of criminal activity.  *Id.* at 9:11-14.  In making this argument, the
19 government relies on the decision in *United States v. Kow*, 58 F.3d 423 (9th Cir. 1995).
20       Relying on *Kow*, however, does not prove the government's point.  As defendant noted in
21 his motion, while *Kow* does allow for a generalized search of business records, such a search is
22 proper only when the "government establishes probable cause to believe that the entire business
23 is merely a scheme to defraud or that all of the business's records are likely to evidence criminal
24 activity."  *Id.* at 427.  Thus, as pointed out by the court in *In Re Grand Jury Investigation*
25 *Concerning SSDI*, 130 F.3d 853 (9th Cir. 1997) (hereinafter *SSDI*), the types of situations where
26 such warrants were found permissible were when "the affidavits supporting the warrants at issue
27 showed that the companies involved were little more than 'boilershop' sales operations engaged
28 only negligibly in legitimate business activities."  *Id.* at 856, citing to *United States v. Offices*

5

DEFENDANT'S REPLY TO UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS EVIDENCE
FROM EMAIL AND PREMISES SEARCH WARRANTS; CASE NO. CR 12-581 EJD

*Known as 50 State Distrib. Co.,* 708 F.2d 1371, 1374-75 (9th Cir.1983) and *United States v. Brien,* 617 F.2d 299, 308-309 (1st Cir.1980).  On the other hand, if the business being targeted appears "to be engaged in some legitimate activity," and the affidavit supporting the warrant "does not provide cause to believe that that the majority" of the business' operations are fraudulent, then a warrant seeking a generalized search of records should not be issued without "a more substantial showing of pervasive fraud."  *SSDI*, 130 F.3d at 586-587.

Here, there is no evidence of ongoing or continuous criminal activity. There is also no evidence that both Herguan and UEWM were purely criminal enterprises.  Rather, the Mackey Affidavit informs that UEWM offered legitimate courses in traditional Chinese medicine. (Premises Affidavit, ¶ 42.)  The affidavit also conceded an absence of criminality in the letters from Shi of UEWM and Lau of Yao San University. (*Id.* at ¶ 22.)  In addition, there are no financially related charges against any person or entity related to either school.

The overbreadth of the warrants is also exposed by the government's arguments in its opposition.  According to the government, the email warrant "did not seek a 'generalized seizure of business documents[,]' … [but instead] described with particularity the records sought[.]" (Gov't Opposition, 9:16-17.)  Yet, the list of email communications sought covers a broad spectrum of communications, much of which, if not all, involve the business activities that Herguan is involved in.  (Email Warrant, Attachment A, ¶ III.A.)  The government also fails to note that this is <u>not</u> the only thing sought by the warrant as it also listed, among other things: "[e]xisting printouts from original storage of all items mentioned in Section III(A) (*Id.* at ¶ III.B.); all emails from four identified email accounts (*Id.* at ¶ II.A); and all "transactional information of all activity of the electronic mail address and/or individual accounts described above in Section II(a) including log files, dates, times, methods of connecting, ports, dial-ups, and/or locations." (*Id.* at II.C.)  It is simply contradictory to say that a warrant is not overbroad, but then identify a paragraph that lists a dozen, or more, different items, all while ignoring a half-dozen other items sought to be seized.

The government also argues that the financial and property records are relevant because, based on Agent Mackey's experience, "'some schools seek to profit from the demand for student

6

1  visas by issuing visa-related documents and falsely reporting students' status to DHS in
2  exchange for 'tuition fees.'" (Gov't Opposition, 10:6-7.) The government then leaps to the
3  conclusion that because of "non-attendance problems" and the "lack of consequence for non-
4  attendance," Herguan must have "received tuition payments from aliens who paid tuition on
5  exchange for a student visa," not for education and defendant "received proceeds from these
6  payments." (Gov't Opposition, 10:8-12.) This, though, is pure speculation. There is no proof
7  present, or any allegation made in a government filing (besides its Opposition to the motions),
8  that there may have been tuition funds issued in exchange for a visa. Nor is there any reliable or
9  specific evidence presented in the search warrant affidavits that anyone paid money for an I-20
10 with the expectation that they would not have to comply with any school requirements; in fact
11 there is no such evidence.

12 Just as problematic is that claim that telephone and address directories were valid items to
13 be searched because, if they were in defendant's email accounts "there is a fair probability that
14 … they would identify potential conspirators[.]" (Gov't Opposition, 10:13-15.) Such a claim is
15 belied by the fact that this does not appear anywhere in the Email Affidavit or Premises Affidavit
16 as a basis for the respective search. The magistrate reviewing a warrant application is not to
17 speculate upon what charges might eventually be filed against other parties. If Agent Mackey
18 believed that he had a basis for the warrant emanating from a conspiracy, then that should have
19 been included in the affidavit. It was not. As the government acknowledges, "[p]robable cause
20 for a search requires a fair probability that … evidence of a crime will be found in a particular
21 place[.]" *United States v. Grant*, 682 F.3d 827, 832 (9th Cir. 2012) (internal quotation omitted).
22 Pure speculation and lack of evidence in an affidavit do not rise to the level of probable cause
23 needed to have issued such a broad warrant.

24 **III.   THE GOOD FAITH EXCEPTION DOES NOT APPLY HERE.**

25 Assuming its other arguments fail, the government seeks to avoid suppression of the
26 evidence by relying on the "good faith" exception. The government claims the exception applies
27 here because both affidavits "allege specific facts showing at least a fair probability" that defendant
28

7
DEFENDANT'S REPLY TO UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS EVIDENCE
FROM EMAIL AND PREMISES SEARCH WARRANTS; CASE NO. CR 12-581 EJD

engaged in various criminal acts, and as defendant had already been indicted for certain crimes before the premises warrant was issued. (Gov't Opposition, 12:21-27.) The argument must fail.

The government fails to note that the email warrant affidavit omits statements by Shane Guan which soften and change his initial statement that he never attended Herguan, while the premises warrant affidavit the date of the interview is omitted. Thus, it appears the government unilaterally decided that Mr. Guan's subsequent statements were neither exculpatory nor had any bearing on the issue of probable cause, and that the magistrate would have considered the interview date to be irrelevant. The government, however, does not have the right to edit witness statements and accounts of interviews under the belief that it is entitled to make credibility assessments. Such assessments are to be made by a neutral and detached magistrate. It is for the magistrate to decide if the late date of the interview is relevant as to witness recollections and to staleness, and the same holds true as to censored statements like that of Shane Guan. In other words, the agent here took liberties which he had no business doing. Not surprisingly, the omissions both favor the government to the determent of defendant's Fourth Amendment rights.[2]

The government argues that even if these were material omissions, the good faith exception of *United States v. Leon*, 468 U.S. 897, 823 (1984) applies. However, the government also contends that pursuant to *Messerschmidt v. Millender*, ___ U.S. ___, 132 S.Ct. 1235 (2012), an agent is not expected to question the magistrate's finding of probable cause. (Gov't Opposition, 12:16-18; *Millender*, 132 S.Ct. at 1245.) Neither of these cases, though, permit the application of the good faith exception when the omission from the affidavit was grossly negligent or intentional and, if excised, there is no probable cause. Indeed, the government places great emphasis on the fact that there were interviews conducted in September of 2011, as if that somehow makes information from 2007 less stale in 2012. The warrants were overbroad, relied on stale information, and did not

---

[2] The government attempts to portray the omissions issue as some unwarranted and specious attack on the integrity of a federal agent. It is nothing of the sort. Rather, defendant has provided a factually accurate account of what evidence was omitted from two sworn affidavits and has explained why they should have been included. It is the agent's responsibility to include all relevant facts in a warrant affidavit, it is a defense counsel's obligation to advise the court when this was not done, and it is the Court's responsibility to determine the effect of said omissions in weighing probable case.

include information relevant to whether or not probable cause was present. The good faith exception should not, and cannot, apply here and, therefore, does not act to save the evidence seized pursuant to both warrants from being suppressed.

## **CONCLUSION**

For the reasons set forth above, as well as in the original memorandums of points and authorities supporting the respective motions, all evidence seized as a result of the premises search and email search should be suppressed, all evidence obtained as a result of the seized items also suppressed, and the documents should be returned to the original custodians.

Dated: December 16, 2013

McMANIS FAULKNER

/s/ Tyler Atkinson
JAMES McMANIS
MATTHEW SCHECHTER
TYLER ATKINSON

Attorneys for Defendant
JERRY WANG