1                    UNITED STATES DISTRICT COURT

2               FOR THE NORTHERN DISTRICT OF CALIFORNIA

3                          SAN JOSE DIVISION


4        UNITED STATES OF AMERICA,

5                    PLAINTIFF,            CASE NO.  CR-12-0581-EJD

6           VS.                           SAN JOSE, CALIFORNIA

7        JERRY WANG,                       JANUARY 24, 2014

8                    DEFENDANT.           PAGES 1 - 70

9


10

                     TRANSCRIPT OF PROCEEDINGS
11            BEFORE THE HONORABLE EDWARD J. DAVILA
                  UNITED STATES DISTRICT JUDGE
12

13                   A-P-P-E-A-R-A-N-C-E-S

14

     FOR THE PLAINTIFF:    OFFICE OF THE UNITED STATES ATTORNEY
15                         BY:   HARTLEY M.K. WEST
                           450 GOLDEN GATE AVENUE, 11TH FLOOR
16                         SAN FRANCISCO, CALIFORNIA 94102

17

     FOR THE DEFENDANT:    MCMANIS FAULKNER
18                         BY:   JAMES MCMANIS
                                 TYLER ATKINSON
19                               MATTHEW SCHECHTER
                           50 W. SAN FERNANDO STREET, 10TH FLOOR
20                         SAN JOSE, CALIFORNIA 95113

21

     OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR
22                              CERTIFICATE NUMBER 8074

23


24        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
     TRANSCRIPT PRODUCED WITH COMPUTER.

25

```
1

2     SAN JOSE, CALIFORNIA                    JANUARY 24, 2014

3                      P R O C E E D I N G S

4          (COURT CONVENED.)

5               THE CLERK:  CALLING CASE NUMBER 12-581, UNITED

6     STATES VERSUS JERRY WANG.

7          ON FOR MOTION FOR BILL OF PARTICULARS AND MOTION TO COMPEL

8     AND MOTION FOR DISCLOSURE AND MOTION TO DISMISS AND MOTION TO

9     SUPPRESS.

10              MS. WEST:  GOOD MORNING, YOUR HONOR.  HARTLEY WEST

11    FOR THE UNITED STATES.

12              THE COURT:  THANK YOU.  GOOD MORNING.

13              MR. MCMANIS:  GOOD MORNING, YOUR HONOR.  JIM

14    MCMANIS.  I REPRESENT JERRY WONG, THE DEFENDANT.  I HAVE GOT

15    TWO LAWYERS HERE THAT YOU MAY, OR MAY NOT, RECALL, TYLER

16    ATKINSON WITH THE YELLOW TIE AND MATTHEW SCHECHTER WITH THE RED

17    TIE.

18              MR. SCHECHTER:  GOOD MORNING.

19              MR. ATKINSON:  GOOD MORNING.

20              THE COURT:  GOOD MORNING.

21              MR. MCMANIS:  I'M NOT QUITE DONE YET, YOUR HONOR.

22    AND MY CLIENT -- JERRY, STAND UP AND TAKE A BOW.  AND THAT IS

23    HIS FATHER, DR. YIN WANG; AND THAT IS HIS WIFE, ISABEL; AND,

24    ONE-AND-A-HALF-YEAR-OLD ANNA.  AND THEY'RE GOING TO BE LEAVING

25    THE COURTROOM VERY SHORTLY BECAUSE WE DON'T WANT DISTURBANCES
```

1    DURING THE HEARING.

2            THE COURT:  THANK YOU.  THESE ARE YOUR MOTIONS,

3    MR. MCMANIS.  AND YOU ARE READY TO PROCEED?

4            MR. MCMANIS:  AS READY AS I'LL EVER BE.

5            THE COURT:  OKAY.

6            MR. MCMANIS:  HERE'S HOW WE HAVE ORGANIZED THIS.

7            THE COURT:  I THOUGHT WE WOULD TALK ABOUT THE BILL

8    OF PARTICULARS AND THE DISCOVERY ISSUES FIRST.

9            MR. MCMANIS:  YOU WANT TO DO THAT FIRST?  WE WERE

10   GOING TO DO THAT LAST, BUT THAT IS FINE.

11           THE COURT:  FIRST OF ALL, I THOUGHT I WOULD ASK

12   ABOUT THE DISCOVERY ISSUES AND THE RULE 16 COMPLIANCE, AND IT

13   SEEMS LIKE WE CAN PROBABLY RESOLVE THOSE I HOPE RATHER QUICKLY.

14           MR. MCMANIS:  THAT'S FINE.  YOU'RE IN CHARGE SO

15   WHATEVER YOU WANT TO DO IS FINE WITH US.  AND THAT'S

16   MR. ATKINSON WHO IS GOING TO ADDRESS THAT.  SO IF IT'S ALL

17   RIGHT WITH YOU, I'LL JUST TAKE A SEAT HERE BECAUSE, YOU KNOW,

18   I'M A LITTLE ELDERLY.

19           THE COURT:  WELL, IF YOU NEED SOME ASSISTANCE,

20   PLEASE NOTIFY THE COURT.

21           MR. MCMANIS:  I WILL DO THAT.  THANK YOU VERY MUCH,

22   SIR.  BY THE WAY, MAY I SAY WHAT A FINE LOOKING JURY YOU HAVE

23   GOT IN HERE TODAY.

24           MR. ATKINSON:  GOOD MORNING, YOUR HONOR.  TYLER

25   ATKINSON.

1      I BELIEVE YOUR HONOR MENTIONED THAT THE PLAINTIFF BRINGING

2   THE MOTION, OR EXCUSE ME, THE DEFENDANT BRINGING THE MOTION

3   SHOULD START.

4            THE COURT:  WELL, WHAT I WANTED TO DO WAS JUST

5   INQUIRE.  I KNOW THERE WAS A MOTION, LET ME SEE, I THINK IT'S

6   DOCKET 41 AND DOCKET 43.

7      ARE THOSE YOUR MOTIONS IN RE: DISCOVERY?  I THINK THOSE

8   ARE THE DISCOVERY-TYPE MOTIONS.

9            MR. ATKINSON:  YES, MOTION FOR DISCLOSURE OF

10   EXCULPATORY EVIDENCE --

11            THE COURT:  RIGHT.

12            MR. ATKINSON:  -- AND FAVORABLE EVIDENCE, YES, YOUR

13   HONOR.

14            THE COURT:  RIGHT.  I LOOK AT THESE, AND I VIEW

15   THESE THROUGH THE LENS OF RULE 16.  SO MAYBE YOU SHOULD TELL ME

16   AT THE OUTSET ARE THERE ANY ISSUES, DISCOVERY ISSUES, THAT WE

17   NEED TO DEAL WITH OR HAVE THEY BEEN ALL SATISFIED?  THIS WOULD

18   INCLUDE BRADY INFORMATION AS WELL.

19            MR. ATKINSON:  AND SURE, YOUR HONOR.  I GUESS I

20   SHOULD START BY COMMENTING THAT WE HAVE A GOOD WORKING

21   RELATIONSHIP WITH OPPOSING COUNSEL, AND SO THERE ARE NO

22   PROBLEMS THERE.

23      WITHIN THE LAST TEN DAYS WE HAVE RECEIVED MORE THAN HALF

24   OF THE DISCOVERY FROM THE SEVP ENTITY.  WE UNDERSTAND THAT

25   THERE WAS SOME DELAY DUE TO SOME REDACTION ISSUES, CERTAINLY

1      NOT THE FAULT OF COUNSEL.

2          WE ARE A LITTLE CONCERNED AS WE WERE REVIEWING THE

3      DISCOVERY.  WE HAVE OBSERVED THAT THERE ARE SOME DOCUMENTS,

4      ATTORNEY-CLIENT PRIVILEGE DOCUMENTS, THAT WERE APPARENTLY

5      LEAKED TO SEVP, AND THIS HAPPENED AT THE END OF 2012.

6          AND SO WE'RE ONLY RECENTLY BECOMING AWARE OF THAT.  AND AT

7      THIS POINT, YOUR HONOR, FRANKLY, WE HAVE NOT DETERMINED EXACTLY

8      WHAT WE NEED TO DO ABOUT THAT.

9          IN ADDITION TO THAT THERE ARE JUST A HANDFUL OF ITEMS THAT

10     WE'RE SEEKING IN ADDITION TO ANY EXCULPATORY EVIDENCE AND THAT

11     WOULD BE DISCOVERY MARKED JW 006 TO JW 011.  I UNDERSTAND FROM

12     COUNSEL THAT THAT DISCOVERY WAS POSSIBLY PROVIDED TO PRIOR

13     COUNSEL.  AND IF THAT'S THE CASE, I THINK WE CAN JUST WORK IT

14     OUT SO THAT WE CAN GET A DUPLICATE COPY FROM THE GOVERNMENT.

15         IN ADDITION TO THAT, WE'RE SEEKING THE GRAND JURY RECORD.

16     WE HAVE A PORTION OF THAT AT THIS POINT, BUT WE WOULD LIKE THE

17     GRAND JURY RECORD.

18         WE'RE ALSO SEEKING THE SUMMONS OR THE SUBPOENA THAT

19     TRIGGERED A GOOGLE PRODUCTION ON SEPTEMBER 30TH, 2011.  SO THIS

20     WOULD PREDATE THE GOOGLE WARRANT.

21         IN ADDITION TO THAT THE WARRANT RETURN FOR THE JANUARY 24,

22     2012 GOOGLE WARRANT, I HAVE NOT BEEN ABLE TO LOCATE THAT IN THE

23     FILE.  AND, AGAIN, I'M SURE COUNSEL WILL ASSIST ME IN THAT.

24         AND THEN, FINALLY, ANY RECORDINGS OR NOTES FROM GOVERNMENT

25     INTERVIEWS WITH MY CLIENT, JERRY WONG, OR HIS FATHER.  I KNOW

```
1     THEY WERE QUESTIONED BY THE GOVERNMENT.  AND SO WE WOULD JUST

2     LIKE TO GET ANY RECORDINGS OR NOTES.  I KNOW WE HAVE BEEN, BUT

3     ANYTHING ELSE THAT MAY HAVE BEEN TAKEN DOWN WE WOULD LIKE TO

4     GET A COPY.

5               THE COURT:  OKAY.  MS. WEST?

6               MS. WEST:  YES.  I DID RECEIVE A REQUEST YESTERDAY

7     AFTERNOON FROM MR. ATKINSON TO THE EFFECT OF THE THINGS THAT HE

8     HAS JUST LISTED HERE.  SO I THINK OTHER THAN THE REQUEST THAT

9     HE MADE YESTERDAY AFTERNOON, I BELIEVE EVERYTHING HAS BEEN

10    PROVIDED.

11         THE INFORMATION FROM SVEP THAT COUNSEL WAS REFERRING TO

12    THAT WAS A SUBSTANTIAL PORTION OF WHICH WAS PRODUCED IN THE

13    LAST WEEK AND A HALF THAT HAS JUST BEEN A MATTER OF GETTING

14    SVEP IN VIRGINIA TO SEND EVERYTHING TO US AND THEN THEY HAD

15    QUESTIONS ABOUT ATTORNEY-CLIENT PRIVILEGE AND REDACTION ISSUES

16    AND THE BACK AND FORTH ON THAT.  AND THE BOTTOM LINE IS THAT

17    THAT HAS ALL BEEN TURNED OVER.  SO I THINK THOSE ARE THE ONLY

18    ONES OUTSTANDING.

19         THE JW 6 THROUGH 11 WAS PROVIDED TO PRIOR COUNSEL.  I WAS

20    UNAWARE UNTIL YESTERDAY AFTERNOON THAT THEY DIDN'T HAVE IT.  I

21    SENT THEM A COPY OF THE LETTER THAT ACCOMPANIED IT TO DEFENSE

22    COUNSEL, BUT I'M HAPPY TO PROVIDE IT AGAIN.

23         THE -- I BELIEVE THE ONLY -- I'LL GO BACK AND VERIFY THIS,

24    BUT I BELIEVE THE ONLY GRAND JURY TESTIMONY IN THIS

25    INVESTIGATION AND CASE WAS THAT OF SPECIAL AGENT JASON MACKEY
```

1    THAT HAS BEEN PROVIDED.  IF WE HAVE NOT BEEN PROVIDED EXHIBITS,

2    I'LL GO BACK AND CHECK THAT AND CERTAINLY TURN THOSE THINGS

3    OVER.  AND I DON'T THINK THERE WAS EVER ANY OTHER GRAND JURY

4    TESTIMONY.

5         I HAVE NEVER HAD ANYBODY REQUEST FROM ME A COPY OF A

6    SUBPOENA.  SO I WANT TO GIVE THAT A LITTLE BIT OF THOUGHT AND

7    SEE IF THERE'S ANY PROBLEM WITH MY DISCLOSING THAT.

8         I MEAN, GENERALLY UNDER RULE 6(C) WE DON'T TURN OVER THAT

9    SORT OF INFORMATION WOULD BE MY THOUGHT AT FIRST GLANCE, BUT

10   I'M HAPPY TO GIVE THAT SOME THOUGHT AND SEE IF THERE'S ANY

11   PROBLEM WITH MY TURNING THAT OVER.

12        THE RETURN FROM THE GOOGLE SEARCH WARRANT I'M HAPPY TO

13   TURN OVER IF THAT HASN'T BEEN ALREADY, WHICH I TAKE IT FROM

14   COUNSEL'S REQUEST THAT THEY HAVE NOT RECEIVED THAT.

15        AND THEN THERE WAS AN INQUIRY, I GUESS BY E-MAIL, LAST

16   NIGHT OR SOMETHING ABOUT NOTES OR AUDIO OR SOMETHING OF

17   INTERVIEWS OF THE DEFENDANT, AND I AM FAIRLY CONFIDENT IN

18   SAYING RIGHT NOW THAT THERE WASN'T ANY AUDIO.  THAT WOULD BE

19   INCREDIBLY UNUSUAL IF THERE WAS.  SO I'M NOT OFF THE TOP OF MY

20   HEAD RECALLING ANY, AND SO I'LL VERIFY THAT.

21        I'LL CHECK AND SEE WHETHER THE AGENT HAS ANY NOTES AT THIS

22   TIME RELATING TO THE INTERVIEW, BUT THE GENERAL PRACTICE IS FOR

23   IT ALL TO BE MEMORIALIZED IMMEDIATELY IN AN LRI, AND ALL OF

24   THOSE ARE HAVE BEEN PRODUCED, AND I'M NOT AWARE OF THERE BEING

25   ANY PROBLEMS AT THIS STAGE.

```
 1              MR. ATKINSON:  AND, YOUR HONOR, JUST TO GIVE A
 2      LITTLE CONTEXT, I KNOW LAST MINUTE E-MAIL SOUNDS KIND OF LAST
 3      MINUTE LATE NIGHT E-MAIL.
 4              THE COURT:  WELL, I KNOW YOU WORK VERY HARD AND BOTH
 5      OF YOU WORK VERY HARD AND YOUR RESPECTIVE BOSSES PROBABLY
 6      DEMAND THAT SO.
 7              MR. ATKINSON:  WELL, THAT'S ABSOLUTELY CORRECT, YOUR
 8      HONOR.
 9              MS. WEST:  I'M SURE WE DEMAND IT OF OURSELVES.
10              THE COURT:  YES.
11              MR. ATKINSON:  YOUR HONOR, BUT THE REFERENCE TO
12      AUDIO RECORDINGS ALSO CAME ABOUT BECAUSE OF A REFERENCE TO AN
13      AUDIO RECORDING THAT IS CONTAINED IN ONE OF THE DOCUMENTS THAT
14      WAS PRODUCED WITHIN THE LAST TEN DAYS THAT WE'RE ONLY NOW
15      GETTING TO REVIEW AND THAT TRIGGERED THE REQUEST.
16              MS. WEST:  JUST IF I MAY, IF YOU CAN JUST LET ME
17      KNOW WHAT THAT REFERENCE IS THAT MIGHT HELP ME FIGURE OUT IF
18      THERE IS SOMETHING THERE.
19              MR. ATKINSON:  SURE.
20              THE COURT:  WELL, IT SOUNDS LIKE, AS YOU INDICATE,
21      COUNSEL, WHICH IS ALWAYS PLEASING AND WONDERFUL FOR A JUDGE TO
22      SEE, YOU HAVE A GOOD WORKING RELATIONSHIP.
23          IT ALSO, IN READING THE RESPONSIVE PLEADINGS, I THINK THE
24      GOVERNMENT RECOGNIZES THERE ARE ONGOING BRADY OBLIGATIONS, AND
25      I HAVEN'T HEARD ANYTHING THAT SUGGESTS ANYTHING OTHERWISE FROM
```

1    YOU, MR. ATKINSON.  AND I DON'T THINK I NEED TO TAKE ANY OTHER

2    ACTION IN REGARDS TO THIS MOTION.

3         IT SOUNDS LIKE YOU HAVE, BOTH OF YOU, HAVE ENGAGED IN

4    SHARING DISCOVERY, ALTHOUGH I HAVEN'T HEARD.  I KNEW THERE WAS

5    A RULE 16 REQUEST BY THE DEFENDANT, WHICH THEN TRIGGERS A

6    RECIPROCAL ISSUE.

7         AND I THINK YOU TOUCHED UPON THAT IN YOUR PLEADINGS,

8    MS. WEST, THAT YOU HAVE NOT YET RECEIVED ANY RECIPROCAL

9    DISCOVERY.

10              MS. WEST:  THAT'S RIGHT.

11              THE COURT:  AND SO I JUST POINT THAT OUT, OF COURSE,

12   THOSE OBLIGATIONS CONTINUE AS WELL.

13        SO IS THERE ANYTHING FURTHER THEN THAT YOU WOULD LIKE THE

14   COURT TO TAKE ACTION ON, MR. ATKINSON, IN REGARDS TO THESE TWO

15   REQUESTS?

16              MR. ATKINSON:  IN REGARDS TO THESE TWO REQUESTS?

17   NO.  I BELIEVE AS LONG AS COUNSEL CONTINUES TO WORK WITH US IN

18   GOOD FAITH, THERE SHOULD BE NO PROBLEM.

19              THE COURT:  OKAY.  THAT SOUNDS LIKE THAT'S NOT GOING

20   TO CHANGE.

21        OKAY.  GREAT.  THANK YOU.  WELL, I THINK THAT TAKES CARE

22   OF DOCKETS 41 AND 43 THAT ARE ON OUR CALENDAR THIS MORNING.

23              MR. ATKINSON:  I'M ALSO READY TO TALK ABOUT THE BILL

24   OF PARTICULARS IF THE COURT WOULD LIKE TO TAKE THAT UP NOW.

25              THE COURT:  SURE.  WHY DON'T WE SINCE YOU HAVE THE

```
 1    FLOOR.  YOU'RE PREPARED.

 2              MS. WEST:  I'M PREPARED TO DISCUSS ANY AND

 3    EVERYTHING.

 4              THE COURT:  OKAY.

 5              MR. ATKINSON:  THANK YOU.  WITH REGARD TO THE MOTION

 6    FOR BILL OF PARTICULARS, I WOULD JUST LIKE TO REITERATE

 7    TWO POINTS RAISED IN THE REPLY.

 8         THE DEFENSE BELIEVES THAT IT'S JUST NOT ENOUGH TO POINT TO

 9    THOUSANDS OF PAGES OF DISCOVERY AND SAY THAT WE CAN SORT OF

10    ASCERTAIN WHAT THE ALLEGATION IS BY READING THOSE PAGES.

11         THE SECOND POINT IN PARTICULAR HAS TO DO WITH THIS

12    QUESTION OF WHO THE ALLEGED COCONSPIRATORS ARE.

13         AND I -- IN READING THE GOVERNMENT'S BRIEF, THERE'S AN

14    ALLUSION TO THE PARENTS, BUT THE DEFENSE WOULD LIKE TO KNOW IF

15    THERE ARE OTHERS, AND IF THERE ARE OTHERS, WHO THOSE

16    INDIVIDUALS MAY BE.  AND WE JUST BELIEVE THAT THIS IS A BASIC

17    QUESTION THAT WE SHOULD HAVE ADDRESSED BEFORE WE GO INTO TRIAL.

18              THE COURT:  OKAY.  MS. WEST.

19              MS. WEST:  JUST BROADLY ON THE ISSUE OF BILL OF

20    PARTICULARS, AS I'M SURE THE COURT KNOWS, A BILL OF PARTICULARS

21    IS UNNECESSARY WHERE THE INDICTMENT IS BEING SUBMITTED AND FULL

22    DISCOVERY HAS BEEN PROVIDED.

23         I BELIEVE ON ITS FACE -- AND I'M SURE THE COURT HAS HAD AN

24    OPPORTUNITY TO REVIEW THE INDICTMENT.  IT'S MORE THAN

25    SUFFICIENT.  IT PROVIDES A DETAILED MANNER AND MEANS OF THE
```

1   CONSPIRACY AND OVERT ACTS AND QUITE SPECIFIC ALLEGATIONS WITH

2   REGARD TO ALL OF THE COUNTS.  AND THERE'S, AS WE HAVE ALREADY

3   COVERED WITH THE COURT, THERE'S NO REAL CONTENTION THAT FULL

4   DISCOVERY HAS NOT BEEN PROVIDED WITH THE EXCEPTION OF THE FEW

5   ITEMS HIGHLIGHTED BY DEFENSE COUNSEL YESTERDAY AFTERNOON IN THE

6   LETTER.

7          NOW, WITH REGARD SPECIFICALLY TO THE ALLEGED

8   COCONSPIRATORS, WHICH IS THAT PART IS DEFENSE MOTION PARAGRAPH

9   A, IT WASN'T JUST AN ALLUSION THAT THE GOVERNMENT MADE IN ITS

10  REPLY BRIEF OR RESPONSE BRIEF.

11         WE SAID THAT THE INDICTMENT IDENTIFIES THE ALLEGED

12  COCONSPIRATORS BY THE INITIALS Y.W. AND S.T. AND DESCRIBED

13  THEIR RELATIONSHIP TO THE DEFENDANT, HIS MOTHER AND FATHER.

14         THAT'S IT.  THOSE ARE THE ALLEGED COCONSPIRATORS, AND I

15  THOUGHT WE WERE QUITE EXPLICIT ABOUT IT.

16             THE COURT:  WELL, I'VE READ THAT AND I HAD THE SAME

17  THOUGHT.  AND I GUESS, MR. ATKINSON, WHEN I READ THAT, IT SEEMS

18  TO ME THAT WHEN A BILL OF PARTICULARS IS MADE YOU'RE ASKING FOR

19  SPECIFIC INFORMATION SUCH THAT YOU CAN PREPARE AND ADEQUATELY

20  PREPARE AND DEFEND YOUR CLIENT.

21         A BILL OF PARTICULARS PERHAPS SUGGESTS THAT THERE IS SOME

22  VAGUENESS AND AMBIGUOUS INFORMATION IN THE INDICTMENT.  AND

23  WHEN I READ THE GOVERNMENT'S RESPONSE, MY FIRST REACTION WAS

24  THAT DOESN'T THAT CONTAIN EVERYTHING THAT IS IN THE INDICTMENT?

25  AND IF THERE ARE OTHER -- FOR EXAMPLE, IF THE GOVERNMENT WERE

1    TO TRY AT TRIAL TO SAY, WELL, ACTUALLY THE COCONSPIRATORS WERE

2    A, B AND C, D, WELL, THEY WOULD HAVE SOME PROBLEMS IN THAT

3    SITUATION.

4         SO I THOUGHT DOESN'T THIS SPEAK, AND BASED ON WHAT

5    MS. HARTLEY JUST SAID, DOESN'T THIS THEN PROVIDE YOU ALL OF THE

6    INFORMATION?

7              MR. ATKINSON:  WELL, YES, YOUR HONOR.  WE'RE

8    SATISFIED IF THAT'S THE GOVERNMENT'S POSITION THAT THOSE ARE

9    THE ONLY COCONSPIRATORS AND THERE WON'T BE OTHERS, THE DEFENSE

10   IS SATISFIED WITH THAT EXPLANATION.

11        AS TO SOME OF THE OTHER DISCUSSIONS IN THE GOVERNMENT'S

12   OPPOSITION BRIEF, TO THE EXTENT THAT THE GOVERNMENT POINTS TO

13   THE PAPERS, IF WE NEED TO EVEN GO TO THE PAPERS, THE DISCOVERY,

14   IT'S THAT STEP THAT WE BELIEVE WE SHOULDN'T HAVE TO TRY TO

15   DIVINE FROM THOUSANDS OF PAGES WHAT THAT ALLEGATION IS.

16        SO IN SOME SENSE IT'S EITHER KIND OF SURPLUSAGE LIKE THE

17   OPPOSITION DIDN'T EVEN NEED TO TALK ABOUT THE DISCOVERY OR IF

18   THE DISCOVERY HAS SOME ADDITIONAL DETAIL THAT WE'RE NOT AWARE

19   OF, WE WOULD JUST LIKE TO AIR THAT OUT AND KNOW WHICH PAGE OF

20   THE DISCOVERY SHOULD WE BE TURNING TO, TO FULLY UNDERSTAND A

21   PARTICULAR ALLEGATION.

22             THE COURT:  I THINK MR. ATKINSON WOULD LIKE YOU TO

23   ASSIST HIM, MS. HARTLEY, IN HIS DEFENSE?

24             MS. WEST:  I THINK SO.

25             MR. MCMANIS:  WE CAN USE ALL OF THE ASSISTANCE WE

1    CAN GET, YOUR HONOR.

2         THE COURT:  MS. WEST, I DIDN'T MEAN TO -- MY

3    COMMENTS ON THE STATEMENT OR AT LEAST MY OBSERVATIONS ON THE

4    WAY THE INDICTMENT WAS FILED AND THE WAY THE CASE WAS CHARGED

5    AND IN MR. ATKINSON'S COLLOQUY WITH ME ABOUT THE TWO INITIALS,

6    AND MY OBSERVATION, IT SEEMS LIKE THAT'S -- AND YOUR COMMENT IS

7    THAT THOSE ARE THE COCONSPIRATORS.  I DIDN'T MEAN TO LOCK YOU

8    INTO A POSITION.

9         MS. WEST:  THAT IS OUR POSITION AS -- I MEAN, NONE

10   ARE ACTUALLY COMING TO MIND RIGHT NOW, BUT I THINK THAT

11   THEORETICALLY IF WE WERE GOING TO GET TO THE POINT OF ACTUALLY

12   GOING TO TRIAL AND THERE MAY BE OTHER COCONSPIRATORS THAT MIGHT

13   BE, LIKE, FOR COCONSPIRATOR STATEMENTS, THEN THAT'S SOMETHING

14   THAT I THINK CAN BE ADDRESSED SEPARATELY BECAUSE THEY WOULDN'T

15   NEED TO BE IDENTIFIED IN THE INDICTMENT ANYWAY, BUT, YOU KNOW,

16   FRANKLY, AT THIS POINT NONE ARE COMING TO MIND.

17        THE COURT:  THAT'S A SEPARATE DISCOVERY.

18        MS. WEST:  THAT IS.

19        THE COURT:  OKAY.  I THINK WE HAVE RESOLVED THIS AS

20   WELL, MR. ATKINSON.

21        MR. ATKINSON:  I BELIEVE WE HAVE, YOUR HONOR, WITH

22   THE UNDERSTANDING THEN THAT THERE ARE NO ALLEGATIONS CONTAINED

23   IN THE DISCOVERY THAT WE SHOULD BE AWARE OF BECAUSE IT'S A

24   FAIRLY SUBSTANTIAL NUMBER OF DOCUMENTS THAT WE'RE TALKING ABOUT

25   HERE.

1          MS. WEST:  WELL, JUST TO COMMENT ON THAT, IT'S

2    ACTUALLY NOT HUGE FOR A WHITE-COLLARISH TYPE CASE BUT BEYOND

3    THAT THE SEARCH WARRANT AFFIDAVITS HAVE BEEN UNSEALED AND

4    PROVIDED THAT WALK THROUGH IN EXTRAORDINARY DETAILS THE

5    ALLEGATIONS UNDERLYING ALL OF THIS.  AND, IN FACT, THE PREMISES

6    SEARCH WARRANT, WHICH I'M SURE WE'LL TALK ABOUT MOMENTARILY,

7    WAS EXECUTED AND ISSUED AFTER THE INDICTMENT WAS RETURNED.

8          I MEAN, IT'S REALLY ALL OF THE SAME UNDERLYING FACTS AND

9    ALL OF THE LRI'S WALK THROUGH EXACTLY THE FULL NAMES OF THE

10   PEOPLE WHO WERE REFERRED TO BY INITIAL.  AND SO I REALLY DO

11   THINK IT IS MANAGEABLE DISCOVERY, AND WE HAVE DESCRIBED IN OUR

12   PLEADINGS, YOU KNOW, IN MORE SPECIFICITY ANYWAY.

13         SO I WOULD ASK THE COURT TO DENY THE MOTION FOR A BILL OF

14   PARTICULARS.

15              THE COURT:  ANYTHING FURTHER?

16              MR. ATKINSON:  WELL, YOUR HONOR, I THINK BASED ON

17   COUNSEL'S STATEMENTS TODAY AND THE PAPERS WE'RE HAPPY TO LEAVE

18   THE MATTER SUBMITTED.

19              THE COURT:  OKAY.  ALL RIGHT.  THANK YOU.

20         WELL, AS TO THE BILL OF PARTICULARS, AND I WILL DENY THE

21   MOTION FOR BILL OF PARTICULARS.  I THINK THIS CONVERSATION THIS

22   MORNING HAS HELPED ALL PARTIES UNDERSTAND THAT, AND I DON'T

23   THINK THE BILL OF PARTICULARS IS NECESSARY AT THIS POINT.  SO

24   I'LL DENY THAT MOTION.

25              MR. ATKINSON:  OKAY.  THANK YOU, YOUR HONOR.

```
1                    THE COURT:  ALL RIGHT.

2                    MR. ATKINSON:  THANK YOU, YOUR HONOR.

3                    THE COURT:  YOU'RE WELCOME.  THAT LEAVES, I THINK, A

4     MOTION TO DISMISS COUNTS 2 THROUGH 6 AND THEN MOTIONS TO

5     SUPPRESS.

6                    MS. WEST:  CORRECT.  WHICH ORDER WOULD THE COURT

7     LIKE TO ADDRESS THEM?

8                    THE COURT:  WELL, LET'S TAKE THE MOTION TO DISMISS.

9                    MR. MCMANIS:  MR. SCHECHTER.

10                   THE COURT:  OKAY.

11                   MR. SCHECHTER:  GOOD MORNING, YOUR HONOR.

12                   THE COURT:  GOOD MORNING.  AND THIS IS YOUR MOTION

13    TO DISMISS?

14                   MR. SCHECHTER:  YES.

15                   THE COURT:  SO WHAT WOULD YOU LIKE ME TO KNOW?

16                   MR. SCHECHTER:  I DON'T WANT TO BELABOR OBVIOUSLY

17    WHAT IS IN THE PAPERS.  I'M SURE THE COURT HAS HAD A CHANCE TO

18    REVIEW THEM.  I JUST WANT TO EMPHASIZE THE TWO KEY THINGS HERE,

19    WHICH I THINK IS, FIRST, AIDING AND ABETTING, BOTH THE 2

20    THROUGH 5, THE VISA FRAUD AND UNAUTHORIZED ACCESS BOTH AIDING

21    AND ABETTING.

22        WITH RESPECT TO THE FRAUD, AND, OF COURSE, AS WE SAID IN

23    THE PAPERS, THIS IS NOT A SITUATION WHERE IT WAS AN INDIVIDUAL

24    SIGNING MR. WANG'S NAME WITHOUT HIS KNOWLEDGE OR WITHOUT HIS

25    PERMISSION AND TRYING TO SLIP SOMETHING PAST.  THERE ARE NO
```

1    ALLEGATIONS OF THE DOCUMENTS CONTAINING FALSE INFORMATION OR

2    THAT THERE WAS AN ATTEMPT TO PROVIDE THAT THERE WAS ANYTHING

3    INCORRECT.

4         THIS WAS SOMEONE MR. WANG SAID I'M NOT GOING TO BE HERE OR

5    SIGN MY NAME, AND THEY SIGNED FOR HIM AND WITH HIS

6    AUTHORIZATION OR IN THE ALTERNATIVE WORDS THAT HE LATER

7    RATIFIED THAT SIGNATURE.

8         AND AS THE CASES HAVE DEFINED FRAUD OR FORGERY, THAT IS

9    NOT ENOUGH, AND, THEREFORE, THERE JUST HAS NOT BEEN THE FRAUD

10   ELEMENT THERE TO SUPPORT THE CRIME.

11        WITH RESPECT TO THE AUTHORIZED ACCESS, I THINK THE MOST --

12   THE WAY TO PUT IT IS THAT IF YOU HAVE AN INDIVIDUAL WHO IS A

13   DSO WHO HAS THE AUTHORIZATION, AS MR. WANG DID, AND AS THE

14   GOVERNMENT HAS ACKNOWLEDGED, FOR WHATEVER REASON, HE BREAKS HIS

15   ARM.  HE BECOMES BEDRIDDEN.  AND HE'S UNABLE TO ACCESS THE

16   COMPUTER, AND HE HAS AN ASSISTANT AND SAYS HERE'S MY NAME AND

17   HERE'S MY PASSWORD AND HERE'S THE INFORMATION TO INPUT,

18   ACCORDING TO THE GOVERNMENT THAT'S NOW A CRIME.

19        HE'S PROVIDING THE INFORMATION.  THERE'S NOTHING TO SAY

20   THAT THE INFORMATION WAS INCORRECT, BUT HE'S NOT THE ONE

21   INPUTTING IT.  IT'S SOMEONE ELSE DOING IT FOR HIM.  ACCORDING

22   TO THE GOVERNMENT, THAT'S NOW UNAUTHORIZED ACCESS BECAUSE IT'S

23   NOT MR. WANG EXACTLY.

24        THAT SEEMS TO BE NOT WHAT THE STATUTE IS DESIGNED TO DO.

25   IT IS, OF COURSE, DESIGNED TO BE ANTI-HACKING OR STATUTE, AND

1    THAT JUST SEEMS TO BE JUST KIND OF WAY ABOVE AND BEYOND THE

2    SORT OF CRIMINAL ACTIVITY THAT THAT STATUTE IS DESIGNED TO

3    PREVENT TO SAY THAT SO ONE CAN EVER INPUT THE INFORMATION

4    UNLESS IT'S THAT EXACT PERSON GIVEN THAT THERE ARE OBVIOUSLY

5    GOING TO BE SITUATIONS WHERE THAT MAY NOT BE POSSIBLE, THAT

6    SEEMS TO BE THE EXTREME.  AND GIVEN -- I JUST DON'T THINK THAT

7    THE CHARGE CAN STAND.

8            THE COURT:  SO WHEN -- IS IT SEVIS?  IS THAT THE

9    ACRONYM FOR THIS SYSTEM, S-E-V-I-S?

10           MS. WEST:  YEAH, SEVIS OR SEVIS.  EITHER WAY.

11           THE COURT:  SO WHEN SOMEONE SEEKS TO HAVE THEIR, IN

12   THIS CASE THEIR SCHOOL OR UNIVERSITY, ACHIEVE THIS

13   ACCREDITATION, WHATEVER IT IS, THEY HAVE TO APPLY TO HOMELAND

14   SECURITY.  I'M JUST FOLLOWING AND SPEAKING OUT LOUD HERE

15   TALKING TO THIS.  AND THEY GET THIS PERMISSION, SOMEHOW THEY

16   SEND THEIR APPLICATION OR THEIR INFORMATION IN, AND AN

17   INDIVIDUAL IS GIVEN PERMISSION, AUTHORIZATION, TO BE DESIGNATED

18   AS THE -- WHAT IS THE ACRONYM?

19           MR. SCHECHTER:  DSO.

20           THE COURT:  DSO.  AND THEY GIVE THAT INDIVIDUAL THAT

21   TITLE.  YOU ARE THE DSO FOR THIS UNIVERSITY, THIS SCHOOL, THIS

22   INSTITUTION, AND YOU ARE THE PERSON WHO MUST THEN COLLECT THE

23   DATA AND CONFIRM THE ACCURACY OF THE INFORMATION.

24       I THINK READING THROUGH THAT, I THINK THAT'S WHAT THIS

25   STATUTE SUGGESTS, CONFIRM THE ACCURACY OF THE INFORMATION AND

1    THEN REPORT THE INFORMATION BACK TO US VIA THIS PASSWORD THAT

2    WE GIVE YOU AND ACCESS THAT WE GIVE YOU TO THIS OTHERWISE

3    NONPUBLIC SYSTEM.

4         IS THAT HOW THIS WORKS?

5              MR. SCHECHTER:  I DON'T WANT TO SAY I HAVE A

6    COMPLETE AND FULL UNDERSTANDING OF HOW THE SYSTEM WORKS, BUT

7    OBVIOUSLY THERE IS AT SOME POINT YOU HAVE A -- THE DSO HAS A

8    LOG IN AND PASSWORD PROVIDED.  AND THEY, OF COURSE, ACCESS

9    SEVIS TO INPUT THE INFORMATION.  AND THE INFORMATION THEN

10   GENERATES THE FORM I20'S, WHICH ARE PRINTED OUT, AND THE

11   STUDENTS NEED IN ORDER TO OBTAIN THE PROPER VISA.

12        SO THAT'S THE INFORMATION THAT I UNDERSTAND.

13             THE COURT:  AND THE DSO IS, WHEN SHE OR HE SENDS THE

14   INFORMATION BACK, SHE TELLS THE GOVERNMENT PURSUANT TO THE

15   AUTHORIZATION GIVEN TO ME, I HAVE REVIEWED THIS STUDENT'S

16   INFORMATION AND I AFFIRM OR ATTEST, WHATEVER IT IS, THAT THE

17   INFORMATION IS ACCURATE AND CORRECT, AND I'M SENDING IT TO YOU

18   SUCH THAT THIS PERSON IS ELIGIBLE FOR AN I-20.

19             MR. SCHECHTER:  I DON'T KNOW IF THERE IS ANY FACT OR

20   ANY SORT OF -- IN TERMS OF WHAT YOU'RE SAYING, I DON'T KNOW IF

21   THERE IS ANYTHING -- ANY OF THAT REQUIREMENT.  I HAVEN'T SEEN

22   ANYTHING OF THAT ALLEGED IN AN ORDINARY INDICTMENT THAT ANY

23   SORT OF AFFIRMATION OR DECLARATION IS REQUIRED OR MADE AT THE

24   TIME.

25             AS I'M READING IT, THIS IS SIMPLY SOMEONE ELSE OTHER THAN

1    MR. WANG USED HIS LOG-IN NAME AND PASSWORD AND THEN ENTERED

2    INFORMATION INTO THE COMPUTER.

3              THE COURT:  RIGHT.  I THINK THAT'S WHAT THE FACTS

4    SEEM TO SUGGEST.  I'M PROBING.  I DON'T KNOW.

5         I'M WONDERING IF WHEN WHOEVER IT IS THAT GIVES OR THAT

6    DESIGNATES YOU AS THE DSO, IS THERE SOMETHING SPECIAL ABOUT

7    THAT DESIGNATION SUCH THAT IT GIVES THE IMPRIMATUR OF THE

8    GOVERNMENT, OR WHATEVER THAT AGENCY IS, TO THAT INDIVIDUAL

9    SAYING THAT WE EXPECT YOU TO DO ALL OF THESE THINGS AND THEN

10   SEND IT BACK TO US?

11        DO YOU KNOW?

12             MR. SCHECHTER:  I DON'T, BUT TO THE EXTENT THAT

13   THERE IS, I HAVEN'T SEEN ANYTHING IN THE INDICTMENT OR THE

14   WARRANT THAT WOULD INDICATE THAT.

15             THE COURT:  I SEE.

16             MR. SCHECHTER:  IF THIS IS UNIQUE AND SPECIAL AND

17   YOU, MR. DSO, OR MS. DSO, ARE NOT PERMITTED OR AUTHORIZED OR

18   ALLOWED TO LET ANYBODY ELSE TO USE THIS INFORMATION.  YOU KNOW,

19   THAT'S NOT WHAT THE INDICTMENT SAYS OBVIOUSLY.

20             THE COURT:  RIGHT.  RIGHT.

21             MR. SCHECHTER:  SO --

22             THE COURT:  BUT I THINK THAT'S KIND OF YOUR ARGUMENT

23   IS THAT, YEAH, HE WAS AUTHORIZED TO DO THIS BUT HE WAS, YOU

24   KNOW, OFFSITE OR COULDN'T BE THERE AND SO HE JUST SAID, HEY,

25   CAN YOU GO AND DO THIS FOR ME?  HERE IS THE INFORMATION AND

```
 1        JUST DO THIS AND SEND IT OFF, AND THAT'S IT.

 2              MR. SCHECHTER:  CORRECT.  AND THERE'S NO ALLEGATION

 3        THAT SOMEONE, YOU KNOW, WAS USING SOMEONE'S NAME OR PASSWORD

 4        WITHOUT THEIR KNOWLEDGE OR WITHOUT THEIR PERMISSION OR ANYTHING

 5        TO THAT EXTENT.  IT'S SIMPLY THAT IT WAS NOT MR. WANG SITTING

 6        AT THE COMPUTER ENTERING IN THIS INFORMATION.

 7              THE COURT:  THE OTHER THING IS THAT THE STATUTE

 8        TALKS ABOUT, AND I THINK YOU TOUCHED ON IT, KNOWINGLY FORGES

 9        COUNTERFEITS, ALTERS.  AND THEN I THINK THE NEXT PHRASE IS

10        FALSELY MAKES.

11          SUBSCRIBING IS THE FACT INDICATES THIS HAPPENED.  IS THAT

12        A FALSELY MAKING?

13              MR. SCHECHTER:  IN TERMS OF SOMEONE ELSE MAKING A

14        SIGNATURE?  WELL, I WOULD ARGUE THAT -- I WOULD SAY, NO, BUT

15        THEN I WOULD ALSO ARGUE THAT TO THE EXTENT THAT YOU WOULD WANT

16        TO ARGUE IT IS, AND THEN THERE WAS, OF COURSE, RATIFICATION OF

17        THAT WHICH WOULD ESSENTIALLY CURE THAT SAYING THAT, WELL, I

18        HAVE NO OBJECTION OR I'LL RATIFY OR ACKNOWLEDGE THAT THIS

19        SIGNATURE WAS ON MY BEHALF, AND IT WAS PROPER, AND IT WAS DONE

20        AT MY BEHEST.

21              THE COURT:  SO EVEN IF IT WAS -- COULD BE TREATED AS

22        FALSELY MADE BECAUSE IT WASN'T BY HIS HAND, THE RATIFICATION

23        SUBSEQUENTLY CURES AND PURGES ANY DEFECT?

24              MR. SCHECHTER:  YES, YOUR HONOR, AND WE DO CITE TO

25        CASES ABOUT THAT IN THE BRIEF.
```

```
1                    THE COURT:  MS. WEST.

2                    MS. WEST:  YES.  SO I THINK OUR STARTING POINT NEEDS

3        TO BE WHAT THE LAW IS ON SUFFICIENCY OF THE INDICTMENT, AND

4        THAT LAW IS THAT AN INDICTMENT IS SUFFICIENT, IT TRACKS THE

5        LANGUAGE OF THE STATUTE, AND THE STATUTE FULLY REFLECTS THE

6        ELEMENTS OF THE OFFENSE.

7                    IT DOES HERE, FOR COUNTS 2 THROUGH 5, THE VISA FRAUD

8        COUNTS, AND IT ALSO DOES FOR THE UNAUTHORIZED ACCESS.  THERE'S

9        NO CONTENTION.

10                   OTHERWISE THE REAL CONTENTION HERE IS THAT THE FACTS DON'T

11       BEAR OUT FORGERY, AND THAT'S NOT SOMETHING THAT THE INDICTMENT

12       IS REQUIRED TO ALLEGE.  THAT WILL COME TO THE NEXT PHASE, WHICH

13       WILL BE TRIAL.

14                   FOR THE PURPOSES OF EVALUATING THE SUFFICIENCY OF THE

15       INDICTMENT, THE COURT IS REQUIRED TO TAKE THE ALLEGATIONS AS

16       TRUE.  SO I THINK THAT'S THE STARTING POINT FOR THE COURT.

17                   SO THEN WE --

18                   THE COURT:  WHICH SUGGESTS THAT MY COMMENTS AND MY

19       INQUIRY ABOUT THE FACTS OF THIS CASE REALLY DON'T NEED TO DO

20       THAT, DO THEY?

21                   MS. WEST:  WELL, YOU DON'T NEED TO DO THAT, AND

22       THAT'S KIND OF WHERE I WAS GOING TO GO WITH IT NEXT.  THE COURT

23       DOESN'T NEED TO REACH THAT ISSUE.

24                   I'M HAPPY TO ANSWER SOME OF THOSE QUESTIONS FOR THE COURT.

25       I THINK A COUPLE ARE PROBABLY GOING TO BE, YOU KNOW, AT LEAST
```

1    INTERESTING AT THIS POINT EVEN IF NOT NECESSARILY MATERIAL.

2         ONE IS THAT IN TERMS OF GETTING DSO STATUS, WHEN THE

3    SCHOOL SUBMITS ITS PETITION, IT'S I-17 PETITION, TO GET

4    APPROVAL FROM THE DEPARTMENT OF HOMELAND SECURITY TO ADMIT

5    FOREIGN STUDENTS, IT HAS AN OPPORTUNITY TO DESIGNATE NUMEROUS

6    SCHOOL OFFICIALS, NUMEROUS DSO'S.

7         HERGUAN OPTED TO NOMINATE ONE, AND THAT IS THE DEFENDANT

8    HIMSELF.  THERE ARE NO OTHERS.

9         THIS IS IMPORTANT, AND THIS IS THE OTHER PART THAT KIND OF

10   ADDRESSES SOME OF THE COURT'S QUESTIONS, AS PART OF THE I-17

11   PETITION PROCESS, AND THIS IS ALLEGED IN THE INDICTMENT

12   CONTRARY TO THE SUGGESTION BY THE DEFENSE, IN PARAGRAPH 7 THE

13   INDICTMENT SPECIFICALLY ALLEGES THAT THE PETITIONING SCHOOL

14   MUST ALSO PROVIDE SEVIS WITH A RECORD OF DESIGNATED SCHOOL

15   OFFICIALS CALLED THE FORM I17(A), WHICH THE DSO'S MUST SIGN TO

16   CERTIFY THEIR KNOWLEDGE OF AND INTENT TO COMPLY WITH STUDENT

17   IMMIGRATION LAWS AND REGULATIONS.

18        ONLY AFTER THAT CERTIFICATION IS RECEIVED BY THE

19   DEPARTMENT OF HOMELAND SECURITY DO THEY AUTHOR OR DO THEY ISSUE

20   A LOG IN AND PASSWORD, AND THAT ONLY GOES TO DSO'S FOR A REASON

21   BECAUSE THOSE DSO'S, AND HERE THERE'S ONLY ONE, IT'S THE

22   DEFENDANT, HE HAS CERTIFIED THAT HE UNDERSTANDS AND HE'S GOING

23   TO FOLLOW ALL OF THE REGULATIONS.

24        I HAVE HAD TO WADE THROUGH THIS REGULATORY SCHEME.  IT IS

25   COMPREHENSIVE.  THERE'S A WHOLE LOT OF REGULATIONS THERE.

1        THE COURT:  IT'S GENEROUS.

2        MS. WEST:  IT IS.  AND THEY DEAL EXPRESSLY WITH A

3    DSO'S OBLIGATIONS AND WHAT THE DSO'S MUST DO.  AND THE

4    DEFENDANT HAS SIGNED UNDER PENALTY OF PERJURY THAT HE AGREES TO

5    FOLLOW ALL OF THAT AND THAT HE UNDERSTANDS THAT.

6        AND NOBODY ELSE HAS DONE THAT.  NO OFFICE STAFF.  NOBODY

7    ELSE.  SO NOBODY ELSE IS VERIFYING IT.

8        AND FOR THAT REASON ONLY MR. WANG WAS GIVEN AUTHORIZATION

9    TO ACCESS THE SEVIS DATABASE.  THIS IS A SENSITIVE AND

10   NONPUBLIC GOVERNMENT DATABASE THAT CONTAINS ALL KINDS OF PII,

11   PERSONAL IDENTIFYING INFORMATION, ABOUT EVERY F1 STUDENT OR

12   REALLY ANY ALIEN STUDENT AT HERGUAN UNIVERSITY.

13       SO THERE'S A REASON WHY THIS IS ONLY ALLOWED TO BE

14   AUTHORIZED OR ACCESSED AND THAT AUTHORIZATION TO ACCESS IS VERY

15   LIMITED, AND IT'S ONLY TO THE PEOPLE WHO ARE APPROVED

16   DESIGNATED SCHOOL OFFICIALS WHO AGREE THAT THEY HAVE READ,

17   UNDERSTAND, AND WILL COMPLY WITH ALL OF THE REGULATIONS THAT,

18   AS I HAVE SAID, ARE NUMEROUS.

19       SO THAT'S KIND OF THE WHY ABOUT WHY IT MATTERS, AND THAT'S

20   CERTAINLY SOMETHING THAT THE GOVERNMENT WOULD BE PRESENTING

21   EVIDENCE OF AT TRIAL, BUT THAT'S NOT SOMETHING THAT THE COURT

22   NEEDS TO REACH AT THIS POINT IN TERMS OF EVALUATING THE

23   SUFFICIENCY OF THE INDICTMENT.

24       SO I THINK REALLY THE ONLY OTHER QUESTION FOR THE COURT IS

25   SORT OF THE BROADER UNAUTHORIZED ACCESS ARGUMENT MADE BY THE

1     DEFENSE WITH CITATIONS TO THE NOSAL AND BREKKA CASE.  AND MY

2     RESPONSE TO THAT IS SIMPLY THAT THIS IS JUST A DIFFERENT PART

3     OF THE STATUTE IN A VERY IMPORTANT WAY.

4          NOSAL AND BREKKA SAY THAT REALLY IT'S NOT ABOUT

5     UNAUTHORIZED USE.  IT'S ABOUT UNAUTHORIZED ACCESS.

6          AND IF YOU'VE GOT THE -- IF YOU HAVE AUTHORIZED ACCESS, IF

7     YOU ARE LEGITIMATELY AND LEGALLY ABLE TO ACCESS, YOU KNOW, THE

8     COMPUTER SYSTEM, YOU CAN'T REALLY CRIMINALIZE WHAT USE YOU MAKE

9     OF THAT INFORMATION THAT YOU GET FROM IT.

10         BUT (A)(3), WHICH IS THE SUBSECTION OF STATUTE 18 U.S.C.

11    1030 THAT IS AT ISSUE HERE, WHAT IT DOES IS THAT IT EXPRESSLY

12    CRIMINALIZES EXACTLY WHAT HAPPENED HERE, WHICH IS THE

13    INTENTIONAL ACCESS OF -- I'M TRYING TO GET THE WORDS RIGHT --

14    "THE INTENTIONAL ACCESS OF A NON-PUBLIC GOVERNMENT COMPUTER

15    WITHOUT AUTHORIZATION."  AND THAT'S EXACTLY WHAT HAPPENED HERE.

16         THE CHARGE IS THAT THE DEFENDANT AIDED AND ABETTED ANOTHER

17    IN INTENTIONALLY ACCESSING A NON-PUBLIC GOVERNMENT COMPUTER

18    WITHOUT AUTHORIZATION.  SOMEBODY ELSE, WHO HAD NO AUTHORIZATION

19    TO ACCESS THE COMPUTER DATABASE, DID SO WITH THE DEFENDANT'S

20    ASSISTANCE AND INTENT.

21            MR. SCHECHTER:  YOUR HONOR, I'LL RESPOND TO TWO

22    THINGS.  FIRST, I'LL TAKE THE SECOND ONE.

23         WITH RESPECT TO BREKKA AND NOSAL, THE REASON THOSE ARE

24    IMPORTANT AND RELEVANT IS THAT, BECAUSE AS THE CASES SAY, AS

25    THE NINTH CIRCUIT HAS MADE CLEAR, WHEN THE WORD IS DEFINED IN

1    ONE PART OF THE STATUTE, THAT DEFINITION APPLIES TO THE ENTIRE

2    SECTION OF THE STATUTE.

3        BREKKA, NOSAL THOUGH DEALING WITH EXCEEDING AUTHORITY DID

4    TALK ABOUT THOSE TERMS AND AUTHORIZATION AND THAT DEFINITION

5    APPLIES TO THIS PARTICULAR SUBSECTION CHARGED HERE EVEN THOUGH

6    THAT WAS WITHOUT AUTHORIZATION.  SO ALTHOUGH IT'S A DIFFERENT

7    SUBSECTION, THE DEFINITION, THE MEANING OF THE WORD APPLIES TO

8    THIS JUST AS IT DOES IN THOSE, AND THAT'S WHY THOSE ARE KEY.

9    IT'S NOT THAT THE DEFINITION OF THE WORDS MEAN.

10       WITH RESPECT TO, YOU KNOW, THE CERTIFICATION AND THE

11   SIGNATURE, AS I'M HEARING MS. WEST, ESSENTIALLY IF MR. WANG WAS

12   TO SIT DOWN AT A COMPUTER AND ENTER THE NAME AND PASSWORD AS

13   THE DSO, AND TYPE IN INFORMATION TO THIS DATABASE WHICH

14   CONTAINS ALL OF THIS DATA ABOUT OTHER INDIVIDUALS, AND HAD

15   SOMEONE ELSE STANDING NEXT TO HIM LOOKING AT THIS COMPUTER,

16   WATCHING ALL THINGS AND SEEING ALL THINGS, THAT WOULD BE OKAY

17   BECAUSE THEY'RE NOT INPUTTING ANYTHING.  THEY'RE JUST STANDING

18   THERE.

19       ON THE FLIP SIDE, IF THEY ARE SITTING AT THAT COMPUTER AND

20   MR. WANG IS STANDING BEHIND THEM, HERE'S MY NAME AND MY

21   PASSWORD AND I'M NOT IN A POSITION TO TYPE, HERE'S ALL OF THE

22   DATA TO PUT IN, AND I'M GIVING IT TO YOU AND YOU'RE JUST

23   LITERALLY TRANSCRIBING IT AS THE COURT REPORTER DOES HERE,

24   THAT'S NOW A CRIME.

25       THAT SEEMS TO BE AN ABSURD APPLICATION OF THE STATUTE AS

```
1     I'M HEARING, AND I JUST DON'T THINK THAT THAT'S SOMETHING THAT

2     IS TO BE CRIMINALIZED HERE PARTICULARLY, AGAIN, WITH THE INTENT

3     OF THE CSA.

4                 THE COURT:  MS. WEST.

5                 MS. WEST:  I GUESS THE ONLY THING TO REALLY ADD TO

6     THIS IS THAT THE DEFENDANT DOES NOT HAVE AUTHORIZATION TO GRANT

7     ACCESS TO OTHER PEOPLE.  AND THAT'S SOMETHING THAT IS RELEGATED

8     TO THE DEPARTMENT OF HOMELAND SECURITY.

9           IF THE COURT HAS NO FURTHER QUESTIONS, I'LL SUBMIT IT.

10                THE COURT:  AND THAT'S ULTIMATELY GOING TO BE AN

11    ISSUE FOR TRIAL.  I ASSUME THE JURY WILL HAVE TO DECIDE WHAT

12    THE CONDUCT WAS AND WHETHER OR NOT THE FACTS SUPPORT THE

13    INDICTMENT.

14          ALL RIGHT.  THANK YOU.  I DON'T THINK I HAVE ANY OTHER

15    QUESTIONS FOR YOU.  I'LL TAKE THIS UNDER SUBMISSION.

16          BUT, MR. SCHECHTER, I HAVE TO TELL YOU, AND I'M GOING TO

17    GIVE SOME THOUGHTS TO YOUR COMMENTS, BUT MY VISCERAL REACTION

18    IS IF YOU ASK ME TO GIVE YOU A TENTATIVE RULING NOW, MY

19    TENTATIVE RULING WOULD BE THAT I WOULD RESPECTFULLY DECLINE

20    YOUR INVITATION TO DISMISS BECAUSE I THINK THAT THE INDICTMENT

21    DOES ON ITS FACE AND IN ITS LANGUAGE SUPPORT THE CHARGES AS

22    MET, BUT I'M GOING TO REVIEW NOSAL AGAIN AND BREKKA AND SEE IF

23    THERE'S ANYTHING IN THERE THAT CHANGES MY OPINION AFTER I HAVE

24    READ THEM AND READ THOSE CASES.

25          I THINK I UNDERSTAND THEM, AND I'LL INCORPORATE YOUR
```

1    COMMENTS HERE, BUT I SUPPOSE JUST TO GIVE YOU FAIR WARNING AND

2    BOTH OF YOU THE BENEFIT OF AT LEAST MY THOUGHTS RIGHT NOW IS MY

3    SENSE IS THAT I WOULD DENY THE MOTION.

4        OKAY.

5            MR. SCHECHTER:  THANK YOU, YOUR HONOR.

6            THE COURT:  THAT LEAVES MOTION TO SUPPRESS EVIDENCE,

7    ELECTRONIC MAIL, AND PREMISES SEARCH.

8            MR. MCMANIS:  THANK YOU, YOUR HONOR.

9        I'M GOING TO MAKE THREE POINTS HERE TODAY.

10           THE COURT:  OKAY.

11           MR. MCMANIS:  I'M GOING TO ARGUE THAT THESE WARRANTS

12   WERE STALE, AND THE EVIDENCE SHOULD BE SUPPRESSED FOR THAT

13   REASON; I'M GOING TO ARGUE THAT THEY WERE OVERBROAD AND THE

14   EVIDENCE SHOULD BE SUPPRESSED FOR THAT REASON; AND I'M GOING TO

15   ARGUE THAT THE SO-CALLED "GOOD FAITH EXCEPTION" DOESN'T APPLY

16   HERE UNDER NINTH CIRCUIT CONTROLLING AUTHORITY.

17       NOW, THE DATES ARE IMPORTANT IN THIS CASE.  THIS CASE WAS

18   INDICTED ON JULY 24, 2012.  AND THE EVENTS, WHICH WERE THE

19   SUBJECT OF THE SEARCH WARRANT APPLICATION, OCCURRED FIVE YEARS

20   EARLIER WELL BEFORE THE INDICTMENT.  AND I THINK THE PREMISES

21   SEARCH WARRANT WAS REQUESTED ON JULY 31, 2012, ONE WEEK AFTER

22   THE INDICTMENT.

23       NOW, AS AN ASIDE, ONE MIGHT ASK SHOULDN'T YOU PUT YOUR

24   CASE TOGETHER AND GATHER YOUR EVIDENCE BEFORE YOU GO TO THE

25   GRAND JURY?  ISN'T THAT SUPPOSEDLY WHAT IS SUPPOSED TO HAPPEN,

1      THE GRAND JURY IS SUPPOSED TO HEAR THE EVIDENCE AND FAIRLY

2      CONSIDER IT AND THEN IF THERE'S A TRUE BILL RETURN ONE?  THAT

3      DIDN'T HAPPEN IN THIS CASE.

4           THEY INDICTED MR. WANG FIRST, AND THEN A WEEK LATER THEY

5      DECIDED, WELL, MAYBE WE OUGHT TO GET SOME EVIDENCE FOR THIS

6      CASE.

7           AND IT SO HAPPENED THAT THE EVIDENCE THAT THEY WERE

8      SEEKING, IF IT EXISTED AT ALL, WAS FIVE YEARS OLD, AND THAT'S

9      WHY THE WARRANT IS NO GOOD AND WHY IT IS NOT STALE.

10          NOW, OF COURSE, MR. MACKEY, THE AFFIANT, DIDN'T TELL THE

11     MAGISTRATE ABOUT THIS PROBLEM, DIDN'T MENTION IN HIS AFFIDAVIT

12     THAT THE INFORMATION -- I'M TALKING NOW ABOUT THE PREMISES

13     SEARCH -- DIDN'T MENTION IN HIS AFFIDAVIT THAT THIS IS

14     FIVE YEARS OLD BECAUSE I BELIEVE THAT WOULD HAVE TROUBLED ANY

15     REASONABLE MAGISTRATE THAT, GEE, AS I'M BEING ASKED TO ISSUE A

16     WARRANT FOR INFORMATION THAT IS FIVE YEARS OLD, THAT SEEMS A

17     LITTLE STALE TO ME.  OKAY.  SO I THINK THAT'S VERY IMPORTANT.

18          WE'RE TALKING ABOUT A WARRANT FOR THE PREMISES SEARCH

19     ISSUED JULY 31, 2012, CONCERNING EVENTS THAT OCCURRED

20     FIVE YEARS EARLIER.

21          NOW, THE CASE LAW IS PRETTY CLEAR ON THIS AND SOMETIMES

22     I'M ASKED BY JUDGES GIVE ME YOUR BEST CASE.  I WANT TO KNOW

23     WHAT YOUR BEST CASE IS.  I WANT TO READ THAT CASE.  AND MY BEST

24     CASE IS DURHAM VERSUS UNITED STATES.  IT'S DISCUSSED IN THE

25     PAPERS OF BOTH PARTIES HERE.

1      DURHAM WAS A COUNTERFEITING CASE.  AND WHEN THE GOVERNMENT

2    SOUGHT A WARRANT TO SEARCH FOR EVIDENCE OF COUNTERFEITING, THE

3    APPLICATION AND THE AFFIDAVIT OCCURRED TEN MONTHS AFTER THE

4    EVIDENCE OF COUNTERFEIT, OKAY.

5           AND THE NINTH CIRCUIT SAID THAT'S STALE.  THAT'S TOO LATE.

6    TOO LITTLE AND TOO LATE.  AND THAT'S TEN MONTHS.  AND WE'RE

7    TALKING ABOUT FIVE YEARS HERE.

8           AND I JUST WANT TO READ A COUPLE OF QUICK EXCERPTS FROM

9    THE DURHAM CASE BECAUSE I THINK IT'S VERY IMPORTANT.  HERE'S

10   WHAT THE NINTH CIRCUIT HAD TO SAY AT PAGE 193.  QUOTE, "THE

11   MOST CONVINCING PROOF THAT THE PROPERTY WAS IN THE POSSESSION

12   OF THE PERSON OR UPON THE PREMISES AT SOME REMOTE TIME IN THE

13   PAST WILL NOT JUSTIFY A PRESENT INVASION OF PRIVACY."

14          THAT'S EXACTLY WHAT WE HAVE HERE, A REMOTE TIME FIVE YEARS

15   EARLIER COUPLED WITH THE PRESENT INVASION OF PRIVACY A WEEK

16   AFTER THEY HAD INDICTED MY CLIENT.

17          THE COURT GOES ON TO SAY, "THERE MUST BE REASONABLE

18   GROUNDS FOR BELIEVING THAT THE IMMEDIATE SEARCH FOR WHICH

19   AUTHORITY IS SOUGHT MAY BE FRUITFUL.  AND THAT JUST DOES NOT

20   EXIST IN THIS CASE.

21          AND THEN ALSO PAGE 194 THE COURT, THE NINTH CIRCUIT SAYS,

22   AND I QUOTE, "A SHOWING TO THE EFFECT THAT THE PROPERTY TO BE

23   SEIZED WAS AT THE PLACE TO BE SEARCHED A SUBSTANTIAL TIME

24   BEFORE THE APPLICATION IS MADE."

25          EXACTLY OUR FACTS.

1    "DOES NOT JUSTIFY THE ISSUANCE OF A SEARCH WARRANT FOR THE

2    REASON THAT DURING THE INTERVENING PERIOD THE PROPERTY MAY HAVE

3    BEEN MOVED AWAY.  THE FACTS MUST SHOW THAT THE PROPERTY TO BE

4    SEIZED WAS KNOWN TO BE AT THE PLACE TO BE SEARCHED NOT --"

5    THAT'S AN IMPORTANT WORD, "KNOWN."  NOT SUSPECTED, NOT

6    POSSIBLY, NOT COULD BE, NOT MAY BE, NOT MIGHT BE, BUT, IN FACT,

7    "WAS KNOWN TO BE AT THE PLACE TO BE SEARCHED SO RECENTLY," NOT

8    FIVE YEARS AGO, "SO RECENTLY AS TO JUSTIFY THE BELIEF THAT THE

9    PROPERTY IS STILL THERE AT THE TIME OF THE ISSUANCE OF THE

10   SEARCH WARRANT."

11        NOW, THIS IS ALL DIRECTLY, OF COURSE, TO THE JULY 31, 2012

12   SEARCH WARRANT, BUT IT APPLIES EQUALLY TO THE JANUARY 24TH,

13   2012 SEARCH WARRANT FOR THE RECORDS AT GOOGLE BECAUSE THE ONLY

14   ALLEGATION IN THAT APPLICATION OFFERED IN SUPPORT OF THE NOTION

15   THAT, WELL, THEY COULD STILL BE HERE.  THESE E-MAILS, PEOPLE

16   DON'T DELETE THEM OR IF THEY DELETE THEM, THEY'RE STILL OUT

17   THERE, THEY'RE STILL OUT THERE IN SOME CYBERSPACE, ET CETERA,

18   ET CETERA.

19        AGAIN, THAT'S JUST PURE SPECULATION.  IT'S NOT SATISFYING

20   THE DURHAM STANDARD.  IT HAS TO BE KNOWN THAT IT IS STILL THERE

21   AND WHAT HAVE YOU.

22        NOW, YOU KNOW, WE WERE TALKING, MY FRIENDS AND I, IN

23   PREPARING FOR TODAY'S HEARING ABOUT, WELL, WHAT SHOULD THE

24   GOVERNMENT HAVE DONE IN THIS CASE?  I MEAN, WE'RE TOLD THAT

25   THEY HAD INTERVIEWS IN 2011 AND THAT THAT SOMEHOW MAKES THIS

1    INFORMATION NOT STALE.

2              THE COURT:  THAT'S WHAT I WAS GOING TO ASK YOU,

3    MR. MCMANIS, AND PARDON ME FOR INTERRUPTING YOU, BUT MY

4    QUESTION IS, IS THERE ANYTHING THAT HAPPENED IN THE COURSE OF

5    THE INVESTIGATION IN THE PURSUIT OF THESE WARRANTS, IS THERE

6    ANYTHING THAT HAPPENED THAT WOULD CURE THE TIMING DEFECT THAT

7    YOU SUGGEST EXISTS?

8         IS THERE SOMETHING THAT --

9              MR. MCMANIS:  I DON'T THINK SO, YOUR HONOR.  THE

10   FACT THAT THE GOVERNMENT GETS AROUND IN THE YEAR 2011, AND I'M

11   GOING TO COME TO THAT IN A MINUTE AS TO WHY THAT WAS LATCHES

12   USING A CIVIL LAW CONCEPT, PROCRASTINATION, SLEEP AT THE

13   SWITCH, AND A LOT OF WAYS OF DESCRIBING ALL OF THIS, BUT THE

14   POINT HERE, YOUR HONOR, IS THAT THE FACT THAT THEY TALKED TO

15   SOME WITNESSES IN 2011 WHO TALK ABOUT SOMETHING THAT HAPPENED

16   FIVE YEARS AGO, THAT DOESN'T CURE ANYTHING.

17        NOW, YOU COULD SAY, WELL, WAIT A MINUTE HERE, MR. MCMANIS,

18   YOU'RE HANDCUFFING THE GOVERNMENT.  WHAT ARE THEY SUPPOSED TO

19   DO?  THEY GET SOME INFORMATION IN 2011.  OKAY, THAT'S

20   FIVE YEARS AGO.  THAT'S NOT MY PROBLEM, AND IT'S NOT YOUR

21   HONOR'S PROBLEM.

22        AND THE FOUNDER AND FOUNDING PEOPLE OF THIS COUNTRY WHEN

23   THEY ADOPTED THE BILL OF RIGHTS, AND INCLUDING THE FOURTH

24   AMENDMENT, BASICALLY SAYS YOU CAN'T USE A SEARCH WARRANT UNDER

25   THESE CIRCUMSTANCES.

1       IT MAY BE HELPFUL TO LAW ENFORCEMENT. IT MIGHT BE A GOOD

2    THING. IT MIGHT MAKE THE JOB OF THE GOVERNMENT EASIER, BUT

3    THAT'S NOT A CONSTITUTIONAL CONCERN.

4       BUT EVEN IF IT WERE, EVEN IF IT WERE, WE GOT YESTERDAY IN

5    THE PRODUCTION THAT WE HAVE BEEN WAITING FOR -- AND, AGAIN, NO

6    CRITICISM OF OPPOSING COUNSEL. I KNOW SHE'S BUSY, AND I THINK

7    SHE HAS GOT SOME PROBLEMS WITH THIS AGENCY OF HERS, BUT WE GOT

8    IN THE PRODUCTION YESTERDAY AN E-MAIL, WHICH I'M GOING TO HAND

9    UP TO YOUR HONOR IF I MAY.

10      WHO SHOULD I GIVE THIS TO?

11         THE COURT: MS. GARCIA. THANK YOU. COUNSEL HAS A

12    COPY OF THIS?

13         MR. MCMANIS: I JUST GAVE IT TO HER. SHE GAVE IT TO

14    US YESTERDAY.

15      HERE'S THE E-MAIL. IT'S ONE OF THESE STRINGS THAT I'M

16    TOLD YOU HAVE TO READ BACKWARDS. THAT MEANS WE START AT THE

17    BOTTOM OF THE PAGE AND WE READ UP.

18      AND WE SEE AT THE BOTTOM HERE AN E-MAIL FROM ELIZABETH

19    ROYSTON DATED FRIDAY, APRIL 4, 2008. NOW, THAT'S OVER

20    FOUR YEARS BEFORE THIS SEARCH WARRANT. AND IT'S TO CHRISTOPHER

21    MORRISON, WHO WE CAN SEE IS A DEPARTMENT OF HOMELAND SECURITY

22    PERSON FROM THE NEXT E-MAIL UP THE PAGE.

23      IT SAYS, CHRISTOPHER.MORRISON@ASSOCIATES.DHS.GOV, AND

24    HERE'S WHAT ELIZABETH ROYSTON SAYS TO THE HOMELAND SECURITY

25    GUY, "HEY CHRIS, THIS UPDATE HAS BEEN PENDING JUST OVER A

1    MONTH."

2        AND YOU CAN SEE THE SUBJECT IS MY CLIENT'S SCHOOL HERGUAN

3    UNIVERSITY.

4        "DO YOU WANT ME TO RFE THE SCHOOL," THAT IS REQUEST FOR

5    EVIDENCE, "OR JUST DENY THEIR UPDATE ON THE BASIS THAT THEY DID

6    NOT UPDATE THEIR DEGREES AVAILABLE ALONG WITH THEIR AREAS OF

7    STUDY!

8        "ALSO, THEY HAVE TEN ACTIVE RECORDS.  NONE OF WHICH ARE

9    FOR THE DEGREE PROGRAM THAT THEY WERE APPROVED FOR!  OH, AND

10   WHEN I REVIEWED THE FILE, THEIR LETTERS WERE ALL ISSUED FROM

11   CORPORATIONS OR SCHOOLS THAT ARE OWNED BY THE SAME PERSON THAT

12   OWNS BOTH HERGUAN AND EAST WEST MEDICINE."

13       SIGNED ELIZABETH ROYSTON.

14       SO THE GOVERNMENT, AND SPECIFICALLY THE PROSECUTING AGENCY

15   IN THIS CASE, HOMELAND SECURITY, KNEW ALL ABOUT THESE ISSUES

16   FOUR YEARS BEFORE THEY WENT TO SEE THE MAGISTRATE WITH THEIR

17   APPLICATION THAT CONVENIENTLY INCLUDED NO DATES ABOUT ANYTHING.

18       SO WHAT DOES MR. MORRISON SAY IN REPLY?  HE SAYS, "I'M

19   TORN, BUT I THINK RFE FIRST."  IN OTHER WORDS, HE MADE A

20   CHOICE.  HE CHOSE NOT TO INVESTIGATE THIS CASE AND NOT TO

21   DETERMINE WHETHER THERE WAS ANY LAW VIOLATIONS BUT TO DO

22   WHATEVER HE HAD TO DO.

23       AND I'M NOT CRITICIZING HIM FOR THAT, BUT THE FACT OF THE

24   MATTER IS THAT HE REALLY SHOULDN'T BE HEARD TO COMPLAIN, NOR

25   SHOULD THE GOVERNMENT AT THIS POINT THAT, WELL, YOU KNOW, WHAT

```
 1    ARE WE SUPPOSED TO DO?  WE TALKED TO THESE PEOPLE FOUR YEARS
 2    LATER AND THEY TOLD US THESE THINGS AND WE WENT AND GOT A
 3    WARRANT AND THERE YOU GO.  AND THAT'S JUST NOT THE LAW AND WHAT
 4    HAVE YOU.
 5        AND THEN SOME GUY NAMED MATTHEW STUCKEY WHO IS CALLED AN
 6    ADJUDICATOR.  I'M NOT SURE WHAT THAT MEANS.  IT LOOKS LIKE A
 7    PRETTY LOFTY POSITION.  U.S. IMMIGRATIONS AND CUSTOMS
 8    ENFORCEMENT AND OFFICE AND INVESTIGATIONS STUDENT EXCHANGE AND
 9    VISITOR PROGRAM.  HE SAYS, QUOTE, "I AGREE."
10        SO THE POINT HERE, YOUR HONOR, IS THAT THIS WARRANT IS NO
11    GOOD.  IT'S BASED ON STALE INFORMATION.  IT'S BASED ON THINGS
12    THAT WERE OMITTED, NOT PRESENTED TO THIS MAGISTRATE AND IT --
13    THE EVIDENCE OUGHT TO BE SUPPRESSED FOR THAT REASON.
14        AND I MIGHT JUST ADD IN PASSING, OF COURSE, THERE'S NO
15    MENTION ABOUT ALL OF THE LANGUAGE PROBLEMS THAT THESE FOLKS
16    FROM CHINA HAVE.  AND I DON'T EVEN THINK THAT THAT'S SOMETHING
17    THAT IS PROPERLY BEFORE THE COURT BECAUSE IT'S NOT EVEN IN THE
18    RECORD.
19        BUT WHAT IS IN THE RECORD IS THAT THIS WAS A WARRANT
20    ISSUED ON STALE INFORMATION ABOUT EVENTS THAT OCCURRED
21    FIVE YEARS OLD, OKAY, FIVE YEARS EARLIER.
22        AND THE FACT THAT THEY ONLY GOT IT EVEN THOUGH THEY WERE
23    ON NOTICE THAT THEY OUGHT TO BE LOOKING FOR SOMETHING FOR YEARS
24    DOESN'T MAKE ANY DIFFERENCE.  AND THE SAME THING GOES FOR THE
25    OTHER WARRANT.
```

1    NOW, I WANT TO -- I THINK WE HAVE PUT THIS IN AS PART OF

2    OUR PAPERS, BUT I WANT TO HAND UP TO YOUR HONOR THE JULY 31,

3    2012 WARRANT BECAUSE I WANT TO TALK ABOUT THE OVERBREADTH

4    PROBLEM WITH THIS DOCUMENT.  IF YOU LOOK AT THE WARRANT, IT'S A

5    FORM THAT WE'RE ALL FAMILIAR WITH, YOU KNOW, BLAH, BLAH, BLAH.

6    AND THEN AFTER IT TELLS THE OFFICER WHERE YOU ARE

7    SUPPOSED TO SEARCH.  THAT'S ATTACHMENT A.  IT HAS A NICE

8    PICTURE OF THE SCHOOL.  WE GO TO ATTACHMENT B AND IT TALKS

9    ABOUT WHAT IS AUTHORIZED TO BE SEIZED, AND THIS IS WHERE WE GET

10   INTO THE OVERBREADTH PROBLEM.

11   AND I WON'T GO THROUGH ALL OF THIS BECAUSE YOUR HONOR HAS

12   THIS, AND I'M SURE YOUR STAFF IS FAMILIAR WITH IT AND WHAT HAVE

13   YOU, BUT THERE ARE 11 CATEGORIES OF RECORDS.

14   AND JUST TO PUT IT IN A NUTSHELL, ESSENTIALLY THIS WARRANT

15   SEEKS ALL OF THE BUSINESS RECORDS OF THESE INSTITUTIONS THAT

16   EXIST.  AND THAT ON ITS FACE IS OVERBROAD.

17   NOW, THERE'S NO EVIDENCE THAT HAS BEEN OFFERED IN

18   OPPOSITION TO THIS MOTION OR MORE IMPORTANTLY IN SUPPORT OF THE

19   APPLICATION FOR THE SEARCH WARRANT THAT THIS IS A BUSINESS

20   THAT'S ENTIRELY, WITHOUT EXCEPTION, A SCHEME TO CONDUCT SOME

21   KIND OF A CRIMINAL ENTERPRISE.

22   THE COURT:  THAT WOULD RAISE AN EXCEPTION, I TAKE

23   IT?

24   MR. MCMANIS:  IT WOULD, YOUR HONOR.  IT WOULD, YOUR

25   HONOR.  BUT THERE WAS NOTHING IN THE RECORD THAT WAS PUT BEFORE

1      THE MAGISTRATE IN THE APPLICATION THAT WOULD SUGGEST THAT KIND

2   OF OPERATION THAT WOULD JUSTIFY THE BREADTH, ALMOST UNLIMITED

3   BREADTH OF THIS WARRANT.

4      THE OTHER PRONG OF THAT TEST, IF YOU WILL, IT'S EITHER THE

5   ENTIRE BUSINESS IS JUST MERELY A SCHEME TO DEFRAUD OR THAT ALL

6   OF THE BUSINESS'S RECORDS ARE LIKELY TO EVIDENCE CRIMINAL

7   ACTIVITY.

8      NOW, HERE'S THE OTHER CASE THAT I'M GOING TO GIVE YOU THAT

9   IS MY BEST CASE ON THIS POINT AND THAT IS UNITED STATES VERSUS

10  KOW, K-O-W.  AGAIN, IT'S IN THE PAPERS.  IT'S BEEN CITED IN

11  BOTH PARTIES MOVING PAPERS.

12     AT PAGE 426 -- AND THIS WAS A WARRANT THAT WAS REJECTED,

13  OR I SHOULD SAY NOT UPHELD, FOR OVERBREADTH.  AND AT PAGE 426

14  OF THE OPINION YOU WILL SEE THIS WARRANT, LIKE THE ONE BEFORE

15  YOUR HONOR TODAY, HAD 14 CATEGORIES OF DOCUMENTS WHICH

16  ESSENTIALLY WERE 14 DIFFERENT WAYS OF SAYING WE WANT IT ALL.

17  JUST LIKE IN OUR CASE, I GUESS, IN FAIRNESS TO THE GOVERNMENT I

18  SHOULD CONCEDE THAT THERE ARE ONLY 11 CATEGORIES, BUT IT'S THE

19  SAME SITUATION WHERE EVERYTHING IS WHAT THEY WANT.

20     AND READING FROM UNITED STATES VERSUS KOW, JUST A COUPLE

21  OF EXCERPTS, AT PAGE 427 THE NINTH CIRCUIT SAID, QUOTE, "THE

22  WARRANT AUTHORIZED THE SEIZURE OF VIRTUALLY EVERY DOCUMENT AND

23  COMPUTER FILE AT HK VIDEO," CLOSED QUOTE.

24     AND THAT'S EXACTLY THE FLAW OF THIS WARRANT.  IT SAYS

25  BASICALLY YOU'RE AUTHORIZED TO GO GET IT ALL.

1    IT GOES ON, THE COURT GOES ON TO SAY, QUOTE, THIS IS ALSO

2    AT PAGE 427, QUOTE, "THE WARRANT CONTAINED NO LIMITATIONS ON

3    WHICH DOCUMENTS WITHIN EACH CATEGORY COULD BE SEIZED OR

4    SUGGESTED HOW THEY RELATED TO SPECIFIC CRIMINAL ACTIVITY.  BY

5    FAILING TO DESCRIBE WITH ANY PARTICULARITY THE ITEMS TO BE

6    SEIZED, THE WARRANT IS INDISTINGUISHABLE FROM THE GENERAL

7    WARRANTS REPEATEDLY HELD BY THIS COURT TO BE UNCONSTITUTIONAL."

8    AND, OF COURSE, THAT TAKES US BACK TO COLONIAL TIMES AND

9    THAT'S THE REASON FOR THE FOURTH AMENDMENT.  THE BRITISH USED

10   TO GET THESE GENERAL WARRANTS ISSUED BY THE STAR CHAMBER AND

11   THEY COULD GO ANYWHERE THEY WANTED, AND THEY HAD A WARRANT THAT

12   COVERED JUST ABOUT ANYTHING.  AND IN THIS COUNTRY WE DECIDED

13   THAT'S NOT A GOOD IDEA AND THAT'S NOT A GOOD PRACTICE.

14   AND SO THE NINTH CIRCUIT, OF COURSE, IS REFERENCING THAT

15   WHEN THEY REFERENCE THE GENERAL WARRANT.

16   AND HERE ARE THE TWO EXCEPTIONS YOUR HONOR MENTIONED WHICH

17   DO NOT APPLY HERE, AND I'M QUOTING NOW ALSO FROM PAGE 427.

18   THIS IS ONE OF THESE NICE CASES, YOUR HONOR, WHERE IT'S JUST

19   NOT READ ONE CASE, YOU READ ONE PAGE.

20   AND WHAT THE COURT SAID AND THE NINTH CIRCUIT SAID AT PAGE

21   427 IS, QUOTE, "A GENERALIZED SEIZURE OF BUSINESS DOCUMENTS MAY

22   BE JUSTIFIED," MAY BE JUSTIFIED, NOT NECESSARILY IS OR MUST BE,

23   BUT MAY BE JUSTIFIED "IF THE GOVERNMENT ESTABLISHES PROBABLE

24   CAUSE TO BELIEVE," HERE'S THE KEY LANGUAGE, "THAT THE ENTIRE

25   BUSINESS IS MERELY A SCHEME TO DEFRAUD OR THE OTHER PRONG THAT

1    ALL OF THE BUSINESS'S RECORDS ARE LIKELY TO EVIDENCE CRIMINAL

2    ACTIVITY."  NO SHOWING HERE OF THAT.  AND THAT'S WHY IT'S, IT'S

3    NO GOOD.

4         NOW, THAT'S THE PREMISES WARRANT I HANDED UP, WHICH WAS

5    ISSUED ON JULY 31ST.  IF YOU LOOK AT THE RETURN TO THAT

6    WARRANT -- I'LL HAND THAT UP.  THIS IS PRETTY GOOD EVIDENCE OF

7    THE BREADTH OF THE WARRANT, WHAT THE OFFICERS CONSIDERED TO BE

8    THEIR BRIEF, THEIR AUTHORIZATION.

9         AND, AGAIN, I'M NOT GOING TO GO THROUGH THIS BUT YOUR

10   HONOR HAS IT AND IT'S, YOU KNOW, ALL OF THESE PAGES AND PAGES

11   OF DOCUMENTS THAT WERE SEIZED, WHICH SHOULD NOT SURPRISE US

12   BECAUSE THAT'S EXACTLY WHAT THE WARRANT AUTHORIZED:  GO IN

13   THERE AND CLEAN THESE GUYS OUT.

14        AND THEY DID.  AND THE FIRST TWO PAGES ARE TITLED "SEARCH

15   WARRANT INVENTORY" AND THEN THE THIRD PAGE IS "PHOTO LOG."

16   AND, OF COURSE, TAKING PICTURES OF EVERYBODY'S DOCUMENTS, SO

17   THAT'S NOT EXACTLY -- THAT'S THE SAME THING AS A SEARCH.  AND

18   THEN THE FINAL THING IS "RECEIPT FOR PROPERTY."

19        AND THEN THE OTHER THING THAT I WANTED TO PASS UP HAS TO

20   DO WITH THE, IT HAS TO DO WITH THE EARLIER SEARCH WARRANT THAT

21   WAS DIRECTED TO GETTING THE E-MAILS.  AND I'LL HAND THAT TO

22   MS. GARCIA, IF I MAY.

23        HERE WE HAVE OUR FORM AND IT, IF YOU LOOK AT THE THIRD

24   PAGE, ATTACHMENT A UNDER ROMAN II IT SAYS FILES AND ACCOUNTS TO

25   BE COPIED BY GOOGLE EMPLOYEES.  ALL ELECTRONIC MAIL IN THE

1      FOLLOWING ACCOUNTS, AND THERE ARE FOUR E-MAIL ACCOUNTS.

2          NOW, THIS IS JUST ABOUT AS BROAD AS IT GETS.  IT'S

3      BASICALLY YOU GO OUT THERE AND YOU COPY EVERYTHING IN THOSE

4      E-MAIL ACCOUNTS.  THERE'S NO RESTRICTION.  THERE'S NO

5      LIMITATION.  THERE'S NO REFERENCE TO ANY SPECIFIC ACTIVITY.

6      THERE'S NO ARTICULATED BASIS FOR ANY OF THIS.

7          IT GOES ON AND IT GETS WORSE.  B, ALL EXISTING PRINTOUTS.

8      AND THEN EXISTING -- AND THEN SUBPARAGRAPH C, ALL TRANSACTIONAL

9      INFORMATION; D, ALL BUSINESS RECORDS; E, ALL RECORDS.  ALL,

10     ALL, ALL, ALL.

11         AND THAT'S JUST, AS WE KNOW FROM THE KOW CASE AND FROM A

12     LOT OF OTHER AUTHORITY, NOT PROPER AND NOT PERMITTED.

13         SO I'M GOING TO CLOSE, YOUR HONOR, BY TALKING JUST BRIEFLY

14     HERE ABOUT WHY THIS IS NOT SAVED, IF YOU WILL, BY GOOD FAITH.

15     THAT'S ALWAYS KIND OF THE, YOU KNOW, THE CARD THAT THE

16     PROSECUTOR LIKES TO PLAY IS, OH, YOUR HONOR, THE WARRANT WAS

17     BLAH, BLAH, BLAH, BUT THIS WAS DONE IN GOOD FAITH.  THIS IS

18     DONE IN GOOD FAITH.

19         AND, YOU KNOW, YOU SEE SOME GUY IN A NICE BLUE UNIFORM AND

20     BLONDE HAIRCUT AND INNOCENT FACE, AND, OF COURSE, THE OFFICERS

21     ARE ALWAYS ACTING IN GOOD FAITH.  OF COURSE WE KNOW THAT THAT'S

22     NOT THE CASE, ALL RIGHT.  AND THIS IS NOT GOING TO IN ANY WAY

23     IMPUGN AGENT MACKEY.  I'M LOOKING FORWARD TO MEETING HIM WHEN

24     WE TRY THIS CASE.  BUT IN ANY EVENT -- OH, AND BY THE WAY, I

25     THINK IT SHOULD BE SAID, I'M INTERESTED IN HEARING MY FRIEND'S

1    COMMENT ON THIS, GRANTING THIS MOTION IS NOT GOING TO, I'M

2    SORRY TO SAY, END THE TRIAL.  WE'RE GOING TO HAVE A TRIAL.

3    BECAUSE I HAVEN'T FIGURED OUT A WAY TO SUPPRESS THESE

4    INTERVIEWS THAT HE CONDUCTED, AND I EXPECT THAT THEY'LL BE

5    BRINGING IN ALL OF THESE POOR CHINESE FOLKS, THAT THEY DON'T

6    SPEAK ENGLISH SO WELL, TO TESTIFY, BUT WE'LL HAVE AN

7    INTERPRETER IN A COURTROOM WITH CROSS-EXAMINATION.  AND I THINK

8    WE MAY SEE A LITTLE DIFFERENT OUTCOME HERE THAN WHAT WAS

9    REPORTED.

10        BUT THE FACT THAT THIS DOESN'T DISPOSE OF THE WHOLE CASE,

11   OF COURSE, IS NOT THE ISSUE HERE.  THE -- YOUR HONOR'S DUTY, AS

12   YOU KNOW, OF COURSE, IS TO CONSIDER THESE SPECIFIC WARRANTS.

13   AND AS I SAID, THEY'RE STALE AND THEY'RE OVERBROAD AND THE

14   MOTION WITH RESPECT TO WHATEVER IS SEIZED, WHETHER IT WAS AT

15   GOOGLE OR ON THE PREMISES SEARCH, OUGHT TO BE SUPPRESSED.

16        WHY IS THIS NOT IN GOOD FAITH?  FIRST OF ALL, I'M GOING TO

17   TALK ABOUT SUBJECTIVE GOOD FAITH, AND I'M GOING TO TALK ABOUT

18   OBJECTIVE GOOD FAITH.

19        THERE'S NO EVIDENCE OF ANY SUBJECTIVE GOOD FAITH IN THIS

20   CASE.  THERE'S NO DECLARATION THAT WAS SUBMITTED IN OPPOSITION

21   TO THIS MOTION BY THE GOVERNMENT SAYING FROM AGENT MACKEY, HEY,

22   YOU KNOW, I WAS ACTING IN GOOD FAITH.  I THOUGHT THIS WAS A

23   SOUND WARRANT.  I -- MY HEART IS PURE, ET CETERA, ET CETERA.

24        NOTHING ON THAT SUBJECT.  THE RECORD IS SILENT.  SO NO

25   SUBJECTIVE GOOD FAITH.

1       WHAT ABOUT OBJECTIVE GOOD FAITH?  WELL, AGAIN, YOU ONLY

2    HAVE TO READ THAT SECOND CASE I GAVE YOU.  THAT'S THE KOW CASE.

3    AND THIS IS LANGUAGE THAT IS VERY COMFORTING FOR A PERSON IN MY

4    SHOES, YOUR HONOR.  THIS IS AT PAGE -- WE'VE NOW MOVED ONTO

5    PAGE 428, 429 AND THIS ARGUMENT WAS RAISED THE SAME -- THE

6    COURT NOTED AT PAGE 428, AND I QUOTE, "THE WARRANT IN THIS CASE

7    LISTED ENTIRE CATEGORIES OF DOCUMENTS TO BE SEIZED."  SOUND

8    FAMILIAR?  IT'S EXACTLY LIKE THE WARRANTS IN THIS CASE.

9       "ENTIRE CATEGORIES OF DOCUMENTS TO BE SEIZED ENCOMPASSING

10   ESSENTIALLY ALL DOCUMENTS ON THE PREMISES."  AND THEN IT SAYS,

11   WE HAVE BEEN, QUOTE, "VIGILANT," AND THAT'S THE COURT'S DUTY,

12   OF COURSE, TO BE VIGILANT IN SCRUTINIZING OFFICER'S GOOD FAITH

13   RELIANCE ON SUCH ILLEGALLY OVERBROAD WARRANTS.

14       SO IN ADDRESSING THE ARGUMENT, THE CLAIM, THE EXCUSE, THAT

15   THE OFFICER ACTED IN GOOD FAITH, THE NINTH CIRCUIT INSTRUCTS US

16   THAT WE HAVE TO BE VIGILANT IN SCRUTINIZING THAT KIND OF CLAIM

17   ON ILLEGALLY OVERBROAD WARRANTS.

18       AND HERE IS THE LANGUAGE THAT SPECIFICALLY APPLIES AT PAGE

19   428 AND 429, QUOTE, "BECAUSE THE WARRANT IN THIS CASE WAS

20   FACIALLY INVALID, AS I BELIEVE IS THE CASE HERE, NO REASONABLE

21   AGENT," NO REASONABLE AGENT, THERE'S YOUR OBJECTIVE TEST,

22   "COULD HAVE RELIED ON IT ABSENT SOME EXCEPTIONAL CIRCUMSTANCE.

23   THE MERE FACT THAT THE WARRANT WAS REVIEWED BY TWO A.U.S.A'S

24   AND SIGNED BY A MAGISTRATE DOES NOT AMOUNT TO EXCEPTIONAL

25   CIRCUMSTANCES."

1        IN OTHER WORDS, WHEN YOU LOOK AT THE FACE OF THIS WARRANT,

2    OR THE APPLICATION I SHOULD SAY, AND MY GOOD FRIEND, MS. WEST,

3    SIGNED OFF ON IT.  I'M SURE SHE'S PLENTY BUSY, AND IT PROBABLY

4    LOOKED OKAY TO HER AT THE TIME, THE FACT THAT SHE SIGNED OFF ON

5    IT, THE FACT THAT TWO VERY DISTINGUISHED MAGISTRATES OF THIS

6    COURT ISSUED IT, THAT IS NOT, ACCORDING TO THE NINTH CIRCUIT,

7    EXCEPTIONAL CIRCUMSTANCES.

8        AND MACKEY HAD NO BUSINESS, FIRST OF ALL, COMING INTO THE

9    COURT WITH THESE APPLICATIONS IN MY JUDGMENT ARE A LITTLE

10   MISLEADING, BUT WHETHER THEY ARE OR AREN'T, TAKING WARRANTS AND

11   GOING OUT AND LOOKING FOR STUFF THAT HAPPENED FIVE YEARS AGO

12   AND ESSENTIALLY WITH A CART BLANCHE TO, YOU KNOW, SCOOP UP ALL

13   OF THE RECORDS OF MY CLIENT'S BUSINESSES, THAT'S JUST NOT GOOD

14   FAITH.  YOU CAN'T OBJECTIVELY ARGUE IT EVEN THOUGH HE DIDN'T

15   EVEN SUBMIT AN AFFIDAVIT HERE TO YOUR HONOR HERE ON THIS MOTION

16   TELLING YOU THAT I SUBJECTIVELY HAD GOOD FAITH.

17       SO THAT'S ALL I HAVE TO SAY ON THIS MOTION.  AND I'M GOING

18   TO LISTEN VERY CAREFULLY TO MY FRIEND HERE, AND THEN I'D LIKE

19   AN OPPORTUNITY TO JUST HAVE A BRIEF REPLY AS THE MOVING PARTY,

20   IF I MAY, PLEASE.

21            THE COURT:  ALL RIGHT.  THANK YOU.  FIRST, I'LL ASK

22   IF MS. WEST CONCEDES THE MOTION.

23            MS. WEST:  I DO NOT, YOUR HONOR.

24            THE COURT:  OH, OKAY.

25            MS. WEST:  I HAVE PLENTY OF RESPONSES FOR THE COURT.

1      LET'S START, BECAUSE I THINK IT'S ALWAYS THE PLACE TO START, IS

2      THE STANDARD OF REVIEW.  AND THE STANDARD OF REVIEW FOR THIS

3      COURT IN REVIEWING A SEARCH WARRANT IS WHETHER THE MAGISTRATE

4      JUDGE COMMITTED CLEAR ERROR IN FINDING PROBABLE CAUSE.

5          SO THAT'S ACTUALLY WHERE THE COURT NEEDS TO START FROM,

6      WAS THERE CLEAR ERROR IN FINDING PROBABLE CAUSE HERE?

7          BECAUSE COUNSEL STARTED WITH THE STALENESS ARGUMENT, I

8      WILL START WITH THAT AS WELL.  I THINK THAT THERE HAS BEEN SOME

9      CONFUSION OF THE ISSUES AND A MISSTATEMENT OF THE LAW.

10         SO LET'S CLARIFY WHAT THE LAW ACTUALLY IS.

11         COUNSEL READ SOME SECTION OF I THINK IT WAS A 1960

12     SOMETHING CASE, BUT THE NINTH CIRCUIT HAS ACTUALLY BEEN QUITE

13     CLEAR QUITE RECENTLY IN THE GRANT CASE CITED IN THE UNITED

14     STATES PAPERS, WHICH IS A NINTH CIRCUIT 2012 CASE, THAT

15     ACTUALLY WHAT THE TEST IS, IS THERE A FAIR PROBABILITY, NOT DO

16     WE ABSOLUTELY KNOW, BUT IS THERE A FAIR PROBABILITY THAT

17     EVIDENCE WILL BE FOUND IN THAT PLACE THAT YOU'RE SEEKING TO

18     SEARCH BASED ON A TOTALITY OF THE CIRCUMSTANCES?

19         SO THAT'S ACTUALLY WHAT WE'RE LOOKING FOR IS DOES THE

20     AFFIDAVIT SET FORTH FACTS TO GIVE UNDER A CLEAR ERROR STANDARD

21     OF REVIEW A FAIR PROBABILITY THAT THE EVIDENCE WOULD BE FOUND

22     IN THE PLACE TO BE SEARCHED?  AND, OF COURSE, THERE WERE TWO

23     SEARCH WARRANTS THAT WE'RE DEALING WITH HERE.  ONE IS FOR THE

24     PREMISES AND ONE IS FOR E-MAILS.

25         NOW, THE PREMISES OF HERGUAN UNIVERSITY AND THE EAST WEST

1     MEDICINE ARE, IN FACT, CO-LOCATED, AND THEY'RE THE SAME OFFICE

2     SPACE.  SO THAT REALLY IS ONE IN THE SAME BECAUSE OF THE WAY

3     THAT THEY OPERATED AND THEN THE E-MAIL SEARCH WARRANT.  SO

4     THAT'S AN ACCURATE STATEMENT OF THE LAW.

5          SO IN TERMS OF THE CONFUSION OF THE ISSUES, I THINK REALLY

6     IT BREAKS DOWN DIFFERENTLY THAN COUNSEL PRESENTED IT.

7          THE QUESTION OF STALENESS KIND OF GOES TO WHETHER AT THIS

8     TIME -- AT THE TIME THAT SEARCH WARRANTS WERE EXECUTED WERE

9     THERE SUFFICIENT FACTS FOR THERE TO BE A FAIR PROBABILITY THAT

10    THE EVIDENCE THAT THEY WERE SEEKING WAS GOING TO BE FOUND

11    THERE.

12              THE COURT:  AT THE TIME OF THE EXECUTION?

13              MS. WEST:  AT THE TIME OF THE EXECUTION.  SO I

14    REALLY THINK THE STARTING PLACE FOR THE COURT FOR THOSE

15    QUESTIONS IS WHAT IS SET FORTH IN THE GOVERNMENT'S PAPERS AND

16    EXPLICITLY IN THE SEARCH WARRANT AFFIDAVITS THEMSELVES

17    SPECIFICALLY FOR THE PREMISES SEARCH WARRANT -- LET'S SEE, I

18    HAVE IT BROKEN DOWN HERE.

19          PARAGRAPH 13 OF THAT AFFIDAVIT WALKS THROUGH HOW THE

20    REGULATIONS REQUIRE THE SCHOOLS, WHO HAVE THIS F1 APPROVAL TO

21    ADMIT F1 FOREIGN STUDENTS, THAT THEY ARE REQUIRED TO MAINTAIN

22    VARIOUS RECORDS FOR ALL OF THEIR F1 STUDENTS.

23          SO BECAUSE THE SCHOOL IS IN OPERATION AND BECAUSE IT HAS

24    F1 STUDENTS, IT IS REQUIRED TO MAINTAIN THOSE RECORDS.

25          AND THERE IS ALSO A STATEMENT IN THE AFFIDAVIT THAT IN THE

1    AGENT'S EXPERIENCE AND OTHER AGENT'S EXPERIENCES WHO DO THESE

2    THINGS, THOSE RECORDS ARE ALMOST ALWAYS ON SITE.  SO THAT'S WHY

3    WE'RE LOOKING FOR RECORDS RELATING TO F1 STUDENTS REGARDLESS OF

4    WHEN THEY STARTED THERE OR NOT.

5         FOR THE E-MAIL SEARCH WARRANT, THE QUESTION IS SIMILAR AND

6    THE ANSWER IS PROVIDED IN PARAGRAPH 25, WHICH ACTUALLY I DIDN'T

7    CHECK.  IT'S PROVIDED IN THE COPY THAT THE COURT JUST RECEIVED

8    FROM COUNSEL, BUT IT WAS NOT IN THE ONE THAT WAS E-FILED BY

9    COUNSEL.  THAT PAGE SEEMS TO BE INADVERTENTLY OMITTED BY THE

10   DEFENSE.

11        BUT THAT PARAGRAPH, PARAGRAPH 25, WHICH WAS ADDRESSED IN

12   THE GOVERNMENT'S RESPONSE BRIEF, PROVIDES THAT THE E-MAILS ARE

13   MAINTAINED BY GOOGLE INDEFINITELY UNLESS THEY'RE SPECIFICALLY

14   DELETED.

15        SO THAT'S WHY, REGARDLESS OF WHEN THE E-MAIL WAS ACTUALLY

16   SENT, THERE IS PROBABLE CAUSE TO THINK THAT IT IS STILL THERE

17   ON THE SERVERS AT GOOGLE.  SO THAT KIND OF DEALS WITH PART OF

18   THE STALENESS ISSUE.

19        NOW, WHAT WAS I THINK IMPROPERLY INTERTWINED WITH THAT IN

20   DEFENSE COUNSEL'S ARGUMENT WAS THE REFERENCE TO THE VARIOUS

21   ENTITIES.  THE INTERVIEWS WHICH COUNSEL IS TALKING ABOUT, WHICH

22   I HOPE THE COURT UNDERSTOOD FROM MY BRIEF, IS THEIR CONTENTION

23   THAT WHEN THE AGENTS WENT TO GO INTERVIEW PEOPLE, THERE WERE

24   THESE EMPLOYMENT LETTERS, RIGHT?

25        SO THE EMPLOYMENT LETTERS LIKE FOR VITAL CORE AND FOR SOME

1    OTHER EMPLOYERS IT SAID, OH, YOU KNOW, SO AND SO IS A FANTASTIC

2    EMPLOYEE OF MINE AND ALL OF THE SKILLS THEY LEARNED THEY GOT

3    FROM HERGUAN UNIVERSITY.  SO IT'S BASICALLY TO MAKE THE SCHOOL

4    LOOK GOOD SO THEY CAN GET THEIR ACCREDITATION -- OR NOT THEIR

5    ACCREDITATION, I'M SORRY -- THEIR APPROVAL FROM THE DEPARTMENT

6    OF HOMELAND SECURITY TO ADMIT F1 STUDENTS.

7         SO THE INTERVIEWS WERE OF THE STUDENTS, WHO WERE THE

8    SUBJECT OF THE EMPLOYMENT LETTERS AND THE EMPLOYERS WHO SIGNED

9    THE EMPLOYMENT LETTERS.

10        AND BASICALLY THE CONTENT OF THOSE INTERVIEWS BY THE

11   STUDENTS WERE I DIDN'T GO TO HERGUAN UNIVERSITY.  I DON'T

12   REMEMBER HAVING GONE THERE.  FOLLOWED BY, WHICH COUNSEL ARGUES

13   WAS A MATERIAL OMISSION, OH, MY MOM IS GOOD FRIENDS WITH THE

14   WANG FAMILY.  MAYBE I WENT THERE AND I JUST DON'T REMEMBER IT.

15        AND THEN THE GENERAL CONTENT OF THE STATEMENTS IN THE

16   INTERVIEWS BY THE EMPLOYERS, SPECIFICALLY I'M THINKING OF THE

17   VITAL CORE EMPLOYER -- LET'S SEE.  I THINK I HAVE SOME DETAILS

18   HERE ABOUT THAT.

19        BUT BASICALLY IT WAS I THINK PAGE 7 OF THE GOVERNMENT 'S

20   BRIEF, AND HE'S SAYING THAT HE NEVER EMPLOYED MR. GUAN, HE

21   DIDN'T KNOW WHO THAT WAS, AND HE DIDN'T READ THE LETTER.  HE

22   SIGNED IT WITHOUT READING IT BECAUSE THE DEFENDANT IS HIS BOSS,

23   AND THE DEFENDANT TOLD HIM THAT IT WAS JUST GOING TO BE A

24   REFERENCE.  SO THE DEFENDANT LIED TO HIM ABOUT THE PURPOSE.

25        IT ACTUALLY -- I'M NOT SURE THAT IT IS MATERIAL -- I DON'T

1    THINK IT'S A MATERIAL OMISSION AT ALL EXACTLY WHEN THIS

2    OCCURRED BECAUSE, YEAH, YOU WENT TO THE SCHOOL OR YOU DIDN'T GO

3    TO THE SCHOOL?  YOU DON'T REMEMBER THAT YOU POSSIBLY GRADUATED

4    FROM IT AND YOU JUST MAYBE FORGOT BECAUSE THE YOUR MOM IS

5    FRIENDS WITH THE DEFENDANT?

6        SO IT'S THOSE INTERVIEWS, WHICH IT IS ACTUALLY A VERY

7    SMALL SECTION OF THE AFFIDAVIT BECAUSE THE DEFENSE IS

8    CONTENDING THAT THERE WERE OMISSIONS FROM BECAUSE IT DOESN'T

9    HAVE THE DATE THAT THE PERSON WAS INTERVIEWED ON.

10       REGARDLESS OF THE DATE THAT THE PERSON WAS INTERVIEWED,

11   THERE IS PROBABLE CAUSE THAT THE RECORDS RELATING TO THE F1

12   STUDENTS ARE GOING TO BE FOUND ON THE PREMISES BECAUSE THEY'RE

13   REQUIRED TO BE BY THE REGULATIONS.

14       OKAY.  SO LET'S TALK NOW ABOUT OVERBREADTH.

15       ONE THING ON THE STALENESS.  DEFENSE COUNSEL MADE A

16   REFERENCE TO LATCHES, AND WE ALL KNOW THAT LATCHES DOESN'T

17   APPLY IN CRIMINAL CASES AND THE COURT IS LOOKING AT THE CONTENT

18   OF THE SEARCH WARRANT AFFIDAVITS ON THEIR FACE AND NOT SOME

19   OTHER DOCUMENT THAT SHOWS THAT MAYBE SOMEBODY AT DHS HAD

20   SUSPICIONS ABOUT THE LEGALITY OF THE ONGOINGS OF HERGUAN

21   UNIVERSITY EARLIER, AND THAT ACTUALLY DOESN'T MATTER.

22       SO NOW LET'S TALK ABOUT OVERBREADTH.  I THINK MAYBE I'M

23   NOT -- I WAS GOING BACK AND FORTH ON WHAT THE STARTING PLACE

24   FOR THIS ONE SHOULD BE AND I THINK I'M GOING TO GO WITH --

25   LET'S LOOK AT WHAT ACTUALLY THE GOVERNMENT ACTUALLY ASKED FOR.

1      IN THE PREMISES SEARCH WARRANT IT DOESN'T SAY ALL BUSINESS

2   RECORDS OF HERGUAN UNIVERSITY AND UNIVERSITY OF EAST WEST

3   MEDICINE.

4      WHAT IT DOES SAY IS, FOR INSTANCE, IN PARAGRAPH 1, WHICH

5   IS SOMETHING THAT THE DEFENSE COUNSEL JUST HANDED UP, RECORDS

6   RELATED TO THE ACQUISITION AND MAINTENANCE OF FOREIGN STUDENTS

7   F1 STATUS FOR CURRENT AND FORMER FOREIGN HERGUAN UNIVERSITY AND

8   UNIVERSITY OF EAST WEST MED STUDENTS AND APPLICANTS FOR SUCH

9   AND SUCH PERIOD INCLUDING, AND THEN VARIOUS SPECIFIC ITEMS LIKE

10  VISA APPLICATION, I-20 FORMS, SEVIS MANUALS, AND THAT KIND OF

11  THING.

12     PARAGRAPH 2 ASKS FOR RECORDS RELATED TO HERGUAN AND EAST

13  WEST MEDICINES AUTHORIZATION TO ADMIT FOREIGN NATIONALS.  THESE

14  ARE SPECIFIC CATEGORIES, YOUR HONOR.  THESE ARE NOT ALL RECORDS

15  OF THE UNIVERSITY.

16     SIMILARLY, AND I'M GUESSING COUNSEL IS NOT FAMILIAR WITH

17  E-MAIL SEARCH WARRANTS AND HOW THEY READ.  BUT THERE'S PART

18  THAT THERE ARE ALL RECORDS, ALL RECORDS THAT COUNSEL KEPT

19  REITERATING FOR THE COURT IS IF THE COURT LOOKS AT ATTACHMENT A

20  TO THE SEARCH WARRANT THAT COUNSEL HANDED UP, THAT'S SUBSECTION

21  2.  THAT'S FILES AND ACCOUNTS TO BE COPIED BY GOOGLE EMPLOYEES.

22  THAT'S NOT WHAT THE GOVERNMENT ACTUALLY GETS TO SEIZE.

23     WHAT THE GOVERNMENT IS SEIZING, WHAT IS IN A SEARCH

24  WARRANT FOR A CITE USUALLY IS ATTACHMENT B, THE ITEMS TO BE

25  SEIZED, IS SUBSECTION 3, SET FILES AND ACCOUNTS TO BE FURTHER

1    COPIED BY LAW ENFORCEMENT.

2        AND THERE IT'S NOT ALL RECORDS.  IT'S E-MAIL

3    COMMUNICATIONS INVOLVING HERGUAN F1 STUDENTS, STUDENT TUITION

4    AND RECRUITMENT OR REFERRAL PAYMENTS, LETTERS OF ACCEPTANCE OR

5    DENIAL, GRADE SHEETS, ATTENDANCE RECORDS, COURSE MATERIALS AND

6    SCHEDULES.

7        AND IT GOES ON AND TALKS ABOUT THE SITE VISITS AND THE

8    SEVIS SYSTEM AND THE PASSPORTS, VISAS AND RECORDS FROM BANKS

9    CONTROLLED BY HERGUAN AND THE DEFENDANT AND THE DEFENDANT'S

10   FAMILY MEMBERS, AND MR. FRIBERG, WHO SPECIFICALLY IS REFERRED

11   TO IN THE AFFIDAVIT, AND TAX RECORDS FOR THESE SAME

12   INDIVIDUALS.  AND THEN IT GOES TO THE KNOWLEDGE OF THE U.S.

13   IMMIGRATION LAWS AND REGULATIONS.

14       SO IT IS NOT ASKING FOR ALL RECORDS, AND I THINK THAT MAY

15   BE THE BETTER STARTING POINT FOR THE COURT.

16       BUT COUNSEL SPENT A LOT OF TIME TALKING ABOUT THE KOW

17   CASE, AND I ACTUALLY THINK HERGUAN IS THE KOW CASE BECAUSE WHAT

18   THE GOVERNMENT -- WHAT I BELIEVE HAPPENED AND WHAT IS SET FORTH

19   FACTUALLY IN THE AFFIDAVITS IS THAT THIS ACTUALLY IS A CASE OF

20   FRAUD IN THE INCEPTION.

21       AND THE GOVERNMENT'S RESPONSIVE BRIEF KIND OF OUTLINES HOW

22   THAT FLOWED AND WHICH PARTS OF THE AFFIDAVIT SUPPORT THAT, BUT

23   BASICALLY HERGUAN WAS ALLOWED TO START ADMITTING ANY STUDENTS

24   AT ALL ONE DAY PRIOR TO SUBMITTING A SEVIS PETITION, AN I-17

25   SEVIS PETITION.

1    THAT I-17 PETITION, THE GOVERNMENT WILL ARGUE AT TRIAL, IS

2    PERMEATED WITH FRAUDULENT STATEMENTS AND FRAUDULENT

3    SUBMISSIONS, AND IT WAS ONLY BASED ON THOSE FRAUDULENT

4    SUBMISSIONS SUBMITTED ONE DAY AFTER HERGUAN WAS AUTHORIZED TO

5    START ANYTHING, ANY OPERATIONS THAT THE I-17 WAS GRANTED BASED

6    ON THE FRAUD CONTAINED IN THAT PETITION, AND THAT EVERYTHING

7    THAT FLOWS FROM THAT IS, THEREFORE, THE PRODUCT OF FRAUD, EVERY

8    I-20 ISSUED TO AN F1 STUDENT WHO WAS ADMITTED BECAUSE OF THIS

9    FRAUDULENT PETITION THAT WAS GRANTED.

10    AND SO PART OF THE GOVERNMENT'S THEORY, YES, THERE IS THE

11    FORGERY THAT WE TALKED ABOUT WITH REGARD TO THE OTHER ISSUE,

12    BUT AS IS ALSO ALLEGED IN THE VISA FRAUD ALLEGATIONS COUNTS 2

13    THROUGH 5 ARE THAT THESE VISA RELATED DOCUMENTS WERE PROCURED

14    BY FRAUD, AND THAT'S HOW THEY WERE PROCURED BY FRAUD BECAUSE

15    EVERYTHING THAT FLOWED FROM THAT I-17 PETITION WAS FRAUDULENT.

16    THE COURT:  DOES THE GOVERNMENT -- MS. WEST, DOES

17    THE GOVERNMENT NEED TO INDICATE YOUR BELIEF THAT THE ENTIRE

18    OPERATION WAS ILLEGAL?  DO YOU NEED TO DO THAT FOR PURPOSES OF

19    A FOUNDATIONAL -- ANY FOUNDATIONAL PURPOSE PRIOR TO THE

20    EXECUTION OF THE WARRANT SUCH THAT IT WOULD ALLOW THIS

21    EXCEPTION THAT MR. MCMANIS SPOKE ABOUT EARLIER?  IS THERE NEED

22    TO DO THAT?

23    MS. WEST:  NOT THAT I'M AWARE OF.

24    THE COURT:  DOES THE DEFENDANT NEED TO BE PLACED ON

25    SOME TYPE OF NOTICE THAT THE GOVERNMENT IS SEEKING THIS, TO USE

1    MR. MCMANIS'S WORD, BROAD, BROAD SEARCH AND THE REASONS FOR

2    THAT, THE JUSTIFICATION FOR THAT ARE BECAUSE THE GOVERNMENT

3    BELIEVES THAT THE ENTIRE ENTERPRISE IS ILLEGAL?  IS THERE SOME

4    REQUIREMENT FOR THAT TYPE OF NOTICE TO A DEFENDANT?

5            MS. WEST:  SO I'M NOT AWARE OF SOME SORT OF NOTICE.

6    THE FACTS SUPPORTING IT, I BELIEVE, ARE SET FORTH ACCURATELY

7    AND SUFFICIENTLY IN THE AFFIDAVIT.  I DON'T THINK THE COURT

8    EVEN NEEDS TO REACH THAT.  I'M JUST ADDRESSING IT BECAUSE THE

9    DEFENSE COUNSEL MADE A BIG DEAL ABOUT THE KOW CASE.

10           THE COURT:  THAT'S WHY I AM TALKING ABOUT IT AND

11   THAT IS WHY IT IS PART OF OUR DISCUSSION.

12           MS. WEST:  RIGHT.  IT'S PART OF THE DISCUSSION

13   BECAUSE THE DEFENSE RAISED IT.

14       BUT I ACTUALLY THINK THAT THIS ISN'T A "WE'RE GOING TO

15   SEIZE ALL BUSINESS RECORDS CASE."  AND TO THE EXTENT THAT THE

16   DEFENSE WAS SORT OF WAIVING AROUND THE RETURN SHOWING A LONG

17   LIST OF DOCUMENTS THAT WERE ACTUALLY SEIZED, TO THE EXTENT THAT

18   THOSE DOCUMENTS THAT ARE SPECIFICALLY IDENTIFIED AS RELATING TO

19   THE F1 STUDENTS IN VARIOUS WAYS AND SEVIS AND THAT KIND OF

20   THING, IF THOSE REALLY ARE ALL OF THE DOCUMENTS, WELL, THAT

21   JUST GOES TO SHOW THAT REALLY HERGUAN WAS NOT DOING ANYTHING

22   OTHER THAN BEING INVOLVED IN STUFF THAT RELATES TO THE FRAUD OR

23   THAT FLOWS DOWN FROM THE FRAUD.

24       SO IF THE COURT HAS ANY OTHER QUESTIONS ABOUT THE

25   OVERBREADTH ARGUMENT, I'M HAPPY TO ADDRESS THEM, BUT I THINK I

```
 1    HAVE ANSWERED THEM.

 2              THE COURT:  OKAY.  THANK YOU.

 3              MS. WEST:  AND BEFORE I MOVE ONTO GOOD FAITH,

 4    BECAUSE THAT'S ACTUALLY A VERY IMPORTANT ISSUE TO ME, I WANTED

 5    TO ASK DID THE COURT HAVE ANY OTHER QUESTIONS ABOUT THE

 6    STALENESS ARGUMENT?

 7              THE COURT:  NO.  THANK YOU.

 8              MS. WEST:  SO LET'S TALK ABOUT GOOD FAITH BECAUSE

 9    THIS IS NOT A CARD THAT THE GOVERNMENT LIKES TO PLAY.  THIS IS

10    ACTUALLY THE STATE OF THE LAW.

11         AND THE COURT IS REQUIRED TO LOOK AT AFTER ENGAGING IN THE

12    OTHER ANALYSIS, IF THERE IS SOME SORT OF DEFICIENCY, WHICH I

13    WOULDN'T ACTUALLY EVEN REACH THIS ARGUMENT.  I DON'T THINK THAT

14    WE NEED TO.

15         BUT I RAISE IT BECAUSE IT TOUCHES ON SOMETHING THAT I

16    THINK IS VERY SENSITIVE, AND THAT IS THE SUGGESTION THAT THE

17    AGENT ENGAGED IN BAD FAITH, AND I'M GOING TO ASK THE COURT TO

18    MAKE SPECIFIC FINDINGS THAT THAT DID NOT HAPPEN.

19         SO I JUST WANTED TO LET THE COURT KNOW WHERE I AM GOING

20    WITH THAT.

21         COUNSEL HAS SAID THAT THE DEFENDANT DIDN'T EVEN SUBMIT A

22    DECLARATION OR MAKE A STATEMENT THAT HE ACTED IN SUBJECTIVE

23    GOOD FAITH, AND I WOULD LIKE TO POINT OUT TO THE COURT THAT

24    THAT'S NOT WHAT IS REQUIRED AT THIS POINT.

25              MR. MCMANIS:  AGENT.  YOU SAID --
```

1          MS. WEST:  DID I SAY SOMETHING ELSE?

2          MR. MCMANIS:  YOU SAID DEFENDANT.  HE'S NOT A

3    DEFENDANT YET.

4          MS. WEST:  WELL, I DON'T EXPECT THAT HE WILL BE.

5          MR. MCMANIS:  YOU NEVER KNOW.

6          MS. WEST:  SO THE STANDARD FOR WHETHER WE'RE GOING

7    TO GET SOME SORT OF FRANKS INQUIRY IS WHETHER A HIGH THRESHOLD

8    HAS BEEN MET, AND THERE IS A THRESHOLD, A SUBSTANTIAL

9    PRELIMINARY SHOWING IS WHAT THE CASE LAW SAYS, THAT THERE WAS A

10   FALSE OR MISLEADING STATEMENT, AND THAT THAT FALSE OR

11   MISLEADING STATEMENT WAS, ONE, DELIBERATELY OR RECKLESSLY

12   INCLUDED IN THE AFFIDAVIT, AND, TWO, NECESSARY TO A FINDING OF

13   PROBABLY CAUSE.

14       SO WE'RE NOT ANYWHERE CLOSE TO THAT THRESHOLD.  NOTHING

15   NEEDED TO BE SUBMITTED BY THE AGENT.  THE COURT SHOULD NOT

16   INFER SOME ADMISSION OF ACTING IN BAD FAITH BY THE FACT THAT IT

17   DIDN'T HAVE THE AGENT SUBMIT A DECLARATION OR COME HERE TO

18   TESTIFY BEFORE THE COURT BECAUSE WE'RE NOT AT THAT POINT OF

19   HAVING THAT THRESHOLD MET.

20       SO THAT BRINGS ME TO WHAT I'M GOING TO ASK THE COURT TO

21   DO.  AND THERE'S BEEN EXPLICIT SUGGESTIONS BY DEFENSE COUNSEL

22   THAT THE AGENT ACTED IN BAD FAITH, THAT THE AGENT ACTED WITH

23   GROSS NEGLIGENCE AND/OR MADE INTENTIONAL MATERIAL OMISSIONS,

24   AND I WOULD LIKE TO ASK THE COURT AS PART OF ITS RULING WHETHER

25   IT DOES SO IN COURT TODAY, WHICH WOULD BE MY PREFERENCE, OR IN

1    WRITING AFTER THE COURT HAS GIVEN IT MORE CONSIDERATION TO FIND

2    THAT THE DEFENDANT HAS DONE NONE OF THOSE THINGS --

3              THE COURT:  THE AGENT.

4              MS. WEST:  I'M SORRY.  DID I SAY THE DEFENDANT

5    AGAIN?

6         THE AGENT HAS DONE NONE OF THOSE THINGS, AND THE AGENT HAS

7    NOT ACTED IN BAD FAITH.  AND I WOULD LIKE A CLEAR FINDING OF

8    THAT.  AND I WOULD LIKE A CLEAR FINDING THAT THE AGENT DID NOT

9    ACT WITH GROSS NEGLIGENCE AND AN EXPRESS FINDING ALSO THAT THE

10   AGENT ALSO DID NOT INTENTIONALLY MAKE MATERIAL OMISSIONS FROM

11   THE AFFIDAVIT.

12        I THINK THIS IS GOING TO BE SOMETHING THAT -- THESE

13   ACCUSATIONS ARE SOMETHING THAT COULD TAINT THIS AGENT GOING

14   FORWARD AND THEY'RE ABSOLUTELY BASELESS, AND SO THAT'S WHY I

15   ASK THE COURT TO MAKE EXPRESS FINDINGS.

16             THE COURT:  OKAY.  THANK YOU VERY MUCH.

17             MS. WEST:  YOU'RE WELCOME.

18             THE COURT:  MR. MCMANIS.

19             MR. MCMANIS:  I'LL BE VERY BRIEF, YOUR HONOR.  THANK

20   YOU.

21        THAT WAS A VERY ELOQUENT AND FORCEFUL ARGUMENT OF THE

22   GOVERNMENT'S CASE, AND I APPRECIATE HOW CHALLENGING THAT MUST

23   HAVE BEEN FOR MY FRIEND GIVEN THE PROBLEM THAT THE GOVERNMENT

24   HAS WITH ITS CASE.  AND SHE SHOULD BE COMMENDED FOR THAT.

25             FIRST OF ALL, WITH RESPECT TO THE STANDARD, ADDRESSING HER

1    COMMENTS ABOUT THAT, I DID NOT HEAR THAT THE DURHAM CASE HAS

2    BEEN OVERRULED OR THAT THE DURHAM CASE IS BAD LAW OR THAT THE

3    NINTH CIRCUIT DID NOT KNOW WHAT THEY WERE TALKING ABOUT IN

4    DURHAM OR WHAT HAVE YOU.  AND I THINK THAT THE DURHAM CASE IS

5    CONTROLLING AND IT'S ON ALL FOURS, AND WE HAVE HEARD NOTHING TO

6    THE CONTRARY.

7         WITH RESPECT TO THE QUESTION OF STALENESS, I DIDN'T HEAR

8    ANYTHING ABOUT ANY EXPLANATION ABOUT THIS SPLENDID AGENT, WHY

9    HE DIDN'T SEE FIT TO INFORM THE MAGISTRATE AS TO THESE DATES

10   AND TIMES THAT I THINK ARE CRITICAL, BUT BE THAT AS IT MAY, THE

11   FACT THAT AFTER THREE OR FOUR YEARS OF SUSPICIONS, AS EVIDENCED

12   BY THAT E-MAIL THAT I PUT BEFORE THE COURT, HE GETS AROUND TO

13   TALKING TO SOME PEOPLE, THAT DOESN'T CURE ANYTHING.

14        AND, YOU KNOW, YOU COULD INTERVIEW SOMEBODY -- IN THE FALL

15   OF 2011, I GUESS, IS WHEN THOSE INTERVIEWS OCCURRED, AND THEY

16   COULD TALK ABOUT EVENTS THAT OCCURRED FIVE YEARS AGO AS IN THIS

17   CASE OR ANY NUMBER OF YEARS AGO AND PROVIDE THAT INFORMATION TO

18   THE AGENT.

19        THE INFORMATION IS THE CRITICAL THING TO LOOK AT.  IT'S

20   STALE.  IT'S STALE.  THE LAW IS CLEAR THAT YOU HAVE TO BELIEVE

21   THAT THERE IS SOMETHING THERE AND RIGHT NOW, RIGHT THEN IN 2011

22   OR 2012, NOT THAT THERE WAS SOMETHING THAT WAS GENERATED OR TO

23   BE FOUND WAY BACK IN 2007.

24        NOW, I WAS VERY INTERESTED TO HEAR THAT THE SUGGESTION

25   THAT THE GOVERNMENT MAKES THAT, WELL, THE LAW REQUIRES MR. WANG

1    TO KEEP ALL OF THESE RECORDS AND WE WOULD EXPECT THAT HE WOULD

2    HAVE ALL OF THOSE RECORDS THERE.  THAT'S KIND OF THE EVIDENCE

3    OF A LAWFUL BUSINESS, ISN'T IT, FOLLOWING GOVERNMENT RULES AND

4    REGULATIONS, KEEPING RECORDS AND DOING THIS AND DOING THAT?

5         YOU CAN'T HAVE IT BOTH WAYS.  YOU CAN'T SAY THAT THIS IS A

6    LAWFUL BUSINESS THAT WE MIGHT EXPECT KEEPS ITS RECORDS AS

7    REQUIRED BY THE GOVERNMENT AND BLAH, BLAH, BLAH, BUT ON THE

8    OTHER HAND IT'S A PERMEATED -- IT'S A CRIMINAL ENTERPRISE AND

9    SO FORTH AND SO ON.  I MEAN, IT'S EITHER ONE OR IT'S THE OTHER.

10        AND THE FACT THAT YOU WOULD EXPECT SOMEONE TO KEEP THE

11   RECORDS.  WELL, MAYBE YOU'D EXPECT THAT.  THAT'S NOT SOMETHING

12   THAT THERE'S NO EVIDENCE THAT HE KEPT THOSE.  WE KNOW FROM THE

13   RECORD BEFORE THE COURT THAT THE UNIVERSITY MOVED AT LEAST ONCE

14   FROM ONE LOCATION TO ANOTHER LOCATION.  WE KNOW WHAT HAPPENS

15   WHEN MOVES OCCUR.  SO I DON'T THINK THAT ADDS ANYTHING AT ALL

16   TO THE ANALYSIS.

17        THE FACT OF THE MATTER IS THAT THE RECORDS THAT THE

18   GOVERNMENT WAS SEEKING MAY HAVE EXISTED FIVE YEARS AGO.

19   THERE'S NO EVIDENCE OR REASON TO BELIEVE THAT THEY'RE STILL TO

20   BE FOUND IN THE PLACE TO BE SEARCHED.  IT'S A GENERAL SEARCH

21   WARRANT.  GO LOOK AND SEE WHAT YOU CAN FIND.

22        AND THEN, AGAIN, THIS IS ONE OF THESE KIND OF BOOTSTRAP,

23   SELF-SERVING ARGUMENTS WHEN MY FRIEND HERE SAYS, WELL, LOOK AT

24   THE RETURN.  ALL OF THE RECORDS THAT WERE SEIZED.  IT MUST HAVE

25   ALL BEEN CRIMINAL.

1          WELL, WE DON'T HAVE ANY EVIDENCE TO SUPPORT THAT EITHER,

2     DO WE?  ALL WE KNOW FOR A FACT IS THAT IT WAS AN OVERBROAD

3     WARRANT THAT NOT SURPRISINGLY SCOOPED UP ALL OF THE RECORDS OF

4     THIS BUSINESS.

5          NOW, I WAS TAKEN TO TASK AS BEING IGNORANT ABOUT READING

6     THESE SEARCH WARRANTS AND THIS IS NOT A SURPRISE -- I'M SURE

7     YOUR HONOR WON'T BE SURPRISED, THIS IS NOT THE FIRST TIME THAT

8     OPPOSING COUNSEL HAS TOLD ME I DON'T KNOW WHAT I'M DOING AND I

9     DON'T KNOW WHAT I'M SAYING, BUT I WOULD SIMPLY, WITH RESPECT,

10    MAKE THE FOLLOWING OBSERVATION:  I READ FROM ATTACHMENT A --

11    I'M NOT TALKING ABOUT THE JANUARY 24, 2012 SEARCH WARRANT.  AND

12    SPECIFICALLY ATTACHMENT A, I READ ROMAN II, FILES AND ACCOUNTS

13    TO BE COPIED BY GOOGLE EMPLOYEES, AND I READ THE FIVE

14    PARAGRAPHS.

15         AND THEN MY FRIEND SAID, WELL, HE DOESN'T KNOW ABOUT THESE

16    ELECTRONIC SEARCH WARRANTS.  HE GOT THE WRONG SECTION.  YOU

17    HAVE TO LOOK AT ROMAN III.  WELL, IF WE LOOK AT ROMAN III, SHE

18    READ PART OF PARAGRAPH A.  SHE OMITTED THE WORD "ALL."

19         SHE STARTED BY READING "E-MAIL COMMUNICATIONS."

20         AND IF YOU GO THROUGH ALL OF THAT, BOY, IT'S ABOUT AS

21    COMPREHENSIVE AS YOU CAN GET.

22         AND THEN SHE DIDN'T POINT OUT TO YOUR HONOR B OR C.  B

23    TALKS AND REFERENCES 3(A) AND C REFERENCES 2(C), (D), AND (E).

24         SO MAYBE I'M NOT AS DUMB AS I LOOK BECAUSE, YOU KNOW, IN

25    FACT, THE INCORPORATION BY REFERENCE OF PARAGRAPH ROMAN III

```
 1      PICKS UP ALL OF PARAGRAPH ROMAN II.  AND IT'S REALLY KIND OF A
 2      DISTRACTION IN ANY EVENT BECAUSE THE WARRANT IS OVERBROAD, AS I
 3      HAVE SAID, AND I DON'T NEED TO REPEAT THAT AGAIN AND AGAIN.
 4          NOW, WITH RESPECT TO THE GOOD FAITH CLAIM, I AGREE
 5      THAT'S -- SHE SAYS YOU DON'T NEED TO REACH THAT.  I DON'T THINK
 6      YOU DO EITHER.  I THINK THESE WARRANTS ARE NO GOOD.  AND I
 7      GUESS MAYBE IF YOU THINK THAT THEY'RE NO GOOD, THEN YOU AGREE
 8      WITH ME ON THAT POINT AND YOU DO NEED TO REACH IT, BUT, AGAIN,
 9      I WOULD LOOK AT THE KOW CASE AND THE LANGUAGE THAT I QUOTED.
10          AGAIN, I DIDN'T HEAR THAT I MISREAD THAT OR THAT THAT CASE
11      HAS BEEN OVERRULED OR THE NINTH CIRCUIT GOT IT WRONG IN THAT
12      INSTANCE OR WHATEVER.  I THINK THAT'S ON ALL FOURS WITH THIS
13      CASE.  AND THERE ARE JUST CERTAIN WARRANTS THAT NO MATTER HOW
14      FAITHFUL THE AGENT MAY BE, THAT DOESN'T TRIGGER THIS GOOD FAITH
15      EXCEPTION BECAUSE THEY'RE SO CLEARLY FACIALLY INVALID AND
16      THAT'S WHAT WE'VE GOT RIGHT HERE.
17          AND THEN FINALLY, YOUR HONOR, THIS REQUEST BY MY FRIEND
18      THAT SHE WANTS SOME SPECIFIC FINDINGS ABOUT AGENT -- THE AGENT
19      HERE IN THIS CASE, SHE'S ASKING FOR FINDINGS ABOUT A WITNESS
20      WHO HAS NOT TESTIFIED, WHO DID NOT PROVIDE A DECLARATION.
21      MAYBE YOUR HONOR KNOWS THIS MAN.  I DON'T KNOW.  I DON'T KNOW
22      HIM.  BUT I THINK THAT'S KIND OF EXTRANEOUS AND THE MOTION
23      BEFORE YOUR HONOR IS NOT FOR ANYTHING OTHER THAN TO SUPPRESS
24      CERTAIN EVIDENCE.
25          AND IF YOUR HONOR AGREES WITH ME THAT THIS EVIDENCE WAS --
```

1    THAT THESE SEARCH WARRANTS AREN'T ANY GOOD AND THEY'RE NOT

2    SAVED BY THE LEON DOCTRINE, FINE, I THINK THE MOTION IS

3    GRANTED.  I DON'T THINK YOU HAVE TO DO ANYTHING MORE THAN THAT.

4         AND IF YOU DISAGREE WITH ME, WHICH IT WILL BE NOTHING NEW

5    TO ME BECAUSE I HAVE BEEN DISAGREED WITH PLENTY OF TIMES

6    BEFORE, THEN YOU DENY THE MOTIONS.

7         BUT THIS NOTION OF GIVING SOME GUY A GOLD STAR SO THAT HE

8    CAN CONTINUE GOING AFTER IMMIGRANTS AND OTHER PEOPLE THAT HAVE

9    COME TO THIS COUNTRY, I DON'T THINK THAT'S CALLED FOR IN THIS

10   CASE.

11        AND I TRIED TO BE POLITE IN MY OPENING REMARKS AND SAY

12   THAT I'M NOT SAYING ANYTHING ABOUT HIM, BUT I THINK OBJECTIVELY

13   IT'S NO GOOD AND ALL I SAID SUBJECTIVELY IS THAT HE DIDN'T

14   DISPUTE THAT.

15        SO I THINK THAT'S PRETTY MUCH IT.  I WOULD LIKE TO TAKE

16   THIS OPPORTUNITY, YOUR HONOR, TO THANK YOU FOR YOUR ATTENTIVE

17   CONSIDERATION OF THESE MATTERS.

18        I HAVE ALSO ENJOYED SEEING ALL OF THESE BRIGHT YOUNG

19   LAWYERS.  I IMAGINE THE AVERAGE IQ IN THE JURY BOX IS PROBABLY

20   SOMEWHERE UP AROUND 200, A LOT HIGHER THAN MINE, THAT'S FOR

21   SURE.

22        BUT COULD I JUST ASK, YOUR HONOR, BEFORE WE LEAVE, IF

23   WE'RE GOING TO SET THIS FOR SOME KIND OF A CASE MANAGEMENT

24   CONFERENCE OR SOMETHING?  I THINK WE'RE GETTING CLOSE TO THE

25   POINT WHERE WE OUGHT TO SET THIS CASE FOR TRIAL.

1      MS. WEST:  BEFORE WE REACH THAT POINT, YOUR HONOR, I

2  WONDERED IF WE COULD RESPOND TO TWO THINGS?

3      MR. MCMANIS:  WAIT A MINUTE.

4      THE COURT:  JUST A SECOND.  I ACTUALLY HAD A

5  QUESTION OF MS. WEST ABOUT THE STALENESS AND THE TIMING OF THE

6  INTERVIEWS?

7      MR. MCMANIS:  THAT'S FINE.

8      MS. WEST:  YES.

9      THE COURT:  IF YOU COULD SPEAK TO THOSE, PLEASE.

10      MS. WEST:  WAS THERE A PARTICULAR QUESTION ABOUT THE

11  TIME OF THE INTERVIEWS.

12      THE COURT:  WELL, I'M CURIOUS ABOUT AND MR. MCMANIS

13  SUGGESTS THAT THERE WAS INDEED STALENESS.  HE OFFERS THE E-MAIL

14  THAT WE TALKED ABOUT AND HE SAID DON'T CONSIDER THAT, JUDGE.

15  YOU DON'T HAVE TO, AS TO THE TIMING.  AND THE GOVERNMENT,

16  KNOWING ABOUT THE CASE, THE SCIENTER OF THE GOVERNMENT AND WHY

17  DIDN'T THEY ACT ON IT.

18      BUT I RECALL IN THE EVIDENCE THAT THE AGENT DID THESE

19  INTERVIEWS OF INDIVIDUALS.  I THINK YOU TOUCHED ON THEM.

20      MS. WEST:  UH-HUH.

21      THE COURT:  IS THERE ANYTHING SIGNIFICANT ABOUT THE

22  TIMING OF THOSE THAT THE COURT SHOULD CONSIDER VIS-A-VIS THE

23  STALENESS ISSUE?

24      MS. WEST:  OKAY.  SO LET ME -- I THINK I UNDERSTAND

25  THE COURT'S QUESTION.

1       THE INTERVIEWS OCCURRED I BELIEVE IT WAS IN 2011 AND

2   MAYBE --

3               MR. MCMANIS:  SEPTEMBER.

4               MS. WEST:  RIGHT.  OKAY.  THANK YOU.

5       SO THE INVESTIGATION REALLY WAS -- BEGAN TOWARD THE END OF

6   2010 AS THE COURT MAY HAVE SEEN FROM GOING THROUGH THE SEARCH

7   WARRANT AFFIDAVITS AND KIND OF WALKING THROUGH THE CHRONOLOGY

8   HERE, AND THEN THERE WERE THESE E-MAILS FROM D. MARTINEZ THAT

9   GAVE THE GOVERNMENT FURTHER CONCERN.  AND THAT'S WHAT THE BASIS

10  WAS OR PART OF THE BASIS FOR THE E-MAIL SEARCH WARRANT.

11      AND SO FOLLOWING THAT, AS MORE IS BEING LEARNED ABOUT IT,

12  THE AGENT GOES AND I THINK IT WAS HE AND SOME OTHER AGENTS, NOT

13  JUST AGENT MACKEY, THEY GO AND INTERVIEW SOME OF THE PEOPLE WHO

14  THEY HAVE COME ACROSS IN THESE EMPLOYMENT LAWYERS.

15      AND SO THOSE INTERVIEWS ARE OCCURRING IN 2011.  SO SHORTLY

16  BEFORE THE SEARCH WARRANTS.  SO THE INFORMATION ABOUT THOSE

17  INTERVIEWS ARE ABOUT THE STATEMENTS MADE COMES, YOU KNOW, VERY

18  SHORTLY BEFORE THE SEARCH WARRANT THEMSELVES.

19      WHAT I UNDERSTAND DEFENSE CONCERN TO BE IS THAT THE

20  UNDERLYING FACTS FROM THOSE INTERVIEWS HAD OCCURRED SEVEN YEARS

21  PRIOR.

22      AND THE REASON I DON'T THINK THAT THAT MATTERS IS BECAUSE

23  THE UNDERLYING FACTS WERE DID YOU GO TO HERGUAN UNIVERSITY?

24  NO, I DIDN'T.  WELL, MAYBE THEY DIDN'T REMEMBER IT BECAUSE IT

25  WAS SO MUCH LATER.  WELL, YOU DON'T NOT REMEMBER GOING TO

1    HERGUAN UNIVERSITY.

2         SO IT'S TRUE AS I LOOK BACK THROUGH THE AFFIDAVIT IT

3    DIDN'T SAY THE DATE OF THAT INTERVIEW.  I'M SURE THAT'S

4    SOMETHING I'LL KEEP IN MIND AS I REVIEW SEARCH WARRANTS GOING

5    FORWARD.

6         BUT DOES IT MATTER HERE?  NO, IT DOESN'T MATTER.  BECAUSE

7    HE EITHER WENT TO HERGUAN OR HE DIDN'T.  YOU DON'T REMEMBER

8    THAT YOU ATTENDED A SCHOOL AND GRADUATED, BUT, YOU KNOW,

9    PERHAPS YOU FORGOT THAT HAPPENED.  SO I THINK ON THE CONTENT

10   IT'S NOT MATERIAL THAT THE DATE OF THE INTERVIEW WAS MISSING

11   FROM IT.

12        DOES THAT ANSWER THE COURT'S CONCERN ABOUT THE DATE OF THE

13   INTERVIEW ISSUE?

14             THE COURT:  WELL, THAT WAS ONE ISSUE I HAD ABOUT IT.

15   AND IS THERE ANYTHING ABOUT THE AGENT'S INTERVIEW VIS-A-VIS THE

16   EXECUTION OF THE SEARCH WARRANT?

17        YOU KNOW, MR. MCMANIS SUGGESTS, AND I THINK THE EVIDENCE

18   INDICATES, THERE'S THIS TIME GAP.  THERE'S YEARS OF TIME GAP

19   BETWEEN CERTAIN EVIDENCE THAT IS INDICATED IN THE AFFIDAVIT,

20   THE ACTUAL EXECUTION, THE ACTUAL SIGNING BY A MAGISTRATE OF THE

21   WARRANT.

22        AND ON THE SURFACE ONE WOULD SAY, WELL, THAT'S NOT THE WAY

23   WARRANTS TYPICALLY ARE HANDLED WITH INFORMATION THAT IS YEARS

24   OLD AND THEN COMES FORWARD.

25        SO I GUESS YOU LOOK AT IT AND YOU THINK, WELL, IS THERE

1    SOMETHING ABOUT THIS THAT --

2         MS. WEST:  -- MAKES IT DIFFERENT.

3         THE COURT:  WELL, I SUPPOSE MAKES IT DIFFERENT OR IS

4    THERE ANYTHING -- I WAS GOING TO USE THE WORD "SAVES IT FROM

5    THAT ANALYSIS," I SUPPOSE.

6         MS. WEST:  YES, AND THAT'S WHERE WE STARTED WITH

7    THAT THE REGULATIONS REQUIRE ALL OF THESE THINGS TO BE KEPT AT

8    THE SCHOOL.

9         SO THE SCHOOL HAS TO HAVE COPIES OF ITS I-17 PETITION.  IT

10   HAS TO HAVE ALL OF THE ATTACHMENTS THAT WERE THE SUPPLEMENTAL

11   SUBMISSIONS THAT GO WITH THE WHOLE I-17 PETITION PROCESS.

12        IT HAS TO HAVE EVERY RECORD RELATING TO A STUDENT WHO IS

13   THERE PURSUANT TO THE F1 REGULATION THAT ALLOWS THEM TO HAVE

14   FOREIGN STUDENTS HERE TO STUDY.

15        SO EVEN THOUGH THE SCHOOL GOT ITS I-17 PETITION APPROVED

16   BACK IN 2007, AND EVEN THOUGH THE FRAUDULENT STATEMENTS THAT

17   WERE SUBMITTED AS PART OF THAT PETITION PACKAGE THAT CAUSED

18   EVERYTHING, YOU KNOW, DOWNSTREAM FROM IT TO BE TAINTED BY THAT

19   AND FRAUDULENT, EVEN THOUGH THAT STUFF HAPPENED IN 2007, THE

20   SCHOOL HAS TO HAVE IT THERE.

21        NOW, I UNDERSTAND THE DEFENSE IS SAYING, WELL, YOU KNOW,

22   IF THEY HAD THOSE RECORDS THAT SHOWS THAT THEY WERE NOT REALLY

23   A FRAUDULENT SCHOOL BECAUSE THEY ACTUALLY HAD THE RECORDS.

24        WELL, I THINK THEY WERE TRYING TO GET A LOT OF MONEY

25   BECAUSE THEY KNEW THERE WAS A WHOLE SLEW OF FOREIGN STUDENTS

```
 1        THAT THEY COULD GET IF ONLY THEY COULD GET THIS I-17 PETITION

 2        APPROVED.

 3             BUT WHAT I THINK DOESN'T MATTER ABOUT THE BACKGROUND OF

 4        IT.  THE QUESTION FOR THE COURT IS DOES THE SEARCH WARRANT

 5        AFFIDAVIT PUT FORTH ENOUGH FACTS?  AND IT DOES BECAUSE IT WALKS

 6        THROUGH WHAT THE PROBABLE CAUSE IS THAT THERE'S VISA FRAUD.

 7        WELL, FOR THE E-MAIL SEARCH WARRANT IT WAS MORE OF A NARROW

 8        BASIS.  I BELIEVE IT WAS THE FALSE STATEMENTS AND VISA FRAUD

 9        AND THEN THE PREMISES WAS ALL OF THE STATUTORY VIOLATIONS THAT

10        WERE INCLUDED IN THE INDICTMENT.

11             BUT IT ALLEGES BOTH SUFFICIENT FACTS FOR THERE TO BE

12        PROBABLE CAUSE CERTAINLY UNDER A CLEAR ERROR STANDARD THAT THE

13        VIOLATIONS THEMSELVES OCCURRED.

14             AND THEN THE NEXT QUESTION IS DOES IT ALLEGE SUFFICIENT

15        FACTS FOR THERE TO BE A FAIR PROBABILITY THAT EVIDENCE OF THOSE

16        VIOLATIONS IS GOING TO BE AT THE SCHOOLS?  AND THE ANSWER TO

17        THAT IS, YES, FOR THE PREMISES BECAUSE THE SCHOOL IS REQUIRED

18        TO KEEP ALL OF THIS STUFF.

19             SO THAT ITSELF GIVES A FAIR PROBABILITY THAT THESE RECORDS

20        RELATING TO THE I-17 AND THE F1 STUDENTS AND ALL OF THIS STUFF

21        IS GOING TO BE THERE.  AND THE FACT THAT GOOGLE INDEFINITELY

22        RETAINS E-MAILS GIVES FAIR PROBABILITY THAT, THAT CONTENT IS

23        STILL GOING TO BE ON THE SERVERS OF GOOGLE.

24             SO DOES THAT ANSWER THE COURT'S QUESTION?

25                  THE COURT:  YES, YES.
```

1    MS. WEST:  THERE WERE TWO OTHER POINTS JUST AS

2    CLARIFICATION, AND THE COURT MAY WELL NOT NEED THIS

3    CLARIFICATION.  AND I'M JUST NOT SURE WHAT THE COURT'S

4    EXPERIENCE IS IN REVIEWING SEARCH WARRANTS.  I KNOW MAGISTRATES

5    DEAL WITH IT ALL OF THE TIME.

6    MR. MCMANIS:  NOW SHE'S GOING AFTER YOU, YOUR HONOR.

7    MS. WEST:  AND I DON'T MEAN IT PEJORATIVELY AT ALL,

8    YOUR HONOR, BUT JUST TO CLARIFY.

9    IN SECTION 2 OF THE E-MAIL SEARCH WARRANT ATTACHMENT A

10   WHERE IT'S PARAGRAPH C, D, AND E, THOSE ARE NOT CONTENT

11   RELATED.  SO THAT IS STUFF THAT CAN BE OBTAINED WITH LESS THAN

12   A PROBABLE CAUSE SHOWING.  IT'S JUST THAT WE WENT AFTER IT ALL

13   IN THE SEARCH WARRANT.  SO THAT'S NOT CONTENT.

14   AND THE ONLY OTHER THING I WANTED TO ADDRESS AND I -- IT'S

15   PROBABLY RHETORICAL, BUT I'M NOT ASKING FOR A GOLD STAR FOR AN

16   AGENT THAT THE COURT HAS NOT HEARD FROM HERE IN COURT.  I'M

17   ASKING FOR THE ABSENCE OF A BLACK MARK.

18   THE COURT:  THANK YOU.

19   MR. MCMANIS:  THAT WAS A VERY ELEGANT TERM OR

20   PHRASE, AND I COMPLIMENT HER ON THAT.  CAN I GET A FINAL LAST

21   WORD HERE?

22   THE COURT:  YOU GET THE FINAL LAST WORD.  IT'S YOUR

23   MOTION.

24   MR. MCMANIS:  THANK YOU VERY MUCH.  THIS OUGHT TO

25   BE, IN MY OPINION, A VERY SIMPLE QUESTION AND A FOCUSSED

1       QUESTION.

2           I THINK I MENTIONED EARLIER THAT GRANTING THIS MOTION IS

3       NOT GOING TO RESULT IN DISMISSAL OF THE CASE.  THIS IS NOT

4       LIKE, YOU KNOW, THE DOPE IS IN THE TRUNK.  IF THE DOPE IS

5       SUPPRESSED, THERE'S NO POSSESSION CHARGE.

6               THE COURT:  THAT'S NOT OF CONCERN TO THE COURT.

7               MR. MCMANIS:  I KNOW THAT TO BE THE FACT, AND I

8       APOLOGIZE IF YOUR HONOR TOOK IT ANY OTHER WAY.  I'M SIMPLY

9       TRYING TO ILLUSTRATE THE POINT HERE.

10          THEY HAVE WHATEVER LETTERS WERE SUBMITTED BACK IN 2007.

11      THE GOVERNMENT GOT THOSE.  THEY GOT THEM FROM MY CLIENT.  THEY

12      HAVE THE WITNESSES THAT THEY INTERVIEWED IN 2011.

13          AT TRIAL, I MEAN, YOU KNOW, I WAS A PROSECUTOR YEARS AGO,

14      AND IF ANYONE REMEMBERS, BUT SHE CAN PUT THE WITNESS ON THE

15      STAND AND SHOW THE WITNESS THE LETTER.  WELL, IS THAT YOUR

16      SIGNATURE?  DID YOU GO TO HERGUAN UNIVERSITY?  DID YOU WORK AT

17      THIS PLACE?  DID YOU GET GOOD GRADES?  DID YOU GET A LOT OF JOB

18      OFFERS.  THEY'LL SAY WHAT THEY'RE GOING TO SAY.

19          OKAY.  SO THE FOCUS OF THIS MOTION, WHICH I THINK EMBODIES

20      A VERY IMPORTANT PRINCIPAL IN OUR COUNTRY AND UNDER OUR

21      CONSTITUTION IS THAT THE EVIDENCE THAT WAS SEIZED PURSUANT TO

22      THE SEARCH WARRANT SHOULD NOT BE USED IN THIS TRIAL.  IT MUST

23      BE SUPPRESSED BECAUSE IT WAS BASED ON STALE FACTS.

24          AND THE FACT THAT THE OFFICER, FOR WHATEVER REASON, GOOD,

25      BAD OR OTHERWISE, TOOK THREE YEARS OR FOUR YEARS, OR WHATEVER,

1    WHEN HE GOT AROUND TO TALKING TO HIM IN THE FALL OF 2011 ABOUT

2    THE EVENTS THAT OCCURRED BACK IN 2007 UNDER THE AUTHORITIES

3    THAT WE BOTH CITED, THAT'S NOT GOOD ENOUGH.

4         AND SO THE WARRANT SHOULD NOT BE UPHELD, AND THE MOTION

5    SHOULD BE GRANTED.  AND THEN WE'LL HAVE OUR TRIAL, AND SHE'LL

6    CALL WHATEVER WITNESSES SHE CALLS, AND I'LL QUESTION THEM AND

7    THEN THE JURY WILL MAKE A DECISION.  THAT'S HOW IT SHOULD GO.

8              THE COURT:  OKAY.  THANK YOU.  THANK YOU VERY MUCH.

9         MR. MCMANIS, I JUST WANTED TO BE CLEAR, THERE WAS NO

10   REQUEST FOR A FRANKS HEARING ON THIS?

11             MR. MCMANIS:  NO, NO REQUEST FOR A FRANKS HEARING.

12             THE COURT:  I SAW IT MENTIONED IN THE PLEADINGS

13   AND --

14             MR. MCMANIS:  WELL, I --

15             THE COURT:  FLIRTATION WITH THE FRANKS HEARING.  I'M

16   FAMILIAR WITH FRANKS VERSUS DELAWARE.  I THINK I STILL RECALL

17   THAT CASE, BUT, NO, NO, YOUR HONOR.  THANK YOU.  THANK YOU FOR

18   ASKING ME THE QUESTION.  OKAY.

19             MR. MCMANIS:  CAN WE COME BACK SOME TIME NOT IN THE

20   TOO DISTANT FUTURE TO PICK A TRIAL DATE?

21             THE COURT:  WE'LL DO THAT.  I AM GOING TO TAKE THE

22   MOTION UNDER SUBMISSION.  AND THANK YOU FOR YOUR ARGUMENTS AND

23   YOUR HELP ON THIS.

24        I'M LOOKING AT FEBRUARY 24TH, PERHAPS.

25             MR. MCMANIS:  I'M GOING TO BE OUT OF THE STATE ON

```
1        THE 24TH.  IS THE 17TH AVAILABLE?

2               THE COURT:  NO, IT'S NOT.

3               MS. WEST:  IT'S A FEDERAL HOLIDAY.

4               MR. MCMANIS:  OH, IT'S A FEDERAL HOLIDAY.  IT'S NOT

5       IN MY CALENDAR, BUT I'M SURE IT MUST BE ON YOURS.

6               THE COURT:  IS MARCH 3RD CONVENIENT FOR COUNSEL?

7               MR. MCMANIS:  THAT'S FINE.

8               MS. WEST:  I WILL BE IN A PRETRIAL CONFERENCE BEFORE

9       JUDGE TYGER FOR A TRIAL THAT BEGINS THE FOLLOWING DAY.

10              THE COURT:  IS THAT IN THE MORNING OR IN THE

11      AFTERNOON?

12              MS. WEST:  IT'S AT 9:00 O'CLOCK.  I'M NOT SURE HOW

13      LONG THE COURT WAS PLANNING ON GOING WITH US.

14              THE COURT:  OUR CALENDAR WOULD BE CALLED AT 1:30.

15      IS THAT --

16              MS. WEST:  I COULD DO THAT.  THE COURT IS NOT

17      INCLINED TO SPECIALLY SET IT FOR A NON-MONDAY IF THE 24TH DOES

18      NOT WORK FOR THE DEFENSE?

19              THE COURT:  I'M NOT SURE WE HAVE TIME AVAILABLE.

20              MS. WEST:  I ONLY ASK BECAUSE I HAVE A FOUR-WEEK

21      TRIAL STARTING THE FOLLOWING DAY.  BUT I WOULD PREFER IT -- IF

22      THAT'S THE ONLY DATE THAT WORKS FOR THE COURT AND THE DEFENSE,

23      THEN THAT'S FINE FOR ME.

24              THE COURT:  WELL, LET'S SEE.  YOU START A FOUR-WEEK

25      TRIAL ON THE 24TH OF FEBRUARY?
```

1          MS. WEST:  NO, MARCH 4TH.  THE COURT HAD INQUIRED

2     ABOUT MARCH 3RD.

3          MR. MCMANIS:  YOUR HONOR, MY FRIEND SAID THAT THEY

4     ARE DARK ON FRIDAYS IN THAT TRIAL.  I DON'T KNOW IF YOU HAVE

5     ANY FRIDAYS IN MARCH THAT MIGHT WORK.  HOW ABOUT THE 14TH?

6          MS. WEST:  I'M AVAILABLE ALSO THROUGHOUT FEBRUARY IF

7     THAT'S NOT TOO SOON FOR THE COURT.

8          THE COURT:  IS THE 14TH AVAILABLE?

9          MS. WEST:  14TH IS FINE FOR THE GOVERNMENT.

10         THE COURT:  THAT'S A FRIDAY.

11         MS. WEST:  IT'S VALENTINE'S DAY SO I'M SURE DEFENSE

12    COUNSEL WOULD LIKE TO SPEND IT WITH ME.

13         MR. MCMANIS:  VALENTINE'S DAY.

14         THE COURT:  WE CAN DO THE 28TH OF FEBRUARY IF THAT'S

15    MORE CONVENIENT.

16         MS. WEST:  EITHER OF THOSE IS FINE FOR ME.

17         MR. MCMANIS:  WOULD IT BE POSSIBLE IF WE DO THE

18    28TH?

19         THE COURT:  SURE, YEAH.

20         MR. MCMANIS:  I MAY NOT BE HERE, BUT I'M SURE MY

21    FRIENDS COULD COVER FOR ME.

22         THE COURT:  FEBRUARY 28TH, AND WE CAN DO THAT AT

23    9:00 O'CLOCK.

24         MS. WEST:  VERY GOOD.

25         MR. MCMANIS:  THANK YOU.

1          THE COURT:  AND THAT'S FOR STATUS, FURTHER STATUS,

2    AND I'LL EXCLUDE TIME.

3          MR. MCMANIS:  YEP.

4          THE COURT:  I'LL EXCLUDE TIME TO ALLOW FOR EFFECTIVE

5    PREPARATION OF COUNSEL.  TIME IS EXCLUDED.  AND WE'LL SEE YOU

6    BACK ON FEBRUARY 28TH.

7          MR. MCMANIS:  THANK YOU VERY MUCH, YOUR HONOR.

8          THE COURT:  THE MATTER IS UNDER SUBMISSION.

9          MS. WEST:  DOES THE COURT PLAN ON ISSUING A WRITTEN

10   RULING PRIOR TO THAT DAY?

11         THE COURT:  YES.

12         MS. WEST:  VERY GOOD.  WE'LL SEE YOU THEN.

13         THE COURT:  ALL RIGHT.  ANYTHING FURTHER?

14         MR. MCMANIS:  NO, YOUR HONOR.

15         MS. WEST:  NO, YOUR HONOR.

16         MR. ATKINSON:  THANK YOU, YOUR HONOR.

17         MR. SCHECHTER:  THANK YOU, YOUR HONOR.

18         THE COURT:  YOU'RE WELCOME.

19      (COURT CONCLUDED AT 10:50 A.M.)

20

21

22

23

24

25

1

2

3                   CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16         IRENE RODRIGUEZ, CSR, CRR
           CERTIFICATE NUMBER 8076
17

18
           DATED:  FEBRUARY 7, 2014
19

20

21

22

23

24

25