MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

HARTLEY M. K. WEST (CABN 191609)
AMBER J. ROSEN (CABN 160380)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6747
    FAX: (415) 436-7234
    Hartley.West@usdoj.gov
    Amber.Rosen@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 12-581 EJD |
| Plaintiff, | UNITED STATES' PRETRIAL CONFERENCE STATEMENT AND TRIAL MEMORANDUM |
| v. | Pretrial Conference: November 3, 2014 |
| JERRY WANG, | Trial Date: November 17, 2014 |
| Defendant. | |

The United States of America, by and through its counsel of record, Melinda Haag, United States Attorney, and Hartley M. K. West and Amber J. Rosen, Assistant United States Attorneys, hereby submits its Pre-Trial Conference Statement and Trial Memorandum in the above-captioned case.

### I.    STATEMENT OF FACTS

Defendant Jerry Wang is charged in a fifteen-count Indictment with conspiracy, visa fraud, use of false documents, aggravated identity theft, and aiding and abetting unauthorized access of government computers. The Indictment generally alleges that defendant fraudulently obtained and maintained approval from the United States for Silicon Valley-based Herguan University to admit foreign students, and seeks forfeiture of all proceeds from that fraud and all facilitating property.

U.S. PRETRIAL CONF. STATEMENT
CR 12-581 EJD                                            1

The United States intends to present a Superseding Indictment later this week, correcting the dates in aggravated identity theft Counts 14 and 15 and deleting visa fraud Count 4.

**A.     Background**

At the time of the offense conduct, Herguan University purported to offer Master's degrees in Computer Science, Electronics Engineering, and Business Administration. According to Herguan's website, defendant was the CEO; Ying Qiu Wang ("Y. Wang") was the President; and Su Tong ("Tong") was the CFO. Immigration records show that Y. Wang is defendant's father and Tong is defendant's mother; the family immigrated to the United States from China in 1993-94; and defendant is a naturalized U.S. Citizen.

Defendant was also the CEO of the University of East-West Medicine (UEWM), which – at the time of the offense conduct – was co-located with Herguan at 595 Lawrence Expressway. Y. Wang was UEWM's founder and President.

**B.     Herguan's I-17 and False Attachments (Counts 1, 7-12, 14-15)**

A school seeking approval to admit foreign students must submit a petition to the United States Department of Homeland Security (DHS), Student and Exchange Visitor Program (SEVP) in Washington, DC. This petition, called a Form I-17, is submitted electronically through the Student and Exchange Visitor Information System (SEVIS), a DHS-operated database. Along with the I-17, the school must submit attachments, including the Form I-17A, Supplement A – a Record of Designated School Officials (DSOs), who certify their knowledge of and intent to comply with student immigration laws and regulations. SEVP Director Susanna Warner will testify to SEVP and SEVIS rules and procedures, as well as to those records SEVP received from and created by Herguan and UEWM.

SEVIS records show that a Form I-17 for Herguan was submitted electronically on July 6, 2007. The I-17 identified the date of Herguan's establishment as December 12, 2005, and Y. Wang as its owner. Form I-17A, Supplement A identifies Defendant as the Primary (and sole) DSO. The submission of these documents marks the beginning of the conspiracy to commit visa fraud (Count 1).

As part of the I-17 approval process, SEVP conducts a site visit, during which an inspector collects the original, signed I-17 application and supporting documents. SEVIS records show that Herguan's site visit occurred on July 30, 2007; that during this visit, the SEVP inspector interviewed

Wang as the "owner" and Primary DSO; and that the inspector collected Herguan's original, signed I-17 and I-17A, as well as three transfer letters, purportedly establishing that its courses had been and would continue to be accepted to accredited institutions of higher learning. The I-17 is signed by Y. Wang as President, dated July 10, 2007. The I-17A is signed by defendant and Y. Wang.

One of the transfer letters submitted to the site inspector forms the basis of a false document charge (Count 7). The July 9, 2007 letter, purporting to be from Andres Bella of the Academy of Chinese Culture & Health Services (ACCHS), represents that Bella supports Herguan's I-17 petition, and that Herguan student "Li Ling" had transferred credits to ACCHS. Bella is expected to testify at trial that he did not write this letter, nor would he have because Herguan was not accredited. Bella did, however, write such a letter in support of UEWM. Bella will further testify that he did not know a "Li Ling" and was not aware of her transferring to ACCHS. Ling Li acknowledges that she worked as the admissions director for UEWM, where Wang was her supervisor, and denies having ever taken classes at UEWM, Herguan, or ACCHS, or attempting to transfer any credits to any of these schools.

On August 8, 2007, SEVP issued a request for evidence, stating that it needed three articulation agreements or, alternatively, three employment letters, "written and signed by the employer(s) attesting graduates of your school are fully qualified in their field of study, as a result of the training they gained at your institution." The request for evidence further instructed: "Additionally your school should provide evidence supporting the students referenced in the letters, or college acceptance letters, program enrollment and completion/transfer dates (e.g. transcript copies)." In response to SEVP's request, defendant sent SEVP a signed cover letter, bearing a "Received by SEVP" stamp dated August 16, 2007, along with employment letters and transcripts for three purported Herguan graduates. The transcripts contain the student's names, dates of birth, and social security numbers; are on Herguan letterhead; and are dated August 8, 2007. Each transcript lists identical courses and the same sequence of courses taken for each purported student. The employment letters and two of the transcripts form the basis of the additional false document charges, and the transcripts form the basis of the two aggravated identity theft charges.

The first employment letter (Count 8), from Alex Shi of UEWM, states that Candace Zheng worked for UEWM as an "herbal consultant/manager assistant" and that she graduated from Herguan in

April 2007. Shi would testify that he was UEWM's Dean of Academic Affairs, employed by defendant, Y. Wang, and Tong, and that he could not recall what Zheng's position was but knew she worked at UEWM's clinic. In fact, Zheng never attended Herguan but graduated from UEWM in December 2008, and worked for UEWM as a receptionist. The false transcripts do, however, contain her correct social security number and date of birth (Count 11, 14).

The second employment letter (Count 9), from JingGang Tang of Vital Core Biosystems Inc., states that Shane Guan graduated from Herguan on April 15, 2007 and was employed by Vital Core as a Marketing Officer. Tang would testify that Vital Core is the supply department of UEWM, that defendant is his direct supervisor, and that he did not know Guan. He would further testify that defendant typed the letter and asked him to sign, explaining that it was a reference letter that would be used to help Guan get a job. Guan would testify that he had never heard of Vital Core and never worked for them; that he was a student at UEWM and had not yet graduated; and that his mother is friends with defendant and his parents. Guan would also testify that the false Herguan transcripts contain his true social security number and date of birth (Counts 12, 15).

The third letter (Count 10), from "Lin Lee" of International Institutes for Health and Healing (IIHH), states that David Wang was an Herbal Researcher who graduated from Herguan on April 15, 2007. The phone number on the letter traces to a "Ling Li." Li would testify that she never saw this employment letter before agents showed it to her during the Herguan investigation, that she never worked for IIHH, that she did not know a David Wang, and that she worked as UEWM's admissions director in 2007.

**C.   Unauthorized SEVIS Access and Creation of Forged I-20s (Counts 2-6)**

As Warner will explain, once SEVP approves a school to admit foreign students, SEVP issues IDs and passwords to the school's DSOs, enabling them to access SEVIS. SEVIS is a nonpublic database accessible only by DSOs and government personnel, and DSOs' access is nontransferrable. SEVIS is used to enter data regarding foreign students' immigration status, and to create Certificates of Eligibility (Forms I-20), certifying that a student has been accepted for enrollment in a full course of study.

///

Once an alien has been admitted to a SEVP-approved school, the alien uses this "initial" I-20 to obtain a visa to enter the United States. After the alien reports to the school and registers, a DSO for the school updates the student's status in SEVIS to "active," and issues an "active" I-20 signed by the DSO. DSOs are obligated to report on SEVIS, within 21 days, the failure of any student to maintain status, that is to make normal progress toward completing a course of study. Warner will testify regarding the DSOs' and SEVIS's role in creating I-20s, while William Elliott of the U.S. State Department will explain the use and materiality of I-20s in obtaining the F-1 visa and entering the United States.

Several former Herguan employees will testify that defendant gave them his SEVIS user name and password and told them to access SEVIS to create I-20s for Herguan F-1 students. Emails obtained by search warrant confirm that others were accessing defendant's SEVIS account. After the employees created the I-20 records, witnesses will testify, they would print them out for signature. Because they created the forms using defendant's account, the forms automatically printed with his signature block. At defendant's request, when he was not available, the employees provided defendant's parents with the I-20s to sign in defendant's name.

Records from U.S. Customs and Border Patrol (CBP) show that defendant took several international trips in 2009 and 2010. SEVIS records show that approximately 125 Form I-20s were created during periods when CBP records show that defendant was out of the United States. For example, CBP records show that defendant left the United States for China on September 11, 2010 and returned on October 6, 2010. ICE agents have acquired four I-20s created during this time frame. Herguan student Dheeraj Kore provided a copy of his I-20, dated September 20, 2010, with a signature purporting to be defendant's. Herguan student Srikanth Jasti provided agents with an original I-20 bearing a signature for defendant, dated September 21, 2010. Herguan student Vishesh Aedula provided a scanned copy of an I-20 dated September 21, 2010, also with a signature for Wang. Herguan student Tamilselan Karunanidhy emailed agents a scanned copy of his I-20, which contains a signature purporting to be defendant's, dated September 23, 2010. These forged I-20s form the basis of a conspiracy to commit visa fraud charge (Count 1) and four substantive visa fraud charges (Counts 2-5).

///

///

### D.     Compliance Visit and Fraudulent Academic Warning Letter (Count 13)

On November 17, 2010, SEVP officers conducted a Compliance Site Visit of Herguan; DHS agents tagged along. During the visit, the agents and SEVP personnel interviewed Wang, who stated that students must take at least two on campus courses, that classes are "never" offered at UEWM's campus, and that he does all the SEVIS-related work. Wang further stated that attendance is monitored by students signing attendance sheets; that students receive an "F" grade for failure to attend classes, followed by academic probation and termination; and that foreign students failing to meet full course of study requirements are issued academic warning letters and then terminated in SEVIS.

After the interview, SEVP personnel requested a campus tour. Defendant agreed and pointed out several lightly attended classes in session, which he said were Herguan classes. After the personnel asked to sit in and meet the instructors, defendant advised that they were really UEWM classes and that all Herguan classes had been cancelled for the evening. When the agents then identified themselves, defendant claimed that Herguan used to require physical attendance, but was temporarily allowing foreign students to attend entirely online due to campus renovations. At the conclusion of the site visit, SEVP personnel gave defendant a Request for Evidence, asking for a copy of the academic warning letter, among other things.

On December 16, 2010, defendant sent SEVP a signed and notarized letter responding to its Request for Evidence and attaching a sample Herguan academic warning letter. A review of emails provided by one of Herguan's officers who has been cooperating with ICE investigators reveals that the warning letters were newly fabricated. This false letter forms the basis of Count 13.

On December 1, 2010, defendant emailed Herguan's Vice President of Organizational Development, Richard Friberg: "Institution's attendance and academic warning letters do we have them? I know we have institution's attendance policy is in the catalog. But we never have academic warning letters. Can you create one?"

Friberg replied on December 2, 2010: "Jerry, I am not sure what this is for. Are there SEVIS rules that must be complied with? . . . . They are asking for these letters for a reason. Don't step in a trap." Friberg embedded into his email a sample letter that is virtually identical to the academic warning letter that defendant submitted to SEVP two weeks later.

Defendant confirmed his intent to provide this newly-created letter to SEVP in his response the following day: "SEVP was asking me if student did not meet the full academic standing what does the school do. I said if student do not follow meet the full academic standing we will find out from our system and dismiss the student. SEVP said they want to see the academic warning letters to students."

**E.    Witness Tampering**

The United States has reinterviewed several anticipated witnesses in preparation for trial. One witness, Jing Giang Tang, was reinterviewed on October 14, 2014. Tang reported that, the day after he was initially interviewed in 2011, Wang instructed him to falsely tell the investigators that he knew Shane Guan. Tang advised Wang that he had already been interviewed and truthfully told agents he did not know Guan. Tang further reported that, approximately a year ago, he was approached by a lawyer who said he represented Wang. The attorney presented him with and asked him to sign a declaration falsely stating that he did not speak English very well and did not understand the agents who questioned him. Additionally, Tang reported that Wang recently told him the case was about to go to trial, and threatened to sue if Tang said anything "wrong" in court.

The United States has provided Pretrial Services with a copy of this Report of Investigation as evidence of a potential violation by Wang. The government is further evaluating whether to charge Wang with obstruction of justice based on this conduct, pursuant to 18 U.S.C. § 1512(c).

**II.    JENCKS, BRADY, AND GIGLIO DISCLOSURE (Crim. L.R. 17.1-1(b)(1-3))**

The United States has fully complied with the Jencks Act, 18 U.S.C. § 3500, and believes it has supplied all materials that may be relevant under *Brady v. Maryland*, 373 U.S. 83 (1963). The government has specifically requested that the Student and Exchange Visitor Program, the division of the U.S. Department of Homeland Security that is responsible for authorizing and withdrawing authorization for schools to admit foreign students, produce to the United States all records in their possession or control regarding Jerry Wang, Herguan University, and University of East West Medicine.

In preparing for trial, the government is continuing to interview witnesses and obtain additional evidence. The government recognizes and will comply with its ongoing obligation to provide the defense with materials subject to Jencks, *Brady*, and *Giglio v. United States*, 405 U.S. 150 (1972), that are within its possession, custody or control, as well as its continuing duty to comply with Rule 16.

As of this date, the United States is not aware of any material exculpatory or impeachment information concerning the witnesses expected to testify in its case in chief that would be subject to disclosure pursuant to *Brady*; *Giglio*; *United States v. Bagley*, 473 U.S. 667 (1985); and/or *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991).

### III.   STIPULATIONS (Crim. L.R. 17.1-1(b)(4))

The parties have agreed in principle to two factual stipulations, one to the effect that Su Tong and Ying Qi Wang are defendant's parents and the other regarding an AT&T subscriber, and are in the process of fine-tuning the language. The United States is exploring whether the defense will also enter into evidentiary stipulations as to authenticity of certain records, such as to the authenticity of emails obtained from Google, in a further attempt to streamline the trial, and hopes to be able to advise the Court at the Pretrial Conference.

### IV.   NEED FOR INTERPRETERS (Crim. L.R. 17.1-1(b)(5))

The government will need Mandarin interpreters for several witnesses in its case in chief.

### V.   DISMISSAL OF COUNTS/ELIMINATION OF ISSUES (Crim. L.R. 17.1-1(b)(6))

The government intends to supersede the indictment to correct the dates in Counts 14 and 15, and to delete one of the visa fraud counts, Count 4. The government is evaluating whether to add an obstruction count.

### VI.   JOINDER/SEVERANCE (Crim. L.R. 17.1-1(b)(7))

There are no joinder or severance issues.

### VII.   INFORMANTS/PRIOR CONVICTIONS (Crim. L.R. 17.1-1(b)(8))

There are no informant issues in this case. The defendant has no prior convictions.

### VIII.   WITNESSES (Crim. L.R. 17.1-1(b)(9))

While parties to a criminal case cannot be required to file a witness list, *United States v. Hicks*, 103 F.3d 837, 841 (9th Cir. 1996), the United States will do so prior to the Pretrial Conference. The United States reserves the right to call additional witnesses.

/ / /

/ / /

/ / /

### IX. EXHIBITS (Crim. L.R. 17.1-1(b)(10))

The United States will provide the defendant with its anticipated exhibit list at or before the Pretrial Conference and reserves the right to supplement the list as needed. All exhibits will be drawn from materials that the government has provided to the defense in discovery.

The government will move to exclude any evidence offered by the defendant in his case-in-chief that is not produced prior to trial. *See United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (affirming district court's exclusion of checks that were not produced by defendant to the government prior to trial); *United States v. Nash*, 115 F.3d 1431, 1439-40 (9th Cir. 1997) (affirming exclusion of defense expert who was not properly disclosed pursuant to Fed. R. Crim. P. 16(b)(1)); *United States v. Aceves-Rosales*, 832 F.2d 1155 (9th Cir. 1987) (per curiam) (affirming district court's exclusion of medical report not produced by defendant).

### X. OBJECTIONS TO EXHIBITS OR TESTIMONY (Crim. L.R. 17.1-1(b)(11))

The parties are filing motions in limine to address objections to expected exhibits and testimony, to the extent they cannot be resolved by the parties.

### XI. LEGAL ISSUES LIKELY TO ARISE AT TRIAL (Crim. L.R. 17.1-1(b)(12))

The government anticipates objections to evidence about which it supplied notice under Rule 404(b). Such evidence is the subject of a motion in limine.

### XII. SCHEDULING (Crim. L.R. 17.1-1(b)(13))

The Court scheduled defendant's jury trial for November 17, 2014. A reasonable estimate for presentation of the government's case-in-chief is seven days.

### XIII. JURY VOIR DIRE (Crim. L.R. 17.1-1(b)(14))

The United States is submitting with this Memorandum proposed voir dire questions. The government requests the opportunity to conduct individual voir dire.

### XIV. JURY INSTRUCTIONS (Crim. L.R. 17.1-1(b)(14))

The parties are filing jointly proposed jury instructions.

### XV. OTHER ISSUES (Crim. L.R. 17.1-1(b)(15))

The Indictment contains a criminal forfeiture allegation. This allegation alleges that upon conviction of visa fraud or visa fraud conspiracy, the defendant shall forfeit "any property, real or

personal, (I) that constitutes or is derived from proceeds traceable to the proceeds obtained directly or indirectly from the commission of the offense of conviction; or (II) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of conviction," pursuant to 18 U.S.C. § 982(a)(6)(A)(ii) and (b)(1); 21 U.S.C. § 853(p); and Rule 32.2 of the Federal Rules of Criminal Procedure

### A.     Criminal Forfeiture Procedure

The criminal forfeiture process is set forth in Federal Rule of Criminal Procedure 32.2, 18 U.S.C. § 982, and 21 U.S.C. § 853. Forfeiture is mandatory upon conviction of the charged offenses. *See* 18 U.S.C. § 982(a)(6)(A)(ii)(II). Rule 32.2 provides that as soon as practicable after a verdict of guilty on any count for which forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay. In either case, the government's burden of proof is by a preponderance of the evidence. *United States v. Garcia-Guizar*, 160 F.3d 511, 518 (9th Cir. 1998) (preponderance standard is constitutional because criminal forfeiture is not a separate offense, but only an additional penalty).

Upon a party's request in a case in which a jury returns a guilty verdict for an offense that gives rise to forfeiture, the jury must determine whether the government has established the requisite nexus between the property and offense giving rise to forfeiture. Fed. R. Crim. P. 32.2(b)(4). Absent an explicit waiver by the defendant, the jury's nexus determination should be made in a separate phase from the guilt/non-guilt phase to avoid any confusion over the different burdens of proof. *See* Advisory Comm. N. to 2000 Adoption of Fed. R. Crim. P. 32.2(b); *see also Garcia-Guizar*, 160 F.3d 511.

The jury itself does not order forfeiture, determine ownership, or consider third-party claims. *See* Fed. R. Crim. P. 32.2(b), (c). The only issue for the jury is to determine whether the Government has established the "requisite nexus between the property and the offense" on which the defendant has been convicted. Fed. R. Crim. P. 32.2(b)(1). In this regard, the government is submitting proposed jury instructions and a proposed special verdict form. The jury's special verdict will serve as the basis for

U.S. PRETRIAL CONF. STATEMENT
CR 12-581 EJD                                       10

1  this Court to enter a preliminary order of forfeiture.  Fed. R. Crim. P. 32.2(b)(2), (3).  The final order of
2  forfeiture will follow notice and publication of the preliminary order and will address any third-party
3  claims.  Fed. R. Crim. P. 32.2(b)(2), (c).

4        The jury does not consider whether the defendant has an interest in the property to be forfeited;
5  nor does the jury determine the extent of the defendant's interest in any property to be forfeited.  These
6  matters are considered by the court in the ancillary proceedings, following the jury's special verdict and
7  entry of the preliminary order of forfeiture.  Fed. R. Crim. P. 32.2(b), (c); Advisory Comm. N. to
8  Subsection (b).

9        In determining whether the government has established the requisite nexus between the property
10 sought for forfeiture and the offense of conviction, the trier of fact can rely on any evidence already in
11 the record, or any evidence or information presented by the parties at a hearing after the verdict or
12 finding of guilt, including hearsay.  Rule 32.2(b)(1); *see also United States v. Ali*, 619 F.3d 713, 720 (7th
13 Cir. 2010) (because forfeiture is part of sentencing, less stringent evidentiary standards apply in the
14 forfeiture phase of the trial; the evidence need only be "reliable"); *United States v. Capoccia*, 503 F.3d
15 103, 109 (2nd Cir. 2007) (Rule 32.2(b)(1) allows court to consider "evidence or information" thus
16 making it clear that court may consider hearsay).  Once the trier of fact has found that the government
17 has established the requisite nexus between the offense of conviction and the property sought for
18 forfeiture, the court must promptly enter a preliminary order of forfeiture without regards to third
19 parties' interest, if any, as that will be resolved in the ancillary proceeding.  Rule 32.2(b)(2); *see also*
20 *United States v. Nava*, 404 F.3d 1119, 1132 (9th Cir. 2005) (district court properly instructed jury that
21 questions of ownership "were not before them").
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /
27 / / /
28 / / /

**B.     Defendant's Election of Bench Trial or Jury Trial on Forfeiture**

The government requests that defendant announce at the Pretrial Conference whether he intends to proceed by bench trial or jury trial to determine forfeitability.

DATED: October 27, 2014               Respectfully submitted,

                                       MELINDA HAAG
                                       United States Attorney

                                                /s/
                                       _____
                                       HARTLEY M. K. WEST
                                       AMBER S. ROSEN
                                       Assistant United States Attorneys