1  MELINDA HAAG (CABN 132612)
   United States Attorney

2

3  J. DOUGLAS WILSON (DCBN 412811)
   Chief, Criminal Division

4  HARTLEY M. K. WEST (CABN 191609)
   AMBER S. ROSEN (CABN 160380)

5  Assistant United States Attorneys

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495

7       Telephone: (415) 436-6747
        FAX: (415) 436-7234

8       Hartley.West@usdoj.gov
        Amber.Rosen@usdoj.gov

9

   Attorneys for United States of America

10

11                  UNITED STATES DISTRICT COURT

12                NORTHERN DISTRICT OF CALIFORNIA

13                        SAN JOSE DIVISION

14

15  UNITED STATES OF AMERICA,              )   No. CR 12-581 EJD
                                           )
16          Plaintiff,                     )   UNITED STATES OPPOSITION TO
                                           )   DEFENDANT'S MOTION IN LIMINE TO
            v.                             )   EXCLUDE RULE 404(b) EVIDENCE
17                                         )
    JERRY WANG,                            )   Pretrial Conference: November 3, 2014
18                                         )   Trial Date: November 17, 2014
            Defendant.                     )
19  _____ )

20          The Court should deny defendant Jerry Wang's motion to exclude relevant other acts evidence.

21  The evidence, for which notice was properly provided, is inextricably intertwined with the charged

22  conduct or otherwise admissible under Federal Rule of Evidence 404(b).

23          "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in

24  order to show action in conformity therewith."  Fed. R. Evid. 404(b).  "It may, however, be admissible

25  for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or

26  absence of mistake or accident."  *Id.*  This "is a rule of inclusion.  Unless the evidence of other crimes

27  tends only to prove propensity, it is admissible."  *United States v. Rrapi*, 175F.3d 742, 748 (9th Cir.

28  1999) (internal quotation marks and citation omitted).  Evidence of prior acts is admissible under Rule

404(b) if: (1) the evidence tends to prove a material element of the offense charged; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) in cases where knowledge and intent are at issue, the act is similar to the offense charged. *United States v. Ogles*, 406 F.3d 586, 592 (9th Cir. 2005).

## I.     Other Transfer Letters and Transcripts

### A.  Transfer Letters

Defendant is charged with visa fraud conspiracy and use of false documents, among other charges, arising out of his operation of the Sunnyvale-based Herguan University.  The alleged conspiracy (Count 1) commences with Herguan's submission of a fraudulent petition to admit foreign students, known as a Form I-17.  As part of the I-17 approval process, the Student and Exchange Visitor Program (SEVP) of the U.S. Department of Homeland Security (DHS) conducts a site visit.  During this visit, a site inspector contracted with DHS collects the original, signed I-17 application and supporting documents.  DHS records show that Herguan's site visit occurred on July 30, 2007; that during this visit, the SEVP inspector interviewed defendant as Herguan's "owner" and Primary Designated School Official; and that the inspector collected Herguan's original, signed I-17, as well as "letters from 3 accredited institutions of higher education that have accepted transfer credits of petitioning school."

Defendant's submission of the I-17 is alleged as Overt Act (b) in Count 1.  Only one of the three transfer letters, a July 9, 2007 letter from the Academy of Chinese Culture & Health Services (ACCHS), is charged in the indictment – as Overt Act (c) in Count 1 and as false document Count 7.  The other two transfer letters were provided as part of the same packet of material to the site inspector, however, and are thus inextricably intertwined.

The ACCHS letter represents that its Director of Institutional Relations, Andres Bella, supports Herguan's I-17 petition, and that Herguan student "Li Ling" had transferred credits to ACCHS.  Bella says he wrote such a letter in support of the University of East-West Medicine (UEWM), not Herguan. Indeed, Bella said, he would never provide such a letter for Herguan because it was not accredited. Moreover, Bella said he did not know a "Li Ling" and was not aware of her transferring to ACCHS.  We have also interviewed a Ling Li, who advised that she worked as the admissions director for UEWM, where defendant was her supervisor.  Li denied having ever taken classes at UEWM, Herguan, or

ACCHS, or attempting to transfer any credits to any of these schools.  At the time of this letter, defendant was CEO of UEWM as well as Herguan.  Defendant's father was the founder and President of UEWM, as well as Herguan's President and the signatory on Herguan's I-17.

One of these letters, dated July 8, 2007, purports to be signed by a Chengguang Shi on behalf of UEWM, and represents that a Su Tong enrolled at UEWM as a transfer student from Herguan.  Su Tong is defendant's mother and Herguan's CFO.  Shi advised that he is Academic Dean of UEWM, that as such he reports to defendant and his parents, that he could not verify anything in the letter as true, and that he could not recall Tong transferring Herguan credits to UEWM.  He did not recall signing the letter but said when his supervisors asked him to sign something, he did so without much question.

Not only is this letter inextricably intertwined, but it also is admissible under Rule 404(b).  It tends to show that defendant knew the transfer letters were false, intended to submit false letters, and that the submission was not merely a mistake.  It further shows defendant's preparation and plan in creating and submitting these fraudulent letters.

### B.  Transcripts

On August 8, 2007, SEVP issued a request for evidence, stating that it needed three transfer letters or, alternatively, three employment letters, "written and signed by the employer(s) attesting graduates of your school are fully qualified in their field of study, as a result of the training they gained at your institution."  The request for evidence further instructed: "Additionally your school should provide evidence supporting the students referenced in the letters, or college acceptance letters, program enrollment and completion/transfer dates (e.g. transcript copies)."

In response to SEVP's request, defendant sent SEVP a signed cover letter with employment letters and two sets of transcripts for purported Herguan graduates Candace Zheng, Shane Guan, and David Wang.  The transcripts contain the student's names, dates of birth, and social security numbers; are on Herguan letterhead; and are dated August 8, 2007.  Each transcript lists identical courses and the same sequence of courses taken for each purported student.  During the search warrant, agents located student files for Zheng, Guan, and Wang in the UEWM office, including UEWM transcripts; no Herguan transcripts were located.

The first employment letter, from Alex Shi of UEWM, states that Zheng works for UEWM as an "herbal consultant/manager assistant" and that she graduated from Herguan in April 2007. Shi is the same individual who signed the UEWM transfer letter (his American name is "Alex"), working for defendant and his parents. Shi said could not recall what Zheng's position was but knew she worked at UEWM's clinic. Zheng stated that she graduated from UEWM in December 2008, worked for UEWM as a receptionist, and never attended Herguan. She confirmed the social security number and date of birth on the transcript as her own, but noted that her dates of attendance and graduation were false.

The second employment letter, from JingGang Tang of Vital Core Biosystems Inc., states that Shane Guan graduated from Herguan on April 15, 2007 and is employed by Vital Core as a Marketing Officer. Guan stated that he had never heard of Vital Core and never worked for them. He advised that he was a student at UEWM and had not yet graduated. After being shown a copy of the Herguan transcripts, Guan stated that he did not want to say anything derogatory about UEWM or Herguan because his mother is friends with the schools' owners. He confirmed his social security number and date of birth, and suggested that perhaps he had taken Herguan courses and graduated without realizing it. Tang explained that Vital Core is the supply department of UEWM and that defendant is his direct supervisor. Shown the employment letter, Tang stated that defendant had typed it and asked him to sign, explaining that it was a reference letter that would be used to help Guan get a job. Tang stated that he did not know Guan but felt pressured by defendant to sign the letter.

The third letter, from "Lin Lee" of International Institutes for Health and Healing (IIHH), states that David Wang is an Herbal Researcher who graduated from Herguan on April 15, 2007. When interviewing Ling Li in connection with the transfer letter, agents showed her the IIHH employment letter. Li recognized the phone number in the IIHH letterhead as her old personal cell phone number, but denied having seen the employment letter before, having ever worked for IIHH, or knowing a David Wang. Phone records confirm that the phone number on the employment letter belonged to Li at the time.

The employment letters and two of the transcripts form the basis of overt acts (d) and (e) in the alleged visa fraud conspiracy (Count 1) and false document Counts 7-11. The same two transcripts form the basis of the two aggravated identity theft charges, Counts 13 and 14. The third set of Herguan

transcripts, relating to David Wang, is admissible because it is inextricably intertwined, as defendant submitted all of the transcripts and employment letters to SEVP as one packet, with one cover letter.  It is also admissible under Rule 404(b).  That defendant sent *another* set of false transcripts for a UEWM student, whose true student file was found in the UEWM office , tends to prove that defendant knew the charged transcripts were false, that he intended to submit false transcripts to SEVP, and that there was no mistake.  It further tends to prove that defendant prepared and planned to send this set of false documents, to secure approval of Herguan's I-17 application.

## II.    False Statements That Classes Were Online Due to Construction

On November 17, 2010, SEVP officials and DHS agents conducted a site visit of Herguan. During the visit, the agents and SEVP personnel interviewed defendant, who stated that students must take at least two on campus courses; that attendance is monitored by students signing attendance sheets; that students receive an "F" grade for failure to attend classes, followed by academic probation and termination; and that foreign students failing to meet full course of study requirements are issued academic warning letters and then terminated in SEVIS.

After the interview, SEVP personnel requested a campus tour.  Defendant agreed and pointed out several lightly attended classes in session, which he said were Herguan classes.  After the personnel asked to sit in and meet the instructors, defendant advised that these were UEWM classes and that all Herguan classes had been cancelled for the evening.  When agents stated they knew there was no physical attendance by foreign Herguan students (a violation of SEVP regulations), defendant then stated that Herguan had recently begun major campus renovations and was temporarily allowing all of its foreign students to attend entirely online, but planned to resume physical classes in the near future. At the conclusion of the site visit, SEVP personnel gave defendant a Request for Evidence, asking for attendance records and academic warning letters, among other things.

On December 16, 2010, defendant sent SEVP a signed and notarized letter responding to its Request for Evidence.  Defendant stated in the letter: "During the renovations, [Herguan] allowed students to enroll in simultaneous broadcasting classes for the Fall 2010 semester, which caused significant educational challenges and SEVIS compliance issues during this semester."  In fact, many students had been taking all online classes since Fall 2009.

Along with the letter, defendant submitted the various documents requested by SEVP, including sample Herguan attendance and academic warning letters. Emails, however, reveal that the warning letters were newly created, and did not previously exist. Specifically, a few days after the site visit, defendant emailed Herguan's Vice President of Organizational Development, Richard Friberg, "we never have academic warning letters. Can you create one?" Friberg responded: "Jerry, I am not sure what this is for. Are there SEVIS rules that must be complied with? . . . . They are asking for these letters for a reason. Don't step in a trap." Friberg embedded into his email two sample letters. They are virtually identical to the Attendance Warning Letter and Academic Warning Letter that Wang submitted to SEVP two weeks later.

Moreover, defendant understood the import of these letters to SEVP, as shown in his follow-up email to Friberg: "SEVP was asking me if student did not meet the full academic standing what does the school do. I said if student do not follow meet the full academic standing we will find out from our system and dismiss the student. SEVP said they want to see the academic warning letters to students."

Defendant's use of the false Academic Warning Letter by providing it to SEVP is the basis for overt act (g) in conspiracy Count 1, as well as for false document Count 12. His false statements that Herguan offered online classes only during the construction is inextricably intertwined with this evidence because it explains why SEVP asked for the Academic Warning Letter in its Request for Evidence. Further, Herguan's only-online existence explains why there was no Academic Warning Letter. Accordingly, his false statements also tend to show that defendant knew the warning letter was false, and intended and planned to falsely submit it, and that his use of this false document was not the result of a mistake.

### III.    Instructions to Forge I-20s

Counts 2, 3 and 4 charge defendant with aiding and abetting visa fraud in September 2010, that is with "knowingly causing another to forge and falsely make a document prescribed by statute and regulation for entry into or as evidence of an authorized stay in the United States," specifically a Form I-20, or knowingly causing another to use or possess a Form I-20, knowing it to be forged, falsely made, or procured by fraud. Count 5 charges defendant with unauthorized access of a government computer between May 2009 and August 2010. This unauthorized access is also alleged in Count 1, overt act (f).

1    The evidence at trial will be that Herguan received SEVP approval to admit foreign students

2    based on defendant's fraudulent I-17 and supplemental submissions.  Based on this approval, defendant

3    obtained from SEVP an ID and password, enabling him to access SEVP's secure governmental

4    computer system known as "SEVIS."  This access is expressly non-delegable, and Designated School

5    Officials must receive training on federal regulations regarding foreign students before they get such

6    access.  Defendant, as Herguan's only Designated School Official, certified his agreement to these

7    terms.  He was thus the only person authorized to create I-20s in the SEVIS system and sign them on

8    behalf of Herguan.  Foreign students need I-20s to obtain student visas, to enter the United States, and as

9    proof of authorized stay in the United States.

10    The government expects Herguan employee Yehpin ("Carrie") Yang to testify that, shortly after

11    she was hired in May 2009, defendant gave her his SEVIS user name and password for her to access the

12    SEVIS database and create I-20s for foreign students at Herguan.  Emails between Yang and defendant

13    confirm that she was accessing defendant's SEVIS account; indeed, she changed his password with his

14    consent.  Defendant's instruction to Yang to use his ID and password is alleged as overt act (f) in

15    conspiracy Count 1.

16    After Yang created I-20 records, she printed them out for signature.  Because she created the

17    forms using defendant's account, the forms automatically printed with defendant's signature block.  At

18    defendant's request, when he was not available, Yang had one of his parents sign the forms.  Yang

19    reported that they tried to imitate defendant's signature, and if they accidentally signed in their own

20    names, they would tear up the I-20 and sign a new one in defendant's name.  When all three were to be

21    traveling, defendant instructed Yang to sign I-20s herself, but she refused.  She accessed SEVIS and

22    witnessed defendant's parents forge his signature throughout her employment until she left in

23    approximately August 2010.

24    The case agent will testify that approximately 125 I-20s were created in SEVIS between

25    September 2010 and October 2010, during a time when certified Customs and Border Patrol records

26    show that defendant was out of the country.  Three such I-20s, signed in defendant's name, are charged

27    in Counts 2-4.

28

The government intends to call other former Herguan/UEWM employees, Ling Li and Ling Zhang, to testify that defendant also gave them his ID and password, told them to access SEVIS, and instructed them to forge or have his parents forge his signature on I-20s.  Further, all will say that they saw the warning banner on SEVIS announcing that it was only for authorized users.  Li was employed with Herguan and UEWM from approximately April 2007 through approximately October 2008, and Zhang from approximately October 2008 through approximately September 2009.  Their testimony is inextricably intertwined because it tells the complete story of defendant's SEVIS access, and is also admissible under Rule 404(b) because it tends to show he defendant's knowledge, intent, preparation, plan, and lack of mistake.  He knew others were not allowed to use SEVIS, and he gave them access anyway intending to violate the law.  He prepared and planned this, making no mistake, in carrying it out over several years.

### IV.  Forced UEWM Transfers

The United States intends to offer testimony from Herguan employees and students, as well as documents found during search warrants, that defendant transferred UEWM students to Herguan without their consent in mid-2008, and that students were very angry about the forced transfers because they applied to and were enrolled in classes at UEWM, which was accredited and thus more valuable.

This evidence is inextricably intertwined with the alleged conduct because the story simply does not make sense without it.  The jury will wonder why defendant bothered to submit false documents to get I-17 approval for Herguan, when UEWM already had approval to admit foreign students.  The testimony will explain that defendant had admitted foreign students to UEWM for areas of study outside the scope of its I-17 approval, which was for Chinese medicine.  Defendant then feared UEWM would lose its accreditation as a result, and so needed to set up Herguan to take these students.  Herguan had previously existed in name only, which is why defendant needed to fabricate the existence of Herguan students in his transfer letters, employment letters, and transcripts to get SEVP approval.  Once the approval was obtained, defendant forced non-Chinese medicine UEWM students to transfer to Herguan.  For these same reasons, such evidence is also admissible under Rule 404(b) to show the defendant's knowledge, intent, motive, identity, preparation, plan, and lack of mistake in submitting the fraudulent I-17 documents.

1    The government additionally intends to offer testimony from Herguan employee Ling Zhang that

2    defendant instructed her to destroy student letters complaining about the forced transfer.  This is

3    inextricably intertwined with Zhang's testimony, and also tends to prove defendant's identity as the one

4    who formed the plan, as well as his knowledge, intent, preparation, and lack of mistake.

5    **V.    Obstruction of Justice**

6    Finally, the United States intends to offer evidence that defendant obstructed justice and

7    tampered with witness Jing Gang Tang.  While defendant has not yet opposed its admission in evidence,

8    the government addresses here the reasons it is admissible.

9    On Friday, October 17, 2014, counsel for the government met with witness Jing Gang Tang in

10   preparation for trial.  When asked about contact with defendant, Tang became visibly upset, even

11   needing to take a break at some point to collect himself.  Prefacing that he did not want to get anyone in

12   trouble, Tang advised that defendant and his parents (unindicted co-conspirators) – for whom he worked

13   for several years through Vital Core – came to him the day after agents originally interviewed him in

14   Fall 2011.  They told him to tell HSI agents that Guan worked for Vital Core (as stated in the false

15   employment letter discussed above).  Tang told them that he had already spoken to agents and told them

16   he did not know Guan.

17   Tang further advised that defendant approached him after the case was charged and told him to

18   say Guan had worked for him at Vital Core, or at least that he did not remember Guan.  Tang reported

19   that defendant's mother similarly told him "so much time has elapsed now, you can just say you don't

20   remember."

21   Moreover, approximately a year ago, Tang stated, an attorney saying he represented defendant

22   told him "You don't remember anything, right?" Sometime thereafter, the attorney provided him with a

23   declaration saying that Tang does not speak English very well and did not understand the agents'

24   questions.  The attorney told Tang that if he signed the declaration he would not need to testify at trial.

25   Tang declined to sign the declaration, but asked to take a copy home and was refused.

26   A few weeks ago, Tang recalled, defendant again approached him, told him the case would be

27   going to trial soon, and offered to get him an attorney.  Defendant told Tang that "if he said anything

28   wrong in court, he would be sued."  Tang felt threatened and feared for his safety.

1    On October 23, 2014, a copy of the ROI regarding this interview was produced to the defense.

2    On October 27, 2014, the government advised defendant that it was evaluating whether to supersede the

3    indictment to charge obstruction based on this conduct or simply elicit the evidence in Tang's testimony.

4    On October 28, 2014, the government emailed the defense notification that it intended to offer Tang's

5    testimony regarding the obstructive conduct on the ground that it was inextricably intertwined or

6    admissible under Rule 404(b) to show consciousness of guilt.

7    Tang's testimony is necessary regarding Count 8, the false employment letter.  He will likely

8    again appear upset and scared.  The government will need him to explain to the jury the reason for this

9    affect, so they do not misinterpret it.  Defendant and his family's obstructive conduct is thus inextricably

10   intertwined with the alleged conduct.  Moreover, it is plainly admissible to prove consciousness of guilt.

11   *United States v. Begay*, 673 F.3d 1038, 1046 (9th Cir. 2011) (holding defendant's threats against

12   government witness admissible in murder prosecution to show consciousness of guilt).  The obstruction

13   and threats relate directly to his testimony about the false employment letter.

14

15   DATED: October 30, 2014                    Respectfully submitted,

16                                              MELINDA HAAG
                                                United States Attorney
17
                                                      /s/
18                                              HARTLEY M. K. WEST
                                                AMBER S. ROSEN
19                                              Assistant United States Attorneys

20

21

22

23

24

25

26

27

28