MELINDA HAAG (CABN 132612)
United States Attorney

J. DOUGLAS WILSON (DCBN 412811)
Chief, Criminal Division

HARTLEY M. K. WEST (CABN 191609)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6747
    FAX: (415) 436-7234
    Hartley.west@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR 12-581 EJD |
| Plaintiff, | ) |
| v. | ) UNITED STATES' OPPOSITION TO McMANIS FAULKNER'S MOTION TO QUASH GRAND JURY SUBPOENA |
| JERRY WANG, | ) |
| Defendant. | ) |

## I.    INTRODUCTION

A witness in the above-captioned case has advised the government that defendant Jerry Wang and an attorney from the law firm McManis Faulkner presented him with a false declaration to sign. The United States has issued McManis Faulkner a grand jury subpoena for "all declarations and/or affidavits presented or shown to JingGang Tang in" this case. The subpoena is appropriately tailored and no privilege pertains. This Court should accordingly deny McManis Faulkner's motion to quash.

/ / /

/ / /

U.S. OPP. TO MTN. TO QUASH
GRAND JURY SUBPOENA
CR 12-581 EJD

## II. SUMMARY OF RELEVANT FACTS

Defendant Jerry Wang is charged in a fifteen-count Superseding Indictment with conspiracy, visa fraud, use of false documents, aggravated identity theft, and aiding and abetting unauthorized access of government computers. The Superseding Indictment generally alleges that defendant fraudulently obtained and maintained approval from the United States for Silicon Valley-based Herguan University to admit foreign students, and seeks forfeiture of all proceeds from that fraud and all facilitating property.

### A. Background

At the time of the offense conduct, Herguan University purported to offer Master's degrees in Computer Science, Electronics Engineering, and Business Administration. According to Herguan's website, defendant was the CEO; his father, Ying Qiu Wang, was the President; and his mother, Su Tong, was the CFO. Defendant was also the CEO of the University of East-West Medicine (UEWM), which – at the time of the offense conduct – was co-located with Herguan at 595 Lawrence Expressway. Ying Qiu Wang was UEWM's founder and President.

### B. Summary of Charges

A school seeking approval to admit foreign students must submit a petition to the United States Department of Homeland Security (DHS), Student and Exchange Visitor Program (SEVP) in Washington, DC. Along with this petition, which is called a Form I-17, the school must submit attachments including a Record of Designated School Officials (DSOs) who certify their knowledge of and intent to comply with student immigration laws and regulations. Defendant is identified as Herguan's Primary (and sole) DSO. These submissions mark the beginning of the charged visa fraud conspiracy.

As part of the I-17 approval process, SEVP conducts a site visit, during which an inspector collects the original, signed I-17 application and supporting documents. SEVP records show that Herguan's site visit occurred on July 30, 2007; that during this visit, the SEVP inspector interviewed Wang as the "owner" and Primary DSO; and that the inspector collected Herguan's original, signed I-17 as well as three transfer letters, purportedly establishing that its courses had been and would continue to

be accepted to accredited institutions of higher learning. One of the transfer letters is charged in the Superseding Indictment as a false document and an overt act in the conspiracy. The purported signatory will testify that he did not write the transfer letter, nor would he have because Herguan was not accredited. Instead, he recalled writing such a letter in support of UEWM.

On August 8, 2007, SEVP issued a request for evidence, stating that it needed three articulation agreements or, alternatively, three employment letters, "written and signed by the employer(s) attesting graduates of your school are fully qualified in their field of study, as a result of the training they gained at your institution." The request for evidence further instructed: "Additionally your school should provide evidence supporting the students referenced in the letters, or college acceptance letters, program enrollment and completion/transfer dates (e.g. transcript copies)." In response to SEVP's request, defendant sent SEVP a signed cover letter along with employment letters and transcripts for three purported Herguan graduates. The transcripts contain the student's names, dates of birth, and social security numbers, and list identical courses and the same sequence of courses taken for each purported student. The employment letters and two of the transcripts form the basis of five additional false document charges and overt acts in the conspiracy, and the transcripts form the basis of the two aggravated identity theft charges.

Each of the purported signatories on the employment letters will testify that the letters are false and that they worked for defendant and/or his family. One such employment letter, from JingGang Tang of Vital Core Biosystems Inc., states that Shane Guan graduated from Herguan on April 15, 2007 and was employed by Vital Core as a Marketing Officer. Tang would testify that Vital Core is the supply department of UEWM, that defendant is his direct supervisor, and that he did not know Guan. He would further testify that defendant typed the letter and asked him to sign, explaining that it was a reference letter that would be used to help Guan get a job. Guan would testify that he had never heard of Vital Core and never worked for them; that he was a student at UEWM and had not yet graduated; and that his mother is friends with defendant and his parents.

///

///

1  Defendant's aiding and abetting unauthorized users' access of SEVP's secure database to issue
2  forged and fraudulently made visa-related documents, together with his production of additional false
3  documents to SEVP, round out the charges in the Superseding Indictment.

4  **C.    Witness Tampering**

5  In preparation for trial, the United States reinterviewed several anticipated witnesses.  Jing Giang
6  Tang was reinterviewed on October 14, 2014, in connection with the false employment letter described
7  above.  Based on that interview, the United States understood that a lawyer who said he represented
8  defendant presented him with and asked him to sign a declaration falsely stating that he did not speak
9  English very well and did not understand the agents who questioned him.  Based on this information, the
10 government advised McManis Faulkner, then representing defendant, that it was evaluating whether to
11 add an obstruction count, but in any event intended to introduce such testimony at trial.  McManis
12 Faulkner noted that it had met with Tang in the presence of a court-certified interpreter, and stated it
13 may move to withdraw based on a conflict.  The government did not at that time understand that the
14 attorney with the false declaration was from McManis Faulkner.

15 On November 3, 2014, the undersigned interviewed Tang for the first time and learned that Tyler
16 Atkinson, an associate of McManis Faulkner, presented Tang with a declaration in the presence of a
17 Mandarin interpreter, who translated it for Tang.  Tang advised that the declaration was false and he
18 refused to sign.  Sometime after this meeting, Tang reported, defendant presented him with what he
19 described as a Chinese version of the same declaration, falsely stating that Tang had not understood the
20 agent's questions in his initial interview due to his poor English.  Defendant told Tang he would not
21 need to testify if he signed the declaration.

22 Later on November 3, 2014, McManis Faulkner withdrew as counsel for defendant, apparently
23 based on a conflict of interest arising out of Tang's allegations.  The government advised at that hearing
24 that it did not at that time intend to levy obstruction charges, but that it intended to investigate further.

25 The United States is now conducting a grand jury investigation into obstruction of justice based
26 on Tang's allegations, pursuant to 18 U.S.C. § 1512(c).  As part of this investigation, the government
27 served a grand jury subpoena on McManis Faulkner on November 10, 2014, for "all declarations and/or
28

U.S. OPP. TO MTN. TO QUASH
GRAND JURY SUBPOENA
CR 12-581 EJD                                                    4

affidavits presented or shown to JingGang Tang in" this case. The return date on the subpoena has been extended at McManis Faulkner's request to accommodate this motion. The November 17, 2104 trial date was vacated on November 10, and no new trial date has been set.

### III.   ARGUMENT

McManis Faulkner moves to quash the subpoena on the grounds that (1) compliance would be unreasonable or oppressive and (2) it is an abuse of the grand jury process. Taking the second argument first, there has been no abuse of the grand jury process. As stated, the government has opened an investigation into whether there has been obstruction of justice in violation of 18 U.S.C. § 1512. That the government decided not to add an obstruction charge to an indictment based on Tang's statement two weeks before the then-existing trial date does not preclude a grand jury investigation. McManis Faulkner's claim that the subpoena is intended only to harass the defendant or improperly obtain discovery is unsupported and absurd.

McManis Faulkner's other argument – that compliance would be unreasonable or oppressive – has been completely redacted so the government is not sure of the basis. (Mtn. to Quash at 1-2.) In light of counsel's motion to seal (Sealing Mtn. at 2), however, the government assumes McManis Faulkner is asserting that the declarations are protected by an attorney work product privilege.

The subpoena was crafted specifically to avoid any claims of privilege. By the very terms of the subpoena, it is limited to records "presented or shown to" a third party. Tang claims that he viewed two such declarations: one English version shown by Mr. Atkinson and one Mandarin version shown by defendant. No privilege can protect these documents.

"At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975). A voluntary disclosure of such mental processes waives the privilege, if it is inconsistent with maintaining secrecy against opponents. *United States v. Deloitte LLP*, 610 F.3d 129, 140 (D.C. Cir. 2010).

Here, McManis Faulkner shared a reportedly false declaration with a witness – one whom the defense knew had already been interviewed by the government and knew was central to a charge in the

U.S. OPP. TO MTN. TO QUASH
GRAND JURY SUBPOENA
CR 12-581 EJD                                      5

United States' case. Because this is entirely inconsistent with maintaining secrecy against the United States, the declaration is not protected work product.

Moreover, the Supreme Court has recognized two tiers of protection in the work product doctrine. *Hickman v. Taylor*, 329 U.S. 495, 512 (1947). Work product revealing the impressions and opinions of counsel may be produced only upon a showing of extraordinary justification, while work product containing relevant, non-privileged facts requires production upon a showing of "adequate reasons." *Id.* at 512-13. A declaration proffered to a government witness does not reveal impressions or opinions of counsel, and thus is not entitled to heightened protection. Rather the content of the declaration is a non-privileged fact that is relevant to the government's investigation of obstruction, an adequate reason for discovery.

Any claim of attorney-client privilege in the declaration also fails because the declaration was shown to a third party. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100 (9th Cir. 2010) ("Disclosing a privileged communication . . . results in waiver as to all other communications on the same subject.").

Similarly flawed is any argument that work product or attorney client privilege is preserved if McManis Faulkner did not actually show the declaration to the witness but rather communicated it through the use of an interpreter. "It makes no difference whether a privilege-holder copies a written text, reads from a written text, or describes a written text to an outside party. The purpose and effect is the same in all cases; the transmission of privileged information is what matters, not the medium through which it is conveyed." *United States v. Reyes*, 239 F.R.D. 591, 604 (N.D. Cal. 2006).

No privilege pertains even if McManis Faulkner drafted a declaration and gave it to the defendant, with the intent that the defendant provide it (or provide a version translated into Mandarin) to the witness. The upshot is the same. The document does not contain attorney impressions or opinions. It was created for the purpose of being shown – and in fact was shown – to a third party witness, in a manner inconsistent with maintaining secrecy from the United States.

Finally, any privilege is waived under the crime fraud exception. See *In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir. 1979) ("We have no doubt that the crime-fraud exception comes within "good cause" to deny applicability of the work product doctrine."). The declaration,

according to Tang, falsely stated that he did not speak English very well and did not understand the agents who questioned him. McManis Faulkner had a copy of the agent's report summarizing Tang's interview. There is no question that the defendant knew the content of the declaration was false. And it is highly likely that McManis Faulkner knew it was false when its attorney asked Tang to sign it. The declaration was created in an attempt to tamper with a government witness, a crime of obstruction. *See* 18 U.S.C. § 1512.

## IV.   CONCLUSION

The Court should deny McManis Faulkner's motion to quash the grand jury subpoena, finding that the subpoenaed materials are not protected by any privilege, that compliance would be neither unreasonable nor oppressive, and that there has been no abuse of the grand jury process.

DATED: November 25, 2014                    Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
_____
HARTLEY M. K. WEST
Assistant United States Attorney